DAVID M. GIVEN (SBN 142375)
NICHOLAS A. CARLIN (SBN 112532)
ROBERT CARROLL III (SBN 314345)
KYLE P. O'MALLEY (SBN 330184)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900
Fax:       415-398-0911
Email:     dmg@phillaw.com
           nac@phillaw.com
           rxc@phillaw.com
           kpo@phillaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS CAMPBELL THOMSON; JOHN ANTHONY HELLIWELL; and ROBERT LAYNE SIEBENBERG<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES ROGER POMFRET HODGSON, a/k/a ROGER HODGSON; DELICATE MUSIC, a California general partnership<br><br>Defendants. | Case No. 2:21-cv-08124-AB<br><br>Hon. André Birotte, Jr.<br>Courtroom: 7B<br><br>**PLAINTIFF'S BRIEF:**<br><br>   - **RE COURT'S QUESTIONS;**<br><br>   - **IN OPPOSITION TO DEFENDANT DELICATE MUSIC'S F.R.C.P. 50 MOTION** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................3
II. PLAINTIFFS' ANSWERS TO THE COURT'S QUESTIONS ..................3
   A. Issue 1(a): Which Agreements Did Hodgson Breach ...........................3
   B. Issue 1(b): Which Agreements Did Delicate Music Breach ................3
   C. Issue 1(c): Does the Court Need to Make a Judicial Determination Regarding the Plain Language of the Contracts, and If So, When ....3
   D. Issue 1(d): Do Plaintiffs Contend the Three Contracts Constitute a Single Instrument ..................................................................................3
   E. Issue 2: Is Delicate a Party to the 1977 Agreement .............................4
   F. Issue 3: Does the 1977 Agreement Have an Express Duration Period and If Not, What Does that Mean .........................................................4
   G. Issue 4: Does the 1984 Agreement Bind Delicate Music to Pay Plaintiffs in Perpetuity; If the Court Does Not Find Section 7 Ambiguous, Does It Go to the Jury ......................................................6
   H. Issue 5: Is Hodgson a Party to the 1991 Agreement ...........................8
   I. Issue 6: Is Delicate Music a Party to the 1991 Agreement .................8
III. UPDATE TO FPCO ............................................................................................8
IV. DEFENDANTS' BREACH OF CONTRACT ................................................9
V. PLAINTIFFS' OPPOSITION TO DEFENDANT DELICATE MUSIC'S RULE 50 MOTION ............................................................................................9
   A. Legal Standard .......................................................................................9
   B. Argument ..............................................................................................10
VI. CONCLUSION .................................................................................................13

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

PLAINTIFFS' BRIEF RE: COURT'S QUESTIONS; OPPOSITION TO DELICATE'S RULE 50 MOTION
Case No. 2:21-cv-08124-AB-PLA
2

## I. INTRODUCTION

The Court has asked for briefing on issues pertaining to Plaintiffs' breach of contract claim. It has also asked for Plaintiffs' opposition to Defendant Delicate Music's F.R.C.P. 50 motion for judgment as a matter of law ("JMOL").

The Court's questions are taken in order.

## II. PLAINTIFFS' ANSWERS TO THE COURT'S QUESTIONS

### A. Issue 1(a): Which Agreements Did Hodgson Breach

Answer: The 1977 and 1984 Agreements only (Trial Exhibits [hereinafter "TE"] 8 & 17.)

### B. Issue 1(b): Which Agreements Did Delicate Music Breach

Answer: The 1977 Agreement (TE 8); the 1984 Agreement (TE 17); and the 1991 Agreement (TE 20).

### C. Issue 1(c): Does the Court Need to Make a Judicial Determination Regarding the Plain Language of the Contracts, and If So, When

Answer: "When faced with a dispute over the meaning of a contractual provision, the court must first determine whether the provision is ambiguous, i.e., whether, on its face, the language of the provision is capable of different, yet reasonable interpretations. If an ambiguity is found, the court must determine which of the plausible meanings the parties actually intended. When the parties offer no extrinsic evidence concerning the meaning of the contractual language, or when the extrinsic evidence offered is not in conflict, ascertaining the intended meaning is solely the duty of the court." *Falkowski v. Imation Corp.*, 132 Cal. App. 4th 499, 505–06 (2005) (internal citations omitted).

### D. Issue 1(d): Do Plaintiffs Contend the Three Contracts Constitute a Single Instrument

Answer: Plaintiffs do not contend that the three contracts constitute a single instrument. But they do contend that the three contracts can and should be read together to determine the parties' intent. "While it is the rule that several contracts

relating to the same matters are to be construed together (Civ. Code § 1642), it does not follow that for all purposes they constitute one contract." *Hartford Accident v. Sequoia Ins.*, 211 Cal. App. 3d 1285, 1300 (1989).

The subject matter common to these contracts is the ownership, control, and administration of the songs recorded by SUPERTRAMP. In this case, the question of the parties' intent pertains to how long Plaintiffs are entitled to a share of song income derived from SUPERTRAMP recordings. The Court has found that this is an issue of fact. (ECF No. 127, at 10 ["this dispute presents a single issue: Is (or was) Defendants' obligation to pay Plaintiffs royalty interests (1) terminable at-will; or (2) conferred in perpetuity"].)

The 1977 Agreement sets the ground rules for that subject which the parties abided by for 45 years. The 1984 Agreement amplifies those rules. And the 1991 Agreement confirms them following a 1988 letter of direction issued by Hodgson to ASCAP (TE 28).

### E. Issue 2: Is Delicate a Party to the 1977 Agreement

Answer: As discussed in greater detail in Section V(B) below, YES.

### F. Issue 3: Does the 1977 Agreement Have an Express Duration Period and If Not, What Does that Mean

Answer: YES. The 1977 Agreement provides that "This Memorandum shall serve as a fully effective and binding contract unless and until such time as a formal agreement covering the same subjects is entered into." (TE 8 at p 1.) Even if the Court disagrees, under settled California law, a term of indefinite duration may be implied by the objective facts and circumstances.

*Lura v. Multaplex*, 129 Cal. App. 3d 410 (1982) is dispositive. There, following bench trial, the trial court determined that because a contract for the payment of sales commissions was of indefinite term, the contract "could be terminated by either party upon reasonable notice." *Id.* at 413. Defendants have

taken that very position in this lawsuit. (See ECF No. 175-1 at pp. 9:20-21 & 11:22-12:6.)

The appellate court reversed. It held, consistent with long-standing precedent, that "an agreement providing for the payment of a percentage of all billings on sales is subject to the construction that it is to continue for as long as 'billings' are made." *Lura*, 129 Cal. App. 3d at 415. *Lura*, in turn, cited as "particularly instructive" the case *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655 (S.D.N.Y. 1959), aff'd, 280 F.2d 197 (2d Cir. 1960). Per *Lura*:

> In *Warner*, the court granted defendant's motion for summary judgment where plaintiff sought a judgment determining that it was no longer obligated to make periodic payments to the defendant based on the manufacture or sale of Listerine. Payments were made for some 75 years under agreements which contemplated royalty payments for the use of the formula for Listerine[.] Plaintiff [] argued that perpetual obligations are disfavored by law, and that a reasonable termination date should be implied where the agreement is silent on that issue. The court rejected these arguments, noting that "[c]ontracts which provide no fixed date for the termination of the promisor's obligation but condition the obligation upon an event which would necessarily terminate the contract are in quite a different category and it is in this category that the ... agreements fall." [] The important factor, then, is not whether the contract fails to specify a termination date, but whether there is an ascertainable event which necessarily implies termination. The present agreement, like *Warner*, provides for such an event, i.e., the termination of sales to the specified accounts.

*Lura*, *supra*, 129 Cal. App. 3d at 414–15.

Of note, the evidence in *Lura* indicated, as it does here (see Glass and Rosen Meeting Notes, Trial Exhibit No. ["TE"] 15), that the parties entered a subsequent agreement that "reduced commissions [] on specified accounts" which, the appellate court found, supports the "interpretation that respondent's obligations under the original contract would continue indefinitely." *Lura*, 129 Cal. App. 3d at

414. Additional extrinsic evidence points to the correctness of that interpretation of the 1977 Agreement—apart from the oral statements of the parties to that written agreement, multiple contracts and other writings (TE 16, TE 17, TE 27, TE 28), Defendants' conduct in continuing to account to and pay all other parties named in the 1984 Agreement (TE 17 at Recital G.), together with a 45-year course of performance, as well as custom and practice in the music industry.

Plaintiffs continue to maintain, as they did in their summary adjudication motion, that this rule of construction compels a determination in their favor against Defendants as a matter of law. And Plaintiffs intend to bring their own Rule 50 motion following the close of Defendants' case. Should the Court disagree, then this is an issue for the jury. Plaintiffs have proposed a jury instruction tracking the case law on the subject. (ECF No. 168, Special Instruction No. 34 at p. 15.)

### G. Issue 4: Does the 1984 Agreement Bind Delicate Music to Pay Plaintiffs in Perpetuity; If the Court Does Not Find Section 7 Ambiguous, Does It Go to the Jury

If the Court finds the 1984 Agreement unambiguous, then it becomes a matter of law for the Court to decide, as discussed above.

The 1984 Agreement *specifically names Delicate* as a party to that agreement in its very first paragraph. (TE 17 at p. 1.) It further provides that: "*Delicate's* income is allocated among Davies, Hodgson, Helliwell, Siebenberg, Thomson, Mismanagement, Inc., and, to a more limited extent, Pope, in accordance with [the 1977 Agreement, TE 8], as subsequently modified orally []." (*Id.* at p. 2, Recital G.)

It also provides that: "Hodgson shall *continue to receive from Delicate*, in perpetuity," 27% of the income from "exploitation of all musical compositions" prior to *Famous Last Words* ("FLW") (i.e., the first five albums recorded by the parties), and 32.15% of the song income from the exploitation of the compositions

on *FLW*. (*Id.* at p. 12, ¶ 7.1.) This alone is dispositive of breach of contract, since by not paying Plaintiffs, Hodgson is taking more than 27%.

The 1984 Agreement defines the songs at issue in this case as the "Delicate Compositions." (*Ibid.*) Paragraph 7.4 of that Agreement provides that Hodgson and Davies will create new publishing entities for any songs other than the Delicate Compositions, meaning that Delicate's only assets are the songs at issue here.

It also provides that: "Davies and Hodgson agree that *Delicate shall continue in business, and shall not be dissolved notwithstanding the death or disability of either of them, until the expiration of all copyrights* (including renewal terms) owned (in whole or in part) by Delicate." (*Id.* at p. 14, ¶ 7.4.)

This demonstrates unambiguously that the parties, including Delicate, intended that Delicate would continue to operate for <u>at least</u> the duration of the copyrights. And Delicate's only business was to collect and distribute the income among Plaintiffs and the other participants according to the 1977 Agreement. (See 2/23/24 Trial Transcript [hereinafter "TT"] at pp. 126-127.)

Paragraph 7.6 is in accord with this intent. It addresses what happens if Hodgson's or Davies's 27% share increases "for any reason (other than by gift, bequest, inheritance operation of law, or court decree) at any time after the date hereof (e.g., by reason of such party's purchase of all or a portion of another person's interest in such income)."

It further provides that: "This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, legal representatives, successors and permitted assigns." (*Id.* at p. 35, ¶ 15.9.)

Finally, the 1984 Agreement contains a signature line for Delicate and is signed by both of its two general partners. (*Id.* at p. 38.)

Thus, the 1984 Agreement is indisputably binding on Delicate. It is also entirely consistent with—and expressly refers to—the 1977 Agreement (TE 8),

providing that Delicate "*shall administer*" the income from the compositions at issue.[1] It is also entirely consistent with the 45+ years of Delicate doing so, as both stipulated by the parties and testified to by multiple witnesses.

Here again, Delicate stopped doing what its partners agreed it should do—namely, pay song income in the percentages specified in the 1977 Agreement. This resulted in Hodgson receiving a percentage greater than that stated there and in the 1984 Agreement. The jury is entitled to conclude (if the Court doesn't) that this constitutes both Hodgson's and Delicate's breach of the 1984 Agreement.

**H. Issue 5: Is Hodgson a Party to the 1991 Agreement**

Answer: NO.

**I.  Issue 6: Is Delicate Music a Party to the 1991 Agreement**

Answer: As discussed in Section V(B) below, YES.

### III.  UPDATE TO FPCO

The Parties submitted a joint proposed Final Pretrial Conference Order ("FPCO") on February 9, 2024. (ECF No. 175.) Plaintiffs indicated they would present expert accounting testimony calculating the amounts owed Plaintiffs, which evidence covers the period up to and including the end of 2022. (*Id*. at 8:11-12, 16-17.) ASCAP and Universal Music Publishing Group produced royalty statements for additional periods pursuant to trial subpoena after the FPCO. (ECF No. 182 at 3:8-10.) Accordingly, those portions of the Final Pretrial Conference Order should reflect that this evidence covers "the period up to and including Q1 of 2024 as to ASCAP and Q3 of 2023 as to Universal Music Publishing Group."

---

[1] Multiple witnesses, including Hodgson, have confirmed that "administer" means "handl[ing] the administration of monies for the publishing from Supertramp." See, e.g., 2/23/24 TT at pp. 126:16-127:6.

## IV. DEFENDANTS' BREACH OF CONTRACT

Defendants' liability for breach of contract flows from their legal obligation to account for and pay to Plaintiffs a portion of the song income derived from SUPERTRAMP recordings. If the jury determines that Plaintiffs' interest in that income was conferred in perpetuity or "indefinitely" (as some of the case law characterizes it), or for at least as long as SUPERTRAMP recordings produce song income (given the popularity of the recordings, the functional equivalent), then Plaintiffs prevail on their breach of contract claim against both Defendants.

## V. PLAINTIFFS' OPPOSITION TO DEFENDANT DELICATE MUSIC'S RULE 50 MOTION

### A. Legal Standard

A motion for JMOL under Rule 50(a) tests the sufficiency of the evidence offered in support of the other party's claim or defense. "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, allows only one reasonable conclusion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986). If, however, reasonable minds could differ as to the import of the evidence, the judge should deny the JMOL motion and submit the case to the jury. *Hall v. Consolidated Freightways*, 337 F.3d 669, 672 (6th Cir. 2003). The court applies the same standard when ruling on a JMOL motion as on a motion for summary judgment. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000).

Finally, the motion must be sufficiently specific to alert the opposing party to the supposed deficiencies in its proof. See Rule 50(a); *Galdieri-Ambrosini v. National Realty*, 136 F.3d 276, 286 (2nd Cir. 1998); *McCann v. Texas City Refining*, 984 F.2d 667, 672 (5th Cir. 1993); *Ford v. County of Grand Traverse*, 535 F.3d 483, 491-93 (6th Cir. 2008).

### B. Argument

At the close of Plaintiffs' case-in-chief on February 23rd, Delicate made an oral motion under Rule 50 for JMOL as to Delicate's liability for breach of contract. Defendants' counsel did not submit a written motion under Rule 50, instead referring to and adopting a "Pocket Brief" filed on the eve of trial on February 19th (See 2/23/24 TT at pp. 82:7-83:7; ECF No. 189). But the Pocket Brief makes a much different—and far narrower—argument than Delicate's oral motion. Whereas the Pocket Brief argues that the "*1991 Agreement* [TE 20] is not binding upon Delicate Music" (see ECF No. 189 at p. 5:20-21), the oral motion requests JMOL as to Delicate's liability in toto—i.e., *under any of the three agreements at issue*.

Delicate is not entitled to JMOL. It is bound by—and thus capable of breaching—any and all of the three contracts at issue.

**First**, while the 1977 Agreement (TE 8) does not specifically name Delicate as a "party" to that agreement, it nevertheless binds Delicate. That Agreement was signed by both of the sole partners in Delicate—i.e., Hodgson and his co-songwriter Rick Davies—and provides that the income derived from the compositions at issue "*shall be administered* by Delicate Music, a partnership consisting of Richard Davies and Roger Hodgson." (1977 Agreement, TE 8 at p. 2, ¶ 3, emphasis added.)

The two partners in Delicate, acting together, are capable of binding their partnership to the obligation to administer the royalties at issue—and the undisputed evidence shows that Delicate did administer (and continues to

administer) the royalties at issue here. The jury is thus entitled to find that, through the 1977 Agreement, the partners in Delicate bound Delicate. It is black letter law that "[a] partnership may be bound by a written document signed in the name of but one partner if the transaction relates to partnership matters, and the intention is to bind the firm." See, e.g., 48 Cal. Jur. 3d Partnership § 72. Thus, *a fortiori*, if *all* partners agree to make *their partnership do something*, they bind the partnership to do that thing.

Here, Delicate stopped doing what its partners agreed it should do—namely, pay song income in the percentages specified in the 1977 Agreement (TE 8). The jury is entitled to conclude (if the Court doesn't) that this constitutes both Hodgson's and Delicate's breach of the 1977 Agreement (TE 8).

**Second**, for the reasons discussed above in Section II(G), Delicate is a party to and bound by the 1984 Agreement.

**Third**, contrary to the Pocket Brief and oral motion, there is sufficient evidence for the jury to conclude that the 1991 Agreement (TE 20) also binds Delicate. As an initial matter, like the 1984 Agreement (TE 17), the 1991 Agreement states that Delicate is a party to that agreement. (TE 20 at p. 1, ¶ 1 ["Delicate Music [] hereby formalize[s] an agreement with John, Dougie and Bob for an income participation in perpetuity."].) Delicate is referred to no less than ten times in the agreement.[2]

Among other things, the 1991 Agreement (TE 20), which was, according to Mr. Glass's testimony at trial, *authored by Mr. Glass* (see 2/23/24 TT at pp. 36:19-23 & 39:11-15), prohibits any party to it, including *Delicate*, from "interfere[ing] or stop[ping] any distribution to be made [of the royalties at issue] to any other party." (*Id.* at p. at ¶ 4).

---

[2] See, e.g., section 2B of TE 20: "Delicate Music's and/or Silver Cab's royalty per song will be reduced by the royalty per song paid to Roger Hodgson . . ."

While Hodgson was not an *individual* signatory to this agreement, he was and remains a general partner of Delicate. Its other partner, Mr. Davies, did sign it. The Pocket Brief argues that that it not enough to bind Delicate, for two reasons.

First, Delicate argues that the 1991 Agreement (TE 20) was not in the ordinary course of Delicate's business, and that therefore Hodgson must have expressly authorized the 1991 Agreement to bind Delicate. But the 1991 Agreement was in the ordinary course of Delicate's business. As recited from the witness stand on multiple occasions, Delicate's primary business is collecting and distributing income from the songs at issue. (See, e.g., 2/23/24 TT at pp. 126:16-127:6.) It undisputedly did so for 45 years. The 1991 Agreement deals with allocation and distribution of royalties, restating the percentages as a result of the letter of direction issued *by Hodgson* to ASCAP (see TE 28), and management commissions (Sue Davies), all of which are squarely within the ordinary course of Delicate's business.

Second, Delicate argues that Plaintiffs are not permitted to rely on the apparent authority of Mr. Davies to bind Delicate. But Mr. Davies did not act adversely to Hodgson by signing the 1991 Agreement. The evidence is precisely to the contrary. Nothing about the 1991 Agreement changed Mr. Hodgson's income entitlement. Indeed, as reflected in paragraph 1 of the 1991 Agreement, Mr. Glass's calculations are entirely consistent with the figures reflected in the prior two agreements. And, as Mr. Siebenberg testified, the 1991 Agreement was actually beneficial to Mr. Hodgson in that it resulted in a favorable (to Delicate) management fee for Sue Davies, which saved Hodgson money.

Even if Davies' act in signing the 1991 Agreement was unauthorized by Hodgson, the jury could find that he ratified it anyway. A partner may be bound by another partner's unauthorized act, where he knowingly acquiesced, as by accepting and retaining benefits. *Cowan v. Tremble* 111 Cal. App. 458 (1931). Contrary to his testimony at trial that he first learned of it when he saw the lawsuit

in this case in 2021 (see 2/23/24 TT at p.150:24-151:3), Hodgson has been aware of the 1991 Agreement since at least 2019. The second recital on page one of TE 57 (2019 Settlement Agreement, signed by Hodgson) demonstrates this fact.[3] And he has accepted and retained the benefits of that agreement to this day.

Further, while Mr. Glass testified that he could not recall whether he informed Hodgson about that agreement, he did *not* testify that he did *not* inform him. Thus, as to the 1991 Agreement (TE 20), at best for Defendants there remain disputed issues of material fact about whether Hodgson knew about the 1991 Agreement and when.

Finally, contrary to the Pocket Brief and oral motion[4], even if the 1991 Agreement does not bind Delicate, the jury may still conclude that it has breached its obligations under the 1977 Agreement (TE 8) or the 1984 Agreement (TE 17), as discussed above.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant Delicate Music's Rule 50 motion be denied.

---

[3] "WHEREAS, Thomson, DTP, Siebenberg, RSP, Helliwell, PARP, Davies, RDP, Power Steering, Inc. and Susan Davies entered into that certain letter agreement dated December 30, 1991 (the "1991 Publishing Agreement")…"

[4] Alternatively, Delicate's motion should be denied because it is insufficiently specific to alert Plaintiffs as to the supposed deficiencies in their proof. See *Galdieri-Ambrosini v. National Realty*, 136 F.3d 276, 286 (2nd Cir. 1998) *McCann v. Texas City Refining*, 984 F.2d 667, 672 (5th Cir. 1993); *Ford v. County of Grand Traverse*, 535 F.3d 483, 491-93 (6th Cir. 2008). This is true with respect to all three agreements in this case—but especially so with respect to the 1977 and 1984 Agreements (TE 8 and TE 17), which were not addressed either during the oral motion or in Defendants' Pocket Brief (which only discussed the 1991 Agreement).

Respectfully submitted,

DATED:  February 23, 2024

**PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**

By: /s/ David M. Given
　　　David M. Given

Attorneys for Plaintiffs

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900