

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION**

**HONORABLE ANDRE BIROTTE, JR., U.S. DISTRICT JUDGE**

DOUGLAS CAMPBELL THOMSON et al,

                    Plaintiffs,

          vs.                          Case No.
                                       21-cv-8124-AB

CHARLES ROGER POMFRET HODGSON, et al,

                    Defendants.
_____/

REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
TRIAL DAY 5 - AFTERNOON SESSION
Monday, February 26, 2024
1:30 p.m.
LOS ANGELES, CALIFORNIA

_____

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

UNITED STATES DISTRICT COURT

1                        **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        PHILLIPS ERLEWINE GIVEN and CARLIN LLP
         BY:  DAVID M. GIVEN
5             KYLE PATRICK O'MALLEY
              NICHOLAS A. CARLIN
6             ROBERT CARROLL, III
              Attorneys at Law
7        The Presidio
         39 Mesa Street, Suite 201
8        San Francisco, California  94129

9

10   **FOR THE DEFENDANT:**

11
         GUTMAN LAW
12       BY:  ALAN S. GUTMAN
              Attorney at Law
13       9350 Wilshire Boulevard, Suite 350
         Beverly Hills, California  90212
14

15

16

17

18

19

20

21

22

23

24

25

                    **UNITED STATES DISTRICT COURT**

1                              WITNESS INDEX

2                                * * *

3

4    WITNESS:                                        Page

5    ROBERT SIEBENBERG

6        Rebuttal Direct Examination
         by Mr. O'Malley                            15

7        Cross-Examination by Mr. Gutman            25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                 **EXHIBIT INDEX**

2                                    **\* \* \***

**EXHIBIT NO.**                               **Page**

3

4                         **(No exhibits received.)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 26, 2024**

2                          **1:30 p.m.**

3                          --oOo--

4

5

6          THE COURTROOM DEPUTY:  All rise.  Please be seated.

7          THE COURT:  All right.  So I have handed you all,

8    just a moment ago, just the closing jury instructions.  I tried

9    to highlight the areas that I thought were debatable or at

10   issue.  I just figured we might as well go through them right

11   now and then give you time when the jury gets back to have

12   someone on the squad, on your respective teams, look at them.

13         Again, I know there are going to be Rule 50 arguments,

14   but this is sort of based on my preliminary thoughts this

15   morning.

16         Page 2, this would be the format if I go with the theory

17   that the 1977 agreement, there is an alleged breach as it

18   relates to Hodgson and Delicate Music -- and/or Delicate Music,

19   I should say.

20         Page 12 talks about expert testimony.  I cannot

21   remember; was Jampol the expert witness?

22         MR. GIVEN:  Yes, Your Honor.  He ws the industry

23   expert then we had our accounting expert.

24         THE COURT:  Okay.  So I think this would apply.  Any

25   thoughts to the contrary, Mr. Gutman?

**UNITED STATES DISTRICT COURT**

```
 1            MR. GUTMAN:  No, this is standard.

 2            THE COURT:  The instruction is standard but I think

 3    based on the testimony it would apply.

 4        Then, 15, corporations and partnerships.  That, I

 5    believe, is a Ninth Circuit instruction question on whether or

 6    not it's applicable.  I guess it would be applicable to the

 7    extent the jury is being asked a question with respect to both

 8    Mr. Hodgson and Delicate Music.  But I welcome your thoughts if

 9    you have any initial thoughts at this time.

10            Mr. Given?

11            MR. GIVEN:  It looks fine, Your Honor.

12            THE COURT:  Mr. Gutman?

13            MR. GUTMAN:  No objection, provided Delicate is

14    going to remain in.

15            THE COURT:  Yes.  Okay.

16        18 is just, again, depending on what defendants remain

17    as it relates to the factual elements, and I may tweak it if

18    both remain to, you know, the plaintiffs and Defendant Hodgson

19    had a valid, enforceable contract for sharing certain song

20    royalties, the plaintiffs and the defendant Delicate Music had

21    a valid, enforceable contract for administering the song

22    royalties -- I may just split it out directly, but I wanted to

23    let the parties know my thinking on how to deal with that.

24        I guess 19 and 20, again, it depends what defendants

25    remain with respect to the breach of contract.
```

1    Instruction Number 18 on page 21, that is -- at least

2    based on my comments this morning -- my thought on how to

3    address the reasonable -- you know, what is at issue with

4    respect to the 1977 memorandum of agreement.

5    So, take a look at that.

6    Instruction Number 22 on page 25, again, this is just

7    depending on what defendants remain in the case.

8    Similarly, Instruction 24 on page 27, just

9    outlining each defendant, still waiting to hear based on what

10   the conclusion of the testimony is.

11   I think that's it, at least the highlighted portions.

12   Obviously I want you to take a look at all of them, but I

13   wanted to at least highlight to you all the ones I thought

14   would be the subject of controversy and/or discussion.

15   And also, welcome if you think there are any additional

16   instructions that need to be put in, let me know as well.

17   And then moving quickly onto the --

18   Yes?

19   MR. GUTMAN:  Your Honor, on the specific verdict, I

20   did notice there is a typo in the section breach of contract

21   against Delicate Music.  Question No. 3 refers to the 1977

22   withdrawal agreement.  It should also be consistent with

23   Question No. 1, the memorandum.

24   THE COURT:  The memorandum.

25   Also we don't have an end page that talks about -- I

1   believe there needs to be some language after Question 3, if

2   your answer to the question is yes, sign and complete the

3   verdict form, if the answer to the question is no, go to

4   Question 4, sort of tracking what is in the question, what

5   comes after Question 1.

6           Again, this is just based on what we discussed this

7   morning.

8           But I just wanted to give you my thoughts, and obviously

9   I will give you a chance later in the afternoon to weigh in.

10          So, we have got Mr. Hodgson on the stand.  Any comments

11  that we need to talk about now?  I mean, the jury is not

12  supposed to be here for another five minutes.

13              Yes, Mr. Gutman?

14          MR. GUTMAN:  I would like to address something.

15  There was an issue that came up on Friday.  There were a lot of

16  objections sustained and some information bled through on Paul

17  Glass's testimony regarding the 1991 agreement.  If the 1991

18  agreement is not going to be a part of this -- this -- any of

19  the findings, because there can be no liability against

20  Mr. Hodgson based upon the 1991 agreement, I think we need an

21  instruction to deal with testimony that was solicited -- pardon

22  me, elicited from Mr. Glass regarding his interpretation of

23  what the deal was.

24              I have specific questions that I can identify

25  from my rough version of the transcript.  He was asked, when

did Mr. Margereson tell you that it was going to be in

perpetuity?  When did Dave -- pardon me, Rick Davies tell you

it was going to be in perpetuity.  Mr. Glass, in response to

another question also said, "it was my understanding it always

was in perpetuity."

        I think we need to clean that up to prevent that from

bleeding in for determination of the 1977 agreement.  All of

the evidence that was taken in connection with the 1991

agreement seems to be removed from the issues that the jury

needs to decide now.

        THE COURT:  But it -- okay.  Is it removed from the

issues?  I thought there had been a lot of discussion about --

in considering the -- I thought one of the parties submitted

some instruction that has case law that says in considering the

duration, you can consider a whole host of factors.  And would

his testimony be something that the jury could consider in

determining whether or not the contract was terminated within a

reasonable time?

        MR. GUTMAN:  My position on that is when the

instructions and the law regarding the subject was submitted,

it was in the context that the plaintiffs were still pursuing

this entire participation agreement that was addressing the

1977, '84, and '91 agreements as if they constituted a single

agreement.

        Now that the Court has, apparently, at least indicated

1    that the cause of action for breach of contract should be based

2    solely upon the 1977 agreement, it would appear to me that any

3    discussion or any evidence related to the 1991 agreement, which

4    does not concern Mr. Hodgson, which does not concern Delicate,

5    because neither Delicate nor Hodgson are parties to the 1991

6    agreement.

7          It would, therefore, be prejudicial to be able to rely

8    on any testimony or evidence related to the 1991 agreement in

9    trying to determine what the intent was and whether it's

10   post-contract, pre-dispute context, or course of performance,

11   however you look at it, because Davies can do whatever he wants

12   and that is not relevant to a determination of the agreement

13   between Hodgson and the other parties in 1977.

14          THE COURT:  So, you are asking for some form of --

15          Well, you are asking for an instruction that says what

16   exactly?

17          MR. GUTMAN:  That the Court -- that the jury should

18   not consider any of the evidence taken in connection with the

19   1991 agreement because Roger Hodgson -- neither Roger Hodgson

20   nor Delicate Music are parties to that agreement or subject to

21   it.

22          THE COURT:  Okay.  Mr. Given or Mr. Carlin.

23          MR. GIVEN:  This is just -- this is Paul Glass

24   speaking.  Paul Glass runs Delicate.  He's, in effect, the

25   managing person insofar as that goes.

1          His comment had to do with what the agreement always was

2    and what his understanding always was.

3          And all of this evidence, Your Honor, all of the post

4    '77 evidence that predates the dispute in 2021 is fair game.

5    That is a course of performance.

6          So, it's all pertinent to the jury's consideration of

7    what the parties intended.

8               THE COURT:  All right.  Let me think about it.  I'm

9    inclined to agree with you, Mr. Given, but I just want to give

10   it some thought.  And I think all of the jurors are here, so

11   let's bring them in.

12              MR. GUTMAN:  One final comment.  I don't want to

13   push my luck here.

14              THE COURT:  But you will.  Go ahead.

15              MR. GUTMAN:  I have already.

16         The point is that Mr. Glass was not even present during

17   the 1977 -- when the 1977 agreement.  We had a motion in limine

18   about subjective unexpressed intent, and one of the big things

19   that whole umbrella covered was parties couldn't testify about

20   what their understanding was, so.

21              How is Paul Glass supposed to be allowed to

22   testify with double hearsay about what his understanding was?

23   Because he heard from other parties who are not even parties to

24   this lawsuit?

25              THE COURT:  Okay.  I will think about it.  But let's

```
 1  bring the jury in and then, I'm sorry, I think Mr. Hodgson was
 2  still on the stand.  If you wouldn't mind, sir.
 3             THE WITNESS:  Yes.
 4             MR. GIVEN:  Your Honor, just remind the Court that
 5  we have a Rule 50 motion that we're going to make at the close
 6  of Mr. Gutman's case.  Do you want me to stand up and do that
 7  or can we just agree that --
 8             THE COURT:  Just -- I guess you could say -- at the
 9  end of the case, just say we make a Rule 50 motion, and just
10  leave it at that.
11             MR. GIVEN:  Thank you, Your Honor.
12             THE COURTROOM DEPUTY:  All rise for the jury.
13             (Jury enters the courtroom at 2:01 p.m.)
14             THE COURTROOM DEPUTY:  Please be seated.
15             THE COURT:  Welcome back.  We're ready to resume the
16  testimony, Mr. Gutman.
17             MR. GUTMAN:  Thank you.
18  BY MR. GUTMAN:
19  Q    Referring to Exhibit 5 which was on the screen previously.
20  This is the 1977 A&M Records contract.  Mr. Given asked you a
21  series of questions about it.
22       Are we talking about record royalties as far as what you
23  are terminating as far as payments to the plaintiffs?
24  A    No.
25  Q    Has anything happened to the record royalties payable to
```

1    the plaintiffs?

2    A    No.  They have always received them equally.  We have an

3    equal share in this and they are still receiving them today.

4    Q    They receive the exact same amount that you do in record

5    royalties?

6    A    Correct.

7    Q    There has been no interruption or stoppage of the payment

8    of record royalties to the plaintiffs?

9    A    No.  No, there hasn't.

10   Q    So, the terms of the record agreement with A&M Records,

11   that has nothing to do with what is going on in this case, does

12   it?

13   A    No.

14        MR. GUTMAN:  No further questions.

15        THE COURT:  Any further cross?

16        MR. GIVEN:  No.  Thank you, Your Honor.

17        THE COURT:  All right.  Thank you, sir.  You may

18   step down.

19        THE WITNESS:  Thank you.

20        THE COURT:  All right.  Mr. Gutman, you may call

21   your next witness.

22        MR. GUTMAN:  Your Honor, the defense rests.

23        THE COURT:  All right.  Mr. Given?

24        MR. GIVEN:  Your Honor, plaintiffs move under

25   Rule 50.

 1            THE COURT:  Okay.  I will take the motion under

 2    advisement.  Do you wish to call any witnesses in rebuttal

 3    case?

 4            MR. GIVEN:  One witness, Your Honor, to be directed

 5    by my colleague, Kyle O'Malley.

 6            THE COURT:  All right.  You may call this witness at

 7    this time.

 8            MR. O'MALLEY:  Before I did that, Your Honor, on

 9    Friday you indicated --

10            THE COURT:  You need to speak at the lectern.  We

11    can't hear you.

12            MR. O'MALLEY:  My apologies.  On Friday you

13    indicated that we could read in the rest of an answer that

14    Mr. Margereson gave that was cut off.

15            THE COURT:  All right.  Go ahead.

16            MR. O'MALLEY:  It's at page 232, lines 2 through 9.

17    I believe cut off at line 6 and we would just like to have the

18    rest of the answer read.

19            THE COURT:  Go ahead.

20            MR. O'MALLEY:

21            "QUESTION:  So, do you have a recollection of where

22    you were when this document was signed?

23            "ANSWER:  I don't have a recollection of being in

24    the room and doing that.  The fact that my signature is on the

25    page with everyone else's is indicative of we were there.  We

```
 1  signed.
 2              THE COURT:  All right.  Thank you.  Call your next
 3  witness.
 4              MR. O'MALLEY:  Plaintiffs call Mr. Siebenberg.
 5              THE COURT:  All right.  Sir, step forward.  I will
 6  remind you, you have been placed under oath.  We don't need to
 7  do that again, so why don't you resume your seat in the witness
 8  stand.
 9              THE WITNESS:  Thank you.
10                      ROBERT SIEBENBERG,
11                having been previously sworn,
12                  testified as follows:
13              MR. O'MALLEY:  May I begin?
14              THE COURT:  Yes, please.
15                  REBUTTAL DIRECT EXAMINATION
16  BY MR. O'MALLEY:
17  Q    Welcome back, Mr. Siebenberg.  How are you?
18  A    I'm well.  Thank you.
19  Q    Who is the emcee for Supertramp?
20  A    The emcee for our band was John Helliwell.
21  Q    And why was it John Helliwell?
22  A    Pretty much because nobody else wanted to do it.  And
23  because he was so well suited to it.  You can see when you have
24  met and listen to Mr. Helliwell that he is charming, he's easy
25  to listen to, he has great humor, and he was the perfect link
```

1    between our stage and the audience.

2    Q     Thank you.

3         I want to direct your attention to something you may

4    have heard Mr. Hodgson testify about, which is that he doesn't

5    remember a conversation in 1975 that occurred at Jay Cooper's

6    office, the conversation about the -- in the hallway.

7    A     I'm sorry, but that was 1977.

8    Q     1977, pardon me.

9         What do you make of that?

10            MR. GUTMAN:  Objection.  Irrelevant what the witness

11   thinks of other person's testimony.

12            THE COURT:  Sustained.  Can you rephrase the

13   question, please.

14            MR. O'MALLEY:  I will just move on, Your Honor.

15   BY MR. O'MALLEY:

16   Q     Mr. Hodgson testified that he signed a bunch of

17   agreements -- I think he said five or so -- at the Record

18   Plant, including the 1977 agreement.

19   A     Yes.

20   Q     How does that comport with your recollection?

21            MR. GUTMAN:  Objection.  Argumentative.  Not

22   relevant.  It's asking a witness to contradict what another

23   witness testified to.

24            MR. O'MALLEY:  It is a rebuttal, Your Honor.

25            THE COURT:  Overruled.  I will allow it.

1          THE WITNESS:  Well, it was a policy from the very

2     beginning and went all the way through when we were working

3     together that business was never brought into the studio,

4     rehearsal room, certainly not while we were mixing.  It was

5     absolutely taboo to bring business into our workspace.

6          And we may take a break for 10 or 15 minutes to look at

7     artwork, maybe an album cover or an inner sleeve or some kind

8     of creative aspect of things, but for the notion of being

9     called into a kitchen or somewhere to sign five business

10    documents, we wouldn't have done that.

11          MR. GUTMAN:  Objection.  Move to strike as

12    nonresponsive.

13          THE COURT:  Overruled.  Next question, please.

14    BY MR. O'MALLEY:

15    Q    Mr. Siebenberg, we have heard a little bit about sound

16    exchange during the trial.

17          Who handled registering you, Mr. Thomson, and

18    Mr. Helliwell for sound exchange?

19    A    Dave Margereson, our manager, after he had left but he was

20    still somewhat our manager.  He signed up John Helliwell,

21    Dougie, and myself to sound exchange, himself, as individuals.

22    Q    So you didn't sign yourself up, personally?

23    A    No.

24    Q    Was it your understanding that Mr. Hodgson would sign

25    himself up?

```
 1   A    I wasn't aware of whether he did or not.  It was not

 2   something I would think about what Mr. Hodgson was doing about

 3   it.

 4   Q    Were you or either of the other plaintiffs responsible for

 5   signing him up?

 6   A    No.

 7   Q    Did Mr. Glass, the accountant, ever ask you or, to your

 8   knowledge, either of the other plaintiffs for reimbursement for

 9   any sound exchange monies that might have been inadvertently

10   been paid to you?

11   A    No.

12   Q    I think we heard Mr. Hodgson testify about the use of the

13   name "Supertramp" after he left the band.  I believe he

14   testified that his first solo album, Eye of the Storm was --

15            MR. GUTMAN:  Objection to counsel testify about what

16   he believes the testimony was.

17            THE COURT:  I'm waiting for the question.  I'm just

18   trying to figure out what the question is.

19            MR. O'MALLEY:  I'm getting there.

20   BY MR. O'MALLEY:

21   Q    Did you sabotage Eye of the Storm through some kind of

22   letter or lawsuit to Mr. Hodgson or any of his representatives?

23   A    No.

24   Q    Is he allowed to use the name "Supertramp"?

25   A    In a very limited fashion.
```

1              MR. GUTMAN:  Objection.  Calls for a legal

2    conclusion.

3              THE COURT:  Overruled.

4              THE WITNESS:  It says right in Roger Hodgson's

5    withdrawal agreement.  There is page after page of what he can

6    and can't do, right down to the size of the font, the kind of

7    font, how high can the name -- the word "Supertramp" be in

8    relation to Roger Hodgson.  It can't say "Roger Hodgson of

9    Supertramp."

10             MR. GUTMAN:  May I interrupt.  Objection.  It's

11   giving a legal analysis of a document in evidence.

12             THE COURT:  Overruled.

13             THE WITNESS:  That's what it is.  And Roger had been

14   in violation many, many, many, many times.

15             MR. GUTMAN:  Now I'm going to object.  He's offering

16   an opinion on whether or not --

17             THE COURT:  Sustained.  Next question, please.

18             THE WITNESS:  All right.

19             THE COURT:  Hold on, sir.  Let the lawyer ask the

20   question.

21   BY MR. O'MALLEY:

22   Q    We will move on.

23        Mr. Hodgson testified that he didn't want to go solo and

24   leave the band.  He claims that he was forced out.  Is that

25   true?

1          MR. GUTMAN:  Objection.  I don't know how this

2   witness has foundation to be able to testify about what

3   Mr. Hodgson wanted.

4          THE COURT:  Sustained.

5   BY MR. O'MALLEY:

6   Q    Mr. Hodgson was asked about a three-day meeting.  Can you

7   tell us what happened at that meeting?

8   A    Yes.  About maybe a year after we had all come off the

9   tour after having just had our most successful record and tour,

10  Mr. Hodgson asked for a meeting between all band members and

11  their wives to attend at Dave Margereson's house.  Not many of

12  the wives attended, there were a couple of wives there, but all

13  of the rest of us attended.

14          And what the meeting seemed to be about and what -- what

15  -- the way that it transpired is that Mr. Hodgson kind of

16  started into a litany of everything that he thought was wrong

17  with the band.  He wanted more money, he wanted a producer's

18  credit, he wanted -- he wanted those three things, and then he

19  said that he wanted to dismiss John, Bob, and Dougie from the

20  band and continue as just the two of them which would be Roger

21  Hodgson and Rick Davies.

22          That is how Roger saw Supertramp going into the

23  future.

24  Q    How did Rick react to that?

25  A    Rick did not agree with Roger's perspective.

1         MR. GUTMAN:  Objection.  Relevance.

2         THE COURT:  Sustained.

3   BY MR. O'MALLEY:

4   Q    What happened after that meeting?

5   A    Well, as a result of that meeting --

6         MR. GUTMAN:  Objection.  Relevance.

7         THE COURT:  Overruled.

8         THE WITNESS:  As a result of that meeting, Roger was

9   dismissed from the band.  He was asked to leave.  If he was so

10  unhappy, he should leave the band at that time.

11  BY MR. O'MALLEY:

12  Q    Didn't Mr. Hodgson stay for another tour and another

13  record after *Breakfast in America*?

14  A    Yes.  After the dust settled on these things, we all

15  agreed that Roger would make one last record and go on tour

16  with us one more time.

17  Q    You heard that Mr. Hodgson denied missing rehearsals for

18  the *Famous Last Words* tour because he was -- he denies that he

19  was missing those to work on his album.  Is that true?

20        MR. GUTMAN:  Objection.  Counsel --

21        THE COURT:  I'm waiting for the question.  Let's

22  just hear the question.

23  BY MR. O'MALLEY:

24  Q    Is that true?

25  A    Yes.

1    Q    Is it true that he never missed a rehearsal for *Famous*

2    *Last Words*?

3    A    No.  I'm sorry, I misunderstood.  Roger was -- we were all

4    in this complex, getting the process of getting the gear up and

5    sounds and stuff in the place.  And Roger was about -- we were

6    all in there for maybe a week or ten days before Roger showed

7    up, and Roger -- when asked, Roger had been in Nevada City

8    working on his solo record.

9    Q    And how about during the *Famous Last Words* tour?

10   A    During the tour, there was -- at the same place in every

11   show, Roger -- and it's, you know, these are large audiences,

12   in the mid -- at a certain point in every show, Roger would

13   step to the microphone and as Roger described, he would express

14   to the audience and thank them for all of the love and support

15   that they had given Supertramp over the years.

16        And then he would say, but this will be my last tour

17   with Supertramp, something like I'm leaving the band and, you

18   know, now we will have two sources of music and it's all

19   beautiful.

20        And this would be greeted by whistles and boos.  It was

21   not good news to an audience.  That audience was there because

22   they loved Supertramp.  And, internal, we weren't happy about

23   this and --

24        MR. GUTMAN:  He's going well beyond the scope of the

25   question.

1          THE COURT:  You got to help us out.  You have got to

2   answer these questions, please.

3          THE WITNESS:  Okay.  And --

4          THE COURT:  I'm sorry, sir.  Please wait until you

5   hear a question from the lawyer.

6              Ask the next question, counsel.

7   BY MR. O'MALLEY:

8   Q    So Mr. Hodgson was promoting his solo tour while you were

9   on -- or his solo album while you were on tour with Supertramp?

10         MR. GUTMAN:  Objection.  Asked and answered.

11         THE COURT:  Sustained.

12  BY MR. O'MALLEY:

13  Q    Did the business of Supertramp stop in 2011 when the rest

14  of you, the remaining members, stopped touring?

15  A    No.

16         MR. GUTMAN:  Objection.  Beyond the scope of --

17         THE COURT:  Overruled.

18         THE WITNESS:  No.  Of course it didn't.

19         THE COURT:  Next question.

20  BY MR. O'MALLEY:

21  Q    Can you give me some examples of continuing business after

22  2011?

23  A    We reissued -- we reissued anniversary issues of

24  "Breakfast in America" and "Crime of the Century."  Roger was

25  consulted on this and he agreed to be interviewed and the

1   product came out.  And Roger and we all collect -- it's -- we

2   all collect the rewards of stimulating the catalog off this

3   project.

4        There was another instance where we were offered another

5   opportunity to finally make the DVD of the shows that we did in

6   1979 in Paris that resulted in the live album of Paris, and

7   after all of this time, we finally got a chance to do it.

8        Roger was invited in for his input and consulting, and

9   he worked on the project for a while and then removed himself

10  from the process.

11       It was successful and Roger benefits from stimulation

12  from whatever that generates.

13  Q    Did you renegotiate your record deal post-2011?

14  A    Yes.

15  Q    Was Roger involved in that process?

16  A    I beg your pardon?

17  Q    Was Mr. Hodgson involved in the renegotiation of your

18  record deal post 2011?

19  A    Yes.  When we were renegotiating this -- our recording

20  contract with Universal.

21  Q    That is the successor to A&M, correct?

22  A    That is the successor to A&M Records.  Thank you.  In

23  fact, it was renegotiated by David Given and his team.  Roger

24  was brought into the loop what was given on, asked to

25  participate, and he showed very little interest and didn't pay

```
 1   any of the legal fees for that project at all.

 2         And Roger certainly benefits from our efforts on that.

 3   Q    What was the result of the renegotiation of your record

 4   deal with Universal?

 5   A    We were able to triple our royalties from the

 6   renegotiation.

 7   Q    Couple more questions and I will be done.

 8         Mr. Hodgson wasn't a partner in the Supertramp

 9   partnership in the post-2011 period that you are describing,

10   right?

11   A    That's correct.

12   Q    But you consulted him anyway?

13   A    Yes.  Roger had left the partnership in 1984.  But yes, we

14   consulted with him anyway.

15   Q    Why?

16   A    It was the right thing to do.

17         MR. O'MALLEY:  Nothing further.

18         THE COURT:  Cross-examination?

19                      CROSS-EXAMINATION

20   BY MR. GUTMAN:

21   Q    You mentioned, in response to Mr. O'Malley's question, you

22   were never asked for reimbursement from Paul Glass of the sound

23   exchange monies you received, right?

24   A    Correct.

25   Q    Did you ever give the money back?
```

```
 1   A     I think the sound exchange --
 2   Q     Did you give the money back?
 3   A     What money?
 4   Q     Yes or no?
 5   A     I don't know what money?
 6   Q     The portion of the sound exchange monies that you received
 7   that belonged to Roger Hodgson?
 8   A     I don't know that to be true.
 9   Q     So the answer to my question is no, right?
10   A     If you like.
11         MR. O'MALLEY:  Objection, Your Honor.  That is not
12   the answer to his question.
13         THE COURT:  So what is the grounds?
14         MR. O'MALLEY:  Argumentative.
15         THE COURT:  Sustained.
16   BY MR. GUTMAN:
17   Q     Must have been very upsetting to hear that Roger Hodgson
18   wanted a new drummer in the band, huh?
19   A     Everyone was upset about the upheaval at this time in our
20   band, so yes.
21   Q     So you attribute whatever upheaval that was going on in
22   the band solely to Roger Hodgson wanted a new drummer?
23         MR. O'MALLEY:  Objection.  Misstates the testimony.
24   Lacks foundation.
25         THE COURT:  Sustained.
```

```
 1   BY MR. GUTMAN:
 2   Q    Do you have some recollection of there being some issues
 3   with Sue Davies around the time that this upheaval was
 4   happening in the band?
 5   A    Yes.
 6   Q    And you recall that was the main impetus to -- leading to
 7   this upheaval in the band?
 8   A    No.
 9   Q    The fact that Roger Hodgson wanted to replace you as
10   drummer in the band, that was the main cause of the upheaval?
11   A    No.
12   Q    Well, do you believe that Roger Hodgson was forced out of
13   the band?
14   A    I think Roger Hodgson opened the door for him to be
15   dismissed.
16   Q    You have been paid all your record royalties, right?
17   A    Yes.
18   Q    And you talked about how you increased record royalties
19   after the renegotiation with Universal, right?
20   A    Yes.
21   Q    So, there is no disruption of any of the record royalties
22   that you have been receiving continuously over the course of
23   the past, what, 50 years?
24   A    Along the way there has been times when a dispute was in
25   the air and we weren't paid our record royalties, yes.
```

```
 1   Q    But in this lawsuit, all you are seeking is a portion of

 2   Mr. Hodgson's songwriting royalties?

 3   A    That's correct.

 4   Q    For songs that you had no part in writing, right?

 5   A    Yes.

 6              MR. GUTMAN:  Nothing further.

 7              THE WITNESS:  Thank you.

 8              THE COURT:  All right.

 9         Hold on, sir.  Sir, please sit down.

10              MR. O'MALLEY:  It was an asked and answered

11   objection, but I will withdraw it.

12              THE COURT:  Anything further, Mr. O'Malley?

13              MR. O'MALLEY:  No, Your Honor.

14              THE COURT:  All right.  Now you can step down.

15              THE WITNESS:  Thank you, Your Honor.

16              THE COURT:  All right.  You may call your next

17   witness.

18              MR. GIVEN:  Plaintiffs rest the rebuttal, Your

19   Honor.

20              THE COURT:  All right.  So both sides having -- is

21   there surrebuttal?

22              MR. GUTMAN:  No surrebuttal, Your Honor.

23              THE COURT:  All right.  So, both sides having

24   rested.  Ladies and gentlemen, my apologies, I'm going to need

25   to take a break to discuss a matter with the lawyers.
```

1     Let's have you come back at ten minutes until 3:00,

2     please.  Do not form or express any opinion about the case

3     until the matter is finally submitted you.  Don't talk with

4     anyone about the case, don't allow anyone to talk to you about

5     the case, and do not conduct any research of any kind on any

6     subject matter connected with the case.

7          We will see you back at ten minutes to 3:00.  Thank you.

8               THE COURTROOM DEPUTY:  All rise for the jury.

9               (Jury exits the courtroom at 2:25 p.m.)

10              THE COURTROOM DEPUTY:  Please be seated.

11              THE COURT:  So, I guess, look, we're at the point

12    now where we need to start finalizing these instructions.  Do

13    you want 5 or 10 minutes to go through them, and then I can

14    come back out because I need some time to print all of these,

15    so we can hopefully get this -- instruct them and get your

16    arguments done before 5:00 today.  So any thoughts, comments,

17    about doing it a different way?  From the plaintiff?

18              MR. GIVEN:  I think that is wise.

19              THE COURT:  All right.  Mr. Gutman?

20              MR. GUTMAN:  You think we have enough time to get

21    the jury instructed and to argue today?

22              THE COURT:  That is my hope.  I have another trial

23    starting tomorrow.

24         So the instructions will take 30 to 40 minutes to read.

25    The bigger time will be the -- printing them.

1          MR. GUTMAN:  Yes.

2          THE COURT:  If you guys each get 30, 30, and 10,

3    that is another hour, so it would be about 5:10, 5:15.  Again,

4    that is my hope.

5          MR. GUTMAN:  Okay.  I have some preliminary items

6    set to argue today.  I didn't know where we were with the jury

7    instructions and everything, but if the Court is inclined, so

8    am I.

9          MR. GIVEN:  It's a challenge.  I'm up to it.

10          THE COURT:  Well, good.  Look, I have got another

11    trial starting tomorrow.  It's not like you don't know the

12    case.  So, like they say, let's get it on.  So, all right.  I

13    will see you back in ten minutes.  Thank you.

14          THE COURTROOM DEPUTY:  All rise.  This Court is in

15    recess.

16                        (Recess.)

17          THE COURTROOM DEPUTY:  All rise.  This United States

18    District Court is once again in session.

19          THE COURT:  All right.  So you should have before

20    you a new version of closing jury instructions and a special

21    verdict form.  I note the time is now 3:40.  I don't think it

22    is likely that we're going to get to close today,

23    unfortunately, so what I would think is probably appropriate to

24    do is bring the jury out, dismiss them for the day, and then we

25    will go through our stuff, get everything ready.

1          So, at 1:30 tomorrow you all will be here, I will

2    instruct, do closing, and then they will begin deliberations.

3          Any objection from the plaintiff?

4          MR. GIVEN:  No objection, Your Honor.

5          THE COURT:  Any objection from the defense?

6          MR. GUTMAN:  No objection, just a clarification.

7    I'm sure you mentioned this before, but we're not going to be

8    in session tomorrow morning.  It would be a 1:30 start?

9          THE COURT:  Right, because I have to start this

10   other trial.

11         Let's bring in the jury, please.

12         THE COURTROOM DEPUTY:  All rise for the jury.

13         (Jury enters the courtroom at 3:43 p.m.)

14         THE COURTROOM DEPUTY:  Please be seated.

15         THE COURT:  Good afternoon, ladies and gentlemen.

16   I'm going to fall on the sword on this one.  I had hoped we

17   could get jury instructions to you this afternoon.

18         There is a number of issues that we need to deal with.

19   You are waiting patiently as it is, we're not going to get to

20   them today.  So my thought is I will excuse you for the evening

21   today, but ask you to come back tomorrow at 1:30 in the

22   afternoon.

23         So, you would have the morning off and then -- I was

24   going to say I promise, but I never want to do that with

25   jurors.  My hope is that at 1:30 in the afternoon, since both

```
1    sides have rested, I would read you the instructions, you would
2    hear closing arguments, and then you would begin your
3    deliberations.
4         The finish line is in sight, so please do not form or
5    express any opinion about the case until the matter is finally
6    submitted to you.  Don't talk with anyone about the case, don't
7    allow anyone to talk to you about the case, and do not conduct
8    any research of any kind on any subject matter connected with
9    the case.
10        We will see you tomorrow afternoon at 1:30.
11        Please take your notebooks with you and bring them to
12   the jury room, if you wouldn't mind.  Thank you.
13             THE COURTROOM DEPUTY:  All rise for the jury.
14             (Jury exits the courtroom at 3:45 p.m.)
15             THE COURTROOM DEPUTY:  Please be seated.
16             THE COURT:  All right.  So let's talk about these
17   jury instructions.  I will go through them.
18        Closing Instruction No. 1, any objection from the
19   plaintiff?
20             MR. CARLIN:  No.
21             THE COURT:  Defense?
22             MR. GUTMAN:  No objection.
23             THE COURT:  All right.
24        Closing Instruction No. 2, any objection from the
25   plaintiff?
```

```
 1              MR. CARLIN:  Yeah.  I think the words "in

 2   perpetuity" are not appropriate here.

 3              THE COURT:  Are appropriate or?

 4              MR. CARLIN:  Are not.

 5              THE COURT:  Okay.  What would you recommend?

 6              MR. CARLIN:  That it did not have an obligation to

 7   continue to administer a portion of the songwriting royalties.

 8              THE COURT:  All right.  Any objection?

 9              MR. GUTMAN:  Just reading.

10         Pardon me.  I'm just reading it in that context.  So

11   what you are proposing --

12              THE COURT:  The proposal is as follows, starting on

13   line 14:  Defendant Delicate Music denies this claim and

14   asserts that it did not have an obligation to continue to

15   administer a portion of the songwriting royalties under the

16   1977 memorandum of agreement, paren, publishing, closed paren.

17              MR. GUTMAN:  No objection.

18              THE COURT:  All right.  We will make that change.

19         Okay.  Closing Instruction No. 3.

20         This was just to give you a background.  I took this, in

21   part, from a criminal instruction that talks about dismissed

22   claims and then tried to incorporate some of the issues that

23   Mr. Gutman had raised earlier.

24              MR. CARLIN:  Your Honor, if I may.  Just to -- I

25   would like to make sure we have for the record your thinking --
```

```
 1   your reasoning on the 1991 agreement.  Just want to make sure

 2   I'm clear on what we were discussing -- sorry, what we were

 3   discussing earlier.

 4        Was your reasoning that, that agreement -- that part of

 5   that agreement involved matters other than Delicate?  Or was it

 6   that some of the things that Delicate was doing under that

 7   agreement were not within ordinary course?

 8        THE COURT:  Not within the ordinary course.

 9        MR. CARLIN:  So, I just want to make sure we're on

10   the same page here, Your Honor.  Because if we take a look at

11   that agreement, the first section talks about Delicate and it

12   talks about simply adjusting those percentages to account for

13   that -- the letter of direction that we discussed that Hodgson

14   sent.  So to correct the -- that is Exhibit 20, by the way --

15   to correct those percentages to make it work out to 11 and a

16   half percent for each of them.

17        That is really all Delicate has to do in that agreement.

18        The rest of the agreement talks about Sue Davies and her

19   management of Supertramp material post-Delicate.

20        Because Delicate only -- the only assets of Delicate are

21   the six albums, the songs on the six albums in this case.

22        THE COURT:  Okay.  Look, I understand.  I think we

23   talked about it this morning.

24        MR. CARLIN:  The piece with Delicate, the piece that

25   affects Delicate is squarely within the ordinary course of
```

1    Delicate's business, simply figuring that out.

2              THE COURT:  Right.  I think you made that argument

3    this morning, but I have a different view.  It appears to the

4    Court that Delicate is now doing things different than what

5    they did in '77 to now.

6          But you have a different view.  I respect that, but I

7    look at it differently.

8              MR. CARLIN:  Simply changing those percentages to

9    account --

10             THE COURT:  And adding the other parties to the

11   agreement, like that doesn't -- again, we can talk about this,

12   I guess, until -- as long as you like.  I mean, we just have a

13   different --

14             MR. CARLIN:  All right.

15             THE COURT:  -- we come out differently on this.  The

16   Ninth Circuit can tell me I'm wrong.  That is fine.  But I

17   mean, that is why I raised these issues earlier this morning.

18             MR. CARLIN:  But -- so, it's your Court's -- the

19   Court's ruling, as a matter of law, that the '91 agreement is

20   not the formal agreement covering the same subjects mentioned

21   in the 1977 agreement?

22             THE COURT:  Well, my issue with the '91 agreement is

23   whether or not Delicate can be bound by it.  And that is what

24   -- what you were just talking about.  I don't think Delicate

25   can be bound by it because it's -- the actions done in the '91

1    agreement are different than what Delicate has normally been

2    doing and, therefore, I believe it would require both

3    signatures.  It doesn't have both signatures, so Delicate can't

4    be bound by it.  That is the Court's interpretation.  I know

5    you have a different one, but that is the Court's

6    interpretation.

7               MR. CARLIN:  Right.  But I'm just going back to the

8    '77 agreement that says "continues in force until a formal

9    agreement covering the same subjects is entered into."

10        So, it's this Court's finding that the '91 agreement is

11   not that formal agreement?

12              THE COURT:  No.  No.  No.  I mean, I actually -- the

13   '91 agreement, it may be, but who does it bind?  That is my

14   point.

15        It may be.  I mean, but if it is, can it be bound?  Can

16   you bind Delicate with it?  And I don't think you can.  I mean,

17   I know that '84 is not.  But I think the issue is about whether

18   or not Delicate can be bound by the agreement.  And that is the

19   issue that we just discussed earlier.

20              MR. CARLIN:  And as far as the '84 agreement, is it

21   the Court's determination, as a matter of law, that by Hodgson

22   taking more than 27 percent, that is not a breach of the

23   contract?

24              THE COURT:  Yes.

25              MR. CARLIN:  And is it the Court's determination

1    that the 1984 contract is not the formal agreement covering the

2    same subject?

3              THE COURT:  Correct.

4              MR. CARLIN:  But if it's not the Court's ruling that

5    the '91 contract is not such formal -- you seem to have left

6    that open, that it could be the formal agreement.

7              THE COURT:  But it doesn't matter because who is

8    bound by it?  Only one person signed it.

9              MR. CARLIN:  But then shouldn't the jury be able --

10   allowed to consider whether that is the formal agreement that

11   is mentioned in the '77 agreement?

12             THE COURT:  But it doesn't bind -- that agreement is

13   against whom or involving whom?  From your perspective, it is

14   Delicate.  And the defense is saying no, because only one

15   person signed it and they, you know, they raised the issue

16   about it's doing something different, it's not the same, and

17   Hodgson can't be bound by something that Davies signed off on.

18             MR. CARLIN:  So --

19             THE COURT:  So, I mean, look, I know you have a

20   different view, but in light of that, I guess the question is

21   your objections is noted, so you are not waiving anything.

22             MR. CARLIN:  Okay.  It seems to me under the '77

23   agreement, it says, "this memorandum shall serve as a fully

24   effective and binding contract unless and until such time as a

25   formal agreement covering the same subject is entered into."

1          Above that it says, "the parties are executing this

2    memorandum to reflect the agreement."

3          It's inescapable that the subsequent memorandum must

4    include the parties to this agreement.  How could they change

5    -- how could they have a formal agreement that covers the same

6    subjects as this agreement if it doesn't include the parties in

7    the '77 agreement?

8          And if your Court is ruling that the '91 contract does

9    not involve Hodgson or Delicate, then it can't be the formal

10   agreement referred to here.

11               THE COURT:  Okay.  So, what?

12               MR. CARLIN:  That is why I'm just asking the Court

13   if that is the Court's view.

14               THE COURT:  But I don't know if it matters.  We're

15   going in circles because I'm of the view that whether it is the

16   formal agreement or not, Delicate can't be bound by it because

17   only one of the partners signed on it.  Now -- and again, I

18   could be wrong on that, but that is the Court's view.

19          So whether it's the formal agreement or not, it doesn't

20   matter.  Let's assume it was.  Let's assume it was the formal

21   agreement.  It's signed by only one person, and Hodgson says I

22   didn't know anything about it.

23          You know, I'm not getting into the merits.  It's signed

24   by one person, and at least based on my review of the

25   documents, it appears that Delicate is now doing something

```
 1   different than it was doing in the past.  If you disagree with

 2   that, that is fine.

 3          And so, in my view, then, Delicate can't be bound when

 4   only one person of the partners -- one partner of the

 5   partnership signs off on it because it appears in the '91 they

 6   are doing something different.

 7          MR. CARLIN:  Let's assume then --

 8          THE COURT:  Mr. Carlin, look, I think you have made

 9   your record.  If I'm wrong, I'm wrong.  I didn't excuse the

10   jury for us to argue about this point for the next several

11   hours.

12          MR. CARLIN:  Well, this is leading to my next point.

13          THE COURT:  Okay.

14          MR. CARLIN:  Let's assume it's not the formal

15   agreement, then there has been -- no formal agreement has been

16   entered into --

17          THE COURT:  Right.

18          MR. CARLIN:  -- with respect to the '77 agreement

19   and, therefore, the '77 agreement must continue in effect.

20          THE COURT:  Okay.  And so, the jury has to decide

21   whether or not Mr. Hodgson has terminated in the reasonable --

22   whether he was reasonable in terminating it.  I think that's

23   what we get to in the remaining instructions.

24          MR. CARLIN:  Well, I don't think he can terminate it

25   if there has been no formal agreement because --
```

1          THE COURT:  Why?  The contract says -- the '77

2   contract says -- the '77 contract says this memorandum shall be

3   fully effective -- shall be a -- shall serve as a fully

4   effective and binding contract, unless and until such time as a

5   formal agreement covering the same subject is entered into.

6          So if there is no contract that has been subsequently

7   entered into, this is the contract.

8          MR. CARLIN:  Correct.

9          THE COURT:  Okay.  So tell me, what am I missing

10  after that?

11         MR. CARLIN:  That -- that is the term.  The term is

12  until they agree to some other agreement.

13         THE COURT:  What --

14         MR. CARLIN:  That is the duration of this contract,

15  until they agree to something different with the formal

16  contract.

17         THE COURT:  But there is no duration listed in this

18  contract.  That's what the argument is, right?

19         MR. CARLIN:  The duration is the event of entering

20  into a formal agreement.  Duration can either be a date or an

21  event.

22         THE COURT:  And the event is what?

23         MR. CARLIN:  When they enter into a formal

24  agreement.

25         THE COURT:  Okay.  And so, they entered into this

```
 1   formal agreement, okay.  I mean, look, I think we just see it

 2   differently.  So, you are saying because they entered into this

 3   formal agreement, it just goes forever until it -- as to this

 4   contract, it goes forever until something else is in writing?

 5             MR. CARLIN:  Right.  Until they enter into a formal

 6   agreement.  It's just what it says.

 7             THE COURT:  Mr. Gutman, do you have anything to say

 8   in response?

 9        I mean, I hear what you are saying.  I just have a

10   different interpretation of it.

11                Mr. Gutman?

12             MR. GUTMAN:  Your Honor, special instruction or, I

13   should say, Instruction No. 3 is acceptable to the defense.

14             THE COURT:  I get -- I'm talking about Mr. Carlin's

15   argument that this contract is effective until another formal

16   agreement is signed.

17             MR. GUTMAN:  Application of the -- let me back up.

18   The date on which the agreement becomes effective is not the

19   date through which performance is specified under the

20   agreement.  There is no duration of performance specified.

21        The only thing that this particular sentence is

22   referring to is that this is the operative or effective

23   agreement that specifies what is going on.  The rest of the

24   agreement --

25             THE COURT:  In other words -- I'm sorry.  Go ahead.
```

1  I will let you finish.

2          MR. GUTMAN:  It doesn't specify what the duration

3  is.  No duration is specified.

4          THE COURT:  All right.  So I have heard your point.

5  I have a different view on it, so I will give this instruction

6  over your objection.

7      Unless there is something more you want to say with

8  respect to the instruction?

9          MR. CARLIN:  Right.  So now addressing the

10  instruction, we're okay with saying that, based upon your

11  rulings, that the breach of contract claims for those two are

12  out, but evidence in connection with them go to course of one

13  of the factors in determining duration, which is course of

14  performance and what the parties did between the date of the

15  agreement and when the dispute arose.

16      The dispute arose in 2021.

17          THE COURT:  Okay.

18          MR. CARLIN:  Date of the agreement is '77.  This is

19  stuff that happened in between and things they did.

20          THE COURT:  And what things did they do that you

21  believe goes to the course of performance in '84.  Let's start

22  with '84.

23          MR. CARLIN:  Okay.  So that shows that they were

24  continuing to maintain that Mr. Hodgson is getting 27 percent

25  and the rest of them are getting their percentages.  And the

1    fact that Mr. Hodgson, you know, having spent a year or two

2    negotiating that withdrawal agreement, failed to even try to

3    terminate the '77 agreement.

4              THE COURT:  But -- but -- and this -- I think we

5    will disagree on this point, but to me, the issue now in light

6    of the Court's tentative that I said this morning, it's not

7    about duration, it's about whether or not Mr. Hodgson

8    terminated the contract in a reasonable time.

9         That is the question that is in the verdict form.  It's

10   not is this contract in perpetuity or not.

11        We know he terminated.  The question is did he do it in

12   a reasonable time?  And if that is the case, I don't know how

13   these other -- what happened in '84 and '91 matter.

14             MR. CARLIN:  Well, duration and reasonable time are

15   kind of the same thing.  It's just how long -- what is the

16   duration of a reasonable time, right?  How long is reasonable?

17             THE COURT:  Well, I'm not sure about that.  Because

18   a reasonable -- according to the testimony, he said that he

19   terminated because of certain events.  The jury will decide if,

20   A, that was a reasonable time to terminate.  They may say no,

21   no, it wasn't.  But I don't know how that stretches into the

22   perpetuity argument.

23             MR. CARLIN:  Because if he says that was a

24   reasonable event for when the band stopped performing or when

25   their copyrights are terminated, if he wants to claim those

1    were reasonable events, we should certainly be able to argue

2    the event of the '84 contract was a reasonable event or the

3    event of the '91 contract was a reasonable event.

4              THE COURT:  A reasonable event to terminate?

5              MR. CARLIN:  Well, at least the '84 contract,

6    because I understand you say Hodgson was not a party to '91.

7    But the '84, he was undoubtedly a party and so was Delicate,

8    and it was an opportunity -- it was certainly an event, a

9    noteworthy event that they could have used to terminate, so I

10   think we need to be allowed, at least, to talk about that.

11             THE COURT:  Okay.  Mr. Gutman, any response?

12             MR. GUTMAN:  Your Honor, I agree with the Court that

13   it's not relevant to a determination of what a reasonable time

14   for termination is.

15             THE COURT:  Well, what about his point about the

16   '84?

17        I think '91 is clear.

18        '84, arguably, that was when he withdrew from the -- his

19   withdrawal agreement.  Would that have been a reasonable time

20   to terminate or stop payments at that point?

21             MR. GUTMAN:  I --

22             THE COURT:  And I guess related -- it's unfair for

23   me to ask you that question, but if so, should that be

24   something that the jurors should be able to hear in closing

25   argument, that -- just like he said, hey, I stopped in 2018

1    when I heard the band was over.  I guess they could come back

2    and say, well, if that were the case, why did didn't he do it

3    in '84 when he withdrew?

4         I mean, this is -- look, this is all for, I assume,

5    closing argument.

6         But so, what is your thoughts?

7              MR. GUTMAN:  I would presume that they would be

8    reluctant to make the argument that 1984 was a reasonable time

9    to terminate and submit that 2018 was a reasonable time.  But

10   the point about the surrounding circumstances of the 1984

11   agreement is this inverted logic with the allegation of breach

12   with a 27 percent that was being paid in perpetuity *vis-à-vis*

13   Delicate to Hodgson.

14        I sense that that is where they want to go and use that

15   language from the 1984 agreement to buttress the claim that

16   there is some sort of perpetuity implied.

17              THE COURT:  Let me ask you this, Mr. Carlin.  If we

18   took out the last paragraph, would you have an objection?

19              MR. CARLIN:  No.

20              THE COURT:  Okay.  Mr. Gutman?

21              MR. GUTMAN:  That last paragraph addresses all of

22   the issues that we're raising -- that I raised earlier today.

23              THE COURT:  The '91 piece, perhaps, because that is

24   Glass, right?

25              MR. GUTMAN:  Yes.

```
 1              THE COURT:  What about '84?

 2              MR. GUTMAN:  Okay.  I will compromise there.

 3              THE COURT:  No, I'm not -- okay.

 4         I'm just asking you what your views are with respect to

 5    '84.

 6              So, I understand your point about '91, and I hear what

 7    Mr. Carlin is saying about '84.  You would -- is what you are

 8    saying that if it said any evidence in connection with the 1991

 9    publishing agreement, including the surrounding circumstances

10    related to these agreements, should not be considered.

11         Keeping -- taking out the 1984 withdrawal agreement.

12              MR. GUTMAN:  I would agree with that, and that is

13    the point I made this morning was that my concern was about the

14    testimony related to the '91 agreement.

15              THE COURT:  Mr. Carlin, if the paragraph read "any

16    evidence in connection with the 1991 publishing agreement,

17    including the surrounding circumstances related to the

18    agreement, should not be considered."

19         What is your position if that were the words used for

20    this instruction?

21              MR. CARLIN:  Yes, we would be okay with that.

22              THE COURT:  All right.  So we will make that change

23    so it will read "any evidence in connection with the 1991

24    publishing agreement, including the surrounding circumstances

25    related to that agreement, should not be considered."
```

```
 1            All right.  No. 4, burden of proof.

 2                 MR. CARLIN:  No objection, Your Honor.

 3                 THE COURT:  All right.

 4                 MR. GUTMAN:  No objection.

 5                 THE COURT:  All right.  Number 5.

 6                 MR. CARLIN:  No objection.

 7                 MR. GUTMAN:  No objection.

 8                 THE COURT:  All right.  Number 6, what is not

 9    evidence.

10                 MR. CARLIN:  Looks standard, Your Honor.  No

11    objection.

12                 MR. GUTMAN:  No objection.

13                 THE COURT:  Number 7, direct and circumstantial

14    evidence.

15                 MR. CARLIN:  No objection.  I think you read that

16    one also before, didn't you?

17                 THE COURT:  I did.

18                 MR. GUTMAN:  No objection.

19                 THE COURT:  All right.  Number 8, evidence in

20    electronic format.

21            I did not read this in the beginning.  I think the

22    parties submitted this as one of their proposed jury

23    instructions, but we generally do it because they don't get

24    hard copies.  They get a disk and they look it on the screen in

25    the jury room.
```

```
1            MR. CARLIN:  Is that how it's going to be here?
2            THE COURT:  Yeah.  That is one of the many reasons
3    why we moved into a new building because -- to facilitate less
4    paper, if you will.
5            MR. CARLIN:  I guess that is fine, then.
6            MR. GUTMAN:  I thought we just went through the
7    preparing the exhibit notebooks for the jury.
8            THE COURT:  Right, but there should also be a flash
9    drive, I believe, that has those exhibits.
10           MR. CARLIN:  So they will get both?
11           THE COURT:  Yes.  They will get -- well, actually,
12   they will -- yes, they will get both.  They will get both.
13           MR. GUTMAN:  There was a flash drive in one of the
14   notebooks.  I think Mr. O'Malley took it back.  The problem
15   with that flash drive is, I suspect, all of the exhibits are on
16   it.
17           MR. O'MALLEY:  Yes.
18           MR. GUTMAN:  So somebody needs to carefully --
19   because we have replaced pages --
20           THE COURT:  Let me ask you this:  Are there any --
21   trying to see if there are any electronic exhibits that were
22   admitted, meaning only in electronic format.
23           MR. GUTMAN:  No.
24           THE COURT:  You say no.
25           MR. GIVEN:  No, definitely not.
```

49

```
 1              THE COURT:  Both sides double check tonight to make
 2   sure.
 3              MR. GIVEN:  We had no electronic exhibits, Your
 4   Honor.
 5              THE COURT:  None of the depositions got introduced,
 6   right?  They just were played.
 7              MR. GIVEN:  Right.  And the notebooks are pretty
 8   slim now.
 9              THE COURT:  Okay.  So then I stand corrected because
10   evidence in electronic format is for the instances where we
11   have electronic exhibit, they are only introduced in electronic
12   format.  We don't have any of that here?
13              MR. GIVEN:  No, sir.
14              THE COURT:  Okay.  If that's the case, we don't need
15   this instruction then.
16              MR. GIVEN:  Thank you, Your Honor.
17              THE COURT:  All right, 9, proposing Instruction 9,
18   ruling on objections.
19              MR. CARLIN:  No objection.
20              MR. GUTMAN:  No objection.
21              THE COURT:  All right.  No. 10, credibility of
22   witnesses.
23              MR. CARLIN:  No objection.
24              MR. GUTMAN:  No objection.
25              THE COURT:  All right.  Closing Instruction No. 11.
```

```
 1   I think these were the only two experts, Mr. Cohen and

 2   Mr. Jampol?

 3            MR. GUTMAN:  We need to add Phil Ames.

 4            THE COURT:  He was the -- oh, okay.

 5            MR. CARLIN:  Was he qualified as an expert?  I don't

 6   recall.

 7            MR. GUTMAN:  We stipulated.

 8            MR. CARLIN:  We stipulated.

 9            THE COURT:  So Phil Ames, we will add him.  Thank

10   you.

11        Closing Instruction No. 12, deposition in lieu of live

12   testimony.

13            MR. CARLIN:  No objection.

14            MR. GUTMAN:  No objection.

15            THE COURT:  All right.  Number 13, bench conferences

16   and recesses.

17            MR. CARLIN:  No objection.

18            MR. GUTMAN:  No objection.

19            THE COURT:  All right.  14, corporations and

20   partnerships, fair treatment.

21            MR. CARLIN:  I would like to comment on the cone of

22   silence that you have.

23            THE COURT:  The sidebar?

24            MR. CARLIN:  That sort of code of silence, that

25   static thing.
```

```
 1              THE COURT:  You have not experienced that?

 2              MR. CARLIN:  Have not experienced that.

 3              THE COURT:  Look, we're new and updated here.  The

 4    courthouse is also known as the max store, has all of the bells

 5    and whistles.

 6              MR. CARLIN:  We were waiting for the Get Smart code

 7    of silence to come down.

 8              THE COURT:  My recommendation was for the drop out

 9    bar for the lawyers, but I was overruled.

10         All right.  Corporations and partnership?

11              MR. CARLIN:  That is fine.

12              MR. GUTMAN:  No objection.

13              THE COURT:  Okay.  15, stipulations of fact.  This

14    was the same instruction that I read at the beginning of the

15    trial.

16              MR. CARLIN:  That is fine.

17              MR. GUTMAN:  No objection.

18              THE COURT:  All right.  Instruction No. 16, breach

19    of contract.

20              MR. CARLIN:  Yeah.  We might want to make this

21    specific to the 1977 contract, breach of the 1977 memorandum of

22    agreement.

23              THE COURT:  So, I'm sorry, help me understand.  What

24    would your edit be or suggestion be?

25              MR. CARLIN:  To prevail in each of their claims for
```

```
 1  breach -- well --
 2           THE COURT:  It's the only claim that is remaining.
 3           MR. CARLIN:  Let's leave it in there.
 4           Yeah.  At the end, it says "respective contracts."
 5  It should just say breached their contract.
 6           THE COURT:  But is -- well, Mr. Gutman?
 7           MR. GUTMAN:  I think "respective contracts" refers
 8  to plaintiffs with Hodgson and the plaintiffs with Delicate.
 9           THE COURT:  Look, I know you are of the view they
10  are all for one, one for all.  But to the extent they are not,
11  don't we need to make sure that the jury makes the decision as
12  it relates to each -- as it relates to Delicate and as it
13  relates to Hodgson, and that's -- I guess that was the thought
14  behind the respective.
15      I get -- there are not two contracts, but there is a --
16  to the extent that I'm adopting the plaintiffs' argument, there
17  is a contract with Hodgson and then there is a contract with
18  Delicate.
19           So I think we have to try to be clear as it relates to
20  both.
21           MR. CARLIN:  It's the same contract, it's just, you
22  know, did Hodgson breach it and did Delicate breach it.
23           MR. GUTMAN:  May I suggest.
24           THE COURT:  Yes.
25           MR. GUTMAN:  The opening sentence "to prevail on
```

```
1    each of their claims for breach of contract on the" insert, on

2    the 1977 memorandum of agreement, open paren, publishing,

3    closed paren.

4              THE COURT:  And then delete -- or then make --

5              MR. GUTMAN:  I don't think we need to make any other

6    changes.

7              THE COURT:  Oh, you are saying just to make that up

8    front?

9              MR. GUTMAN:  Yes.

10             MR. CARLIN:  Well, we should put in here somewhere

11   that the Court has determined that the agreement was -- that

12   the parties did enter into the agreement.  It was a valid,

13   enforceable agreement.  It was in your stipulated facts that

14   they entered into an agreement.

15             MR. GUTMAN:  But that doesn't displace the -- this

16   is a recitation of what the statutory elements are.

17             THE COURT:  Right.

18             MR. CARLIN:  All right.  Maybe we'll deal with that

19   in a subsequent instruction.

20             THE COURT:  So, let me ask you, Mr. Gutman, you are

21   saying you believe the verbiage added to the line 4, to prevail

22   on their claims for breach of contract on the he memorandum of

23   agreement closed -- open paren, publishing, closed paren,

24   plaintiffs must prove -- but then on line 19, are you

25   suggesting that, that remains the same or should we change that
```

1  to say if you find the defendant Hodgson or defendant Delicate

2  Music breached the memorandum of agreement, publishing, to be

3  consistent?

4          MR. GUTMAN:  Yes.

5          MR. CARLIN:  That's fine.

6          MR. GUTMAN:  I think that would be the 1977

7  memorandum of agreement, yes, in both places.

8          MR. CARLIN:  There is one typo here, Your Honor.

9  Line 7, "against" missing the "s."

10          THE COURT:  Oh.  I guess I -- oh, yeah.  When you

11  use all caps, it doesn't catch the spell check.

12      All right.

13          MR. CARLIN:  I think here is where --

14          THE COURT:  Are you talking about 17?

15          MR. CARLIN:  Yes.

16          THE COURT:  17, breach of contract.

17          MR. CARLIN:  It says plaintiffs claim that they and

18  Defendant Roger Hodgson entered into a contract.

19      I think we should -- we don't want them getting

20  sidetracked into debating whether there was a contract entered

21  into.  I think we should just say the parties have stipulated

22  that Hodgson entered into a contract so that part is already

23  determined.

24          THE COURT:  Mr. Gutman?

25          MR. GUTMAN:  I think this is just a basic recitation

1  from the formal instruction of the necessary elements to be

2  completed, as far as -- it's the breach of contract

3  instruction.

4           THE COURT:  Mr. Carlin, I'm not sure why we need --

5  I mean, are you worried that -- you are worried that the jurors

6  might say is there even a contract?

7           MR. CARLIN:  Weirder stuff has happened before.

8           THE COURT:  Look, I have been there, but no one has

9  suggested that at all.  I mean, at all.  No witness -- everyone

10  talks about them being -- in '77, they were all there.  19,

11  young and dumb, whatever, they were all there and they signed

12  off on it.

13      I'm not sure -- look, the first question will be -- the

14  first note will be is there a contract, with my luck.  But I

15  just don't know if we need that when we're just going through

16  the elements.

17           MR. CARLIN:  It says "plaintiffs claim."  I mean,

18  why not just say that they did?

19      I would propose just deleting "plaintiffs claim that

20  they and."

21           THE COURT:  Not the "and."

22      Plaintiffs and Defendant Roger Hodgson entered into a

23  contract.

24           MR. CARLIN:  Yes.

25           THE COURT:  But then --

1              MR. GUTMAN:  No objection to that.

2              THE COURT:  So, plaintiffs and Defendant Roger

3      Hodgson.  Okay.

4              MR. GUTMAN:  So it's just deleting --

5              THE COURT:  "Claimed that they."

6              MR. GUTMAN:  Yes.  And I think we can do this --

7              THE COURT:  Same in Instruction No. 18.

8          Any other thoughts, comments with respect to 17,

9      Mr. Carlin?

10             MR. CARLIN:  That's fine.

11             THE COURT:  Okay.  18, we will make the same change.

12     Plaintiff and Defendant Delicate Music.  That -- I mean, look,

13     I have a lot of heartburn about that, but we will let smarter

14     minds decide what is wrong or right in that regard.

15         But any other questions or objections to 18 from the

16     plaintiff?

17             MR. CARLIN:  We are taking out "claimed that they"?

18             THE COURT:  Correct.

19             MR. GUTMAN:  Joined.

20             THE COURT:  Okay.  19, interpretation.

21             MR. CARLIN:  We have a real problem with this one,

22     unfortunately.

23             THE COURT:  Okay.

24             MR. CARLIN:  This seems to assume that neither the

25     express language of the contract or the nature of the contract

```
 1   and the surrounding circumstances provide a basis for implying
 2   a termination date.  The --
 3             THE COURT:  That's sort of -- I mean, well, that is
 4   the issue I was trying to raise this morning.  Because I think
 5   if that is the case, if the Court makes that finding, that is
 6   what we're left with.
 7         And that's what I was trying to suggest earlier.  Like,
 8   look, I think after all of this, all that remains is the '77
 9   agreement.  And at least the Court's reading of it, I don't
10   think it implies a termination date -- I know you have a
11   different view -- and so, that's why it comes down to -- it got
12   reduced down to was it terminated after a reasonable time.
13             MR. CARLIN:  The main problem I have with this is
14   that it takes away -- well, one problem is it takes away the
15   nature of the contract from the jury.  It seems to assume the
16   nature has nothing to do with it.
17         In the -- for example, in the jury instruction that we
18   proposed on this cites there is five categories of things that
19   they can consider, one of which is the nature of the contract.
20             THE COURT:  But I don't know how this -- I mean, you
21   are still going to argue about the nature of the contract,
22   right?
23             MR. CARLIN:  But if it says here because the nature,
24   neither the language or the nature of the contract --
25             THE COURT:  Provide a basis for implying a
```

1    termination date.  But the nature of the contract can be argued

2    with respect to whether it was terminated after a reasonable

3    time.  Both sides are going to make their arguments as to why

4    they think it was or wasn't.

5         I mean -- - I think the -- well, I think what is

6    happening is, look, you disagree with the Court about the --

7    whether or not this contract goes for a period of time.  You

8    are wrong -- I mean, that ship sort of sailed and the Court has

9    made its ruling with respect to that, and I believe once that

10   ruling is made, the only thing left for the jury to decide is

11   whether or not this contract was terminated after a reasonable

12   time.

13        MR. CARLIN:  Well, we have our Rule 50 motion on the

14   subject.

15        THE COURT:  Right.

16        MR. CARLIN:  And, you know, let me just note for the

17   record that the nature of the contract is, really, the most

18   important thing here.  And in Lura versus Multaplex, which we

19   have cited, 129 Cal App 3d 410 --

20        THE COURT:  That was the case involving, I think,

21   sales or commissions?

22        MR. CARLIN:  Right, a 1982 case.  Following a bench

23   trial -- in that case, the trial court determined that because

24   a contract for the payment of sales commissions was of an

25   indefinite term, the contract could be terminated by either

1    party upon reasonable notice.

2         The Court of Appeals reversed.  It held, consistent with

3    longstanding precedent, that an agreement providing for the

4    payment of a percentage of all billings on sales is subject to

5    the construction that it is to continue for as long as billings

6    are made.

7         Same thing in *Warner-Lambert versus John J. Reynolds*

8    *Inc.,* 178 F Supp 655, Southern District of New York, 1959,

9    affirmed 280 F.2d. 197.

10            THE COURT:  I read it.  I read the case too.

11            MR. CARLIN:  So, we have the *Warner-Lambert* case.

12   The same kind of thing, a stream of income, the nature of the

13   contract, reversal of the trial court.

14        Same thing in the *Haggerty versus Warner* case where it

15   said for valuable considerations, services rendered, we hereby

16   agree to pay to John Haggerty, 5 percent of all of our billings

17   on sales of units for talking dolls, and on records for the

18   same.

19        Again, reversing the trial court's demur grant.  The

20   Court of Appeals stated the effect of the admission for an

21   agreement from the time of its duration is generally determined

22   by a construction of the contract and may be implied from the

23   nature of the contract or from the circumstances surrounding

24   it.

25        The contract is subject to the construction, among

1    others, that it was to continue as long as billings were made

2    by the defendants.

3          We have the same thing in the *Reilly* case, *Reilly versus*

4    *InQuest Tech, Inc.*, 218, Cal App 4th 536, 553, 2013 case.

5          All of the cases cited by the defendants are completely

6    in apposite.  They -- the consolidated theaters case has to do

7    with union agreement, personal services, *RMR Equipment* case,

8    same thing, another union case.  Sorry, that is actually a

9    requirements contract for water delivery, which actually

10    supports our case because that case said it was error -- it was

11    a requirements contract for water delivery which had no fixed

12    duration.

13          The Supreme Court held it was error to limit damages to

14    a three-month interval.  RMR requested damages to be calculated

15    from breach to the trial which was about four years.

16          And the *Cemco* case they cited is another collective

17    bargaining complaint.

18          The nature of the contract is central, Your Honor.  With

19    this instruction, it's kind of taking it away from the jury to

20    even consider that.

21                THE COURT:  Okay.  Mr. Gutman?

22                MR. GUTMAN:  Thank you, Your Honor.

23          I want to refer the Court to the case of *Asmus*

24    A-S-M-U-S, *versus Pacific Bell*.  It's a California Supreme

25    Court case, at 23 Cal 4th, page 1.

1        THE COURT:  Was that in your brief?

2        MR. GUTMAN:  No.  I'm just -- seems to be running up

3   a -- but the California Supreme Court has said, and this is

4   citing the *Lura versus Multaplex* case -- Court's have

5   interpreted a contract that conditions termination on the

6   happening of a future event as one for a definite duration or

7   time period, only when, quote, there is an ascertainable event

8   which necessarily implies termination, closed quote.

9        In reaching this conclusion, as the California Supreme

10  Court goes to refer to the *Consolidated Theaters* case, which

11  actually based upon the uniform commercial code, which is

12  actually based on several United States Supreme Court decisions

13  that were actually, I believe, contained in some earlier briefs

14  that I presented but we weren't addressing just this point.

15  But I did want to respond and say the issue of reasonable time

16  -- in reaching its decision in the *Asmus* case, the Court said

17  as long as the company made the change after a reasonable time,

18  on reasonable notice, and in a manner that did not interfere

19  with vested benefits, in citing the consolidated theaters case

20  for the proposition contract for indefinite duration,

21  terminable after a reasonable time, on reasonable notice.  It's

22  not limited to employment contracts or something else.

23       The *Lura* -- pardon me -- the *Lura* case that plaintiffs

24  are relying on is limited to the specific situation where there

25  is a specific ascertainable event that says this contract --

**UNITED STATES DISTRICT COURT**

```
1              THE COURT:  You get the commission.

2              MR. CARLIN:  May I respond to that briefly, Your

3    Honor?

4              THE COURT:  Okay.

5              MR. CARLIN:  Lura is just like this case because the

6    specific conduct of the plaintiff in that case was getting

7    certain accounts as a sales rep.

8         And as long as those accounts generated profits for the

9    company, that is what the Court said, that is the duration.  As

10   long as those profits and income keeps coming in, that is your

11   duration.

12        Same thing here.  Our clients worked to create this

13   stream of income of publishing royalties, and so it was -- our

14   position is as long has those royalties keep coming in, that is

15   the duration.

16             THE COURT:  Okay.  Look, I read the cases, I have a

17   different view on it, and so your objection is noted but

18   overruled and this will be the instruction.

19             MR. CARLIN:  But, Your Honor, I do have an alternate

20   proposed instruction.

21             THE COURT:  Okay.

22             MR. CARLIN:  I think we can modify this.  Instead of

23   "because" I would say "if."  If neither the express language of

24   the contract --

25             THE COURT:  Well, I'm going to stop you there
```

UNITED STATES DISTRICT COURT

1    because when I asked you guys to submit the briefing, I think

2    one of the first things I asked was what is for the jury, what

3    is for the Court.  And I think the response -- I'm trying to

4    pull it here -- it's up to the Court to determine whether or

5    not the contract is ambiguous.

6         I say it's not, so if it's not, that's where we get to

7    this.

8         So I'm worried that when you say "if," that suggests

9    that's a question that is out there.  The Court has made that

10   determination, and because of that, that is where we are at

11   now.

12              MR. CARLIN:  Let me propose, then, inserting on line

13   6, at the end of line 6 where it says provide a basis for

14   implying a termination date, I would suggest put in specific

15   termination date for the contract.

16              THE COURT:  Implying a termination for a specific

17   date for the contract?

18              MR. CARLIN:  Right.

19              THE COURT:  Mr. Gutman?

20              MR. GUTMAN:  It makes no sense.  There is no

21   requirement that there be some specific date cited.  It's

22   creating some --

23              THE COURT:  I mean, I think it's just a termination

24   thing.  That is what this case is about, or was about,

25   initially.

1          Okay.  Give me your -- I'm not inclined to adopt that

2     edit.

3          Any other comments on this?

4          MR. CARLIN:  Yes.  And then on the last sentence, it

5     says, it is up to you to decide whether the contract was

6     terminated after a reasonable time.

7          I would propose it is up to you to decide what such

8     reasonable time period is.

9          THE COURT:  Why do they have to decide what that

10    time period is?  I mean, I'm not sure why you need the what.

11    Isn't it really just whether it was reasonable?  Whether it was

12    2018, 2008, 1988, was it reasonable?

13         MR. CARLIN:  Perhaps just say whether it was

14    reasonable for defendant to terminate the contract at that

15    time.

16         THE COURT:  But I think the case law suggests that

17    once you make this determination, all that is left is to

18    determine whether or not the contract was terminated after a

19    reasonable time.

20         I think that's what the law says, and so I'm reticent to

21    deviate and come up with different language.  I'm not that

22    smart.  This is where I got the language from.

23         MR. CARLIN:  I would ask that the Court take another

24    look at our Proposed Jury Instruction 34.

25              THE COURT:  Okay.  I looked at it just about an hour

1   ago, but I will look at it again tonight.

2          MR. CARLIN:  I think it's a really appropriate,

3   neutral, reasonable statement of the law in this area.

4       I guess I have no further comments.

5          THE COURT:  Okay.  I will look at it again tonight.

6   Proposed 34.

7          Instruction 20, meaning of ordinary words.

8          MR. CARLIN:  No problem.

9          MR. GUTMAN:  No objection.

10          THE COURT:  21, construction by conduct.

11          MR. CARLIN:  That's fine, Your Honor.

12          MR. GUTMAN:  No objection.

13          THE COURT:  All right.  22, explained by

14   circumstances.

15          MR. CARLIN:  No objection.

16          MR. GUTMAN:  No objection.

17          THE COURT:  All right.  23, introduction to contract

18   damages.

19          MR. CARLIN:  Okay.  However, Your Honor, I think

20   we're missing two instructions here.  They could be part of 22

21   or separate instructions, but there needs to be one, you can

22   consider industry custom and practice.

23          THE COURT:  Where is that from?

24          MR. CARLIN:  Well, if you take a look at our

25   Proposed 34.

1          THE COURT:  34, duration of the contract?

2          MR. CARLIN:  Right.  That has all of the citation

3    there for the five categories of things that jurors are to

4    consider.

5          THE COURT:  Okay.

6          MR. CARLIN:  One of them is industry custom and

7    practice, and the other one is the nature of the agreement.

8          THE COURT:  All right.  I will look at that.

9       Mr. Gutman, do you have any thoughts?

10         MR. GUTMAN:  I don't have those in front of me, but

11   I do recall Mr. Jampol's testimony did not include any custom

12   and practice on duration.  That was specifically excluded by

13   Defense Motion in Limine No. 1.

14        His sole testimony on this custom and practice was, hey,

15   there is three different types of contracts that the parties --

16   three different sharing arrangements that the parties can enter

17   into.  There was nothing about what the custom and practice is

18   of duration.

19         THE COURT:  Mr. Carlin, what is your response to

20   that?

21         MR. CARLIN:  At least it talked about the nature of

22   this type of agreement and how it was industry custom and

23   practice, a common type of agreement, for -- to share.  And he

24   talked about how certain bands such as the Doors continue to

25   share to this day, and I think that demonstrates --

```
1              THE COURT:  That goes towards duration?

2              MR. CARLIN:  I think so.

3              THE COURT:  Mr. Gutman?

4              MR. GUTMAN:  That is almost the antithesis of custom

5    and practice on duration.  The custom and practice -- all he

6    was talking about -- the extent of his testimony was, hey,

7    there is different types of arrangements that bands can enter

8    into.  He didn't have an opinion on -- because he was prevented

9    from providing one because he had no legitimate basis for

10   providing one as to what duration these agreements would

11   typically last, what they would be.

12             THE COURT:  I will look at my notes tonight and

13   think about Jampol and whether or not it would make the

14   industry custom and practice issue relevant.

15                  Yes?

16             MR. CARLIN:  And the nature of the agreement as

17   well, Your Honor.

18             THE COURT:  All right.  I will consider it.  I'm not

19   inclined -- because the nature of the agreement, I thought we

20   -- you argued that point earlier, but I mean --

21             MR. CARLIN:  Well, but you have that in the general

22   instruction, but then when I argued it, you said the jury can

23   consider the nature in their -- nature and practice -- nature

24   of the agreement in their deliberations, so I think that should

25   be said.
```

```
1              THE COURT:  All right.  I will consider that this

2    evening.

3              MR. GUTMAN:  Just to be clear, I'm not following

4    which specific instruction.  Should I be looking at something?

5    Their proposed instruction?

6              THE COURT:  Their proposed instruction is Number 34

7    in the disputed instructions that were filed at Document 168.

8    The special instruction lists five factors.

9              MR. GUTMAN:  Okay.

10             THE COURT:  And plaintiff wants to utilize two of

11   those factors.

12             MR. CARLIN:  Well, we want to use all of them, but

13   three of them are already in.

14             THE COURT:  Okay.  Got it, okay.

15             MR. CARLIN:  The other two.

16             THE COURT:  Okay.  All right.  23, introduction to

17   contract damages.

18             MR. GIVEN:  Your Honor, the two paragraphs,

19   identical, just the names are changed.  Is that the only

20   difference?

21             THE COURT:  Yes, exactly.

22             MR. GUTMAN:  If I may while they are still reading,

23   the only issue that I would want to point out to the Court is

24   that I think there needs to be a sentence stating that you

25   cannot award double -- even though there is two defendants, you
```

```
 1    cannot award the same damages from the same defendants so that

 2    it adds up to more than the total amount of damages that were

 3    proven.

 4                THE COURT:  Okay.  I will need a proposal, but

 5    Mr. Carlin?

 6                MR. CARLIN:  In principle, I don't oppose that.  In

 7    principle, that is right.

 8                THE COURT:  Right.  But do you have an instruction

 9    in mind?

10                MR. GUTMAN:  I'm going to have to get the language.

11                THE COURT:  Okay.  All right.  And let me -- if I

12    could jump back for a second, Mr. Carlin.

13           With respect to 22, your concern about the nature of the

14    -- where is it -- the object, nature, and subject matter of the

15    contract, wouldn't circumstances under which it's made cover

16    that?

17                MR. CARLIN:  I think they are slightly different.

18    You are talking circumstances of how they entered into it,

19    object is what was the object of the agreement, nature is what

20    type of agreement it is, you know.  They are different.

21                THE COURT:  Okay.  So, Mr. Gutman, I understand what

22    you are saying, but I need a little assistance in what the

23    language is that you are proposing on 23.

24                MR. GUTMAN:  It would be something -- I'm just

25    throwing this out, I only scribbled a couple of words -- you
```

1    can only award the total amount of damages for the plaintiffs

2    -- that doesn't work.  I started the sentence.  I have got to

3    work on it.

4         THE COURT:  Let's try to finish these instructions

5    and we will come back to that.

6         MR. GIVEN:  May I make a suggestion?  You might be

7    able to address it in the verdict form.  You might be able to

8    do it there, because if you have just one question on damages,

9    you have solved the problem.

10        THE COURT:  And I think we do only have one question

11   on damages.

12        MR. GIVEN:  I think that's where the problem is

13   solved.

14        THE COURT:  But we will get to that in a moment.

15        Number 24, obligation to pay money only.

16        MR. CARLIN:  No objection.

17        MR. GUTMAN:  No objection.

18        THE COURT:  25, no punitive damages.

19        MR. CARLIN:  No objection.

20        MR. GUTMAN:  No objection.

21        THE COURT:  26, duty to deliberate.

22        MR. CARLIN:  No objection.

23        MR. GUTMAN:  No objection.

24        THE COURT:  27, consideration of evidence, conduct

25   of the jury.

1          MR. CARLIN:  No objection, Your Honor.

2          MR. GUTMAN:  No objection.

3          MR. CARLIN:  Is there going to be any rule about

4   turning off your cell phones or anything like that?

5          THE COURT:  They are not supposed to do any

6   research.  I think that covers that.

7          Is your worry that they are going to call one of you

8   during the deliberation?  What is the concern?  The research

9   part?

10          MR. CARLIN:  The research part.

11          THE COURT:  I mean, yeah, we tell them that, I think

12   in the beginning.  I say it every day.  I have never told the

13   jurors you can't bring your phones into the jury room.

14          MR. CARLIN:  My kids, in school, they sometimes take

15   the phones away.

16          THE COURT:  All my kids and their high schools, no

17   phones were allowed, but it's not high school.

18          MR. GIVEN:  Your Honor, do you instruct them to turn

19   their phones off while they are in the jury room?

20          THE COURT:  It's never been -- no, I have not.  I

21   have not.

22          Closing Instruction 28.

23          MR. CARLIN:  No objection.

24          MR. GUTMAN:  No objection.

25          THE COURT:  29, communication with the Court.

```
 1              MR. GUTMAN:  Got it.

 2              MR. CARLIN:  No objection.

 3              THE COURT:  Any objection to 29, Mr. Gutman or are

 4    you still reading it?

 5              MR. GUTMAN:  I'm sorry, no objection.

 6              THE COURT:  Okay.  All right.  30, introduction to

 7    special verdict form.

 8              MR. CARLIN:  No objection.

 9              MR. GUTMAN:  No objection.

10              THE COURT:  31, return of verdict.

11              MR. CARLIN:  No objection.

12              MR. GUTMAN:  No objection.

13              THE COURT:  There are a couple of things I need to

14    look at as well.  Then let's look at the special verdict form.

15          Any objections from the plaintiff?

16          And as you can see in the verdict form, Questions 2 and

17    4, if they decide on it, if they answer no, damages become an

18    issue.  It's only one line.  It doesn't list four -- oh, but I

19    guess --

20              MR. GIVEN:  You've got it twice.

21              THE COURT:  Right, but --

22              MR. GIVEN:  I think the way it should -- with your

23    permission, Your Honor, I think the way it should go is you ask

24    one question about breach for Hodgson, yes or no, one question

25    for breach as to Delicate, yes or no, and then --
```

```
 1                THE COURT:  And if you answered yes as to either
 2    question --
 3                MR. GIVEN:  Then it's just the damages.  The damages
 4    are identical.
 5                THE COURT:  All right.  I think that is right.
 6                MR. CARLIN:  Also, I think the wording of this is a
 7    little -- it might be a little confusing.  I think it would be
 8    better to say, did Defendant Hodgson breach his contractual
 9    obligation, or just did he breach the contract.
10                THE COURT:  Wait, where are you?  What are you
11    talking about, specifically?
12                MR. CARLIN:  Number 1 here, breach of contract
13    against Hodgson.
14                THE COURT:  But see, I guess my view and the thought
15    behind this is that I made a determination with respect to the
16    contract.  The only issue that remains outstanding is whether
17    it was terminated at a reasonable time.
18         If it was, you know, that is the end of it.  If it
19    wasn't, you go to damages.  To say he breached, I thought this
20    was more specific to the issues so that everybody knows what
21    the jury found.
22         Because my worry is with did he breach the contract, one
23    of you will say, we don't know what that meant, send it back to
24    the judge.  I don't want to do this trial again if I don't have
25    to.
```

1          This answers the questions specifically.  The Ninth

2     Circuit may say this was the wrong question to ask, but I was

3     trying to -- I was endeavoring to focus the jury on the issue

4     that I believe remains after all of the evidence in the case,

5     is whether or not Hodgson terminated the -- his obligation in a

6     reasonable time.

7          MR. CARLIN:  Wouldn't it be better to say, did he

8     terminate his contractual obligations to pay a portion of

9     songwriting royalties to plaintiffs?

10         It just seems confusing to me.

11         THE COURT:  Look, it is different because -- look,

12    it's different.  What this case originally started as, you

13    know, was breach, breach, breach.  I think it's changed -- it's

14    changed, at least from my end.  Again, I could be wrong, but I

15    think this is what it's been reduced to.

16         MR. CARLIN:  Could we have a little time to huddle

17    over this?

18         THE COURT:  If you want to do it tonight, I suppose.

19    The jury is come back tomorrow at 1:30.  I'm not wasting their

20    time.  I intend to give them the instructions, have you argue,

21    and have them deliberate.

22         As you know, I start another trial at 9:00 in the

23    morning.  If you can come up with something -- look, I'm not

24    going to tell you no, but you know where I stand and you know

25    why the reason behind it.

 1          MR. CARLIN:  Okay.  We will try to come up with

 2    something, maybe, that seems a little clearer.

 3          THE COURT:  But at a minimum, I think Mr. Given's

 4    point is a valid one.  It should be, one -- the Question 1

 5    talks about whether the memorandum of agreement, did Hodgson

 6    terminate it in a reasonable time?

 7          No. 2 should be the same question, but with respect to

 8    Delicate.

 9          And then 3 would be if there was a breach, you know, if

10    you answered either 1 or 2, and if there was a breach, what are

11    the damages owed?

12          And then just one question for the damages.

13          MR. CARLIN:  Uh-huh.

14          THE COURT:  Do you have any thought on that

15    Mr. Gutman?

16          MR. GUTMAN:  I agree.  That is the best way to do it

17    under these circumstances.  I'm trying to recall if there is a

18    better method of saying what the cap on the maximum award is.

19    I have to look at something.  I don't know --

20          THE COURT:  I don't think there is a cap.  Oh, you

21    are worried about the double accounting.

22          MR. GUTMAN:  Yes.  There is some instruction, I just

23    can't remember if it's a CACI instruction or if it's one of the

24    Matthew Bender form instructions.  I have seen it, I just

25    can't --

```
 1              THE COURT:  If you find it, let me know tomorrow

 2    morning.  Just, if you do find something -- and similarly, I

 3    guess I would ask you all, if you come up with some new idea,

 4    don't come here at 1:30 with it.  Because I have got, you know,

 5    I'm going to be picking a jury, I have got to get things done,

 6    and I don't want to waste this jury's time.

 7              MR. CARLIN:  We will get it to you this evening,

 8    Your Honor.

 9              THE COURT:  Okay.  Great.  And if you have a

10    proposal on this damages one, just e-mail the courtroom deputy

11    and then I will look at it.

12              MR. GUTMAN:  Okay.  Not filing anything on this?

13              THE COURT:  You don't have to, no.

14         Anything further -- we need to hear the Rule 50,

15    Mr. Carlin.

16              MR. CARLIN:  Okay.  Has Your Honor had an

17    opportunity to read it?

18              THE COURT:  Read what?

19              MR. CARLIN:  Our Rule 50 motion?

20              THE COURT:  When was it filed?

21              MR. GUTMAN:  As soon as they rested.

22              THE COURT:  You filed something on the docket?

23              MR. CARLIN:  Yeah.

24              THE COURT:  No, I didn't have a chance to.  I have

25    been here, so I'm not sure when that was supposed to happen.  I
```

```
 1   don't know that anything got filed.
 2              MR. CARLIN:  I have courtesy copies for everybody.
 3              THE COURT:  Okay.  I would love to see it.
 4              MR. CARLIN:  May I approach?
 5              THE COURT:  Yes, please.
 6              MR. GUTMAN:  Thank you.
 7              MR. CARLIN:  I'm old fashioned.  It's with paper.
 8              THE COURT:  All right.  Go ahead, sir.
 9              MR. CARLIN:  All right.  So, the argument here is
10   essentially the same as the one I was making earlier under Lura
11   and Warner and Haggerty that -- that just because the contract
12   doesn't have a specific duration date in it, the nature of the
13   contract as such, being one for a stream of income that was
14   generated by the plaintiffs' work, the duration -- again and
15   again and again, courts of appeals have held that the duration
16   of the contract is implied to be for as long as the income
17   stream continues to come in.
18              THE COURT:  Okay.
19              MR. CARLIN:  I think I have already made that
20   argument.
21              THE COURT:  Okay.
22              MR. CARLIN:  That's our motion.
23              THE COURT:  I will consider it this evening.  Like I
24   said, I didn't know.  I don't get an ECF alert on the bench,
25   and I think we were in trial at 2 o'clock when it got filed, so
```

```
 1   I had no idea it got filed.  I will look at it tonight.

 2            I don't know if you have had a chance to look at

 3   it, but if you wish to be heard, you can be heard tonight or

 4   today or tomorrow.

 5            MR. GUTMAN:  I just received it now.  Quick glance,

 6   cursory review seems to reveal it's the same identical argument

 7   that was made about 15, 20 minutes ago with respect to the

 8   application of what branch of cases on this issue.

 9            THE COURT:  Right.  Okay.  Thank you.

10            Anything further we need to discuss this evening

11   from the plaintiff?

12            MR. GIVEN:  Your Honor, does it make sense to come

13   in maybe a half hour before the 1:30 time?

14            THE COURT:  You can come in, but I may be picking a

15   jury.  I'm hoping the voir dire will go shorter than this

16   trial, but I don't know.  It's a forfeiture case dealing with

17   criminal issues and jurors have a lot more -- they vocalize

18   more opinions about those than your civil cases.  So you can

19   come in at 1 o'clock if you wish, I just -- if I'm free, I will

20   make the time, but I just don't know.

21            MR. GIVEN:  I appreciate it.

22            THE COURT:  Any further from the defense?

23            MR. GUTMAN:  Nothing, Your Honor.

24            THE COURT:  So, 1:30.  Come at 1 o'clock and if I

25   can deal with you, I will at 1 o'clock.
```

1          MR. GIVEN:  Thank you, Your Honor.

2          THE COURT:  Go have a great evening.

3          THE COURTROOM DEPUTY:  All rise.

4           (The proceedings concluded at 4:51 p.m.)

5                          *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3   COUNTY OF LOS ANGELES    )
                             )
4   STATE OF CALIFORNIA      )

5

6          I, TERRI A. HOURIGAN, Federal Official Realtime

7   Court Reporter, in and for the United States District Court for

8   the Central District of California, do hereby certify that

9   pursuant to Section 753, Title 28, United States Code that the

10  foregoing is a true and correct transcript of the

11  stenographically reported proceedings held in the

12  above-entitled matter and that the transcript page format is in

13  conformance with the regulations of the judicial conference of

14  the United States.

15

16  Date: 26th day of February, 2024.

17

18

19                         /s/ TERRI A. HOURIGAN

20     _____
                  TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                      Federal Court Reporter

22

23

24

25

**UNITED STATES DISTRICT COURT**

**'**

**'77** [14] - 11:4, 34:25, 36:3, 37:6, 37:17, 38:2, 39:12, 39:13, 39:20, 39:21, 42:12, 42:22, 54:25, 56:23

**'84** [15] - 9:23, 36:12, 36:15, 42:15, 42:16, 43:7, 43:21, 43:24, 44:1, 44:10, 44:12, 44:22, 45:18, 45:21, 45:23

**'91** [16] - 9:23, 35:14, 35:17, 35:20, 36:5, 36:8, 36:25, 38:3, 38:24, 43:7, 43:22, 43:25, 44:11, 45:15, 45:22, 46:6

**/**

**/s** [1] - 79:19

**1**

**1** [11] - 7:23, 8:5, 32:12, 60:15, 66:1, 72:24, 74:16, 74:22, 78:6, 78:11, 78:12
**10** [4] - 17:3, 29:10, 29:24, 49:12
**11** [2] - 34:9, 49:16
**12** [2] - 5:20, 50:2
**129** [1] - 58:9
**13** [1] - 50:6
**14** [2] - 33:7, 50:10
**15** [4] - 6:4, 17:3, 51:4, 77:19
**16** [1] - 51:9
**168** [1] - 67:20
**17** [3] - 54:4, 54:6, 55:23
**178** [1] - 58:23
**18** [5] - 6:16, 7:1, 55:22, 56:1, 56:5
**19** [4] - 6:24, 53:14, 54:25, 56:10
**1959** [1] - 58:23
**197** [1] - 58:24
**1975** [1] - 16:1
**1977** [19] - 5:17, 7:4, 7:21, 9:7, 9:23, 10:2, 10:13, 11:17, 12:20, 16:4, 16:5, 16:15, 33:10, 35:16, 51:12, 52:17, 53:21
**1979** [1] - 24:2
**1982** [1] - 58:12
**1984** [6] - 25:9,

36:21, 45:1, 45:3, 45:7, 46:2
**1988** [1] - 64:1
**1991** [12] - 8:17, 8:20, 9:8, 10:3, 10:5, 10:8, 10:19, 33:20, 45:24, 46:8, 46:15
**1:30** [11] - 1:15, 5:2, 30:23, 31:5, 31:18, 31:21, 32:5, 74:6, 75:16, 77:25, 78:11

**2**

**2** [7] - 5:16, 14:16, 32:18, 72:4, 74:19, 74:22, 77:12
**20** [4] - 6:24, 34:8, 64:20, 77:19
**2008** [1] - 64:1
**201** [1] - 2:7
**2011** [4] - 23:10, 23:19, 24:9, 24:14
**2013** [1] - 59:20
**2018** [3] - 44:19, 45:2, 64:1
**2021** [2] - 11:4, 42:10
**2024** [3] - 1:14, 5:1, 79:16
**21** [2] - 7:1, 64:23
**21-cv-8124-AB** [1] - 1:7
**213** [1] - 1:25
**218** [1] - 59:20
**22** [4] - 7:6, 65:1, 65:8, 68:25
**23** [4] - 60:15, 65:5, 68:4, 69:10
**232** [1] - 14:16
**24** [2] - 7:8, 70:2
**25** [2] - 7:6, 70:5
**26** [3] - 1:14, 5:1, 70:8
**26th** [1] - 79:16
**27** [5] - 7:8, 36:17, 42:18, 45:5, 70:11
**28** [2] - 71:9, 79:9
**280** [1] - 58:24
**29** [2] - 71:12, 71:15
**2:01** [1] - 12:13
**2:25** [1] - 29:6
**2d** [1] - 58:24

**3**

**3** [5] - 7:21, 8:1, 33:13, 41:7, 74:21
**30** [4] - 29:21, 29:24, 71:18
**31** [1] - 71:22

**34** [5] - 64:12, 64:19, 65:13, 65:14, 67:19
**350** [2] - 1:24, 2:13
**3838** [2] - 1:23, 79:20
**39** [1] - 2:7
**3:00** [2] - 28:23, 29:3
**3:40** [1] - 30:18
**3:43** [1] - 31:10
**3d** [1] - 58:9

**4**

**4** [4] - 8:4, 46:18, 53:11, 72:4
**40** [1] - 29:21
**410** [1] - 58:9
**4311** [1] - 1:24
**4:51** [1] - 78:16
**4th** [2] - 59:20, 60:15

**5**

**5** [5] - 1:14, 12:19, 29:10, 46:22, 59:6
**50** [8] - 5:13, 12:5, 12:9, 13:25, 27:19, 58:3, 76:1, 76:6
**536** [1] - 59:20
**553** [1] - 59:20
**5:00** [1] - 29:13
**5:10** [1] - 29:25
**5:15** [1] - 29:25

**6**

**6** [4] - 14:17, 46:25, 63:2
**655** [1] - 58:23

**7**

**7** [2] - 47:5, 53:24
**753** [1] - 79:9

**8**

**8** [1] - 47:11
**894-2849** [1] - 1:25

**9**

**9** [3] - 14:16, 49:9
**90012** [1] - 1:24
**90212** [1] - 2:13
**9350** [1] - 2:13
**94129** [1] - 2:8
**9:00** [1] - 74:9

**A**

**A&M** [4] - 12:20, 13:10, 24:17, 24:18
**able** [8] - 10:7, 19:24, 25:1, 37:4, 43:20, 44:18, 69:19
**above-entitled** [1] - 79:12
**absolutely** [1] - 17:2
**acceptable** [1] - 41:7
**according** [1] - 43:12
**account** [2] - 34:6, 35:4
**accountant** [1] - 18:4
**accounting** [2] - 5:23, 75:8
**accounts** [2] - 61:23
**action** [1] - 10:1
**actions** [1] - 35:20
**add** [2] - 49:19, 49:25
**added** [1] - 53:11
**adding** [1] - 35:5
**additional** [1] - 7:15
**address** [3] - 7:3, 8:14, 69:19
**addresses** [1] - 45:13
**addressing** [3] - 9:22, 42:3, 61:4
**adds** [1] - 68:15
**adjusting** [1] - 34:6
**administer** [2] - 33:1, 33:9
**administering** [1] - 6:21
**administration** [1] - 59:10
**admitted** [1] - 48:13
**adopt** [1] - 63:15
**adopting** [1] - 52:6
**advisement** [1] - 14:2
**affects** [1] - 34:20
**affirmed** [1] - 58:24
**afternoon** [6] - 8:9, 31:12, 31:14, 31:18, 31:21, 32:4
**AFTERNOON** [1] - 1:14
**ago** [3] - 5:8, 64:14, 77:19
**agree** [4] - 11:9, 12:7, 20:22, 40:6, 40:9, 44:6, 46:4, 59:6, 75:3
**agreed** [2] - 21:12, 23:22
**agreement** [112] -

5:17, 7:4, 7:22, 8:17, 8:18, 8:20, 9:7, 9:9, 9:22, 9:24, 10:2, 10:3, 10:6, 10:8, 10:12, 10:19, 10:20, 11:1, 11:17, 13:10, 16:15, 19:2, 33:10, 33:20, 33:23, 33:24, 34:1, 34:5, 34:12, 34:13, 35:6, 35:14, 35:15, 35:16, 35:17, 35:21, 36:3, 36:4, 36:6, 36:8, 36:13, 36:15, 36:21, 37:1, 37:5, 37:6, 37:7, 37:18, 37:20, 37:22, 37:24, 37:25, 38:1, 38:2, 38:5, 38:11, 38:14, 38:16, 39:9, 39:12, 39:13, 39:19, 39:24, 40:6, 40:14, 40:18, 40:20, 40:22, 40:25, 41:10, 41:12, 41:14, 41:17, 41:18, 42:9, 42:12, 42:21, 42:22, 44:13, 45:4, 45:7, 45:24, 46:3, 46:6, 46:8, 46:10, 46:16, 46:17, 51:13, 52:17, 53:1, 53:2, 53:3, 53:4, 53:13, 53:17, 53:22, 56:24, 58:18, 59:11, 59:23, 65:20, 66:10, 66:11, 67:4, 67:7, 67:12, 69:6, 69:7, 74:17
**agreements** [4] - 9:23, 16:14, 46:1, 66:23
**ahead** [5] - 11:14, 14:15, 14:19, 41:19, 76:20
**air** [1] - 27:21
**al** [2] - 1:5, 1:8
**ALAN** [1] - 2:12
**album** [5] - 17:4, 18:11, 21:16, 23:6, 24:2
**albums** [2] - 34:16
**alert** [1] - 77:11
**allegation** [1] - 45:4
**alleged** [1] - 5:17
**allow** [3] - 16:22, 28:25, 32:2
**allowed** [5] - 11:21, 18:21, 37:5, 44:4, 71:4
**almost** [1] - 66:17
**alternate** [1] - 62:9
**ambiguous** [1] - 62:20

America [2] - 21:10, 23:21
Ames [2] - 49:19, 49:25
amount [3] - 13:4, 68:15, 69:13
analysis [1] - 19:8
ANDRE [1] - 1:3
ANGELES [4] - 1:15, 1:24, 5:1, 79:3
anniversary [1] - 23:20
ANSWER [1] - 14:23
answer [7] - 8:2, 8:3, 14:13, 14:18, 26:5, 26:8, 72:4
answered [4] - 23:7, 28:6, 72:13, 74:22
answers [1] - 73:13
antithesis [1] - 66:17
anyway [2] - 25:8, 25:10
apologies [2] - 14:12, 28:20
App [2] - 58:9, 59:20
appeals [1] - 77:2
Appeals [2] - 58:17, 59:10
appear [1] - 10:2
APPEARANCES [1] - 2:1
applicable [2] - 6:6
application [2] - 41:11, 77:20
apply [2] - 5:24, 6:3
apposite [1] - 59:22
appreciate [1] - 78:8
approach [1] - 76:16
appropriate [4] - 30:20, 32:21, 32:22, 64:15
area [1] - 64:16
areas [1] - 5:9
arguably [1] - 44:12
argue [6] - 29:18, 30:3, 39:4, 43:20, 57:11, 74:7
argued [2] - 57:16, 67:8, 67:10
argument [11] - 34:22, 40:12, 41:9, 43:16, 44:19, 44:23, 45:1, 52:7, 76:21, 77:7, 77:18
argumentative [2] - 16:18, 26:10
arguments [4] - 5:13, 29:13, 31:23, 57:18
arose [2] - 42:9,

42:10
arrangements [2] - 66:4, 66:20
artwork [1] - 17:4
ascertainable [2] - 60:22, 61:15
Asmus [2] - 60:13, 61:6
ASMUS [1] - 60:14
aspect [1] - 17:5
asserts [1] - 33:8
assets [1] - 34:15
assistance [1] - 69:9
assume [7] - 38:15, 39:1, 39:8, 44:23, 56:14, 57:5
attend [1] - 20:8
attended [2] - 20:9, 20:10
attention [1] - 15:24
Attorney [1] - 2:12
Attorneys [1] - 2:6
attribute [1] - 26:17
audience [4] - 15:22, 22:11, 22:18
audiences [1] - 22:8
award [4] - 68:13, 68:14, 69:13, 75:5
aware [1] - 17:23

**B**

background [1] - 33:14
band [18] - 15:16, 18:10, 19:21, 20:7, 20:14, 20:17, 21:6, 21:7, 22:14, 26:14, 26:16, 26:18, 26:25, 27:3, 27:6, 27:9, 43:18, 44:20
bands [2] - 66:12, 66:20
bar [1] - 50:25
bargaining [1] - 60:7
based [5] - 5:14, 6:3, 7:2, 7:9, 8:6, 8:20, 10:1, 38:18, 42:4, 61:1, 61:2
basic [1] - 54:15
basis [4] - 56:16, 57:15, 63:2, 66:22
beautiful [1] - 22:16
become [1] - 72:5
becomes [1] - 41:12
beg [1] - 24:12
begin [3] - 15:10, 30:24, 31:23
beginning [4] - 16:24, 47:12, 51:5,

70:24
behind [3] - 52:5, 73:2, 74:12
believes [1] - 18:13
Bell [1] - 60:14
bells [1] - 50:20
belonged [1] - 26:3
bench [3] - 50:6, 58:12, 77:11
Bender [1] - 75:11
benefits [3] - 24:7, 24:23, 61:9
best [1] - 75:3
better [3] - 72:20, 73:19, 75:5
between [5] - 10:13, 15:22, 20:7, 42:8, 42:13
Beverly [1] - 2:13
beyond [2] - 22:21, 23:13
big [1] - 11:18
bigger [1] - 29:22
billings [4] - 58:19, 58:20, 59:7, 59:16
bind [3] - 36:8, 36:11, 37:7
binding [2] - 37:19, 39:23
BIROTTE [1] - 1:3
bit [1] - 17:12
bled [1] - 8:16
bleeding [1] - 9:7
Bob [1] - 20:16
boos [1] - 22:17
Boulevard [1] - 2:13
bound [9] - 35:18, 35:20, 35:24, 36:11, 36:13, 37:3, 37:12, 38:11, 38:22
branch [1] - 77:20
breach [28] - 5:17, 6:25, 7:20, 10:1, 36:17, 42:5, 45:4, 51:9, 51:12, 51:17, 52:12, 52:16, 53:12, 54:6, 54:17, 60:5, 72:11, 72:12, 72:20, 72:21, 72:24, 73:9, 73:25, 74:21, 74:22
breached [3] - 51:21, 53:17, 73:6
break [2] - 17:3, 28:21
Breakfast [2] - 21:10, 23:20
brief [1] - 60:16
briefing [1] - 62:16
briefly [1] - 61:18
briefs [1] - 61:3

bring [7] - 11:11, 12:1, 17:2, 30:21, 31:8, 32:5, 70:25
brought [2] - 16:25, 24:20
building [1] - 47:19
bunch [1] - 16:13
burden [1] - 46:18
business [6] - 16:25, 17:2, 17:6, 23:10, 23:18, 34:21
buttress [1] - 45:7
BY [18] - 2:4, 2:12, 12:18, 15:12, 16:12, 17:11, 18:17, 19:18, 20:2, 20:25, 21:8, 21:20, 23:4, 23:9, 23:17, 25:16, 26:12, 26:22

**C**

CACI [1] - 75:10
Cal [3] - 58:9, 59:20, 60:15
calculated [1] - 60:5
CALIFORNIA [5] - 1:2, 1:15, 1:24, 5:1, 79:4
California [6] - 2:8, 2:13, 60:14, 60:18, 60:24, 79:8
CAMPBELL [1] - 1:5
cannot [3] - 5:20, 68:13, 68:14
cap [2] - 75:5, 75:7
caps [1] - 54:1
carefully [1] - 48:9
CARLIN [134] - 2:4, 2:5, 32:14, 32:20, 32:23, 32:25, 33:18, 34:3, 34:19, 35:3, 35:9, 35:13, 36:2, 36:15, 36:20, 36:24, 37:4, 37:13, 37:17, 38:7, 39:1, 39:6, 39:8, 39:12, 39:18, 40:2, 40:5, 40:8, 40:13, 40:17, 40:24, 42:3, 42:12, 42:17, 43:8, 43:17, 43:24, 45:11, 46:13, 46:19, 46:23, 47:2, 47:7, 47:17, 47:21, 48:1, 49:10, 49:14, 49:21, 49:24, 50:4, 50:8, 50:12, 50:15, 50:18, 50:22, 51:2, 51:7, 51:11, 51:16, 51:19, 52:11, 52:25, 53:8, 53:20,

53:23, 54:3, 54:5, 54:7, 54:22, 55:7, 55:14, 55:25, 56:7, 56:11, 56:14, 57:3, 57:13, 58:3, 58:6, 58:12, 59:1, 61:18, 61:21, 62:9, 62:12, 63:1, 63:7, 63:18, 64:2, 64:11, 64:15, 64:21, 64:24, 65:3, 65:7, 65:12, 65:15, 65:19, 66:9, 66:15, 67:4, 67:9, 67:25, 68:3, 68:19, 69:4, 70:3, 70:6, 70:9, 70:13, 70:15, 70:22, 71:1, 71:10, 71:14, 71:20, 71:23, 72:18, 72:24, 73:19, 74:3, 74:13, 74:25, 75:19, 76:3, 76:6, 76:10, 76:14, 76:16, 76:19, 76:21, 77:6, 77:9
Carlin [11] - 10:22, 39:2, 45:9, 45:22, 46:7, 54:19, 55:24, 66:7, 68:18, 68:25, 76:2
Carlin's [1] - 41:8
CARROLL [1] - 2:6
case [48] - 7:7, 9:14, 12:6, 12:9, 13:11, 14:3, 28:24, 28:25, 29:1, 29:2, 30:9, 31:25, 32:2, 32:4, 34:16, 43:6, 44:21, 49:5, 56:20, 58:10, 58:12, 58:13, 58:25, 59:1, 59:4, 59:18, 59:20, 59:22, 59:23, 59:24, 60:1, 60:6, 60:13, 60:15, 60:19, 60:25, 61:6, 61:9, 61:13, 61:21, 61:22, 63:13, 64:5, 73:16, 73:24, 78:3
Case [1] - 1:7
cases [4] - 59:21, 62:6, 77:20, 78:5
catalog [1] - 23:24
catch [1] - 54:1
categories [2] - 57:8, 65:16
CCRR [1] - 1:23
cell [1] - 70:16
central [1] - 60:8
CENTRAL [2] - 1:2
Central [1] - 79:8
Century [1] - 23:21
certain [5] - 6:19,

22:9, 43:13, 61:23, 66:12

**certainly** [4] - 17:1, 24:23, 43:20, 44:2

**CERTIFICATE** [1] - 79:1

**certify** [1] - 79:8

**challenge** [1] - 30:6

**chance** [4] - 8:9, 24:3, 76:11, 77:14

**change** [6] - 33:12, 37:25, 46:14, 53:15, 56:1, 61:7

**changed** [3] - 68:7, 73:25, 74:1

**changes** [1] - 52:21

**changing** [1] - 35:3

**CHARLES** [1] - 1:8

**charming** [1] - 15:20

**check** [2] - 48:17, 54:1

**circles** [1] - 38:10

**Circuit** [3] - 6:5, 35:11, 73:14

**circumstances** [10] - 45:3, 45:25, 46:9, 46:16, 56:16, 59:13, 65:2, 69:3, 69:5, 75:4

**circumstantial** [1] - 47:5

**citation** [1] - 65:15

**cited** [4] - 58:9, 59:21, 60:6, 63:10

**cites** [1] - 57:8

**citing** [2] - 60:19, 61:9

**City** [1] - 22:4

**civil** [1] - 78:5

**claim** [7] - 33:7, 43:19, 45:8, 51:18, 54:7, 55:7, 55:9

**claimed** [2] - 55:20, 56:7

**claims** [6] - 19:21, 33:16, 42:5, 51:16, 52:16, 53:12

**clarification** [1] - 31:3

**clean** [1] - 9:6

**clear** [4] - 33:21, 44:11, 52:9, 67:16

**clearer** [1] - 74:14

**clients** [1] - 62:2

**close** [2] - 12:5, 30:19

**closed** [5] - 33:10, 52:18, 53:13, 60:23

**closing** [12] - 5:8, 30:17, 30:24, 31:22, 32:12, 32:18, 33:13,

44:18, 44:23, 49:16, 50:2, 71:9

**Code** [1] - 79:9

**code** [1] - 61:1

**Cohen** [1] - 49:17

**colleague** [1] - 14:5

**collect** [2] - 23:23

**collective** [1] - 60:6

**coming** [2] - 62:1, 62:4

**comment** [3] - 11:1, 11:12, 50:12

**comments** [6] - 7:2, 8:10, 29:13, 55:23, 63:17, 64:17

**commercial** [1] - 61:1

**commission** [1] - 61:17

**commissions** [2] - 58:11, 58:14

**common** [1] - 66:11

**communication** [1] - 71:12

**company** [2] - 61:7, 61:24

**complaint** [1] - 60:7

**complete** [1] - 8:2

**completed** [1] - 54:17

**completely** [1] - 59:21

**complex** [1] - 22:1

**comport** [1] - 16:17

**compromise** [1] - 45:19

**concern** [5] - 10:4, 46:5, 69:1, 70:20

**concluded** [1] - 78:16

**conclusion** [3] - 7:10, 18:24, 60:24

**conditions** [1] - 60:20

**conduct** [5] - 29:1, 32:3, 61:22, 64:23, 70:11

**cone** [3] - 50:12, 50:15, 50:22

**conference** [1] - 79:13

**conferences** [1] - 50:6

**conformance** [1] - 79:13

**confusing** [2] - 72:19, 73:22

**connected** [1] - 29:2, 32:4

**connection** [6] - 9:8,

10:18, 42:6, 45:24, 46:8, 46:15

**consider** [12] - 9:15, 9:16, 10:18, 37:5, 57:9, 60:10, 65:10, 65:17, 67:6, 67:11, 67:14, 77:10

**consideration** [2] - 11:6, 70:11

**considerations** [1] - 59:5

**considered** [3] - 46:1, 46:10, 46:17

**considering** [2] - 9:13, 9:14

**consistent** [3] - 7:22, 53:18, 58:17

**consolidated** [3] - 59:22, 60:25, 61:9

**constituted** [1] - 9:23

**construction** [4] - 58:20, 59:12, 59:15, 64:23

**consulted** [3] - 23:21, 25:8, 25:10

**consulting** [1] - 24:4

**contained** [1] - 61:3

**context** [3] - 9:21, 10:10, 33:4

**continue** [7] - 20:17, 33:1, 33:8, 39:13, 58:20, 59:16, 66:12

**continues** [2] - 36:3, 77:4

**continuing** [2] - 23:18, 42:18

**continuously** [1] - 27:18

**contract** [87] - 6:19, 6:21, 6:25, 7:20, 9:17, 10:1, 10:10, 12:20, 24:16, 36:18, 36:21, 36:25, 37:19, 38:3, 39:20, 39:21, 39:23, 39:25, 40:1, 40:8, 40:10, 40:12, 40:23, 41:9, 42:5, 43:2, 43:4, 43:21, 43:22, 43:24, 51:10, 51:12, 51:21, 52:7, 52:8, 52:11, 52:16, 53:12, 54:6, 54:8, 54:10, 54:12, 54:17, 54:21, 55:4, 55:13, 56:15, 57:5, 57:9, 57:11, 57:14, 57:16, 57:22, 58:1, 58:7, 58:14, 58:15, 59:3, 59:12, 59:13, 59:15, 59:25, 60:2,

60:8, 60:20, 61:10, 61:16, 62:14, 62:20, 63:4, 63:6, 63:19, 64:3, 64:7, 65:5, 65:14, 68:5, 69:2, 72:21, 72:24, 73:3, 73:10, 76:23, 76:25, 77:3

**contracts** [5] - 51:20, 51:23, 52:6, 61:12, 66:3

**contractual** [1] - 72:20, 73:20

**contradict** [1] - 16:19

**contrary** [1] - 5:25

**controversy** [1] - 7:14

**conversation** [2] - 16:1, 16:2

**Cooper's** [1] - 16:2

**copies** [2] - 47:15, 76:14

**copyrights** [1] - 43:19

**corporations** [3] - 6:4, 50:10, 51:1

**correct** [11] - 13:6, 24:17, 25:7, 25:20, 27:24, 34:8, 34:9, 36:23, 40:2, 56:8, 79:10

**corrected** [1] - 48:25

**COUNSEL** [1] - 2:1

**counsel** [3] - 18:12, 21:17, 23:3

**COUNTY** [1] - 79:3

**couple** [4] - 20:9, 25:3, 69:12, 71:25

**course** [10] - 10:10, 11:5, 23:15, 27:18, 34:1, 34:2, 34:20, 42:6, 42:7, 42:15

**court** [2] - 58:13, 59:3

**COURT** [252] - 1:1, 1:23, 5:7, 5:24, 6:2, 6:12, 6:15, 7:24, 9:11, 10:14, 10:22, 11:8, 11:14, 11:25, 12:8, 12:15, 13:15, 13:17, 13:20, 13:23, 14:1, 14:6, 14:10, 14:15, 14:19, 15:2, 15:5, 15:11, 16:9, 16:22, 17:10, 18:14, 18:25, 19:9, 19:14, 19:16, 20:1, 20:24, 21:4, 21:18, 22:23, 23:1, 23:8, 23:14, 23:16,

25:14, 26:9, 26:11, 26:21, 28:4, 28:8, 28:10, 28:12, 28:16, 28:19, 29:8, 29:16, 29:19, 29:24, 30:7, 30:16, 31:2, 31:6, 31:12, 32:10, 32:15, 32:17, 32:22, 32:24, 33:2, 33:6, 33:12, 34:2, 34:17, 34:22, 35:5, 35:10, 35:17, 36:7, 36:19, 36:23, 37:2, 37:7, 37:14, 38:6, 38:9, 39:2, 39:7, 39:11, 39:14, 39:20, 40:3, 40:7, 40:11, 40:16, 40:19, 41:1, 41:8, 41:19, 41:23, 42:11, 42:14, 42:23, 43:11, 43:23, 44:5, 44:9, 44:16, 45:9, 45:12, 45:15, 45:18, 45:20, 46:7, 46:14, 46:20, 46:22, 46:25, 47:5, 47:9, 47:11, 47:18, 47:24, 48:2, 48:11, 48:15, 48:17, 48:21, 48:25, 49:5, 49:8, 49:12, 49:16, 49:20, 49:25, 50:6, 50:10, 50:14, 50:17, 50:19, 50:24, 51:4, 51:9, 51:14, 51:18, 51:22, 51:25, 52:14, 52:19, 52:22, 53:7, 53:10, 53:25, 54:4, 54:6, 54:14, 54:19, 54:23, 55:11, 55:15, 55:17, 55:20, 55:22, 56:1, 56:8, 56:10, 56:13, 56:18, 57:10, 57:15, 58:5, 58:10, 58:25, 60:11, 60:16, 61:17, 61:20, 62:6, 62:11, 62:15, 63:5, 63:8, 63:12, 63:23, 64:5, 64:13, 64:18, 64:23, 65:1, 65:5, 65:11, 65:14, 65:18, 65:21, 66:7, 66:14, 66:16, 66:25, 67:6, 67:14, 67:19, 67:23, 68:2, 68:4, 68:9, 68:17, 68:21, 68:24, 69:8, 69:16, 69:22, 70:1, 70:5, 70:8, 70:11, 70:17, 70:23, 71:3, 71:7, 71:12, 71:15, 71:18, 71:22, 71:25, 72:8, 72:13, 72:17, 72:22, 73:1,

73:23, 74:5, 74:15, 75:1, 75:7, 75:13, 75:21, 75:25, 76:5, 76:7, 76:9, 76:11, 76:15, 76:17, 76:20, 77:5, 77:8, 77:10, 77:21, 78:1, 78:9, 78:11, 78:14

**Court** [33] - 9:25, 10:17, 12:4, 30:4, 30:11, 30:15, 34:24, 38:3, 38:7, 44:6, 53:1, 56:20, 57:21, 57:23, 58:17, 59:10, 60:3, 60:13, 60:15, 60:18, 60:25, 61:2, 61:6, 61:24, 62:18, 62:19, 62:23, 64:11, 68:11, 71:12, 79:7, 79:20

**Court's** [13] - 35:13, 35:14, 35:24, 35:25, 36:5, 36:16, 36:20, 36:24, 38:8, 38:13, 42:25, 56:24, 60:19

**court's** [1] - 59:9

**courtesy** [1] - 76:14

**Courthouse** [1] - 50:20

**COURTROOM** [11] - 5:6, 12:12, 12:14, 29:5, 29:7, 30:11, 30:14, 31:9, 31:11, 32:7, 78:15

**courtroom** [4] - 12:13, 29:6, 31:10, 75:22

**courts** [1] - 77:2

**cover** [2] - 17:4, 69:3

**covered** [1] - 11:19

**covering** [5] - 35:15, 36:4, 36:21, 37:20, 39:24

**covers** [2] - 37:25, 70:18

**create** [1] - 62:2

**creating** [1] - 63:11

**creative** [1] - 17:5

**credibility** [1] - 49:12

**credit** [1] - 20:15

**Crime** [1] - 23:21

**criminal** [2] - 33:15, 78:4

**CROSS** [1] - 25:15

**cross** [2] - 13:15, 25:14

**cross-examination** [1] - 25:14

**CROSS-EXAMINATION** [1] - 25:15

**CRR** [1] - 79:20
**CSR** [2] - 1:23, 79:20
**cursory** [1] - 77:18
**custom** [9] - 65:10, 65:19, 65:24, 66:2, 66:6, 66:10, 66:17, 66:18, 67:2
**cut** [2] - 14:14, 14:17

## D

**damages** [17] - 60:3, 60:4, 65:6, 68:5, 68:14, 68:15, 69:13, 69:20, 69:23, 70:5, 72:4, 72:15, 73:6, 74:23, 74:24, 75:22
**date** [13] - 40:14, 41:12, 41:13, 42:8, 42:12, 56:17, 56:25, 57:16, 63:3, 63:4, 63:6, 63:10, 76:24
**Date** [1] - 79:16
**Dave** [3] - 9:2, 17:16, 20:8
**David** [1] - 24:19
**DAVID** [1] - 2:4
**Davies** [6] - 9:2, 10:11, 20:18, 26:24, 34:13, 37:12
**DAY** [1] - 1:14
**days** [1] - 22:3
**deal** [9] - 6:23, 8:21, 8:23, 24:9, 24:14, 24:25, 31:15, 53:8, 78:12
**dealing** [1] - 78:3
**debatable** [1] - 5:9
**debating** [1] - 54:10
**decide** [9] - 9:10, 39:14, 43:13, 56:4, 57:25, 63:19, 63:21, 63:23, 72:4
**decision** [2] - 52:2, 61:6
**decisions** [1] - 61:2
**DEFENDANT** [1] - 2:10
**Defendant** [6] - 6:18, 54:8, 55:12, 55:17, 56:2, 72:20
**defendant** [6] - 6:20, 7:9, 33:7, 53:16, 64:3
**defendants** [7] - 6:16, 6:24, 7:7, 59:17, 59:21, 68:13, 68:14
**Defendants** [1] - 1:9
**defense** [6] - 13:22, 31:2, 32:15, 37:9, 41:7, 78:9

**Defense** - 66:1
**definite** [1] - 60:21
**definitely** [1] - 48:16
**delete** [1] - 52:19
**deleting** [2] - 55:9, 55:19
**deliberate** [2] - 70:8, 74:8
**deliberation** [1] - 70:20
**deliberations** [3] - 30:24, 31:23, 67:12
**Delicate** [42] - 5:18, 6:8, 6:13, 6:20, 7:21, 10:4, 10:5, 10:20, 10:24, 33:7, 33:24, 33:25, 34:5, 34:11, 34:14, 34:15, 34:19, 34:20, 34:24, 35:18, 35:19, 35:21, 35:23, 36:11, 36:13, 37:9, 38:4, 38:11, 38:19, 38:22, 44:1, 45:6, 51:24, 52:3, 52:8, 52:12, 53:16, 56:2, 72:12, 74:20
**Delicate's** [1] - 34:21
**delivery** [2] - 59:25, 60:2
**demonstrates** [1] - 66:13
**demur** [1] - 59:9
**denied** [1] - 21:14
**denies** [2] - 21:15, 33:7
**deposition** [1] - 50:2
**depositions** [1] - 48:21
**deputy** [1] - 75:22
**DEPUTY** [11] - 5:6, 12:12, 12:14, 29:5, 29:7, 30:11, 30:14, 31:9, 31:11, 32:7, 78:15
**described** [1] - 22:10
**describing** [1] - 25:5
**determination** [8] - 9:7, 10:12, 36:16, 36:20, 44:7, 62:24, 64:6, 73:2
**determine** [3] - 10:9, 62:19, 64:7
**determined** [4] - 53:1, 54:13, 58:13, 59:11
**determining** [2] - 9:17, 42:7
**deviate** [1] - 64:9
**difference** [1] - 68:8
**different** [24] - 29:14,

34:3, 34:24, 35:1, 35:8, 35:21, 35:25, 37:11, 37:15, 38:20, 38:25, 40:9, 41:4, 41:24, 57:1, 62:7, 64:9, 66:3, 66:4, 66:20, 69:4, 69:7, 73:23, 73:24
**differently** [3] - 35:2, 35:10, 40:21
**dire** [1] - 78:2
**direct** [2] - 15:24, 47:5
**directed** [1] - 14:4
**direction** [1] - 34:7
**directly** [1] - 6:22
**disagree** [3] - 38:21, 42:24, 57:21
**disc** [1] - 47:15
**discuss** [2] - 28:21, 77:22
**discussed** [3] - 8:6, 34:7, 36:14
**discussing** [2] - 33:21, 33:22
**discussion** [3] - 7:14, 9:12, 10:3
**dismiss** [2] - 20:16, 30:21
**dismissed** [3] - 21:6, 27:11, 33:15
**displace** [1] - 53:5
**dispute** [5] - 10:10, 11:4, 27:20, 42:9, 42:10
**disputed** [1] - 67:20
**disruption** [1] - 27:17
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [4] - 30:15, 58:23, 79:7, 79:8
**DIVISION** [1] - 1:2
**docket** [1] - 76:9
**Document** [1] - 67:20
**document** [2] - 14:22, 19:8
**documents** [2] - 17:7, 38:19
**dolls** [1] - 59:7
**done** [5] - 17:7, 25:3, 29:13, 35:20, 75:17
**door** [1] - 27:10
**Doors** [1] - 66:12
**double** [4] - 11:22, 48:17, 68:13, 75:8
**Dougie** [2] - 17:18, 20:16
**DOUGLAS** [1] - 1:5

**down** [7] - 13:18, 19:3, 28:5, 28:10, 50:23, 57:1, 57:2
**drive** [3] - 47:25, 48:4, 48:6
**drop** [1] - 50:24
**drummer** [3] - 26:14, 26:18, 27:6
**dumb** [1] - 55:1
**duration** [28] - 9:15, 40:8, 40:11, 40:13, 40:14, 41:14, 41:21, 41:22, 42:7, 43:1, 43:8, 43:10, 59:11, 60:3, 60:21, 61:10, 61:25, 62:1, 62:5, 65:14, 65:25, 66:6, 66:14, 66:18, 66:23, 76:24, 77:1, 77:2
**during** [5] - 11:16, 17:13, 22:6, 22:7, 70:20
**dust** [1] - 21:11
**duty** [1] - 70:8
**DVD** [1] - 24:1

## E

**e-mail** [1] - 75:22
**easy** [1] - 15:20
**ECF** [1] - 77:11
**edit** [2] - 51:15, 63:16
**effect** [3] - 10:24, 39:13, 59:10
**effective** [6] - 37:19, 39:22, 39:23, 41:9, 41:12, 41:16
**efforts** [1] - 24:23
**either** [6] - 18:1, 18:5, 40:14, 58:15, 72:13, 74:22
**electronic** [7] - 47:12, 48:12, 48:13, 48:19, 49:1, 49:2
**elements** [4] - 6:17, 53:6, 54:16, 55:6
**elicited** [1] - 8:22
**employment** [1] - 61:12
**end** [6] - 7:25, 12:9, 51:20, 63:2, 73:5, 74:1
**endeavoring** [1] - 73:15
**enforceable** [3] - 6:19, 6:21, 53:3
**enter** [5] - 40:17, 40:24, 53:2, 66:5, 66:20

**entered** [13] - 36:4, 37:20, 39:10, 39:24, 40:1, 40:19, 40:21, 53:4, 54:8, 54:10, 54:12, 55:12, 69:5
**entering** [1] - 40:13
**enters** [2] - 12:13, 31:10
**entire** [1] - 9:22
**entitled** [1] - 79:12
**equal** [1] - 13:3
**equally** [1] - 13:2
**equipment** [1] - 59:23
**ERLEWINE** [1] - 2:4
**error** [2] - 60:1, 60:3
**essentially** [1] - 76:22
**et** [2] - 1:5, 1:8
**evening** [6] - 31:17, 67:15, 75:19, 77:10, 77:22, 78:14
**event** [14] - 40:1, 40:15, 40:16, 43:18, 43:21, 43:22, 43:23, 44:2, 44:3, 60:21, 60:22, 61:15
**events** [2] - 43:13, 43:20
**evidence** [17] - 9:8, 10:3, 10:8, 10:18, 11:3, 11:4, 19:8, 42:6, 45:24, 46:8, 46:15, 47:1, 47:6, 47:11, 49:1, 70:11, 73:16
**exact** [1] - 13:4
**exactly** [2] - 10:16, 68:9
**examination** [1] - 25:14
**EXAMINATION** [1] - 25:15
**example** [1] - 57:7
**examples** [1] - 23:18
**exchange** [7] - 17:13, 17:15, 17:18, 18:6, 25:19, 25:22, 26:2
**excluded** [1] - 65:25
**excuse** [2] - 31:17, 39:3
**executing** [1] - 37:21
**Exhibit** [2] - 12:19, 34:8
**exhibit** [2] - 47:23, 49:2
**EXHIBIT** [2] - 4:1, 4:2
**exhibits** [4] - 47:25, 48:6, 48:12, 48:19
**exits** [2] - 29:6, 32:8

**experienced** [2] - 50:17, 50:18
**expert** [5] - 5:20, 5:21, 5:23, 49:21
**experts** [1] - 49:17
**explained** [1] - 65:1
**express** [5] - 22:10, 28:23, 31:25, 56:15, 62:13
**extent** [4] - 6:7, 52:1, 52:6, 66:19
**Eye** [2] - 18:11, 18:18

**F**

**facilitate** [1] - 47:19
**fact** [5] - 14:24, 24:19, 27:5, 42:20, 51:4
**factors** [4] - 9:15, 42:7, 67:21, 67:24
**facts** [1] - 53:3
**factual** [1] - 6:17
**failed** [1] - 42:21
**fair** [2] - 11:4, 50:11
**fall** [1] - 31:13
**Famous** [3] - 21:15, 21:23, 22:6
**far** [4] - 12:22, 12:23, 36:15, 54:17
**fashion** [1] - 18:22
**fashioned** [1] - 76:19
**FEBRUARY** [1] - 5:1
**February** [2] - 1:14, 79:16
**Federal** [2] - 79:6, 79:20
**FEDERAL** [1] - 1:23
**fees** [1] - 24:22
**figure** [1] - 18:15
**figured** [1] - 5:10
**figuring** [1] - 34:21
**filed** [6] - 67:20, 76:7, 76:9, 76:13, 77:12, 77:13
**filing** [1] - 75:24
**final** [1] - 11:12
**finalizing** [1] - 29:9
**finally** [4] - 24:1, 24:3, 28:24, 32:1
**findings** [1] - 8:19
**fine** [9] - 6:11, 35:11, 38:21, 47:21, 51:2, 51:7, 53:20, 55:25, 64:24
**finish** [3] - 31:24, 41:20, 69:16
**FIRST** [1] - 1:24
**first** [5] - 18:11, 34:5, 55:3, 55:4, 62:17

**five** [6] - 8:12, 16:14, 17:6, 57:8, 65:16, 67:21
**fixed** [1] - 60:2
**flash** [3] - 47:25, 48:4, 48:6
**focus** [1] - 73:15
**following** [2] - 58:12, 67:16
**follows** [1] - 33:6
**font** [2] - 19:3, 19:4
**FOR** [2] - 2:3, 2:10
**force** [1] - 36:3
**forced** [2] - 19:21, 27:8
**foregoing** [1] - 79:10
**forever** [2] - 40:22, 40:23
**forfeiture** [1] - 78:3
**form** [11] - 8:3, 10:14, 28:23, 30:18, 31:25, 43:3, 69:19, 71:19, 72:1, 72:3, 75:11
**formal** [25] - 35:15, 36:3, 36:6, 36:21, 36:25, 37:1, 37:5, 37:20, 37:25, 38:5, 38:11, 38:14, 38:15, 39:8, 39:9, 39:19, 39:24, 40:9, 40:14, 40:17, 40:20, 40:22, 40:24, 41:9, 54:16
**format** [6] - 5:16, 47:12, 48:13, 49:1, 49:3, 79:12
**forward** [1] - 15:5
**foundation** [2] - 19:24, 26:20
**four** [2] - 60:5, 72:5
**Francisco** [1] - 2:8
**free** [1] - 78:6
**Friday** [3] - 8:15, 14:9, 14:12
**front** [1] - 65:23
**fully** [3] - 37:18, 39:22
**future** [2] - 20:20, 60:21

**G**

**game** [1] - 11:4
**gear** [1] - 22:1
**general** [1] - 67:9
**generally** [2] - 47:14, 59:11
**generated** [2] - 61:24, 77:1
**generates** [1] - 24:8

**gentlemen** [2] - 28:20, 31:12
**Given** [6] - 6:10, 10:22, 11:9, 12:20, 13:23, 24:19
**given** [2] - 22:12, 24:20
**GIVEN** [29] - 2:4, 2:4, 5:22, 6:11, 10:23, 12:4, 12:11, 13:16, 13:24, 14:4, 28:14, 29:15, 30:6, 31:1, 48:16, 48:19, 48:23, 49:4, 49:7, 68:6, 69:18, 69:24, 71:5, 72:7, 72:9, 72:15, 77:24, 78:8, 78:13
**Given's** [1] - 74:15
**glance** [1] - 77:17
**Glass** [9] - 8:22, 9:3, 10:23, 10:24, 11:16, 11:21, 18:4, 25:18, 45:16
**Glass's** [1] - 8:17
**grant** [1] - 59:9
**great** [3] - 15:21, 75:21, 78:14
**greeted** [1] - 22:17
**grounds** [1] - 26:9
**guess** [15] - 6:6, 6:24, 12:8, 29:8, 35:7, 37:15, 44:16, 44:20, 47:21, 52:4, 53:25, 64:17, 72:6, 73:1, 75:15
**GUTMAN** [108] - 2:11, 2:12, 6:1, 6:13, 7:19, 8:14, 9:19, 10:17, 11:12, 11:15, 12:17, 12:18, 13:14, 13:22, 16:7, 16:18, 17:8, 18:12, 18:23, 19:7, 19:12, 19:23, 20:23, 21:3, 21:17, 22:21, 23:7, 23:13, 25:16, 26:12, 26:22, 28:2, 28:18, 29:17, 29:23, 30:2, 31:3, 32:16, 33:3, 33:11, 41:6, 41:11, 41:21, 44:6, 44:15, 44:25, 45:13, 45:17, 45:19, 46:4, 46:21, 46:24, 47:4, 47:10, 47:22, 48:4, 48:9, 48:14, 49:11, 49:15, 49:19, 49:23, 50:5, 50:9, 51:3, 51:8, 51:23, 52:13, 52:15, 52:20, 52:24, 53:5, 53:19,

**gentlemen** [2] - 53:21, 54:15, 55:16, 55:19, 55:21, 56:9, 60:12, 60:17, 63:9, 64:22, 64:25, 65:4, 65:23, 66:17, 67:16, 67:22, 68:10, 68:23, 69:11, 70:4, 70:7, 70:10, 70:14, 71:11, 71:13, 71:17, 71:21, 71:24, 75:3, 75:9, 75:24, 76:8, 76:18, 77:17, 78:10
**Gutman** [21] - 5:25, 6:12, 8:13, 12:16, 13:20, 29:16, 33:17, 41:1, 41:5, 44:5, 45:12, 51:22, 53:10, 54:14, 60:11, 63:8, 65:22, 66:16, 69:8, 71:15, 75:2
**Gutman's** [1] - 12:6
**guys** [1] - 29:24, 62:16

**H**

**Haggerty** [3] - 59:4, 59:6, 76:23
**half** [2] - 34:10, 77:25
**hallway** [1] - 16:3
**handed** [1] - 5:7
**handled** [1] - 17:14
**happy** [1] - 22:19
**hard** [1] - 47:15
**hear** [10] - 7:9, 14:11, 21:19, 23:2, 26:13, 31:22, 41:3, 44:18, 45:22, 76:1
**heard** [9] - 11:23, 15:25, 17:12, 18:9, 21:14, 41:23, 44:20, 77:15
**hearsay** [1] - 11:22
**heartburn** [1] - 56:3
**held** [4] - 58:17, 60:3, 77:2, 79:11
**Helliwell** [5] - 15:16, 15:17, 15:20, 17:15, 17:17
**help** [2] - 22:23, 51:14
**hereby** [2] - 59:6, 79:8
**high** [3] - 19:4, 71:3, 71:4
**highlight** [2] - 5:9, 7:13
**highlighted** [1] - 7:11

**Hills** [1] - 2:13
**himself** [3] - 17:18, 17:22, 24:5
**Hodgson** [61] - 5:18, 6:8, 6:18, 8:10, 8:20, 10:4, 10:5, 10:13, 10:19, 12:1, 15:25, 16:13, 17:21, 17:24, 18:9, 18:19, 19:5, 19:20, 19:25, 20:3, 20:7, 20:12, 20:18, 21:9, 21:14, 23:5, 24:13, 25:4, 26:3, 26:13, 26:18, 27:5, 27:8, 27:10, 34:7, 36:16, 37:12, 38:4, 38:16, 39:15, 42:18, 42:20, 43:1, 43:25, 45:6, 51:24, 52:4, 52:7, 52:12, 53:16, 54:8, 54:12, 55:12, 55:18, 72:11, 72:20, 72:25, 73:17, 74:17
**HODGSON** [1] - 1:8
**Hodgson's** [2] - 19:1, 27:23
**hold** [2] - 19:16, 28:5
**Honor** [44] - 5:22, 6:11, 7:19, 11:3, 12:4, 12:11, 13:16, 13:22, 13:24, 14:4, 14:8, 16:11, 16:21, 26:7, 28:9, 28:11, 28:15, 28:18, 31:1, 33:18, 34:4, 41:6, 44:6, 46:19, 47:2, 48:20, 49:7, 53:23, 60:9, 60:12, 61:19, 62:9, 64:24, 65:7, 67:5, 68:6, 70:13, 71:5, 72:10, 75:20, 76:3, 77:24, 78:10, 78:13
**HONORABLE** [1] - 1:3
**hope** [3] - 29:19, 30:1, 31:20
**hoped** [1] - 31:13
**hopefully** [1] - 29:12
**hoping** [1] - 78:2
**host** [1] - 9:15
**hour** [3] - 29:25, 64:13, 77:25
**HOURIGAN** [4] - 1:23, 79:6, 79:19, 79:20
**hours** [1] - 39:5
**house** [1] - 20:8
**huddle** [1] - 74:3
**humor** [1] - 15:21

**I**

**idea** [2] - 75:15, 77:13
**identical** [3] - 68:7, 72:16, 77:18
**identify** [1] - 8:24
**III** [1] - 2:6
**il** [1] - 40:22
**impetus** [1] - 27:2
**implied** [3] - 45:8, 59:12, 77:3
**implies** [2] - 56:25, 60:23
**implying** [4] - 56:16, 57:15, 63:3, 63:5
**important** [1] - 58:8
**inadvertently** [1] - 18:6
**Inc** [2] - 58:23, 59:19
**inclined** [4] - 11:9, 30:4, 63:15, 67:7
**include** [3] - 37:24, 38:1, 65:24
**including** [4] - 16:15, 45:25, 46:9, 46:16
**income** [1] - 59:2, 61:25, 62:3, 76:25, 77:3
**incorporate** [1] - 33:16
**increased** [1] - 27:14
**indefinite** [2] - 58:15, 61:10
**INDEX** [2] - 3:1, 4:1
**indicated** [2] - 9:25, 14:9, 14:13
**indicative** [1] - 14:25
**individuals** [1] - 17:18
**industry** [5] - 5:22, 65:10, 65:19, 66:10, 67:2
**inescapable** [1] - 37:23
**information** [1] - 8:16
**initial** [1] - 6:9
**inner** [1] - 17:4
**input** [1] - 24:4
**InQuest** [1] - 59:19
**insert** [1] - 52:16
**inserting** [1] - 63:1
**insofar** [1] - 10:25
**instance** [1] - 23:25
**instances** [1] - 49:1
**instead** [1] - 62:12
**instruct** [3] - 29:12, 30:24, 71:5

**instructed** [1] - 29:18
**Instruction** [11] - 7:8, 32:12, 32:18, 33:13, 41:7, 49:9, 49:16, 50:2, 55:22, 64:12, 71:9
**instruction** [32] - 6:2, 6:5, 7:1, 7:6, 8:21, 9:14, 10:15, 33:15, 41:6, 41:24, 42:2, 42:4, 46:12, 49:6, 51:5, 51:9, 53:9, 54:16, 54:18, 57:7, 60:9, 62:8, 62:10, 64:20, 67:10, 67:17, 67:18, 67:19, 67:21, 68:21, 75:9, 75:10
**instructions** [18] - 5:8, 7:16, 9:20, 29:9, 29:21, 30:4, 30:17, 31:14, 31:22, 32:11, 39:17, 47:14, 65:8, 65:9, 67:20, 69:16, 74:7, 75:11
**int** [1] - 40:22
**intend** [1] - 74:7
**intended** [1] - 11:7
**intent** [2] - 10:9, 11:18
**interest** [1] - 24:21
**interfere** [1] - 61:8
**internal** [1] - 22:19
**interpretation** [5] - 8:22, 35:24, 36:1, 41:4, 56:10
**interpreted** [1] - 60:20
**interrupt** [1] - 19:7
**interruption** [1] - 13:7
**interval** [1] - 60:4
**interviewed** [1] - 23:22
**introduced** [2] - 48:21, 49:2
**introduction** [3] - 65:5, 68:4, 71:18
**inverted** [1] - 45:4
**invited** [1] - 24:4
**involve** [1] - 38:4
**involved** [3] - 24:11, 24:13, 33:24
**involving** [2] - 37:8, 58:10
**irrelevant** [1] - 16:7
**issue** [16] - 5:10, 7:3, 8:15, 35:17, 36:12, 36:14, 37:10, 42:24, 56:19, 61:5, 67:2,

68:11, 72:5, 73:3, 73:15, 77:20
**issues** [10] - 9:9, 9:12, 23:20, 26:23, 31:15, 33:16, 35:12, 45:14, 73:7, 78:4
**ist's** [1] - 21:23
**items** [1] - 30:2

**J**

**Jampol** [3] - 5:21, 49:18, 67:1
**Jampol's** [1] - 65:24
**Jay** [1] - 16:2
**John** [6] - 15:16, 15:17, 17:17, 20:16, 58:22, 59:6
**joined** [1] - 56:9
**JR** [1] - 1:3
**judge** [1] - 73:11
**JUDGE** [1] - 1:3
**judicial** [1] - 79:13
**jump** [1] - 68:25
**jurors** [7] - 11:10, 31:20, 44:18, 54:20, 65:16, 70:25, 78:4
**Jury** [4] - 12:13, 29:6, 31:10, 64:12
**jury** [43] - 5:8, 5:11, 6:7, 8:11, 9:9, 9:16, 10:17, 12:1, 12:12, 29:5, 29:18, 30:3, 30:17, 30:21, 31:8, 31:9, 31:14, 32:6, 32:7, 32:8, 32:11, 37:4, 39:4, 39:14, 43:13, 47:13, 47:16, 47:23, 52:2, 57:5, 57:7, 57:25, 60:10, 62:17, 67:10, 70:12, 70:25, 71:6, 73:8, 73:15, 74:6, 75:17, 78:2
**jury's** [2] - 11:6, 75:18

**K**

**keep** [1] - 62:4
**keeping** [1] - 46:2
**keeps** [1] - 62:1
**kids** [2] - 71:1, 71:3
**kind** [9] - 17:4, 18:18, 19:3, 20:12, 29:1, 32:3, 43:9, 59:2, 60:9
**kitchen** [1] - 17:6
**knowledge** [1] - 18:5
**known** [1] - 50:20

**knows** [1] - 73:7
**KYLE** [1] - 2:5
**Kyle** [1] - 14:5

**L**

**lacks** [1] - 26:20
**ladies** [1] - 28:20, 31:12
**Lambert** [2] - 58:22, 59:1
**language** [9] - 8:1, 45:7, 56:15, 57:14, 62:13, 64:9, 64:10, 68:23, 69:10
**large** [1] - 22:8
**last** [6] - 21:12, 22:13, 45:10, 45:13, 63:18, 66:24
**Last** [3] - 21:15, 21:23, 22:6
**law** [7] - 9:14, 9:20, 35:14, 36:16, 64:5, 64:8, 64:16
**Law** [2] - 2:6, 2:12
**LAW** [1] - 2:11
**lawsuit** [3] - 11:24, 18:19, 27:22
**lawyer** [2] - 19:16, 23:2
**lawyers** [2] - 28:21, 50:25
**leading** [2] - 27:2, 39:6
**least** [10] - 7:1, 7:11, 7:13, 9:25, 38:18, 43:24, 44:4, 56:24, 66:9, 74:1
**leave** [5] - 12:10, 19:21, 21:6, 21:7, 51:19
**leaving** [1] - 22:14
**lectern** [1] - 14:10
**left** [7] - 17:16, 18:10, 25:9, 36:25, 56:21, 57:25, 64:6
**legal** [3] - 18:23, 19:8, 24:22
**legitimate** [1] - 66:22
**less** [1] - 47:19
**letter** [2] - 18:19, 34:7
**liability** [1] - 8:19
**lieu** [1] - 50:2
**light** [2] - 37:15, 42:24
**likely** [1] - 30:19
**limine** [1] - 11:17
**Limine** [1] - 66:1
**limit** [1] - 60:3

**limited** [3] - 18:22, 61:12, 61:14
**line** [8] - 14:17, 31:24, 33:7, 53:11, 53:14, 63:1, 63:2, 72:5
**Line** [1] - 53:24
**lines** [1] - 14:16
**link** [1] - 15:21
**list** [1] - 72:5
**listed** [1] - 40:11
**listen** [2] - 15:20, 15:21
**lists** [1] - 67:21
**litany** [1] - 20:13
**live** [2] - 24:2, 50:2
**LLP** [1] - 2:4
**logic** [1] - 45:4
**longstanding** [1] - 58:18
**look** [38] - 5:12, 7:5, 7:12, 10:11, 17:3, 29:8, 30:7, 34:4, 34:17, 35:2, 37:14, 39:2, 40:20, 44:22, 47:15, 50:19, 51:25, 54:23, 55:3, 56:2, 56:23, 57:21, 62:6, 64:12, 64:14, 64:18, 65:12, 65:21, 66:25, 72:1, 73:23, 74:10, 75:6, 75:23, 77:13, 77:14
**looked** [1] - 64:13
**looking** [1] - 67:17
**looks** [2] - 6:11, 47:2
**loop** [1] - 24:20
**LOS** [4] - 1:15, 1:24, 5:1, 79:3
**love** [2] - 22:11, 76:15
**loved** [1] - 22:19
**luck** [2] - 11:13, 55:4
**Lura** [6] - 58:8, 60:19, 61:13, 61:21, 76:22

### M

**mail** [1] - 75:22
**main** [3] - 27:2, 27:6, 57:3
**maintain** [1] - 42:18
**management** [1] - 34:14
**manager** [2] - 17:16, 17:17
**managing** [1] - 10:25
**manner** [1] - 61:8
**Margereson** [3] -

9:1, 14:14, 17:16
**Margereson's** [1] - 20:8
**material** [1] - 34:14
**matter** [12] - 28:21, 28:24, 29:2, 31:25, 32:3, 35:14, 36:16, 37:2, 38:15, 43:7, 69:2, 79:12
**matters** [2] - 33:24, 38:9
**Matthew** [1] - 75:11
**max** [1] - 50:20
**maximum** [1] - 75:5
**MC** [2] - 15:15, 15:16
**mean** [2] - 8:11, 35:7, 35:12, 36:7, 36:10, 36:12, 37:14, 40:20, 41:3, 44:22, 54:20, 54:24, 55:7, 56:2, 56:18, 57:10, 57:20, 57:23, 63:12, 63:24, 67:8, 70:23
**meaning** [2] - 48:13, 64:20
**meant** [1] - 73:10
**meeting** [7] - 20:3, 20:4, 20:7, 20:11, 21:1, 21:2, 21:5
**members** [2] - 20:7, 23:11
**memorandum** [14] - 7:4, 7:23, 7:24, 33:10, 37:18, 37:22, 37:23, 39:21, 51:12, 52:17, 53:12, 53:17, 53:22, 74:17
**mentioned** [4] - 25:17, 31:4, 35:15, 37:6
**merits** [1] - 38:18
**Mesa** [1] - 2:7
**met** [1] - 15:20
**method** [1] - 75:5
**microphone** [1] - 22:10
**mid** [1] - 22:9
**might** [7] - 5:10, 18:6, 51:11, 54:21, 69:18, 69:19, 72:19
**mind** [3] - 12:2, 32:6, 68:22
**minds** [1] - 56:4
**minimum** [1] - 74:15
**minutes** [8] - 8:12, 17:3, 28:22, 29:3, 29:10, 29:21, 30:10, 77:19
**miss** [1] - 21:23
**missing** [5] - 21:14,

21:16, 40:3, 53:24, 65:8
**misstates** [1] - 26:19
**misunderstood** [1] - 21:25
**mixing** [1] - 17:1
**modify** [1] - 62:12
**moment** [2] - 5:8, 70:1
**Monday** [1] - 1:14
**MONDAY** [1] - 5:1
**money** [6] - 20:14, 25:21, 25:23, 25:24, 26:1, 70:2
**monies** [3] - 18:6, 25:19, 26:2
**month** [1] - 60:4
**morning** [13] - 5:15, 7:2, 8:7, 31:5, 31:19, 34:18, 34:23, 35:12, 42:25, 46:5, 56:19, 74:10, 75:14
**most** [2] - 20:6, 58:7
**motion** [7] - 11:17, 12:5, 12:9, 14:1, 58:3, 76:6, 77:9
**Motion** [1] - 66:1
**move** [4] - 13:24, 16:11, 17:8, 19:19
**moved** [1] - 47:19
**moving** [1] - 7:17
**MR** [293] - 5:22, 6:1, 6:11, 6:13, 7:19, 8:14, 9:19, 10:17, 10:23, 11:12, 11:15, 12:4, 12:11, 12:17, 12:18, 13:14, 13:16, 13:22, 13:24, 14:4, 14:8, 14:12, 14:16, 14:20, 15:4, 15:10, 15:12, 16:7, 16:11, 16:12, 16:18, 16:21, 17:8, 17:11, 18:12, 18:16, 18:17, 18:23, 19:7, 19:12, 19:18, 19:23, 20:2, 20:23, 20:25, 21:3, 21:8, 21:17, 21:20, 22:21, 23:4, 23:7, 23:9, 23:13, 23:17, 25:13, 25:16, 26:7, 26:10, 26:12, 26:19, 26:22, 28:2, 28:6, 28:9, 28:14, 28:18, 29:15, 29:17, 29:23, 30:2, 30:6, 31:1, 31:3, 32:14, 32:16, 32:20, 32:23, 32:25, 33:3, 33:11, 33:18, 34:3, 34:19, 35:3, 35:9, 35:13,

36:2, 36:15, 36:20, 36:24, 37:4, 37:13, 37:17, 38:7, 39:1, 39:6, 39:8, 39:12, 39:18, 40:2, 40:5, 40:8, 40:13, 40:17, 40:24, 41:6, 41:11, 41:21, 42:3, 42:12, 42:17, 43:8, 43:17, 43:24, 44:6, 44:15, 44:25, 45:11, 45:13, 45:17, 45:19, 46:4, 46:13, 46:19, 46:21, 46:23, 46:24, 47:2, 47:4, 47:7, 47:10, 47:17, 47:21, 47:22, 48:1, 48:4, 48:8, 48:9, 48:14, 48:16, 48:19, 48:23, 49:4, 49:7, 49:10, 49:11, 49:14, 49:15, 49:19, 49:21, 49:23, 49:24, 50:4, 50:5, 50:8, 50:9, 50:12, 50:15, 50:18, 50:22, 51:2, 51:3, 51:7, 51:8, 51:11, 51:16, 51:19, 51:23, 52:11, 52:13, 52:15, 52:20, 52:24, 52:25, 53:5, 53:8, 53:19, 53:20, 53:21, 53:23, 54:3, 54:5, 54:7, 54:15, 54:22, 55:7, 55:14, 55:16, 55:19, 55:21, 55:25, 56:7, 56:9, 56:11, 56:14, 57:3, 57:13, 58:3, 58:6, 58:12, 59:1, 60:12, 60:17, 61:18, 61:21, 62:9, 62:12, 63:1, 63:7, 63:9, 63:18, 64:2, 64:11, 64:15, 64:21, 64:22, 64:24, 64:25, 65:3, 65:4, 65:7, 65:12, 65:15, 65:19, 65:23, 66:9, 66:15, 66:17, 67:4, 67:9, 67:16, 67:22, 67:25, 68:3, 68:6, 68:10, 68:19, 68:23, 69:4, 69:11, 69:18, 69:24, 70:3, 70:4, 70:6, 70:7, 70:9, 70:10, 70:13, 70:14, 70:15, 70:22, 71:1, 71:5, 71:10, 71:11, 71:13, 71:14, 71:17, 71:20, 71:21, 71:23, 71:24, 72:7, 72:9, 72:15, 72:18, 72:24, 73:19, 74:3, 74:13,

74:25, 75:3, 75:9, 75:19, 75:24, 76:3, 76:6, 76:8, 76:10, 76:14, 76:16, 76:18, 76:19, 76:21, 77:6, 77:9, 77:17, 77:24, 78:8, 78:10, 78:13
**Multaplex** [2] - 58:8, 60:19
**music** [1] - 22:15
**Music** [9] - 5:18, 6:8, 6:20, 7:21, 10:20, 33:7, 53:17, 56:2
**must** [4] - 26:13, 37:24, 39:13, 53:14

### N

**name** [3] - 18:10, 18:21, 19:4
**names** [1] - 68:7
**nature** [23] - 56:15, 57:5, 57:6, 57:9, 57:11, 57:13, 57:14, 57:16, 58:7, 59:2, 59:13, 60:8, 65:20, 66:9, 67:4, 67:7, 67:11, 69:1, 69:2, 69:6, 76:24
**necessarily** [1] - 60:23
**necessary** [1] - 54:16
**need** [23] - 7:16, 8:11, 8:20, 9:6, 14:10, 15:6, 28:20, 29:9, 29:11, 31:15, 44:4, 49:5, 49:19, 52:2, 52:20, 54:19, 55:5, 63:24, 68:17, 69:9, 71:25, 76:1, 77:22
**needs** [5] - 8:1, 9:10, 48:9, 65:9, 68:12
**negotiating** [1] - 42:21
**neutral** [1] - 64:16
**Nevada** [1] - 22:4
**never** [6] - 16:25, 21:23, 25:18, 31:20, 70:24, 71:7
**new** [6] - 26:14, 26:18, 30:17, 47:19, 50:19, 75:15
**New** [1] - 58:23
**news** [1] - 22:18
**next** [9] - 13:21, 15:2, 17:10, 19:14, 23:3, 23:16, 28:12, 39:4, 39:6
**NICHOLAS** [1] - 2:5

**Ninth** [3] - 6:5, 35:11, 73:13
**NO** [3] - 1:23, 4:2, 79:20
**nobody** [1] - 15:18
**none** [1] - 48:21
**nonresponsive** [1] - 17:9
**normally** [1] - 35:21
**note** [4] - 30:18, 44:2, 55:4, 58:6
**notebooks** [4] - 32:5, 47:23, 48:5, 48:23
**noted** [2] - 37:16, 62:7
**notes** [1] - 66:25
**nothing** [6] - 13:11, 25:13, 28:2, 57:6, 66:5, 78:10
**notice** [4] - 7:20, 58:16, 61:8, 61:11
**notion** [1] - 17:5
**number** [1] - 31:15
**Number** [10] - 7:1, 7:6, 46:22, 46:25, 47:5, 47:11, 50:6, 67:19, 70:2, 72:24

**O**

**o'clock** [4] - 77:12, 78:6, 78:11, 78:12
**O'MALLEY** [29] - 2:5, 14:8, 14:12, 14:16, 14:20, 15:4, 15:10, 15:12, 16:11, 16:12, 16:21, 17:11, 18:16, 18:17, 19:18, 20:2, 20:25, 21:8, 21:20, 23:4, 23:9, 23:17, 25:13, 26:7, 26:10, 26:19, 28:6, 28:9, 48:8
**O'Malley** [3] - 14:5, 28:8, 48:5
**O'Malley's** [1] - 25:17
**oath** [1] - 15:6
**object** [4] - 19:12, 69:2, 69:6
**objection** [68] - 6:13, 16:7, 16:18, 17:8, 18:12, 18:23, 19:7, 19:23, 20:23, 21:3, 21:17, 23:7, 23:13, 26:7, 26:19, 28:7, 30:25, 31:1, 31:2, 31:3, 32:12, 32:16, 32:18, 33:2, 33:11, 41:25, 45:10, 46:19,

46:21, 46:23, 46:24, 47:3, 47:4, 47:7, 47:10, 49:10, 49:11, 49:14, 49:15, 50:4, 50:5, 50:8, 50:9, 51:3, 51:8, 55:16, 62:7, 64:22, 64:25, 65:3, 65:4, 70:3, 70:4, 70:6, 70:7, 70:9, 70:10, 70:13, 70:14, 71:10, 71:14, 71:15, 71:16, 71:17, 71:20, 71:21, 71:23, 71:24
**objections** [5] - 8:16, 37:16, 49:9, 56:5, 72:2
**obligation** [5] - 32:25, 33:8, 70:2, 72:21, 73:17
**obligations** [1] - 73:20
**obviously** [2] - 7:12, 8:8
**occurred** [1] - 16:2
**OF** [6] - 1:2, 1:13, 2:1, 79:1, 79:3, 79:4
**offered** [1] - 23:25
**offering** [1] - 19:12
**office** [1] - 16:2
**Official** [1] - 79:6
**OFFICIAL** [2] - 1:23, 79:1
**old** [1] - 76:19
**once** [3] - 30:15, 57:24, 64:6
**one** [48] - 9:13, 11:12, 11:18, 14:4, 21:12, 21:13, 31:13, 35:25, 37:3, 37:9, 38:12, 38:16, 38:18, 38:23, 42:6, 47:8, 47:13, 47:18, 48:4, 52:1, 53:23, 54:23, 56:11, 57:4, 57:9, 60:21, 62:17, 65:9, 65:19, 65:20, 66:22, 66:23, 69:20, 69:22, 70:19, 72:5, 72:11, 73:10, 74:16, 74:24, 75:10, 75:22, 76:22, 76:25
**ones** [1] - 7:13
**oOo** [1] - 5:3
**open** [3] - 37:1, 52:17, 53:13
**opened** [1] - 27:10
**opening** [1] - 52:15
**operative** [1] - 41:16
**opinion** [4] - 19:13, 28:23, 31:25, 66:21

**opinions** [1] - 78:5
**opportunity** [3] - 24:1, 44:2, 76:4
**oppose** [1] - 68:19
**ordinary** [4] - 34:1, 34:2, 34:20, 64:20
**originally** [1] - 73:24
**outlining** [1] - 7:9
**outstanding** [1] - 73:3
**overruled** [8] - 16:22, 17:10, 18:25, 19:9, 21:4, 23:14, 50:25, 62:8
**owed** [1] - 74:23

**P**

**p.m** [6] - 1:15, 5:2, 12:13, 29:6, 31:10, 78:16
**Pacific** [1] - 60:14
**Page** [2] - 3:3, 4:2
**page** [13] - 5:16, 5:20, 7:1, 7:6, 7:8, 7:25, 14:16, 14:25, 19:2, 34:4, 60:15, 79:12
**pages** [1] - 48:10
**paid** [4] - 18:7, 27:12, 27:21, 45:5
**paper** [2] - 47:20, 76:19
**paragraph** [3] - 45:10, 45:13, 46:7
**paragraphs** [1] - 68:6
**pardon** [6] - 8:21, 9:2, 16:5, 24:12, 33:4, 61:13
**paren** [6] - 33:10, 52:17, 52:18, 53:13
**Paris** [2] - 24:2
**part** [8] - 8:18, 27:25, 33:15, 33:24, 54:12, 65:8, 70:21, 70:22
**participate** [1] - 24:21
**participation** [1] - 9:22
**particular** [1] - 41:15
**parties** [19] - 6:23, 9:13, 10:5, 10:13, 10:20, 11:7, 11:19, 11:23, 35:5, 37:21, 37:24, 38:2, 42:8, 47:13, 53:2, 54:11, 66:4, 66:5
**partner** [2] - 25:4, 38:23

**partners** [2] - 38:12, 38:23
**partnership** [4] - 25:5, 25:9, 38:24, 51:1
**partnerships** [2] - 6:4, 50:11
**party** [1] - 43:25, 44:1, 58:16
**past** [2] - 27:19, 38:20
**patiently** [1] - 31:16
**PATRICK** [1] - 2:5
**Paul** [5] - 8:16, 10:23, 10:24, 11:21, 25:18
**pay** [4] - 24:21, 59:6, 70:2, 73:20
**payable** [1] - 12:25
**payment** [3] - 13:7, 58:14, 58:19
**payments** [2] - 12:23, 44:14
**percent** [5] - 34:10, 36:17, 42:18, 45:5, 59:6
**percentage** [1] - 58:19
**percentages** [4] - 34:6, 34:9, 35:3, 42:19
**perfect** [1] - 15:21
**performance** [6] - 10:10, 11:5, 41:13, 41:14, 42:8, 42:15
**performing** [1] - 43:18
**perhaps** [2] - 45:15, 64:2
**period** [5] - 25:5, 57:22, 60:22, 63:22, 63:24
**permission** [1] - 72:10
**perpetuity** [8] - 9:2, 9:3, 9:5, 32:21, 43:4, 43:16, 45:5, 45:8
**person** [6] - 10:25, 37:3, 37:10, 38:16, 38:18, 38:23
**person's** [1] - 16:8
**personal** [1] - 59:23
**personally** [1] - 17:19
**perspective** [2] - 20:22, 37:8
**pertinent** [1] - 11:6
**Phil** [2] - 49:19, 49:25
**PHILLIPS** [1] - 2:4

**phones** [5] - 70:16, 70:25, 71:2, 71:4, 71:6
**picking** [2] - 75:17, 78:1
**piece** [3] - 34:19, 45:15
**place** [2] - 22:2, 22:7
**placed** [1] - 15:6
**places** [1] - 53:22
**PLAINTIFF** [1] - 2:3
**plaintiff** [10] - 29:14, 30:25, 32:13, 32:19, 56:2, 56:6, 61:22, 67:23, 72:2, 77:23
**plaintiffs** [22] - 6:18, 6:20, 9:21, 12:23, 13:1, 13:8, 13:24, 15:4, 18:1, 18:5, 28:14, 51:24, 53:14, 54:7, 55:7, 55:9, 55:12, 55:17, 61:14, 69:13, 73:21
**Plaintiffs** [1] - 1:6
**plaintiffs'** [2] - 52:7, 77:1
**Plant** [1] - 16:15
**played** [1] - 48:22
**point** [17] - 11:16, 22:9, 29:8, 36:9, 39:4, 39:6, 41:23, 42:24, 44:9, 44:14, 45:3, 45:22, 46:5, 61:4, 67:8, 68:11, 74:16
**policy** [1] - 16:23
**POMFRET** [1] - 1:8
**portion** [5] - 26:2, 27:22, 33:1, 33:9, 73:20
**portions** [1] - 7:11
**position** [3] - 9:19, 46:11, 62:4
**post** [5] - 10:10, 11:3, 24:9, 24:14, 34:14
**post-2011** [1] - 25:5
**post-contract** [1] - 10:10
**post-Delicate** [1] - 34:14
**practice** [10] - 65:10, 65:20, 65:25, 66:2, 66:6, 66:11, 66:18, 67:2, 67:11
**pre** [1] - 10:10
**pre-dispute** [1] - 10:10
**precedent** [1] - 58:18
**predates** [1] - 11:4
**prejudicial** [1] - 10:7

preliminary [2] - 5:14, 30:2
preparing [1] - 47:23
present [1] - 11:16
presented [1] - 61:4
Presidio [1] - 2:7
presume [1] - 44:25
pretty [2] - 15:18, 48:23
prevail [3] - 51:16, 52:15, 53:11
prevent [1] - 9:6
prevented [1] - 66:21
previously [1] - 12:19
principle [2] - 68:19, 68:20
print [1] - 29:11
printing [1] - 29:22
problem [7] - 48:5, 56:11, 57:3, 57:4, 64:21, 69:21, 69:24
PROCEEDINGS [1] - 1:13
proceedings [2] - 78:16, 79:11
process [3] - 22:1, 24:6, 24:11
producer's [1] - 20:14
product [1] - 23:22
profits [2] - 61:24, 61:25
project [3] - 23:24, 24:5, 24:22
promise [1] - 31:20
promoting [1] - 23:5
proof [1] - 46:18
proposal [3] - 33:6, 68:17, 75:22
propose [3] - 55:9, 63:1, 63:21
proposed [6] - 47:13, 57:8, 62:10, 64:19, 67:18, 67:19
Proposed [2] - 64:12, 65:13
proposing [3] - 33:5, 49:9, 69:10
proposition [1] - 61:10
prove [1] - 53:14
proven [1] - 68:16
provide [3] - 56:16, 57:15, 63:2
provided [1] - 6:13
providing [3] - 58:18, 66:22, 66:23
publishing [8] - 33:10, 45:24, 46:8,

46:16, 52:17, 53:13, 53:17, 62:3
pull [1] - 62:19
punitive [1] - 70:5
pursuant [1] - 79:9
pursuing [1] - 9:21
push [1] - 11:13
put [3] - 7:16, 52:25, 63:3

Q

qualified [1] - 49:21
QUESTION [1] - 14:21
questions [7] - 8:24, 12:21, 13:14, 22:24, 25:3, 56:5, 73:13
Questions [1] - 72:3
quick [1] - 77:17
quickly [1] - 7:17
quote [2] - 60:22, 60:23

R

raise [1] - 56:19
raised [4] - 33:17, 35:12, 37:10, 45:14
raising [1] - 45:14
reaching [2] - 60:24, 61:6
react [1] - 20:21
read [14] - 14:13, 14:18, 29:21, 31:22, 46:7, 46:15, 47:7, 47:12, 51:5, 58:25, 62:6, 76:4, 76:5
reading [5] - 33:3, 33:4, 56:24, 68:10, 71:16
ready [2] - 12:15, 30:22
real [1] - 56:11
really [4] - 34:11, 58:7, 63:25, 64:15
Realtime [1] - 79:6
reason [1] - 74:12
reasonable [39] - 7:3, 9:18, 39:15, 39:16, 43:2, 43:6, 43:8, 43:10, 43:12, 43:14, 43:18, 43:20, 43:21, 43:22, 43:23, 44:7, 44:13, 45:1, 45:2, 57:2, 57:17, 58:1, 58:16, 61:5, 61:7, 61:8, 61:11, 63:20, 63:22, 63:25, 64:1, 64:3, 64:8,

64:16, 73:4, 73:18, 74:18
reasoning [2] - 33:20, 33:23
reasons [1] - 47:18
rebuttal [3] - 14:2, 16:21, 28:14
receive [1] - 13:4
received [4] - 13:2, 25:19, 26:2, 77:17
receiving [2] - 13:3, 27:18
recess [1] - 30:12
Recess [1] - 30:13
recesses [1] - 50:7
recitation [2] - 53:6, 54:15
recollection [4] - 14:21, 14:23, 16:17, 26:23
recommend [1] - 32:24
recommendation [1] - 50:24
Record [1] - 16:14
record [19] - 12:22, 12:25, 13:4, 13:8, 13:10, 20:6, 21:10, 21:12, 22:5, 24:9, 24:14, 24:24, 27:12, 27:14, 27:17, 27:21, 33:19, 39:3, 58:7
recording [1] - 24:15
Records [3] - 12:20, 13:10, 24:18
records [1] - 59:8
reduced [1] - 57:2, 74:2
refer [2] - 60:13, 60:25
referred [1] - 38:5
referring [2] - 12:19, 41:16
refers [2] - 7:21, 51:23
reflect [1] - 37:22
regard [1] - 56:4
regarding [3] - 8:17, 8:22, 9:20
registering [1] - 17:14
regulations [1] - 79:13
rehearsal [2] - 17:1, 21:23
rehearsals [1] - 21:14
Reilly [2] - 59:18
reimbursement [2] - 18:5, 25:18

reissued [2] - 23:20
related [7] - 10:3, 10:8, 44:16, 45:25, 46:6, 46:9, 46:17
relates [6] - 5:18, 6:17, 52:3, 52:4, 52:9
relation [2] - 19:5
relevance [2] - 20:23, 21:3
relevant [4] - 10:12, 16:19, 44:7, 67:2
reluctant [2] - 45:1
rely [1] - 10:7
relying [1] - 61:14
remain [5] - 6:14, 6:16, 6:18, 6:25, 7:7
remaining [3] - 23:11, 39:17, 51:18
remains [4] - 53:15, 56:23, 73:3, 73:16
remember [3] - 5:21, 16:1, 75:10
remind [2] - 12:4, 15:6
removed [3] - 9:9, 9:11, 24:5
rendered [1] - 59:5
renegotiate [1] - 24:9
renegotiated [1] - 24:19
renegotiating [1] - 24:15
renegotiation [4] - 24:13, 24:24, 25:2, 27:15
rep [1] - 61:23
rephrase [1] - 16:9
replace [1] - 27:5
replaced [1] - 48:10
reported [1] - 79:11
REPORTER [2] - 1:23, 79:1
Reporter [2] - 79:7, 79:20
REPORTER'S [1] - 1:13
representatives [1] - 18:19
requested [1] - 60:4
require [1] - 35:22
requirement [1] - 63:10
requirements [2] - 59:25, 60:2
research [5] - 29:1, 32:3, 70:18, 70:21, 70:22
respect [14] - 6:7, 6:25, 7:4, 35:1, 39:12,

42:2, 45:21, 55:23, 57:17, 57:24, 68:25, 73:2, 74:19, 77:19
respective [4] - 5:12, 51:20, 51:23, 52:5
respond [2] - 61:5, 61:18
response [6] - 9:3, 25:17, 41:2, 44:5, 62:18, 66:7
responsible [1] - 18:1
rest [4] - 14:13, 14:18, 20:10, 23:10, 28:14, 34:13, 41:17, 42:19
rested [3] - 28:20, 31:21, 76:8
rests [1] - 13:22
result [3] - 21:2, 21:5, 24:24
resulted [1] - 24:2
resume [2] - 12:15, 15:7
reticent [1] - 64:9
return [1] - 71:22
reveal [1] - 77:18
reversal [1] - 59:3
reversed [1] - 58:17
reversing [1] - 59:9
review [2] - 38:19, 77:18
rewards [1] - 23:24
Reynolds [1] - 58:22
Rick [4] - 9:2, 20:18, 20:21, 20:22
rise [8] - 5:6, 12:12, 29:5, 30:11, 30:14, 31:9, 32:7, 78:15
RMR [2] - 59:23, 60:4
ROBERT [1] - 2:6
ROGER [1] - 1:8
Roger [35] - 10:19, 19:1, 19:5, 19:10, 20:17, 20:19, 21:5, 21:12, 21:25, 22:2, 22:3, 22:4, 22:8, 22:9, 22:10, 23:21, 23:23, 24:4, 24:7, 24:11, 24:19, 24:23, 25:9, 26:3, 26:13, 26:18, 27:5, 27:8, 27:10, 54:8, 55:12, 55:17
Roger's [1] - 20:22
room [6] - 14:24, 17:1, 32:6, 47:16, 70:25, 71:6
ROOM [1] - 1:24
rough [1] - 8:25
royalties [17] - 6:20,

6:22, 12:22, 12:25, 13:5, 13:8, 25:1, 27:12, 27:14, 27:17, 27:21, 27:23, 33:1, 33:9, 62:3, 62:4, 73:21
**RPR** [1] - 79:20
**Rule** [7] - 5:13, 12:5, 12:9, 13:25, 58:3, 76:1, 76:6
**rule** [1] - 70:15
**ruling** [6] - 35:14, 36:24, 38:3, 49:9, 57:24, 57:25
**rulings** [1] - 42:5
**running** [1] - 60:17
**runs** [1] - 10:24

## S

**sabotage** [1] - 18:18
**sailed** [1] - 57:23
**sales** [5] - 58:11, 58:14, 58:19, 59:7, 61:23
**San** [1] - 2:8
**saw** [1] - 20:19
**school** [2] - 71:1, 71:4
**schools** [1] - 71:3
**scope** [2] - 22:21, 23:13
**screen** [2] - 12:19, 47:15
**scribbled** [1] - 69:12
**seat** [1] - 15:7
**seated** [5] - 5:6, 12:14, 29:7, 31:11, 32:9
**second** [1] - 68:25
**Section** [1] - 79:9
**section** [2] - 7:20, 34:5
**see** [9] - 15:19, 29:3, 30:10, 32:4, 40:20, 48:12, 72:3, 73:1, 76:15
**seeking** [1] - 27:22
**seem** [1] - 36:25
**Semco** [1] - 60:6
**send** [1] - 73:11
**sense** [3] - 45:6, 63:9, 77:24
**sent** [1] - 34:8
**sentence** [5] - 41:15, 52:15, 63:18, 68:12, 69:14
**separate** [1] - 65:9
**series** [1] - 12:21
**serve** [2] - 37:18,

39:22
**services** [2] - 59:5, 59:23
**SESSION** [1] - 1:14
**session** [2] - 30:15, 31:5
**set** [1] - 30:3
**settled** [1] - 21:11
**several** [2] - 39:4, 61:2
**shall** [4] - 37:18, 39:21, 39:22
**share** [2] - 13:3, 66:11, 66:13
**sharing** [2] - 6:19, 66:4
**ship** [1] - 57:23
**shorter** [1] - 78:2
**show** [2] - 22:8, 22:9
**showed** [2] - 22:3, 24:21
**shows** [2] - 24:1, 42:17
**sidebar** [1] - 50:14
**sides** [5] - 28:16, 28:19, 31:21, 48:17, 57:18
**sidetracked** [1] - 54:10
**Siebenberg** [3] - 15:4, 15:13, 17:12
**sight** [1] - 31:24
**sign** [4] - 8:2, 17:6, 17:19, 17:21
**signature** [1] - 14:24
**signatures** [2] - 35:23
**signed** [12] - 14:22, 15:1, 16:13, 17:17, 37:3, 37:10, 37:12, 38:12, 38:16, 38:18, 41:10, 55:1
**signing** [1] - 18:2
**signs** [1] - 38:24
**silence** [3] - 50:13, 50:15, 50:23
**similarly** [2] - 7:8, 75:14
**simply** [3] - 34:6, 34:21, 35:3
**single** [1] - 9:23
**sit** [1] - 28:5
**situation** [1] - 61:14
**six** [2] - 34:16
**size** [1] - 19:3
**sleeve** [1] - 17:4
**slightly** [1] - 69:4
**slim** [1] - 48:24
**smart** [1] - 64:10
**Smart** [1] - 50:22

**smarter** [1] - 56:3
**sole** [1] - 66:2
**solely** [2] - 10:2, 26:18
**solicited** [1] - 8:21
**solo** [5] - 18:11, 19:20, 22:5, 23:5, 23:6
**solved** [2] - 69:21, 69:25
**someone** [1] - 5:12
**sometimes** [1] - 71:1
**somewhere** [2] - 17:6, 52:25
**song** [2] - 6:19, 6:21
**songs** [2] - 27:25, 34:16
**songwriting** [4] - 27:23, 33:1, 33:9, 73:21
**soon** [1] - 76:8
**sorry** [9] - 12:1, 16:4, 21:25, 23:1, 33:21, 41:19, 51:14, 59:24, 71:17
**sort** [6] - 5:14, 8:4, 50:8, 50:15, 56:18, 57:23
**sound** [7] - 17:12, 17:15, 17:18, 18:6, 25:18, 25:22, 26:2
**sounds** [1] - 22:2
**sources** [1] - 22:15
**Southern** [1] - 58:23
**speaking** [1] - 10:24
**special** [5] - 30:17, 41:6, 67:21, 71:19, 72:1
**specific** [12] - 7:19, 8:24, 51:12, 61:14, 61:15, 61:22, 63:3, 63:5, 63:10, 67:17, 73:7, 76:24
**specifically** [3] - 65:25, 72:23, 73:13
**specified** [3] - 41:13, 41:14, 41:22
**specifies** [1] - 41:17
**specify** [1] - 41:21
**spell** [1] - 54:1
**spent** [1] - 42:20
**split** [1] - 6:22
**squad** [1] - 5:12
**squarely** [1] - 34:20
**stage** [1] - 15:22
**stand** [6] - 8:10, 12:2, 12:6, 15:8, 48:25, 74:11
**standard** [3] - 6:1, 6:2, 47:2

**start** [5] - 29:9, 31:5, 31:6, 42:15, 74:9
**started** [3] - 20:13, 69:14, 73:24
**starting** [3] - 29:20, 30:8, 33:6
**STATE** [1] - 79:4
**statement** [1] - 64:16
**States** [5] - 30:14, 61:2, 79:7, 79:9, 79:14
**STATES** [1] - 1:1
**static** [1] - 50:16
**stating** [1] - 68:12
**statutory** [1] - 53:6
**stay** [1] - 21:9
**stenographically** [1] - 79:11
**step** [4] - 13:18, 15:5, 22:10, 28:10
**still** [8] - 7:9, 9:21, 12:2, 13:3, 17:17, 57:11, 68:10, 71:16
**stimulating** [1] - 23:24
**stimulation** [1] - 24:7
**stipulated** [4] - 49:23, 49:24, 53:3, 54:11
**stipulations** [1] - 51:4
**stop** [3] - 23:10, 44:14, 62:15
**stoppage** [1] - 13:7
**stopped** [3] - 23:11, 43:18, 44:19
**store** [1] - 50:20
**Storm** [2] - 18:11, 18:18
**stream** [4] - 59:2, 62:3, 76:25, 77:4
**Street** [1] - 2:7
**STREET** [1] - 1:24
**stretches** [1] - 43:15
**strike** [1] - 17:8
**studio** [1] - 16:25
**stuff** [4] - 22:2, 30:22, 42:13, 54:22
**subject** [12] - 7:14, 9:20, 10:20, 29:2, 32:3, 36:22, 37:20, 39:24, 58:4, 58:19, 59:15, 69:2
**subjective** [1] - 11:18
**subjects** [3] - 35:15, 36:4, 38:1
**submit** [1] - 45:2, 62:16
**submitted** [5] - 9:13,

9:20, 28:24, 32:1, 47:13
**subsequent** [2] - 37:23, 53:9
**subsequently** [1] - 40:1
**successful** [2] - 20:6, 24:7
**successor** [2] - 24:17, 24:18
**Sue** [2] - 26:24, 34:13
**suggest** [3] - 52:13, 56:22, 63:3
**suggested** [1] - 54:24
**suggesting** [1] - 53:15
**suggestion** [2] - 51:15, 69:18
**suggests** [2] - 62:23, 64:5
**Suite** [2] - 2:7, 2:13
**suited** [1] - 15:19
**Supertramp** [13] - 15:15, 18:10, 18:21, 19:4, 19:6, 20:19, 22:12, 22:14, 22:19, 23:6, 23:10, 25:4, 34:14
**Supp** [1] - 58:23
**support** [1] - 22:11
**supports** [1] - 60:1
**suppose** [1] - 74:5
**supposed** [4] - 8:12, 11:21, 70:17, 76:12
**Supreme** [5] - 60:3, 60:14, 60:18, 60:24, 61:2
**surrebuttal** [2] - 28:17, 28:18
**surrounding** [6] - 45:3, 45:25, 46:9, 46:16, 56:16, 59:13
**suspect** [1] - 48:6
**sustained** [8] - 8:16, 16:9, 19:14, 20:1, 20:24, 23:8, 26:11, 26:21
**sword** [1] - 31:13

## T

**taboo** [1] - 17:2
**talks** [8] - 5:20, 7:25, 33:15, 34:5, 34:6, 34:13, 54:25, 74:17
**team** [1] - 24:19
**teams** [1] - 5:12
**Tech** [1] - 59:19

**ten** [4] - 22:3, 28:22,
29:3, 30:10
**tentative** [1] - 42:25
**term** [3] - 40:5, 58:15
**terminable** [1] -
61:11
**terminate** [10] -
39:18, 42:22, 43:14,
43:23, 44:3, 44:14,
45:2, 64:3, 73:20,
74:18
**terminated** [14] -
9:17, 39:15, 43:2,
43:5, 43:13, 43:19,
57:2, 57:17, 58:1,
58:15, 63:20, 64:7,
73:4, 73:17
**terminating** [2] -
12:23, 39:16
**termination** [10] -
44:8, 56:17, 56:25,
57:16, 60:20, 60:23,
63:3, 63:4, 63:5,
63:12
**terms** [1] - 13:10
**TERRI** [4] - 1:23,
79:6, 79:19, 79:20
**testified** [4] - 16:13,
16:20, 18:11, 19:20
**testify** [6] - 11:19,
11:22, 15:25, 18:9,
18:12, 19:24
**testimony** [17] -
5:20, 6:3, 7:10, 8:17,
8:21, 9:16, 10:8,
12:16, 16:8, 18:13,
26:19, 43:12, 46:6,
50:3, 65:24, 66:2,
66:19
**THE** [275] - 2:3, 2:10,
5:6, 5:7, 5:24, 6:2,
6:12, 6:15, 7:24, 9:11,
10:14, 10:22, 11:8,
11:14, 11:25, 12:3,
12:8, 12:12, 12:14,
12:15, 13:15, 13:17,
13:19, 13:20, 13:23,
14:1, 14:6, 14:10,
14:15, 14:19, 15:2,
15:5, 15:9, 15:11,
16:9, 16:22, 16:23,
17:10, 18:14, 18:25,
19:1, 19:9, 19:10,
19:14, 19:15, 19:16,
20:1, 20:24, 21:4,
21:5, 21:18, 22:23,
22:25, 23:1, 23:8,
23:14, 23:15, 23:16,
25:14, 26:9, 26:11,
26:21, 28:3, 28:4,

28:8, 28:10, 28:11,
28:12, 28:16, 28:19,
29:5, 29:7, 29:8,
29:16, 29:19, 29:24,
30:7, 30:11, 30:14,
30:16, 31:2, 31:6,
31:9, 31:11, 31:12,
32:7, 32:10, 32:15,
32:17, 32:22, 32:24,
33:2, 33:6, 33:12,
34:2, 34:17, 34:22,
35:5, 35:10, 35:17,
36:7, 36:19, 36:23,
37:2, 37:7, 37:14,
38:6, 38:9, 39:2, 39:7,
39:11, 39:14, 39:20,
40:3, 40:7, 40:11,
40:16, 40:19, 41:1,
41:8, 41:19, 41:23,
42:11, 42:14, 42:23,
43:11, 43:23, 44:5,
44:9, 44:16, 45:9,
45:12, 45:15, 45:18,
45:20, 46:7, 46:14,
46:20, 46:22, 46:25,
47:5, 47:9, 47:11,
47:18, 47:24, 48:2,
48:11, 48:15, 48:17,
48:21, 48:25, 49:5,
49:8, 49:12, 49:16,
49:20, 49:25, 50:6,
50:10, 50:14, 50:17,
50:19, 50:24, 51:4,
51:9, 51:14, 51:18,
51:22, 51:25, 52:14,
52:19, 52:22, 53:7,
53:10, 53:25, 54:4,
54:6, 54:14, 54:19,
54:23, 55:11, 55:15,
55:17, 55:20, 55:22,
56:1, 56:8, 56:10,
56:13, 56:18, 57:10,
57:15, 58:5, 58:10,
58:25, 60:11, 60:16,
61:17, 61:20, 62:6,
62:11, 62:15, 63:5,
63:8, 63:12, 63:23,
64:5, 64:13, 64:18,
64:23, 65:1, 65:5,
65:11, 65:14, 65:18,
65:21, 66:7, 66:14,
66:16, 66:25, 67:6,
67:14, 67:19, 67:23,
68:2, 68:4, 68:9,
68:17, 68:21, 68:24,
69:8, 69:16, 69:22,
70:1, 70:5, 70:8,
70:11, 70:17, 70:23,
71:3, 71:7, 71:12,
71:15, 71:18, 71:22,
71:25, 72:8, 72:13,

72:17, 72:22, 73:1,
73:23, 74:5, 74:15,
75:1, 75:7, 75:13,
75:21, 75:25, 76:5,
76:7, 76:9, 76:11,
76:15, 76:17, 76:20,
77:5, 77:8, 77:10,
77:21, 78:1, 78:9,
78:11, 78:14, 78:15
**theaters** [3] - 59:22,
60:25, 61:9
**theory** [1] - 5:16
**therefore** [3] - 10:7,
35:22, 39:13
**thinking** [2] - 6:23,
33:19
**thinks** [1] - 16:8
**Thomson** [1] - 17:14
**THOMSON** [1] - 1:5
**thoughts** [9] - 5:14,
5:25, 6:8, 6:9, 8:8,
29:13, 44:24, 55:23,
65:22
**three** [6] - 20:3,
20:15, 60:4, 66:3,
66:4, 68:1
**three-day** [1] - 20:3
**three-month** [1] -
60:4
**throwing** [1] - 69:12
**Title** [1] - 79:9
**today** [9] - 13:3,
29:13, 29:18, 30:3,
30:19, 31:16, 31:17,
45:14, 77:16
**together** [1] - 16:25
**tomorrow** [9] -
29:20, 30:8, 30:23,
31:5, 31:18, 32:4,
74:6, 75:13, 77:16
**tonight** [7] - 48:17,
64:14, 64:18, 66:25,
74:5, 77:13, 77:15
**took** [3] - 33:14,
45:10, 48:5
**total** [2] - 68:15,
69:13
**tour** [10] - 20:6, 21:9,
21:12, 21:15, 22:6,
22:7, 22:13, 23:5,
23:6
**touring** [1] - 23:11
**towards** [1] - 66:14
**tracking** [1] - 8:4
**TRANSCRIPT** [1] -
1:13
**transcript** [3] - 8:25,
79:10, 79:12
**transpired** [1] -
20:12

**treatment** [1] - 50:11
**trial** [14] - 17:13,
29:19, 30:8, 31:7,
51:6, 58:13, 59:3,
59:9, 60:5, 73:11,
74:9, 77:12, 78:3
**TRIAL** [2] - 1:13,
1:14
**tried** [2] - 5:8, 33:16
**triple** [1] - 25:1
**true** [6] - 19:22,
21:16, 21:21, 21:23,
26:4, 79:10
**try** [4] - 42:21, 52:9,
69:16, 74:13
**trying** [8] - 10:9,
18:15, 48:12, 56:19,
56:22, 62:18, 73:15,
75:4
**turn** [1] - 71:5
**turning** [1] - 70:16
**tweak** [1] - 6:17
**twice** [1] - 72:7
**two** [11] - 20:17,
22:15, 42:5, 42:20,
49:17, 52:5, 65:8,
67:23, 68:3, 68:6,
68:13
**type** [3] - 66:10,
66:11, 69:7
**types** [2] - 66:3,
66:20
**typically** [1] - 66:24
**typo** [2] - 7:20, 53:23

## U

**U.S** [1] - 1:3
**umbrella** [1] - 11:19
**under** [10] - 13:24,
14:1, 15:6, 33:9,
33:25, 37:17, 41:13,
69:3, 75:4, 76:22
**undoubtedly** [1] -
44:1
**unexpressed** [1] -
11:18
**unfair** [1] - 44:16
**unfortunately** [2] -
30:20, 56:12
**unhappy** [1] - 21:7
**uniform** [1] - 61:1
**union** [2] - 59:23,
59:24
**UNITED** [1] - 1:1
**United** [5] - 30:14,
61:2, 79:7, 79:9,
79:14
**units** [1] - 59:7
**Universal** [3] - 24:16,

24:25, 27:15
**unless** [3] - 37:19,
39:23, 42:1
**up** [20] - 8:15, 9:6,
12:6, 17:17, 17:19,
17:22, 18:2, 22:1,
22:4, 30:6, 41:11,
60:17, 62:19, 63:19,
63:21, 64:9, 68:15,
74:10, 74:13, 75:15
**updated** [1] - 50:19
**upfront** [1] - 52:23
**upheaval** [5] - 26:15,
26:17, 26:24, 27:3,
27:6
**upset** [1] - 26:15
**upsetting** [1] - 26:13
**utilize** [1] - 67:23

## V

**valid** [4] - 6:19, 6:21,
53:2, 74:16
**valuable** [1] - 59:5
**verbiage** [1] - 53:11
**verdict** [9] - 7:19,
8:3, 30:18, 43:3,
69:19, 71:19, 71:22,
72:1, 72:3
**version** [2] - 8:25,
30:17
**versus** [6] - 58:8,
58:22, 59:4, 59:18,
60:14, 60:19
**vested** [1] - 61:9
**view** [12] - 34:23,
35:1, 37:15, 38:8,
38:10, 38:13, 38:22,
41:24, 51:25, 57:1,
62:7, 73:1
**views** [1] - 45:21
**violation** [1] - 19:11
**vis-à-vis** [1] - 59:6
**vocalize** [1] - 78:4
**voir** [1] - 78:2
**vs** [1] - 1:7

## W

**wait** [2] - 23:1, 72:22
**waiting** [5] - 7:9,
18:14, 21:18, 31:15,
50:22
**waiving** [1] - 37:16
**wants** [5] - 10:11,
43:19, 67:23
**Warner** [4] - 58:22,
59:1, 59:4, 76:23
**Warner-Lambert** [2]
- 58:22, 59:1

**waste** [1] - 75:18
**wasting** [1] - 74:6
**water** [2] - 59:25, 60:2
**week** [1] - 22:3
**weigh** [1] - 8:9
**weirder** [1] - 54:22
**welcome** [4] - 6:8, 7:15, 12:15, 15:13
**well-suited** [1] - 15:19
**WEST** [1] - 1:24
**whistles** [2] - 22:17, 50:21
**whole** [2] - 9:15, 11:19
**Wilshire** [1] - 2:13
**wise** [1] - 29:15
**wish** [3] - 14:2, 77:15, 78:6
**withdraw** [1] - 28:7
**withdrawal** [5] - 7:22, 19:2, 42:21, 44:13, 46:2
**withdrew** [2] - 44:12, 44:22
**witness** [12] - 5:21, 13:21, 14:4, 14:6, 15:3, 15:7, 16:7, 16:19, 16:20, 19:24, 28:13, 54:24
**WITNESS** [14] - 3:1, 3:3, 12:3, 13:19, 15:9, 16:23, 19:1, 19:10, 19:15, 21:5, 22:25, 23:15, 28:3, 28:11
**witnesses** [2] - 14:2, 49:13
**wives** [3] - 20:8, 20:9
**word** [1] - 19:4
**wording** [1] - 72:18
**Words** [3] - 21:15, 21:24, 22:6
**words** [5] - 32:20, 41:19, 46:11, 64:20, 69:12
**workspace** [1] - 17:2
**worried** [4] - 54:20, 62:22, 75:8
**worry** [2] - 70:19, 73:9
**worthy** [1] - 44:3
**writing** [2] - 27:25, 40:23
**ws** [1] - 5:22

**Y**

**year** [2] - 20:5, 42:20
**years** [3] - 22:12,

27:19, 60:5
**York** [1] - 58:23
**young** [1] - 55:1
**yourself** [1] - 17:19

**UNITED STATES DISTRICT COURT**