

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE ANDRE BIROTTE, JR., U.S. DISTRICT JUDGE

DOUGLAS CAMPBELL THOMSON et al,

                Plaintiffs,

    vs.                        Case No.
                                21-cv-8124-AB

CHARLES ROGER POMFRET HODGSON, et al,

                Defendants.
_____/

REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
TRIAL DAY 6 - AFTERNOON SESSION
Tuesday, February 27, 2024
1:10 p.m.
LOS ANGELES, CALIFORNIA

_____

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

UNITED STATES DISTRICT COURT

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4        PHILLIPS ERLEWINE GIVEN and CARLIN LLP
          BY:  DAVID M. GIVEN
 5             KYLE PATRICK O'MALLEY
               NICHOLAS A. CARLIN
 6             ROBERT CARROLL, III
               Attorneys at Law
 7        The Presidio
          39 Mesa Street, Suite 201
 8        San Francisco, California  94129

 9


10   FOR THE DEFENDANT:

11        GUTMAN LAW
12        BY:  ALAN S. GUTMAN
               Attorney at Law
13        9350 Wilshire Boulevard, Suite 350
          Beverly Hills, California  90212
14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

1

WITNESS INDEX

2

* * *

3

WITNESS:                                              Page

4

5

(No witnesses called.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

**EXHIBIT INDEX**

2

**\* \* \***

**EXHIBIT NO.**                                              **Page**

3

4

                        **(No exhibits received.)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, FEBRUARY 27, 2024

 2                            1:30 p.m.

 3                            --oOo--

 4

 5            THE COURTROOM DEPUTY:  All rise.  Please be seated.

 6            Calling Civil Case 21-8124-AB, Douglas Campbell Thomson

 7  et al versus Charles Roger Pomfret Hodgson et al, Jury Trial

 8  Day 6.

 9            Please state your appearances.

10            MR. GIVEN:  Good afternoon, Your Honor.  David

11  Given, Nicholas Carlin, Kyle O'Malley for plaintiffs.

12            THE COURT:  Good afternoon.

13            MR. GUTMAN:  Good afternoon, Your Honor.  Alan

14  Gutman for the defense.

15            THE COURT:  Good afternoon.  I have given you what I

16  propose to give to the jury as far as a special verdict form

17  and jury instructions.

18            Have the parties had a chance to review the documents?

19            For the plaintiff?

20            MR. CARLIN:  Yes, Your Honor.

21            THE COURT:  For the defense?

22            MR. GUTMAN:  Yes, Your Honor.

23            THE COURT:  All right.  What comments or edits -- I

24  don't want to hear any further argument, because I have read

25  everything and considered it.
```

**UNITED STATES DISTRICT COURT**

```
 1          What other burning issues do you note with respect to
 2   either one.
 3          We will start with the jury instructions.
 4          MR. CARLIN:  Well, no other comments, other than as
 5   I stated.
 6          We submitted this pocket brief last night and --
 7          THE COURT:  Last night?
 8          MR. CARLIN:  Yes, on the jury instructions.
 9          THE COURT:  Oh, the e-mail, yes.
10          MR. CARLIN:  On the jury instructions and it's our
11   position that the way jury instruction number -- it was 19, now
12   it's 18, because you took out the electronic stuff.
13          THE COURT:  Right.
14          MR. CARLIN:  So now it's 18, that, it misstates the
15   law, and I think it would be creating a reversible error for
16   the Court to issue that instruction.
17          THE COURT:  All right.
18          MR. CARLIN:  Regarding the special verdict form --
19          THE COURT:  So that's it with respect to the
20   instructions?
21          MR. CARLIN:  Yes.
22          THE COURT:  From the defense, anything under the
23   instructions?
24          MR. GUTMAN:  No comments on the instructions.
25          THE COURT:  Okay.  On the verdict form?
```

```
 1              MR. CARLIN:  On the verdict form, we submitted this
 2    morning a -- one other, well I still maintain it's confusing
 3    the way it's drafted, particularly with No. 3, where it says:
 4    If either defendant Hodgson or defendant Delicate Music
 5    breached the 1977 Memorandum of Agreement, what damages are
 6    owed.
 7         At that point, they have already determined the breach.
 8    It shouldn't say "if," because that is sort of inviting them to
 9    question again.
10              THE COURT:  Well, but the prior question say:  If
11    the answer to Question 1 and 2 are yes, answer no further.
12         If the answer to either 1 or 2 or both is no, go to
13    page 3, Question 3.
14              MR. CARLIN:  Right.  At that point they shouldn't
15    have to ask themselves if they breached again, it's already
16    been determined that they breached.
17              THE COURT:  So what would you propose, then?
18              MR. CARLIN:  We would take out just everything other
19    than what the damages are owed.
20              THE COURT:  Okay.  What is the defense's position?
21              MR. GUTMAN:  Your Honor, I inserted that language
22    because it helps guide the jury to that particular question.
23              THE COURT:  Well, why do they need guidance?  Do
24    they need guidance if the first two questions tell them what to
25    do?
```

1          I mean, I don't think -- I don't agree with the notion

2    that somehow, as phrased, suggests there another question.

3          The only question is what damages are owed, but, you

4    know, I'm just trying to get a sense of sort of how significant

5    of a deal is this.

6          From your perspective, tell me why you think this should

7    remain?

8              MR. GUTMAN:  I think it helps clarify why -- the

9    situations when damages could be awarded.

10          It just states, if there is a finding of breach based

11   upon Questions 1 and 2, then what are the damages?  That is it.

12             THE COURT:  Okay.  So Mr. Carlin?

13             MR. CARLIN:  Again, the problem is neither 1 or 2

14   mentioned the word "breach," and if there are --

15             THE COURT:  Would it be better if you answered -- if

16   you answered no to Questions 1 and 2, what damages are owed?

17             MR. CARLIN:  Exactly, right.

18          But even better, Your Honor, we submitted our

19   alternative verdict form, which is simply the more the standard

20   basic breach of contract verdict form, which is did defendants

21   breach.

22             THE COURT:  I got that.  Look, I'm not the smartest

23   guy in the room, I'm not pretending to be.

24          If the Ninth Circuit says I'm wrong, we will come back

25   and do this again.

```
 1          We have talked about this at length, I understand your
 2   position.  I have a different view.
 3          I don't think that that question makes -- I don't think
 4   that your proposal works, given what the evidence we have
 5   heard, so I'm trying to figure out how we can deal with this.
 6          So, we can change the last question to say:  If you
 7   answered no to either Questions 1 or 2, what damages are owed?
 8          MR. CARLIN:  Yes, that would be acceptable.
 9          THE COURT:  Mr. Gutman?
10          MR. GUTMAN:  Your Honor, I took that language from
11   the special verdict form that had been submitted yesterday that
12   Your Honor had prepared, so, I didn't make it up out of air.
13          THE COURT:  I'm not suggesting that you did.
14          We can change it -- we will say the same thing:  If you
15   answered no to -- if your answer to either Question 1 or 2 or
16   both Question 1 or 2 is no, comma, what damages are owed?
17          MR. CARLIN:  Right.
18          THE COURT:  We will leave it at that.
19          MR. CARLIN:  We also suggested there would be a
20   fourth question if the jury finds in our favor, what would be
21   the reasonable termination event.  I forget the exact language
22   but we submitted it to Your Honor.
23          THE COURT:  If they found in your favor, why do you
24   need to know the reasonable --
25          MR. CARLIN:  We have a declaratory relief claim in
```

UNITED STATES DISTRICT COURT

 1   this case.  We need to have some instruction as to what happens

 2   in the future.

 3            THE COURT:  Okay.  What is the defense's position?

 4   I'm trying to pull that up.

 5            MR. GUTMAN:  My understanding the declaratory relief

 6   action is something that would have to be determined by the

 7   Court, not a jury.

 8        Obviously, the Court can request special findings, but I

 9   don't think it's appropriate to do it in the form of that

10   single question.

11        I also have submitted a pocket brief addressing the

12   claims, the two causes of action that plaintiffs have claimed

13   they reserve for purposes of having the Court decide, an open

14   book accounting claim and a declaratory relief action.

15        I do believe the plaintiffs have requested the Court

16   make those decisions, and have provided the Court with points

17   and authorities why the Court should deny that request because

18   there are -- it's a basic breach of contract action.

19            THE COURT:  All right.  Let me just have a moment

20   here.

21            MR. CARLIN:  May I respond, Your Honor?

22            THE COURT:  Go ahead.

23            MR. CARLIN:  So this was -- we sent it to Your

24   Honor's clerk, the proposed Question 4, and I will just read it

25   into the record.

```
 1          If either defendant did not terminate the contract after
 2   a reasonable time, at what point would it be a reasonable time
 3   for defendants to terminate their contractual obligation to pay
 4   a portion of the songwriting royalties to plaintiffs after a
 5   reasonable time.
 6          So it seems to me, if the jury is going to decide what
 7   the reasonable time is, then that should inform Your Honor's
 8   position on the declaratory relief.
 9             THE COURT:  Why are we asking the jury, what would
10   be a reasonable time?
11          Their decision is whether it was terminated in a
12   reasonable time or not.
13          If it wasn't -- let's assume it was not, you are asking
14   them to tell us what to do in the future?
15             MR. CARLIN:  Yes, that was our declaratory relief
16   claim.
17             THE COURT:  Hold on.  Let me pull up the declaratory
18   relief claim.  Give me a second, here.
19          I'm looking at the prayers for relief.  It says No. 5,
20   on page 12, I think of the complaint -- it's the first amended
21   complaint:  For declaratory judgment that each plaintiff is
22   entitled to specified percentage of all songwriting and
23   publishing royalties received and derived from Supertramp's
24   songs as embodied on the Supertramp recordings within an
25   accompanying order that such monies be paid from the source.
```

UNITED STATES DISTRICT COURT

1          How is that a tell me when I'm supposed to do it or when

2     I am supposed to stop doing it?

3          MR. CARLIN:  By implication, this is forever.  That

4     is what this is asking for.

5          If the Court or the jury decides it's not forever, then

6     the Court can adjust the order, accordingly.

7          But I think we need someone to make that determination,

8     as to what the cutoff is?

9          THE COURT:  But that's not what you asked for.  I

10    mean, I don't see it here.

11         I mean, your view is that you should get paid forever.

12    If the jury says, no, so I don't know if that means, now you

13    need to tell us when it stops or how it should stop.

14         I don't think that is a jury question.

15         MR. CARLIN:  Well, I think it is certainly implied

16    in the prayer for relief.

17         THE COURT:  Okay.  Mr. Gutman, anything further?

18         MR. GUTMAN:  I did submit a pocket brief on the

19    claims at Docket 187.

20         I think it states the basic law, it's inappropriate for

21    a jury to answer that question.  I also believe it's

22    inappropriate for the Court to deal with the issue when there

23    is a breach of contract that ticks, that is being asserted.

24         THE COURT:  Anything further, Mr. Carlin?

25         MR. CARLIN:  Just on our Rule 50 motion, Your Honor,

```
 1    are you going to rule on that today?
 2              THE COURT:  I'm going to rule on that, hopefully two
 3    minutes.  Let me pull up my notes.
 4              MR. CARLIN:  Do you want argument?
 5              THE COURT:  No.  No.
 6              MR. CARLIN:  I will sit down then.
 7              THE COURT:  So, anything further on the verdict form
 8    or instructions from the plaintiff?
 9              MR. CARLIN:  None, Your Honor.
10              THE COURT:  For the defense?
11              MR. GUTMAN:  Not on the verdict form or the
12    instructions.  I do have one other issue.
13              THE COURT:  What's the other issue?
14              MR. GUTMAN:  An exhibit, No. 20 the 1991 agreement.
15    I believe it should be removed from evidence.
16              THE COURT:  What is the plaintiff's position?
17              MR. GIVEN:  It was moved in and admitted.
18              THE COURT:  But the jury is going to get an
19    instruction to say ignore anything related to that, aren't
20    they, or something to that effect?
21              MR. GIVEN:  I think you are right, Your Honor.
22              MR. GUTMAN:  Your Honor, the specific instruction
23    says any evidence --
24              THE COURT:  What number is it.
25              MR. GUTMAN:  No. 3, and it's the final paragraph.
```

1    Any evidence in connection with the 1991 publishing agreement,

2    including the surrounding circumstances related to that

3    agreement should not be considered; therefore, it would follow

4    the 1991 agreement should be removed from evidence.

5            THE COURT:  Well, that would be the logical thing,

6    but the parties can't agree, and the document has been admitted

7    into evidence.

8        I don't think I can say, on my own, just pull the

9    document from evidence.

10       If you of some authority to suggest otherwise, I'm all

11   ears, but again, this is something that rational people

12   couldn't agree on, that is just not the case here.

13       Like I said, I don't know of any authority that says I

14   can sue sponte start plucking pieces of evidence out that have

15   been admitted.

16       But if you have something different, like I said, I'm

17   all ears.

18           MR. GUTMAN:  I know there is a Code of Federal

19   Regulations that authorizes the Judicial Officer to remove

20   evidence on a variety of grounds.

21       I think it's at 29 CFR 2200.70.  I'm not sure, I'm just

22   trying to look at it quickly.

23       Pardon me, no, this wouldn't apply.  Pardon me.

24       But, Your Honor, the point would be that the Court has

25   made rulings that impact the evidence that was presented in the

1  case.

2       The Court has now -- is providing a instruction as a

3  matter of law, with respect to what evidence can be considered.

4       It would be highly prejudicial to allow the jury to look

5  at that document and to form any opinions based upon any six

6  the language in there, based upon the evidence that was already

7  admitted and received.

8            THE COURT:  But there is a curative instruction that

9  says that you can't consider that, right?

10           MR. GUTMAN:  I agree.  I guess I will have to read

11  that out loud to the jury during our argument.

12           THE COURT:  Mr. Given, anything you wish to add?

13           MR. GIVEN:  No.  It makes my kind of nervous to be

14  plucking exhibits on the notebook on the eve of closing

15  statements.

16       I do have one housekeeping.  I am old school, I have got

17  an easel with some poster boards, am I allowed to use them in

18  closing?

19           THE COURT:  As long as the easel by the lectern you

20  can and you are not going to walking up and down in front of

21  the jury.

22       I am cautioning you both while I have you here,

23  30 minutes means 30 minutes.

24       Both of you went over last time.  When I hit 30, I'm

25  going to tell you:  Sir, I'm going to give you a two-minute

1    warning, please wrap up.

2        At 30, if you don't, this time I will say:  Thank you,

3    counsel, please sit down, mid sentence, mid thought, because

4    clearly the parties have difficulty following the rules so

5    hopefully you will have a timer on both of your sides to clock

6    it.  30 means 30.

7            MR. GIVEN:  Understood.

8            MR. GUTMAN:  One issue about this demonstrative

9    exhibit, since I'm not going to be able to see it from counsel

10   table the way an easel would be set up, can with see it now?

11           THE COURT:  All right.  Do we have it?

12           MR. GIVEN:  It's Exhibit 74, and it's Exhibit 81.

13   It's the albums, and it's the photo of them signing the '81

14   agreement.

15           THE COURT:  Okay.

16           MR. GUTMAN:  The photo of them signing the agreement

17   is Exhibit 34.

18           MR. GIVEN:  Okay.  34.

19           MR. GUTMAN:  Exhibit 34, and then the 74 is the

20   albums.

21           MR. GIVEN:  Album covers.

22           MR. GUTMAN:  No objection to those.

23           THE COURT:  Any other housekeeping matters?

24           MR. GIVEN:  Rebuttal time is ten minutes?

25           THE COURT:  Ten minutes.  Ten minutes is ten

1    minutes.  So please -- again, I'm not trying to be rude, I will

2    tell the jurors before or I may tell them, you are on a time

3    limit, but I'm going to stop you, because both of you seem to

4    want to do what you want to do.

5         MR. GIVEN:  That reminds me, will you tell the jury

6    before we begin our close that I have a rebuttal so they know

7    I'm going to get back up on the lectern?

8         THE COURT:  Why would I need to do that?

9         MR. GIVEN:  They see me get up again, they start

10   rolling their eyes, just so they know in advance I'm going to

11   be back up.

12        THE COURT:  I have never had to do that.  I have not

13   experienced what you are talking about, about jurors getting

14   upset when lawyers get up and talk.  That is usually reserved

15   for the judge.

16        Anything further?

17        MR. GUTMAN:  Nothing further.

18        THE COURT:  So just from a procedural posture, with

19   respect to the Rule 50s, the Court will make the following

20   statements, review the evidence in the case, considering the

21   arguments that had been had, at length, with respect to this

22   case:  The 1977 Memorandum of Agreement that claim against

23   Hodgson and Delicate will remain.

24        But I have made the judicial determination that the

25   contract contains no express duration nor has sufficient

 1    evidence been presented that there can be an implied duration

 2    based on the surrounding circumstances, including execution of

 3    or the nature of the '77 agreement specifically.

 4          Therefore, the only question that remains in the Court's

 5    view, and that will be presented to this jury, is whether to

 6    determine whether either Hodgson or Delicate Music terminated

 7    the contract at will, after a reasonable time.

 8          The 1984 withdrawal agreement.

 9          The Court finds that this '84 agreement did not bind

10    Hodgson, in his individual capacity, to distribute funds to the

11    plaintiffs.

12          That responsibility fell to Delicate.

13          The Court finds no reasonable jury could find a legally

14    sufficient basis for the claim that Hodgson breached the

15    contract in his individual capacity.

16          Moreover, the language regarding perpetuity appears to

17    apply to Delicate distributing the funds to Hodgson, not the

18    plaintiffs.

19          So the Rule 50 with respect -- is granted with respect

20    to Defendant Hodgson and Delicate Music in that regard.

21          The 1991 Agreement.

22          The Court rejects the plaintiff's contention that

23    Mr. Davies' signature can bind Delicate Music, because Davies

24    is a general partner of Delicate Music.

25          The plain language of the contract shows in the contract

1    it's Davies signature in his individual capacity, in his

2    capacity as president of a different entity.

3         Even assuming arguendo, that we ignore Davies' signature

4    as president of a different entity, his signature in his

5    individual capacity in the Court's view could only bind

6    Delicate if Davies was acting in the ordinary course and scope

7    of the business of the entity in which he was a general

8    partner, Delicate Music.

9         At least, it's the Court's view as has been stated in

10   pleadings, evidence presented in the trial, even argument

11   through counsel, that Delicate's duty was simply to administer

12   funds.  And in this Court's view, the nature of that 1991

13   agreement goes beyond the scope of that, namely, confirm

14   additional obligations and introducing additional parties to

15   the agreement.

16        So because the Court believes that the '91 agreement

17   went beyond the normal course and scope of the business of

18   Delicate, one member of that partnership can't bind the entire

19   partnership, so as such, the breach of contract claims against

20   Delicate Music cannot survive.

21        So the Rule 50 is granted in that regard.

22        Plaintiff's Rule 50 motion are denied, as we have had

23   numerous discussions and debate about those issues yesterday.

24   So that is the ruling of the Court.

25        We're going to print out the jury instructions at this

1   time, if they haven't been done already, and once those are

2   done, we will bring the jury out.

3        I will instruct, you will argue, and then the case will

4   be submitted to the jury.

5        Anything further from the plaintiff?

6        MR. GIVEN:  Nothing further from the plaintiff,

7   thank you.

8        MR. GUTMAN:  Nothing further, thank you.

9        THE COURT:  All right.

10       THE COURTROOM DEPUTY:  All rise.

11       This Court is in recess.

12                      (Recess.)

13       THE COURTROOM DEPUTY:  All rise for the jury.

14       (Jury enters the courtroom at 1:54 p.m.)

15       THE COURTROOM DEPUTY:  Please be seated.

16       THE COURT:  All right.  Well, good afternoon ladies

17  and gentlemen.  I appreciate your patience and indulgence.

18  Believe it or not, I started another trial this morning, so I

19  have got another jury waiting while we're doing this.  Your tax

20  dollars are hard at work, let's put it that way.

21            So, today we're here at this stage to give you

22  closing jury instructions.  Do you all have a copy in your

23  hands?

24            So I'm going to give you closing jury

25  instructions, then you are going to hear arguments of counsel.

Plaintiff will begin, defense will make argument thereafter, and then the plaintiff, because they have the burden of proof, they get an extra time for rebuttal.

I have the lawyers on time limits, so I can promise you the arguments will not last more than an hour and ten minutes in total.

With that, let me read to the following instructions to guide your consideration of the evidence in this case.

Member of the jury, now that you have heard all of the evidence and soon the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all of the evidence in the case.  To those facts, you will apply the law as I give it to you.  You must follow the law as I give it to you, whether you agree with it or not.

And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.

That means you must decide the case solely on the evidence before you.

You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

To help you review the evidence, I will give you a brief summary of the positions of the parties.

Plaintiffs assert that Defendant Hodgson continues to owe them a portion of the song royalties under the 1977 memorandum of agreement publishing.  Plaintiffs have the burden of proving this claim.  Defendant Hodgson denies this claim and asserts that he had the right to end the 1977 memorandum of agreement publishing.

Plaintiffs assert that Defendant Delicate Music continues to have an obligation to administer a portion of the song royalties under the 1977 memorandum of agreement. Defendant Delicate Music denies this claim and asserts that it did not have an obligation to continue to administer a portion of the songwriting royalties under the 1977 memorandum of agreement.

At the beginning of the trial, I described the claims against Defendant Hodgson and Defendant Delicate Music.

For reasons that do not concern you, the breach of contract claims with respect to the 1984 withdrawal agreement and the 1991 publishing agreement, against both defendants, are no longer before you.  Do not speculate about why the claims are no longer part of this trial.

Defendant Hodgson and Defendant Delicate Music are on trial only for claims of breach of contract with respect to the 1977 memorandum of agreement.

1    You may consider the evidence presented only as it

2    relates to the remaining claims concerning the 1977 memorandum

3    of agreement.

4    Any evidence in connection with the 1991 publishing

5    agreement, including the surrounding circumstances related to

6    that agreement, should not be considered.

7    When a party has the burden of proving any claim or

8    affirmative defense by a preponderance of the evidence, it

9    means you must be persuaded by the evidence that the claim or

10   affirmative defense is more probably true than not true.

11   You should base your decision on all of the evidence,

12   regardless of which party presented it.

13   The evidence you are to consider in deciding what the

14   facts are consist of:

15   One, the sworn testimony of any witness.

16   Two, the exhibits admitted into evidence.

17   Three, any facts to which the lawyers have agreed.

18   And four, any facts that I may instruct you to accept as

19   proof.

20   In reaching your verdict, you may consider only the

21   testimony and exhibits received into evidence.

22   Certain things are not evidence and you may not consider

23   them in deciding what the facts are.

24   I will list them for you:

25   One, arguments and statements by lawyers are not

evidence.

The lawyers are not witnesses.  What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence but it is not evidence.  If the facts, as you remember them, differ from the way the lawyers have stated them, your memory of them controls.

Two, questions and objections by lawyers are not evidence.

Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.

You should not be influenced by the objection or by the Court's ruling on it.

Three, testimony excluded or stricken or that you are instructed to disregard is not evidence and must not be considered.

In addition, some evidence may be received only for a limited purpose.  When I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

Four, anything you may see or hear when the Court is not in session is not evidence.

You are to decide the case only on the evidence received at the trial.

1    Evidence may be direct or circumstantial.

2    Direct evidence is direct proof of a fact, such as

3  testimony by a witness about what that witness personally saw

4  or heard or did.

5    Circumstantial evidence is proof of one or more facts

6  from which you could find another fact.

7    You should consider both kinds of evidence.

8    The law makes no distinction between the weight to be

9  given to either direct or circumstantial evidence.  It is for

10 you to decide how much weight to give any evidence.

11   By way of example, if you wake up in the morning and see

12 that the sidewalk is wet, you may find from that fact that it

13 rained during the night.  However, other evidence, such as a

14 turned on garden hose may, provide a different explanation for

15 the presence of water on the sidewalk.

16   Therefore, before you decide that a fact has been proved

17 by circumstantial evidence, you must consider all of the

18 evidence in the light of reason, experience, and common sense.

19   There are rules of evidence that control what can be

20 received into evidence.  When a lawyer asks a question or

21 offers an exhibit into evidence, and a lawyer on the other side

22 things that it is not permitted by the rules of evidence, that

23 lawyer may object.

24   If I overrule the objection, the question was answered

25 or the exhibit received.

1            If I sustain the objection, the question was not

2    answered and the exhibit was not received.

3            Whenever I sustained an objection to a question, you

4    must ignore the question and must not guess what the answer

5    might have been.

6            Sometimes I order that evidence be stricken from the

7    record and that you disregard or ignore the evidence.

8            That means that when you are deciding the case, you must

9    not consider the stricken evidence for any purpose.

10           In deciding the facts in this case, you may have to

11   decide which testimony to believe and which testimony not to

12   believe.  You may believe everything a witness says or part of

13   it or none of it.

14               In considering the testimony of any witness, you

15   may take into account:

16           One, the opportunity and ability of the witness to see

17   or hear or know the things testified to.

18           Two, the witness's memory.

19           Three, the witness's manner while testifying.

20           Four, the witness's interest in the outcome of the case,

21   if any.

22           Five, the witnesses bias or prejudice, if any.

23           Six, whether other evidence contradicted the witness's

24   testimony.

25           Seven, the reasonableness of the witness's testimony in

UNITED STATES DISTRICT COURT

1    light of all of the evidence.

2         And eight, any other factors that bear on believability.

3         Sometimes a witness may say something that is not

4    consistent with something else he or she said.

5         Sometimes different witnesses will give different

6    versions of what happened.

7         People often forget things or make mistakes in what they

8    remember.

9         Also, two people may see the same event but remember it

10   differently.

11        You may consider these differences, but do not decide

12   the testimony is untrue just because it differs from other

13   testimony.

14        However, if you decide that a witness has deliberately

15   testified untruthfully about something important, you may

16   choose not to believe anything that witness said.

17        On the other hand, if you think the witness testified

18   untruthfully about some things but told the truth about others,

19   you may accept the part you think is true and ignore the rest.

20        The weight of the evidence as to a fact does not

21   necessarily depend on the number of witnesses who testify.

22        What is important is how believable the witnesses were

23   and how much weight you think their testimony deserves.

24        You heard testimony from certain expert witnesses --

25   Gary Cohen, Jeff Jampol and Phil Ames -- in this case who

testified about their opinions and the reasons for those
opinions.  This opinion testimony was allowed because of the
specialized knowledge, skill, experience, training or education
of these witnesses.

Such opinion testimony should be judged like any other
testimony.  You may accept it or reject it and give it as much
weight as you think it deserves, considering the witnesses
specialized knowledge, skill, experience, training or
education, the reasons given for the opinion, and all of the
other evidence in the case.

A deposition is the sworn testimony of a witness taken
before a trial.  The witness is placed under oath to tell the
truth and the lawyers for each party may ask questions.  The
questions and answers are recorded.

When a person is unavailable to testify at trial,
the deposition of that person may be used at the trial.
Insofar as possible, you should consider deposition testimony
presented to you in court in lieu of live testimony in the same
way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of
voice of any person reading the questions or answers.

From time to time during the trial, it became necessary
for me to talk with the attorneys out of the hearing of the
jury, either by having a conference at the bench which the jury
was present in the courtroom or by calling a recess.

1      Please understand that while you were waiting, we were

2   working.

3      The purpose of these conferences was not to keep

4   relevant information from you, but to decide how certain

5   evidence is to be treated under the rules of evidence and to

6   avoid confusion and error.

7      Of course, we have done what we could to keep the number

8   and length of these conferences to a minimum.

9      I might not have granted a request for a conference.  Do

10  not consider my granting or denying a request for a conference

11  as any indication of my opinion of the case or of what your

12  verdict should be.

13     All parties are equal before the law, and a partnership

14  is entitled to the same fair and conscientious consideration by

15  you as any party.

16     At the start of trial, I read to you certain facts that

17  the parties agreed to.

18     I will remind you of those facts now.

19     You must, therefore, treat these facts as having been

20  conclusively proved.

21     One, Defendant Roger Hodgson formed Supertramp with Rick

22  Davies in England in 1969.

23     Two, Plaintiff Douglas Thomson joined the band in 1972.

24     Plaintiffs John Helliwell and Robert Siebenberg joined

25  the band in 1973.

1          Between 1973 and 1983, Supertramp recorded and

2   released six long playing record albums, also known as LPs:

3          *Crime of the Century*, released September of 1974.

4          *Crisis?  What Crisis?  released November of 1975.*

5          *Even in the Quietest Moments,* released April

6   of 1977.

7          *Breakfast in America*, released March 1979.

8          The live album *Paris*, recorded on the *Breakfast in*

9   *America* tour in Paris, France and released September of 1980.

10          And *Famous Last Words,* released October of 1982.

11          Mr. Hodgson is the songwriter who wrote many of the

12   band's hit songs, including "Dreamer," "Give a Little Bit,"

13   "Take the Long Way Home," "the Logical Song," "It's Raining

14   Again," and *Breakfast in America*."

15          Defendant Delicate Music is the entity through which

16   Mr. Hodgson and Mr. Davies collect and distribute songwriting

17   royalties.

18          Five, the Supertramp recordings each went either gold,

19   platinum, multi-platinum, or diamond -- ten times platinum --

20   in various countries in Europe and North America, including

21   here in the United States.

22          Six, Supertramp's biggest hit record was *Breakfast in*

23   *America*.  That album reached No. 1 in the U.S. and Canada,

24   yielded four international top ten singles and was later

25   certified four times platinum in the U.S. and ten times

1  platinum in Canada, selling over 30 million albums worldwide.

2  Seven, total worldwide album sales across all six

3  Supertramp recordings exceed 71 million to date.

4  Eight, in 1977, the five members of Supertramp and the

5  band's manager, David Margereson, entered into a memorandum of

6  agreement publishing pertaining to the allocation of

7  songwriting royalties.

8  Nine, Mr. Hodgson left the band in 1983.

9  Ten, in December 1984, plaintiffs Hodgson, Davies,

10  Delicate Music, and others entered into a withdrawal agreement

11  pertaining to Mr. Hodgson's exit from Supertramp.

12  Eleven, following Mr. Hodgson's departure, plaintiffs

13  continued performing with Supertramp until 1988.

14  Mr. Helliwell and Mr. Siebenberg participated in

15  subsequent tours in 1997, 1999, and 2002, as well as a studio

16  album release in 2002.

17  Supertramp toured again in 2010 and part of 2011.

18  Again, with Mr. Helliwell and Mr. Siebenberg, but

19  without Mr. Thomson.

20  Twelve, starting in 1977, defendants paid plaintiffs a

21  share of songwriting royalties under the parties agreement.

22  Thirteen, in 2016, Mr. Davies and Mr. Hodgson served

23  notice to Universal Music Publishing Group and Delicate Music

24  that the assignments to them of the copyrights in the musical

25  compositions embodied on the albums, *Breakfast in America* and

*Famous Last Words* would terminate effective 2018, pursuant to the copyright act.

To prevail on each of their claims for breach of contract of the 1977 memorandum of agreement, plaintiffs must prove all of the following elements by the preponderance of the evidence.

Against Hodgson:

One, plaintiffs had a valid and enforceable contract with Defendant Hodgson for sharing a portion of song royalties with the plaintiffs.

Two, defendant breached the contract.

Three, plaintiffs were harmed as a result.

Against Delicate Music:

Plaintiffs had a valid and enforceable contract with Defendant Delicate Music for administering a portion of song royalties with the plaintiffs.

Two, defendant breached the contract.

Three, plaintiffs were harmed as a result.

If you find Defendant Hodgson or Defendant Delicate Music breached the 1977 memorandum of agreement, then plaintiffs were harmed as a result.

Plaintiffs and Defendant Roger Hodgson entered into a contract for a portion of the songwriting royalties through the 1977 memorandum of agreement.

Plaintiffs claim that Defendant Hodgson breached this

contract by failing to continue paying a portion of the songwriting royalties.

Plaintiffs also claim Defendant Hodgson's breach of contract caused harm to plaintiffs for which Hodgson should pay.

Defendant Hodgson denies he breached the contract and that he is required to continue paying plaintiffs a portion of the songwriting royalties.

Plaintiffs and Defendant Delicate Music entered into a contract for Defendant Delicate Music to administer a portion of songwriting royalties through the 1977 memorandum of agreement.

Plaintiffs claim that Defendant Delicate Music breached this contract by failing to continue to administer -- I'm sorry, by failing to continue administering a portion of the songwriting royalties.

Plaintiffs also claim that Delicate Music's breach of this contract caused harm to plaintiffs for which Delicate Music should pay.

Delicate Music denies that it breached the agreement and that it is required to administering to plaintiffs a portion of the songwriting royalties.

Because neither the express language of the contract nor the nature of the contract and the surrounding circumstances provide a basis for implying a termination date for the

contract, the contract may be terminated at will, upon notice, by any party after a reasonable time has elapsed.

It is up to you to decide whether the contract was terminated after a reasonable time.

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning, unless you decide that the parties intended the words to have a special meaning.

In deciding what the words in a contract meant to the parties, you may consider the parties' course of performance, i.e., how the parties acted after the contract was created but before any disagreement between the parties arose.

A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.

With respect to Defendant Hodgson, if you decide that plaintiffs have proved their claim against Defendant Hodgson for breach of contract you also must decide how much money will reasonably compensate plaintiffs for the harm caused by the respective breaches.

This compensation is called damages.

The purpose of such damages is to put plaintiffs in as good a position as they would have been if Defendant Hodgson had performed as promised.

To recover damages for any harm, plaintiffs must prove

that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of contract.

Plaintiffs also must prove the amount of their damages according to the following instructions.

They do not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Plaintiffs claim damages for the amounts they claim they were entitled to under their contract with Defendant Hodgson.

With respect to the Defendant Delicate Music, if you decide that plaintiffs have proved their claim against Defendant Delicate Music for breach of contract, you also must decide how much money will reasonably compensate plaintiffs for the harm caused by the respective breaches.

This compensation is called damages.

The purpose of such damages is to put plaintiffs in as good a position as they would have been if Defendant Delicate Music had performed as promised.

To recover damages for any harm, plaintiffs must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Plaintiffs also must prove the amount of their damages

according to the following instructions.

They do not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Plaintiffs claim damages for the amounts they claim they were entitled to under their contract with Defendant Delicate Music.

To recover damages for the breach of a contract to pay money, plaintiffs must prove the amount due under the contract.

You must not include in your award any damages to punish or make an example of Defendant Hodgson or Delicate Music.

Such damages would be punitive damages and they cannot be a part of your verdict.

You must award only the damages that fairly compensate plaintiffs for plaintiffs loss.

Before you begin your deliberations, elect one member of the jury as your presiding juror.

The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.  You shall diligently strive to reach agreement with all of the other jurors, if you can do so.

Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should only do so after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous

verdict but, of course, only if each of you can do so after having made your own conscientious decision.

Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on the these instructions, I will remind you that you must not be exposed to any other information about the case or to the issues that it involves.

Except for discussing the case with your fellow jurors during your deliberations, do not communicate with anyone, in any way, and do not let anyone else communicate with you, in any way, about the merits of the case or anything to do with it.

This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means via e-mail, text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, SnapChat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.

1    If you are asked or approached in any way about your

2  jury service or anything about this case, you must respond that

3  you have been ordered not to discuss the matter and to report

4  the contact to the Court.

5    Do not read, watch, or listen to any news or media

6  accounts or commentary about the case or anything to do with

7  it.

8    Do not do any research, such as consulting dictionaries,

9  searching the Internet or using other reference materials, and

10  do not make any investigation or in any other way try to learn

11  about the case on your own.

12    Do not visit or view any place discussed in the case and

13  do not use Internet programs or other devices to search for or

14  view any place discussed during the trial.

15    Also, do not do any research about this case, the law or

16  the people involved, including the parties, the witnesses, or

17  the lawyers until you have been excused as jurors.

18    If you happen to read or hear anything touching on this

19  case in the media, turn away and report it to me as soon as

20  possible.

21    These rules protect each parties' right to have this

22  case decided only on the evidence that has been presented here

23  in court.

24    Witnesses here in court take an oath to tell the truth

25  and the accuracy of their testimony is tested through the trial

1  process.

2       If you do any research or investigation outside the

3  courtroom or gain any information through improper

4  communications, then your verdict may be influenced by

5  inaccurate, incomplete, or misleading information that has not

6  been tested by the trial process.

7       Each of the parties is entitled to a fair trial by

8  impartial jury, and if you decide the case based on information

9  not presented in court, you will have denied the parties a fair

10  trial.

11      Remember, you have taken an oath to follow the rules,

12  and it is very important you do follow these rules.

13      A juror who violates these restrictions jeopardizes the

14  fairness of these proceedings and a mistrial could result.

15  That would require the entire trial process to start over.

16           If any juror is exposed to any outside

17  information, please notify the Court immediately.

18      Some of you have taken notes during trial.  Whether or

19  not you took notes, you should rely on your memory of what was

20  said.  Notes are only to assist your memory.  You should not be

21  overly influenced by your notes or those of your fellow jurors.

22      If it becomes necessary during your deliberations to

23  communicate with me, you may send a note through the bailiff,

24  signed by your presiding juror or by one or more members of the

25  jury.

1        No member of the jury should ever attempt to communicate

2   with me except by a signed writing.

3        I will communicate with any member of the jury on

4   anything concerning the case only in writing or here in open

5   court.

6        If you send out a question, I will consult with the

7   parties before answering, which may take some time.  You may

8   continue your deliberations while waiting for the answer to any

9   question.

10       Remember, you are not to tell anyone, including me, how

11  the jury stands numerically or otherwise until after you have

12  reached a unanimous verdict or have been discharged.

13       Do not disclose any vote count in any note to the Court.

14       I will give you a verdict form with questions you must

15  answer.  I have already instructed you on the law that you are

16  to use in answering these questions.

17       You must follow my instructions and the form carefully.

18       You must consider each question separately.

19       Although you may discuss the evidence and the issues to

20  be decided in any order, you must answer the questions on the

21  verdict form in the order they appear.

22       After you have reached a unanimous verdict -- I'm sorry,

23  after you have reached unanimous agreement on a verdict form,

24  your foreperson should complete the form according to your

25  deliberations, sign and date it, and advise the bailiff that

1   you are ready to return to the courtroom.

2        All right.  That concludes the jury instructions.

3        And counsel, do you wish to make a closing arguments at

4   this time?

5             MR. GIVEN:  I do, Your Honor.

6             THE COURT:  All right.  You may proceed.

7             MR. GIVEN:  Thank you, Your Honor.

8               Proceed?

9             THE COURT:  Yes, please.

10             MR. GIVEN:  For a brief moment in 1979, Supertramp

11   was arguably the biggest band in the world.

12        It had the biggest album on the planet, and by December,

13   had completed one of the highest grossing tours of the year.

14        As is evident from this photo, we are many years away

15   from 1979.

16        Even further away from 1977, when the band made its

17   agreement to share song income.

18        In many ways, this is a simple case, the contract is

19   short but sturdy.

20        Until a few years ago, it stood the test of time.

21        No one doubted its longevity.

22        What did I tell you at the beginning of the case about

23   this contract?

24        It was precise about what was shared and what was not.

25        The only claim my clients have made and make today is to

a small portion of income generated from Supertramp recordings

they appeared and performed on, just as the contract says.

        That is not even in dispute.

        The question you must answer is how long my clients are

entitled to a fraction of that income.

        We have been consistent in this.  We have said from the

start that it would be unreasonable to cut plaintiffs off while

those recordings are still generating income.

        The overwhelming weight of the evidence is in favor of

that answer.

        This is because the music the parties made together is

timeless.

        I want to stop, ladies and gentlemen, for just a minute,

and thank you so much for your time, and my clients also want

to thank you for your time -- Mr. Siebenberg, Mr. Helliwell,

and Mr. Thomson.

        We understand this has been a somewhat long trial, maybe

longer than we expected.  We understand that your time is

valuable.  We don't want to be here either.  We didn't want to

have to drag ourselves and you into this.

        But the week you spent here is important because you get

to decide the outcome of the decades of my clients' efforts.

        Burden of proof.

        I wish to emphasize the party's burden of proof in this

case.

```
 1           We must prove our contention regarding our clients'

 2   continuing entitlement to this income by a preponderance of the

 3   evidence.

 4           The "beyond a reasonable doubt" standard does not apply.

 5           Preponderance means that our contention must be more

 6   likely than not.

 7           And it can be more likely by the slimmest of margins.

 8           If the balance is equivalent and there is a feather

 9   added to one side or the other, that is enough to sustain our

10   clients' burden.

11           And you must find in their favor.

12           We think we have met that burden.

13               When you look at the contract before you, how do

14   you decide what the parties intended?

15           And again, when you consider those subjects, we believe

16   you will find that the most reasonable -- the most logical, and

17   the most fair interpretation is that as long as income from

18   these recordings continues, a reasonable time has not elapsed

19   to terminate the parties sharing agreement.

20           Let's talk about the tools you have here.

21           You have the words of the agreement, you have its

22   circumstances, you have the nature of the contract, you have

23   custom and practice in the music industry, and you have the way

24   the parties behaved before Mr. Hodgson forced my clients to

25   follow this lawsuit.
```

1          What is called course of performance.

2          And keep in mind, the reason our legal system gives you

3    these tools is to determine what the parties intended.

4          You also have an important ruling from His Honor.  He

5    has instructed you that the parties' contract does not have an

6    expressed termination date and that the facts do not allow to

7    you imply one.

8          Ask yourself, why not?

9          Words.  Let's start with the words of the parties

10   contract.

11         His Honor has instructed you that the parties' 1977

12   memorandum of agreement is a valid and enforceable contract,

13   for Mr. Hodgson to pay plaintiffs a share of song income and

14   Delicate Music to administer that income.

15         What do the words of the 1977 memorandum of agreement

16   say?

17         I cited this provision in my opening statement, quote:

18   This memorandum shall serve as a fully effective and binding

19   contract, unless and until such time as a formal agreement

20   covering the same subjects is entered into.

21         These words do not have a special meaning.

22         They should be understood by you, in their usual and

23   ordinary sense.

24         The evidence is that the parties have not agreed

25   otherwise.  Therefore, when defendants terminated plaintiffs

1    rights, they did not do so after a reasonable time.

2        There are other words in the parties contract which

3    support plaintiff's view that a reasonable time has not

4    elapsed.  These are the words in Paragraph 3, providing for

5    Mr. Hodgson's ownership of his songs.

6        As well as the words in that paragraph providing for

7    Delicate Music's administration of those songs.

8        There are other words that provide for Mr. Hodgson

9    keeping the income from any other recordings, including his own

10   rerecords and any covers of his songs by others.

11       These are forward-looking provision says.  They

12   contemplate a continuing stream of income.

13       A fraction of that income belongs to plaintiffs.  But

14   only for the recordings that they themselves performed on and

15   contributed to.

16       Those recordings continue to generate income, and as

17   such, a reasonable time has not elapsed and it is not

18   reasonable for Mr. Hodgson to claim otherwise.

19       Nature of the agreement.

20       His Honor has instructed you that in addition to words,

21   you may consider the matter to which the parties contract

22   relates.  The nature of the agreement.

23       The 1977 memorandum of agreement was a contract for the

24   sharing of music royalties.  You know from your own experience

25   and common sense that such royalties are ordinarily paid

1    indefinitely.

2          The question becomes, under those circumstances, how

3    long should someone sharing in an income stream from music --

4    music that they helped to create -- continue to receive that

5    share of income?

6          Mr. Hodgson has already answered that question for you.

7    He thinks it's reasonable for him to continue to receive that

8    share of income from A&M Records for as long as that income

9    continues.

10          Conversely, it would be unreasonable for A&M Records to

11    exercise a right it might otherwise have to terminate that

12    stream of income while the recordings continue to make money.

13          When you are in the jury room, pull Exhibit 1, that is

14    the parties' 1973 recording agreement, and look at Paragraph 3.

15          Pull Exhibit 5, the parties' 1977 recording agreement,

16    and look at Paragraph 12.  This was the one I asked Mr. Hodgson

17    about and that he signed when he signed the 1977 memorandum of

18    agreement.

19          Pull Exhibit 13, the parties' 1981 recording agreement,

20    and look at Paragraph 6.

21          Like the 1977 memorandum of agreement, none of these

22    contracts speak of an indefinite right to receive royalties.

23    None of them say "in perpetuity."  But Mr. Hodgson has told us

24    that it would be unreasonable for A&M Records to stop paying

25    him while they were still selling records.

1          Same thing here.

2          Circumstances.

3          His Honor has also instructed you that the subject of a

4     reasonable time may be explained by reference to the

5     circumstances under which the parties made their 1977

6     memorandum of agreement.

7          In my opening, I made mention of the history of

8     Supertramp before my clients joined.

9          The evidence at trial more than proves out what I told

10    you.

11         In addition, Mr. Hodgson had two years to think about

12    the memorandum of agreement following his meeting with Dave

13    Margereson, as well as almost a year between the two meetings

14    with the band's lawyer, Jay Cooper.  This suggest that had the

15    parties intended to allow for termination, for example, when

16    the record royalties from *Breakfast in America* started to roll

17    in, they would have done so by including something in their

18    contract.

19         But they didn't.

20         So it would not have been reasonable to terminate the

21    parties contract at that time.

22         Industry custom and practice.

23         You heard from only one expert in the music industry.

24    His name was Jeff Jampol.  He manages dozens of legendary

25    artist just like Supertramp.  What did the -- what the members

1    of Supertramp did, according to Mr. Jampol, was common.  Why?

2    Because by sharing song income, bands facilitate their members

3    staying together and continuing to collaborate.  They may the

4    fans happy and they recognize the contributions made by all.

5           The contributions to a legacy, the legacy that is

6    sitting behind me on the poster board as Mr. Jampol said, smart

7    move, and history has born out the wisdom of that decision.

8           Course of performance.

9           His Honor haze also instructed you on the parties'

10   course of performance, that is, how the parties acted after

11   their contract was created but before this lawsuit began.

12          In this, there is overwhelming evidence in the record

13   suggesting that defendants did not terminate after a reasonable

14   time.  I would refer you in particular to the three exit

15   agreements signed by Mr. Hodgson and Delicate Music, which you

16   will have with you in the jury room.

17          The one from Mr. Margereson is Exhibit 16, the one from

18   Mr. Pope is Exhibit 27, and the one from Mr. Hodgson is

19   Exhibit 17.

20               Each one of these agreements contain provisions

21   indicating that the parties intended a reasonable time to be in

22   perpetuity.

23          Doesn't makes sense to you that Russell Pope, the sound

24   engineer, or Dave Margereson, the manager, would have an

25   agreement exceeding the rights of the members of the band?

1          The artists who appeared and performed on the recordings

2     in question.

3          Let's look at the timeline again.

4          All of the times that Mr. Hodgson didn't terminate:

5          In 1977, right after he signed the original agreement.

6          In 1979 after *Breakfast in America* was released.

7          In 1981, when the band renegotiated its recording and

8     publishing deals.

9          In 1982, '83, when Mr. Margereson quit and signed his

10    separate agreement, in which he got his income in perpetuity.

11         In 1984, and when Mr. Hodgson and Mr. Pope signed their

12    exist agreements.

13              In 1988, when Mr. Thomson left the band.

14              After the 1977 tour.

15              After the 1999 tour.

16              After the 2002 tour.

17              After the 2010 tour.

18              After the 2011 tour.

19              And the end of the band as a performing act,

20    13 years ago.

21         That Mr. Hodgson did not terminate at any of those times

22    shows you what a reasonable period is.

23         And more importantly, though he had sense changed his

24    tune, it shows you what Roger Hodgson thought was reasonable.

25              Two other quick points.

1          First, scour the record, you will not find a

2     single piece of paper in which Mr. Hodgson or any of his many

3     professional representatives and advisors actually gave notice

4     to plaintiffs that he was terminating the sharing arrangement.

5          Second, Mr. Hodgson has repeatedly said his actions were

6     par stipulated by the band's last performance, but that last

7     performance was in 2011, 13 years ago.  And the 1099s he and

8     Delicate Music issued to Mr. Siebenberg show conclusively that

9     they continued to abide by their contractual obligations.

10         The timing of defendants' breach was actually closer to

11    when Mr. Hodgson last performed just before the COVID outbreak.

12         As Mr. Hodgson said when I asked, touring was a good

13    source of income for him.  In other words, the motive for

14    cutting the plaintiffs off was not my clients' retiring from

15    the road, rather, the motive was Mr. Hodgson's retiring from

16    the road.

17         Moreover, as you heard, plaintiffs continued to support

18    and promote the Supertramp legacy, to involvement with reissues

19    and greatest hits packages, and, crucially, in redoing the

20    band's deal with A&M Records, now Universal Records, which

21    tripled their record royalties.

22         1984 agreement.

23         When considering course of performance I would ask you

24    to pay particular attention to Mr. Hodgson's exit agreement.

25    That is Exhibit 17.

1      A colleague of mine has suggested that one way to look

2  at this document is that it served as Mr. Hodgson's severance

3  agreement from the band, and I think that is apt.

4      Mr. Hodgson had separated from the band, as you learned,

5  to start a solo career.  And his solo effort was not tied to

6  the 1977 memorandum of agreement.

7      Put differently, he no longer had to share with

8  plaintiffs, or Mr. Davies, for any new work.

9      But he did have to continue to share with those

10  individuals for his prior work.

11      His severance package included at least four important

12  provisions in informing your decision about the reasonable

13  time.

14      First, he agreed in Section 7.1 to the same percentages

15  set out in the memorandum of agreement.

16      No more, no less, in perpetuity.

17      Second, he agreed in Section 7.4 that Delicate would

18  continue in business until expiration of all copyrights.

19      Third, he agreed in Section 7.5 to pay over to Delicate

20  all of the income he received directly from ASCAP.

21      Last, he agreed in Recital G to incorporate by reference

22  the 1977 memorandum of agreement.

23      All of this is evidence that the parties intended the

24  1977 contract to remain in force and effect.

25      And so, a reasonable time to terminate it has not

1  elapsed.

2        One last point about termination, and this is important.

3        His Honor has instructed you that the parties' contract

4  is terminal by any party.  That means plaintiffs have the

5  equivalent right to terminate after a reasonable time.

6              But how is that supposed to work?  What would

7  plaintiffs get if they terminated the 1977 memorandum of

8  agreement?  The answer is nothing.

9        They have already rendered their services to the band.

10  Their performance appears on the recordings in question.

11        How would Mr. Helliwell, for example, recover his sax

12  solo, the one described by Mr. Hodgson as wonderful, that

13  appears on "Give a Little Bit."  Where is the fairness in that?

14        The verdict form.

15        As I said, in many ways this is a simple case.  And so

16  too, mercifully, is the verdict form.

17        It asks you to answer only two questions, one each for

18  Mr. Hodgson and Delicate Music.

19        The question is the same.  And we would suggest, so

20  should your answer.

21        The answer to both questions is no.

22              No.  It is not reasonable for either defendant to

23  cut plaintiffs off while the recordings they appeared and

24  performed on continue to generate income.

25        You also have the option to decide that one defendant is

liable and the other is not.  But plaintiffs have more than met their burden as to Mr. Hodgson and Delicate Music.

And it makes no sense to find one liable and the other not.

However, if you choose to hold one of the two defendants liable, it should be Mr. Hodgson who made the untimely decision to terminate the parties agreement and instructed Delicate Music accordingly.

Damages.

If you answer no to one or both of the first two questions, then you will be asked to consider the subject of damages.

In this, the testimony of our music business accountant is unassailable.  You saw him do the math right from the stand, but here it is again.  The total amount is approximately $1.3 million.  That is for a seven-year period.

That works out to about $430,000 per man, or about $65,000 per man, per year before interest.

It's not a fortune, but it's meaningful retirement money and security for the future.

Keep in mind, for every dollar you award each plaintiff, Mr. Hodgson is making many multiples of that.  Defendants have attacked these figures and attacked Mr. Cohen's calculations. They say it doesn't include a fee to pay their accountants, Mr. Glass and Mr. Ames.

1        My answer to that is you don't get paid a percentage on

2   money you don't pay.

3        By their actions, defendants forced plaintiffs to hire

4   Mr. Cohen to do the accounting of these monies for them.  They

5   should not have to pay twice.

6        Defendants may also say that Mr. Cohen failed to

7   consider the cover income in his calculation.  Nonsense.

8   Mr. Cohen said from the stand, under oath, that he deducted any

9   and all covering income he identified from the records he was

10  provided by defendants.

11       Finally, defendants ask you to consider a set off, the

12  so-called sound exchange money.  They say plaintiffs received

13  and Mr. Hodgson didn't.

14       This only comes into play if you find defendants liable

15  for damages.  And it is defendants' burden to prove the basis

16  and amount of this claim.

17       But as you heard, anything Mr. Hodgson missed on sound

18  exchange was his own fault.  And as he readily admitted,

19  certainly not the fault or the responsibility of plaintiffs.

20       And the evidence is just too weak to quantify any

21  amount.

22       The best Mr. Glass could do from the stand was to say he

23  wasn't really sure, it might be $150,000, but it might be less.

24       That is not good enough in a Court of law for defendants

25  to sustain their burden on their set off.

1    Credibility.

2    I want to say a word about the credibility of the

3 witnesses you heard from.

4    To a person, all those who took the stand for

5 plaintiffs, answered the questions they were asked, truthfully

6 and honestly and to the best of their abilities.

7    Each plaintiff was unique in his own way.  But each told

8 the truth.

9    The same cannot be said of Mr. Hodgson.

10    On a slew of subjects, large and small, he was often

11 made to contradict himself, retract or correct something

12 previously said or offer excuses for inaction or inattention.

13 Like, for example, not reading the contract at issue in this

14 case.

15    You may remember I caught Mr. Hodgson in a lie right at

16 the start of my cross-examination when I asked him to clarify

17 his claim that my clients sabotaged his first solo record by

18 suing him.  None of that turned out to be true.

19    And as His Honor has instructed you, once you find that

20 someone is untruthful in one thing, you can find him untruthful

21 in all things.

22    Now, as you have seen, the truth changes for Mr. Hodgson

23 depending on his motives.

24    Twenty years ago, Mr. Hodgson faced a different set of

25 circumstances in a different lawsuit.  During his divorce from

his then-wife, he didn't say the payments to plaintiffs were a
gift or that the payments were temporary, rather, he said they
were a business expense.  That is an amount a person is
obligated to incur.

That is because, at the time, in that lawsuit, it was
beneficial to him to say that to minimize his obligations to
his ex-wife.

In my experience, sometimes a person's lawyer makes a
comment in an opening statement that reveals something
important about his or her client.  That happened here.

You may remember the phrase that was used.  It struck a
chord with me.

It was used to describe my three clients.  According to
Mr. Hodgson's lawyer, plaintiff suffered from a quote, seething
undercurrent of resentment.

Ladies and gentlemen of the jury, you are the sole judge
on that subject, but I would suggest to you that the only
former member of Supertramp sitting in this courtroom today who
is seething with resentment is Mr. Hodgson.

All of the evidence points to the inescapable conclusion
that these five musicians made six legendary albums together,
and that in their 1977 contract, they agreed they would share
in the fruits of their labor.  As you heard, during a ten-year
period, that labor was intense.

During that time, plaintiffs bore the majority of all

```
 1   costs incurred in launching and supporting the band.  As

 2   Mr. Siebenberg said, A&M Records recouped many, many millions

 3   of dollars of debt repaid.

 4        60 percent of that born by my three clients.

 5        Under the circumstances, it is entirely unreasonable for

 6   defendants to terminate this sharing while those labors

 7   continue to bear fruit.

 8        I trust you will come back with a true and correct

 9   verdict in my clients' favor.  I thank you again, and I will

10   talk to you in about 30 minutes.  One final time.  Thank you.

11             THE COURT:  Thank you, counsel.

12             Mr. Gutman, do you wish to proceed with your

13   closing?

14             MR. GUTMAN:  Thank you, Your Honor.  I need one

15   minute to get set up.

16             This is not -- pardon me, it's not transferring

17   over to defense table.  Let me see if I can transfer it to the

18   podium here.  Pardon me for the delay.

19             May it please the Court, parties, counsel, you

20   ladies and gentlemen of the jury.  I want to thank you for your

21   service.  I know it's a terrible inconvenience and the words of

22   Winston Churchill, the great leader of England, the Great

23   Britain during World War II, he said democracy is the worst

24   system in the world, except for all the others.

25             And being a part of a jury is one of the rights
```

1  guaranteed, or one of the obligations that flows with

2  citizenship under our Constitution.  So I appreciate your being

3  of service, I know it's been a terrible inconvenience, and I

4  hope you will find after your service is done that you got

5  something beneficial out of it.

6       One thing that so interesting about Mr. Given's opening

7  remarks, he never once mentioned that Mr. Roger Hodgson wrote

8  all of the songs.  Everything is conflated with performance,

9  with recordings, with record albums.

10          Make no mistake, each one of these plaintiffs

11  received every dollar they were due in connection with every

12  performance, every record that they played on.  They were

13  subject to recording agreements, and the idea that one would

14  each conflate a recording agreement with the songwriting

15  agreement where Mr. Hodgson wrote all of the hits.

16          Unlike his hit song, "Give a Little Bit," give a

17  little bit of love.  What has happened in this case is this is

18  all about agreed.  This is about a pack of wolves coming after

19  my client for a piece of the publishing, the songwriting

20  royalties for the songs that he wrote that came from his soul,

21  that he developed talking about his dreams in a song "Dreamer,"

22  talking about his aspirations, talking about the confusion in

23  "the Logical Song" like he testified from the bench, please

24  tell me who I am.

25          And when I asked Mr. Siebenberg while he was on

**UNITED STATES DISTRICT COURT**

1  the witness stand, what is the meaning of "Take the Long Way

2  Home," one of the great hits that he had the good fortune of

3  playing on, one of the songs that Mr. Hodgson wrote.  What was

4  Mr. Siebenberg's reaction?

5      You know, I would stand here and tell you how offended I

6  am by opposing counsel calling people a liar.  Let's talk about

7  what has really gone on in this case.

8          Back in 1975, after a couple of albums had to be

9  released, Mr. Hodgson and Mr. Davies were making money off

10  their songwriting royalties.

11      The three other members, if you remember, Mr. Helliwell

12  on videotape, maybe we can get a piece of this.

13          Maybe we can get a piece of this.

14      This is about three guys who have -- for 41 years, plus,

15  for four decades, four times longer than they were even

16  performing together -- for four decades have been receiving,

17  collectively, nearly 35 percent of Mr. Hodgson's royalties for

18  his songs.

19          It's not about the recordings, and as I'm going

20  to take you through the evidence, you will see that they have

21  been paid all of the money that was due to them in connection

22  with the recordings.

23      It's not about their performances.  They sued him after

24  they got a gift back in 1977, and instead of being generous,

25  they turn around and they are greedy.  And that is what is

1   driving this particular trial.

2          But the money that we're here talking about is money

3   derived from songwriting.  It's not about record albums.

4          Roger Hodgson wrote those songs.  It was never forever.

5   It was the only reason that anybody got a portion of the

6   songwriting royalties, these three guys, is because they were

7   broke.  Quote, we were hurting financially.

8          And they wanted a piece of it.

9          These are his songs.  He created them -- the music, the

10  lyrics, the hooks, the bridges, the introductions.  They did

11  not write a single melody.  They did not write a single lyric.

12  They didn't write a single chorus.  They didn't write a single

13  phrase.  They did not write a single intro.

14             These songs were born in Roger Hodgson's soul.

15  They were informed by his life.  They were about his

16  experiences.  These are his songs.  It's his music.

17         Now, there is a closing jury instruction.  His Honor

18  just read it to you a few minutes ago.

19         Number 18.  The contract, that is the memorandum of

20  agreement, that we are here talking about, not any other

21  agreement -- there is an allegation claim that Mr. Hodgson has

22  breached a single agreement.  This memorandum of agreement

23  regarding publishing, which I will show you in a minute.

24             Here is the law.  The contract may be terminated

25  at will, upon notice, by any party after a reasonable time has

 1  elapsed.

 2          It is up to you to decide whether the contract

 3  was terminated after a reasonable time.

 4          Roger Hodgson has the right to terminate the memorandum

 5  of agreement.

 6          The only thing that Mr. Given is arguing is telling you

 7  41 years is not reasonable.

 8          But it's clear Roger Hodgson does not have a legal

 9  obligation to pay the plaintiffs forever.  The only question is

10  whether the contract was terminated after a reasonable time.

11          It is up to you to decide whether the contract was

12  terminated after a reasonable time.

13          41 years of payments based upon albums that were

14  recorded over a ten-year period.

15          They first sought Mr. Hodgson's songwriting royalties,

16  because they were hurting financially in 1975.

17          They are about his songs that are listed on these

18  agreements.  They are not about the recordings of those songs,

19  they are about the writing of the songs.

20          So, what is a reasonable time?

21          Well, plaintiffs, as Mr. Given alluded to, have the

22  burden of proving what is more believable.

23          Are you going to tell us that it's unreasonable

24  to terminate this contract that he has a right -- a legal right

25  to terminate -- after 41 years?

1          They have been getting paid for 41 years for a portion

2     of his songwriting royalties that they did not write.

3          The only reason they got it in the first place?  Because

4     they were hurting financially.

5          41 years.

6          So, Supertramp stopped touring in 2011.  But as

7     Mr. Hodgson testified on the witness stand yesterday, Rick

8     Davies announced in 2018 that Supertramp would never tour again

9     and, as he also testified on Friday, the rights and the

10    copyrights in songs were subject to a reversion under the

11    copyright act, and that is also one of the stipulated facts

12    that has been provided in the booklet of the instructions that

13    have been provided to you.

14         So, 2018 was an opportune or the correct time for

15    Mr. Hodgson to terminate the rights that this contract

16    provided, that they had been receiving so generously and so

17    freely.  This is not about their compensation for recording or

18    performing.

19         Now what happened after Mr. Hodgson notified them that

20    he intended to terminate this payment stream?

21         Well, we saw introduced into evidence yesterday,

22    Exhibit 106.  It's a letter in 2021 from Mr. Hodgson's

23    bookkeeper stating in response -- as Mr. Hodgson testified --

24    to a threatening letter from the plaintiffs' lawyer demanding

25    more money, and just said, due to Roger health crisis, he

1     cannot pursue any legal matters or have any involvement in his

2     life.  In order to remove the stress and his need to have

3     complete focus on his health, a payment has been sent for

4     100 percent of the disputed amount of 24,000, nearly $25,000.

5          He has along road of recovery ahead.

6          What did Mr. Hodgson tell you that happened in response

7     to this letter?  Within a couple of weeks, this lawsuit.

8            That is how the plaintiffs repaid his generosity

9     over the previous 45 years.

10          Now, great mention has been made about this enormous

11     recording agreement that the band members received back in

12     1981.  Yeah, they came off a hugely successful tour, following

13     a phenomenal album, *Breakfast in America*, and we have seen this

14     photograph, Exhibit 34, and piled up -- it's a little bit

15     difficult to see on the screen right now, maybe I can phone

16     focus on it -- the biggest deal in A&M Records history.

17          What does that mean?  The most money.

18          Well, make no mistake, because the evidence was

19     uncontradicted no matter how much credit Mr. Helliwell or

20     Mr. Siebenberg or Mr. Thomson tried to claim for the songs that

21     Roger Hodgson wrote -- make no mistake, Thomson, Helliwell, and

22     Siebenberg were paid all of their records royalties under that

23     huge and very successful recording agreement.

24          And as Mr. Siebenberg boasted and proclaimed, he was

25     instrumental in getting the royalty rate increased, so how dare

1  my opponent come in here and talk about this being a retirement

2  plan for these gentlemen.

3            This is a about Roger Hodgson's songs and

4  royalties.  He wants to talk about retirement, take it off your

5  recording royalties that you have gotten and you continue to

6  receive.

7            And make no mistake on this point as well, the

8  plaintiffs received the same exact amount as Roger Hodgson.  It

9  was split five ways.

10      No special compensation for the fact that Roger Hodgson

11  was the lead singer.  No special compensation for the fact that

12  he sang all of the -- virtually all of the band's hits, other

13  than two that Rick Davies sang, and yeah, those are great hits

14  also.  But the majority, as is set forth in the stipulated

15  facts in the booklet before you, the majority of the hits, up

16  and down the line, if you look at the greatest hits package and

17  you look at the list of songs, they are Roger Hodgson's songs.

18  He sang them, he performed them, he created them, they are from

19  him.

20      And yet, the three plaintiffs got paid the same amount

21  of money.  They also on tour got the same amount of money.

22      So, again, Mr. Hodgson is not taking disproportionate

23  share.  These are about Roger Hodgson's songs.

24      So 1974, *Crime of the Century*; 1975, *Crisis?  What

25  Crisis?*

1          Records two beautiful albums, then what happens?

2     These guys are broke.  They need some money.  They figure out

3     we're going to get it out of Roger Hodgson and Rick Davies

4     songwriting royalties.

5          And you remember Mr. Helliwell, on video -- it's the

6     only videotape I played because I think it's the only one that

7     really matters here -- and the subject of money that the two

8     songwriters earned came up and somebody suggested -- none of

9     these three are fessing up.

10          Talk about who is credible, none of them will

11     admit it, but you heard it right from Mr. Helliwell's mouth on

12     this videotape.

13          Maybe we could have a little piece of that.

14          Maybe we could have a little piece of that.

15          That was the only reason Mr. Hodgson told you about the

16     meeting over at Margereson, the manager's apartment in London,

17     telling him these guys need some money until other money comes

18     in from other sources.

19          And it eventually did.

20          Now, 1977, another album.  1979, another album.  1980,

21     we have seen these albums.  It all took place in a ten-year

22     period.  It all ended 41 years ago.

23          41 years.

24          It's up for you to decide whether the contract

25     was terminated after a reasonable time.

1          Now, we have heard from witnesses and we have seen

2     exhibits.  We saw three of the plaintiffs and Mr. Margereson,

3     who is also aligned with the plaintiffs.  We heard from

4     Mr. Jampol, Mr. Ames, Mr. Cohen, Mr. Glass, and Roger Hodgson.

5          We heard -- or pardon me, we had various exhibits

6     introduced into evidence -- which you will have the opportunity

7     to read and review during your deliberation.  We saw the

8     initial contract that Mr. Given pointed out, Exhibit 1.

9               We saw the A&M Records contract from 1977.

10         More songwriters and composers agreement, a

11    participation agreement.

12              But the only thing involved in this particular

13    trial is this Exhibit 8.  It's memorandum of agreement.

14         Not a single document states that Roger Hodgson must pay

15    a portion of his songwriting royalties to plaintiffs forever.

16         That's what I told you during my opening statement.  I

17    told you I'm going to describe the picture on the jigsaw box.

18         The jigsaw puzzle box.  And you know what that picture

19    says?

20              There is nothing that will show that Roger

21    Hodgson promised them anything forever.

22         Closing Jury Instruction No. 3, in the last stanza says

23    any evidence in connection with the 1991 publishing agreement,

24    including the surrounding circumstances related to that

25    agreement, should not be considered by you.

1        What we're focused on is that memorandum of agreement

2   from 1977.

3        This is the only claim based upon this document.  We saw

4   the withdrawal agreement that Mr. Hodgson entered into, and I

5   showed you this during my opening remarks.  There is absolutely

6   no promise for Mr. Hodgson to pay any of the plaintiffs

7   anything.

8            The only guarantees in Exhibit 17 which is, as

9   Mr. Given described, Mr. Hodgson severance package -- not

10  quite.  But what it does say is that Delicate is going to pay

11  Mr. Hodgson in perpetuity.

12           There is not a single document you are going to

13  ever see that says that the plaintiffs are entitled to any

14  portion of the songwriting royalties in perpetuity or forever

15  or anything like that.

16       It's complete fiction.  It's completely fabricated.

17  It's completely made up.  The only reason they got anything in

18  the first place was because they were broke.

19       And here is where it says perpetuity to Mr. Hodgson.

20           Nothing to the plaintiffs.

21       It's also describing Mr. Hodgson's approval rights with

22  respect to his songs.  Those are specifically identified here.

23       Now, Mr. Given also wants to conflate Mr. Margereson's

24  agreement and Russell Pope's agreement.

25           Mr. Hodgson is free to do what he wants with his

money.  If he wanted to give Mr. Pope a percentage of his songwriting royalties, in perpetuity, that is his right.  And what he did is he gave him a small percentage on one album in perpetuity, and that's in writing.  That is Exhibit 27.

Now, with Mr. Margereson.  Maybe Mr. Given doesn't want to recall this testimony, but Mr. Siebenberg testified that Mr. Margereson agreed to give up a portion of his management commission in exchange for percentage of the songwriting royalties.

Why?  Mr. Margereson was entitled as a manager to commission the songwriting royalties anyway.

Mr. Siebenberg said he was going to reduce the amount of his commission, and that's how Mr. Margereson got his contract in perpetuity.

Plaintiffs never got a similar agreement.

Now, Mr. Given's talking a lot about damages.  I don't think you will ever get there, but let's go through the analysis just in case I'm wrong.

The claim of total damages, about 1.3 million.  But they don't want to talk about these deductions for covers.  Hundreds of recordings of Roger Hodgson's songs have been done.  They don't want to talk about business manager fees.  They expect someone to be paying them for free to do the work.

And they don't want to talk about the sound exchange money, but the evidence was clear that it's at least $150,000.

1        So, the total, and that is for everybody, if you were to

2    find -- and I don't think you can because I'm going to go

3    through the verdict form with you, you are not going to be able

4    to get there in my analysis -- the total is $958,000, which you

5    never going to be able to get to.

6        Now, let's go to that special verdict form.  There is

7    going to be three questions on there.

8            The first question.  With respect to the 1977

9    memorandum of agreement publishing -- that is what we have been

10    talking about -- did Defendant Hodgson terminate his

11    contractual obligation to pay a portion of the songwriting

12    royalties to plaintiffs after a reasonable time?

13        He had the right.  He had the legal right to terminate.

14            Was 41 years a reasonable time to wait before he

15    exercised that right?

16        The answer to that question has to be yes.

17        Now, the second question regarding -- same virtual

18    question -- regarding Delicate Music, the partnership that

19    Mr. Hodgson is a partner of.

20        With respect to that 1977 agreement, did Defendant

21    Delicate Music terminate its contractual obligation to pay a

22    portion of the songwriting royalties to plaintiffs after a

23    reasonable time?

24        Again, the answer has to be yes.

25        Now, it says if the answers to both Questions 1 and 2

1    are yes, answer no further questions and have the presiding

2    juror sign and date this form.

3          Ladies and gentlemen, you have been very patient.  You

4    have listened to a lot of the testimony.  It consumed hours

5    after -- many, many hours.

6               Most of it was completely irrelevant to the

7    single issue that we're concerned about in this case -- how the

8    plaintiffs got their hands around a piece of Mr. Hodgson's

9    songwriting royalties.  They didn't create that music.  They

10   didn't write any portion of it.

11         All they did is they got this agreement that Mr. Hodgson

12   signed with a bunch of other documents when he was in the

13   recording process for *Even in the Quietest Moments*.

14         All they got was a right that Mr. Hodgson has to

15   terminate after a reasonable time.

16         Is 41 years a reasonable time?  It absolutely is.

17         They have gotten an enormous gift, so generous, and they

18   want to talk about, oh, my retirement?

19         Work off your retirement with the recording royalties

20   that are coming in.

21         The recording royalties are the things that they

22   actually performed on.  We're not talking about songs they

23   wrote.  They are not entitled to any credit.  They are not

24   entitled to any portion of the songwriting royalties.

25         Mr. Hodgson terminated the obligation to pay after

1  41 years.

2      There were a couple of minor points I just want to

3  address about Mr. Given -- from Mr. Given's opening statement

4  with the few minutes that I have left.

5      One is about -- talking about Mr. Hodgson's divorce back

6  in 2004.

7      Please, I urge, I implore you, take a look at Exhibit 77

8  when you go in there and all you are going to see is a couple

9  of lines that say, hey, this amount was paid.

10     Mr. Given somehow wants to launch that into some

11  sort of an obligation.  It was a business expense because it

12  was money paid to the band.  It was deducted from the overall

13  expense, as part of the overall expenses, on an income and

14  expense statement.

15     I don't think anybody, no matter how clever or imaginary

16  they can be in fantasizing how to interpret Exhibit 77 can come

17  up with the conclusions he made.

18     And then, calling my client a liar?  How dare he.

19  How dare he.  That is so offensive.  I find that -- how is he

20  qualified to make that statement?  And what he used to support

21  that conclusion is the word "sabotage."

22     Mr. Hodgson got up there and told you, it was a

23  very difficult time.  The band that he formed, long before the

24  plaintiffs joined the band, he was being forced out of it

25  because of the internal conflict and descension going on with

1    his co-founder and the co-founder's wife.

2            And it was a very, very difficult time.

3            And what happened?  He has a solo career because he's

4    this enormously talented songwriter and performer, and the lead

5    singer of Supertramp.  And the main songwriting songwriter of

6    Supertramp.

7                So what happened, as he explained, is that his

8    first solo album -- and Mr. Given provided us with a photo,

9    very nice, of a cover -- and what happened is A&M Records

10   marketing department put a sticker there and said something

11   about Supertramp.

12           Now, the plaintiffs -- we didn't own the name

13   "Supertramp," yeah, we were in the partnership, but we had

14   nothing to do with that.  And then you heard Mr. Siebenberg

15   bashing Mr. Hodgson on his rebuttal testimony yesterday

16   afternoon -- or morning, I forget now -- but bashing,

17   absolutely, like, just taking out whatever -- you talk about

18   resentment, the years of pent up hostility and anger at a man

19   who has given him hundreds of thousands, millions of dollars of

20   his songwriting royalties.  He says we didn't have anything to

21   do with that.  It must have come from some other place.

22               And you know, these guys, they come into this

23   courtroom, they take so much credit for everything that

24   happened and what is absolutely stunning in Mr. Given's closing

25   remarks is he never once mentioned that they never wrote a

1    single song.

2              They never wrote a single song that was recorded

3    by the band.

4         All they did is record them.

5         So, they want to talk about the fruits of the labor?

6    They got paid for recording.  They get paid on the record

7    albums.  They get paid for their labor.

8         They didn't bear the majority of costs.

9              They got paid the same as everyone else did.

10   They got paid for all of the work that they actually did.

11        Ladies and gentlemen, again, I want to thank you for

12   enormous service and inconvenience I'm sure it's causing all of

13   you in your personal lives.

14              My client, Mr. Hodgson, and his partnership that

15   he is a partner of, Delicate Music, thank you.  We trust you,

16   that you will look at the evidence objectively, and make the

17   determination that terminating the portion -- 35 percent of his

18   songwriting royalties being paid to these men, for 40 plus

19   years, four times longer than they played together.  It's

20   enough.

21              It was never forever.  Enough is enough.  He has

22   given a little bit and he has given them a lot.

23              End this.  It's time.  It's a reasonable time.

24   Thank you.

25              THE COURT:  All right.  Rebuttal, Mr. Given?

1          MR. GIVEN:  I want to cool off here for a minute.

2          I have talked a lot about precision in this.  It's

3    really important to understand.

4              Three plaintiffs are not asking for 34.5 percent

5    of all of the Mr. Hodgson's songwriting royalties.  Just those

6    songwriting royalties that derive from the recordings they

7    appeared and performed on.

8          There is a big difference.

9              Mr. Hodgson is collecting all of the other

10   royalties from covers and from his own rerecords which he uses

11   as a substitute for Supertramp recordings.

12         What does he do when a request for use comes in?  He

13   requires the third party to use his rerecord.  And by doing

14   that, he not only aces out my three clients of their share of

15   the music publishing royalties, but he aces them and Mr. Davies

16   out of all of their record royalties.

17         This is a way different situation than Tay Tay.  All

18   right?  Tay Tay's beef was with her manager and the record

19   label.

20         I don't get this debate about who needed whom more.

21             Did Roger Hodgson need the plaintiffs more or did

22   plaintiffs need Roger Hodgson more?  I have never said that

23   Roger Hodgson needed the plaintiffs.  I think they needed each

24   other.  They needed each other.  That was the magic that

25   Mr. Margereson described to you.

1          And it's the magic that was captured on these six record

2    albums.

3          And yes, 41 years is not reasonable.

4          It is not reasonable.  The more reasonable

5    interpretation of the parties agreement and their intention was

6    that the sharing arrangement would last at least as long as the

7    records continued to generate income.  It's that simple.

8          It's that simple, ladies and gentlemen.

9          I heard a little bit about Mr. Hodgson's role as lead

10   singer.  Well, first of all, he was one of two lead singers,

11   which made this band sort of unique in that respect.

12         There is something in the music business called

13   lead-singer-itis.  And I think Mr. Hodgson may suffer some from

14   lead-singer-itis that he puts himself above all of the other

15   members in the band.  He considers himself the creative genius.

16   He considers himself the leader.  He considers himself more

17   important than anybody else in the band.

18         These efforts, the efforts that were made back in the

19   70s -- when I was listening to music as a high school

20   student -- these were team efforts.  These multimember bands,

21   they operated way differently than Taylor swift or Beyonce.

22         They were a group effort.

23         And this agreement on the board was the result of that

24   group effort.

25         So I say again, I believe the answer to the two

1   questions you will be asked is no, it was not reasonable, even

2   after 41 years.

3          Mr. Hodgson has an expectation of continuing to

4   collect his record royalties, now and in the future, for as

5   long as the records continue to sell.

6          Why is it any different here?  Why is it any different

7   here?  It's not.

8          It's not, ladies and gentlemen of the jury.

9          Gift, really?  Really, a gift?

10          No.  This is not a gift.

11          This is a legal document than was drafted by a lawyer.

12   Obviously, a great deal of thought was put into this document.

13          It carried a lot of water.  And it lasted for 45 years.

14   No one ever questioned it, its longevity, until Mr. Hodgson

15   decided to cut the plaintiffs off.

16          Greed.  Pack of wolves.  Do these guys look like a pack

17   of wolves to you, seriously?

18          They made a deal back in 1977.  This is not about

19   greed.  This is about keeping your promise.

20          This stuff about, oh, we can get a little piece

21   of this.  Sadly, unfortunately, whatever you want to say, that

22   is a British slang.  It doesn't mean the same thing to

23   Mr. Helliwell as it means, apparently, to Mr. Gutman.

24          He thinks there was some kind of, you know, thing going

25   on, some kind of conspiracy.  It's just not so.  It's just not

1    so.  They met with their manager, they met with their lawyer,

2    they considered the proposition, they entered into their

3    agreement.

4              Mr. Hodgson and Delicate Music abided by that

5    agreement and then suddenly didn't.  And now he wants to sell

6    to you the idea that he could always terminate and that it's

7    reasonable to terminate now, even though those records on which

8    my client participated in continue to throw off song income.

9    We think that is wrong.  We think that is unreasonable.  We

10   think that is not the intention of the parties.

11        We think that is not what the contract means.  The

12   contract was intended for this sharing arrangement, just with

13   respect to the song income derived from the Supertramp

14   recordings -- the ones behind me.  They were intended to last

15   as long as those recordings continued to generate that income.

16   It's a very rational, very reasonable position to take with

17   respect to the duration of this agreement.

18        One last-- one or two last things.

19        Who is the only person who has testified that this deal

20   was anything less than what I have just described?  The only

21   one who came to Court and said that was Mr. Hodgson.

22   Mr. Margereson denied that he ever said to Mr. Hodgson that the

23   deal was temporary or that it was only until record royalties

24   rolled in.  And none of that is reflected in the document

25   before you.

1          Risk versus reward.  These guys underwrote the entire

2    endeavor to the tune of millions and millions of dollars, as

3    Mr. Siebenberg testified to.  Money that was recouped from

4    their record royalties that made the success of these songs

5    possible.

6          And that's what this contract reflects.  It's that

7    simple.

8          I want to just go back to what did the parties intend in

9    1977.

10         My view is that they intended for this contract to last

11   at least as long as the recordings continued to throw off song

12   income.

13              MR. GUTMAN:  Objection.  Subjective unexpressed

14   intent.

15              THE COURT:  Overruled.

16              MR. GIVEN:  You should enforce the promise that was

17   made.

18                   You should answer the verdict form, no.

19                   No, Mr. Hodgson, it was not reasonable, 45 years

20   later to cut the plaintiffs off.

21                   No, Delicate Music, it was not reasonable to cut

22   the plaintiffs off 45 years later.

23         And award them the full amount of the damages Mr. Cohen

24   has calculated and that are, basically, unrebutted.

25                   As I said, $65,000 a year, per man.  It's not a

```
 1    fortune.  They earned it.  They should continue to earn it.

 2         Thank you very much.

 3         THE COURT:  All right.  Thank you, counsel.  We have

 4    heard arguments of the attorneys.

 5              I believe we have a bailiff here that needs to be

 6    sworn in.

 7         THE COURTROOM DEPUTY:  Please state your name for

 8    the record.

 9         THE BAILIFF:  David Madrid.

10         THE COURT:  Do you solemnly swear to keep this jury

11    together in some private and convenient place, that you will

12    not permit any person to speak or communicate with them or do

13    so yourself, unless by order of the Court or to ask them

14    whether they have agreed upon a verdict, and that you will

15    return them into Court when they have so agreed or when ordered

16    by the Court, so help you God?

17         THE BAILIFF:  I do.

18         THE COURTROOM DEPUTY:  All rise for the jury.

19            (Jury exits the courtroom at 3:34 p.m.)

20         THE COURTROOM DEPUTY:  Please be seated.

21         THE COURT:  All right.  Counsel, so we will wait if

22    there is any questions and/or verdict.  I believe you are from

23    out of town, so -- and you are on the west side, so don't leave

24    the building.  You need to be here within five minutes of a

25    phone call or a text.
```

1           I want to make sure we are clear on that.

2           Are we clear on the plaintiff's side?

3           MR. GIVEN:  Yes, we are clear.

4           THE COURT:  Are we clear on the defense side?

5           MR. GUTMAN:  Absolutely.  Yes.

6           THE COURT:  So, we will wait and see if there are

7     any questions, et cetera, from the jury.

8           THE COURTROOM DEPUTY:  All rise.

9                    (Recess.)

10          THE COURTROOM DEPUTY:  All rise.  Please be seated.

11          THE COURT:  All right.  We received a note from the

12    jury, indicating that they reached a verdict, so we'll bring

13    the jury in.

14          THE COURTROOM DEPUTY:  All rise for the jury.

15          (Jury enters the courtroom at 4:45 p.m.)

16          THE COURTROOM DEPUTY:  Please be seated.

17          THE COURT:  All right.  Good afternoon, ladies and

18    gentlemen.  I understand I received a note indicating you have

19    reached a unanimous verdict; is that correct?

20          Who is the foreperson?

21          All right.  If you wouldn't mind passing the jury note

22    with the verdict to our courtroom deputy, please.

23          All right.

24          THE COURTROOM DEPUTY:  United States District Court,

25    Central District of California.

**UNITED STATES DISTRICT COURT**

1          Douglas Campbell Thomson, John Anthony Helliwell and

2     Robert Layne Seibenberg, plaintiff, versus Charles Roger

3     Pomfret Hodgson, aka Roger Hodgson, Delicate Music, a

4     California General Partnership, defendant.

5          Case No. CV 21-8124-AB, Special Verdict Form.

6          One.  With respect to the 1977 Memorandum of Agreement

7     Publishing, the Defendant Hodgson terminated his contractual

8     obligation to pay a portion of the songwriting royalties to

9     plaintiffs after a reasonable time?

10         Yes.

11         Two.  With respect to the 1977 Memorandum of Agreement

12    Publishing, the Defendant Delicate Music terminated its

13    contractual obligation to administer a portion of the

14    songwriting royalties to plaintiffs after a reasonable time?

15          Yes.

16          Signed by the foreperson of the jury, dated February 27,

17    2024.

18          Ladies and gentlemen of the jury, is this verdict as

19    presented and read, the verdict of each of you, so say you all?

20          ALL JURORS:  Yes.

21          THE COURT:  Does either side wish the jury polled?

22          MR. GIVEN:  Yes, Your Honor, please.

23          THE COURTROOM DEPUTY:  Ladies and gentlemen of the

24    jury, as I call your number, give your verdict as presented and

25    read, please answer yes.

82

1              If that is not your verdict, please answer no.

2              Juror No. 1?

3              JUROR:  Yes.

4              THE COURTROOM DEPUTY:  Juror No. 2?

5              JUROR:  Yes.

6              THE COURTROOM DEPUTY:  Juror No. 3?

7              JUROR:  Yes.

8              THE COURTROOM DEPUTY:  Juror No. 4?

9              JUROR:  Yes.

10             THE COURTROOM DEPUTY:  Juror No. 5?

11             JUROR:  Yes.

12             THE COURTROOM DEPUTY:  Juror No. 6?

13             JUROR:  Yes.

14             THE COURTROOM DEPUTY:  Juror No. 7?

15             JUROR:  Yes.

16             THE COURTROOM DEPUTY:  Juror No. 8?

17             JUROR:  Yes.

18             THE COURT:  All right.  Well, members of the jury,

19  you have now completed your service as jurors in this case.

20             I want to thank you on behalf of the parties and the

21  Court for the time and patience and flexibility during the

22  course of this trial.

23             We can't do these important matters without good people

24  like you who are willing to take the time out of your day to

25  deal with matters like this.

1          You heard me say ad nauseam, do not talk about the case,

2     et cetera, et cetera.  You are no longer under those orders.

3          You can talk about the case as much as you want or not

4     at all.  It's entirely up to you.

5          I will offer some unsolicited advice that I learned when

6     I was a prosecutor in my prior life.

7          My boss told me, don't do or say anything that you

8     wouldn't feel comfortable on the LA Times, so I leave that

9     entirely up to you.

10         Attorneys often appreciate comments about their

11    presentation, what was persuasive, what wasn't.

12         They may be waiting for you outside in the hallway.

13    When you are dismissed, you can talk to them or not.

14         Again, it's entirely up to you.

15         Thank you for your service.  If you don't mind, I'm

16    going to ask you to hold back in the jury room because I want

17    to come back and thank you all individually before you are

18    dismissed, but thank you, again, for your service and you are

19    now excused.

20              THE COURTROOM DEPUTY:  All rise for the jury.

21              (Jury exits the courtroom at 4:49 p.m.)

22              THE COURTROOM DEPUTY:  Please be seated.

23              THE COURT:  All right.  What other matters are

24    outstanding that we need to discuss?

25         I'm assuming there will be post-trial motions, but what

```
 1   other pressing matters, if any, do we need to discuss with the

 2   trial at this point, from the plaintiff's perspective?

 3           MR. GIVEN:  We don't have anything pressing, Your

 4   Honor.

 5           THE COURT:  Not pressing.  What about declaratory

 6   relief, any of those other things, bench trial, things of that

 7   nature?

 8           MR. GIVEN:  I think I need to think it over, but

 9   likely those are going to resolve themselves based upon the

10   verdict.

11           THE COURT:  From the defense's perspective, anything

12   pressing?

13           MR. GUTMAN:  Nothing I anticipate at this time, Your

14   Honor.

15           THE COURT:  I would ask, respectfully, again, it is

16   challenging, given the nature of this litigation, if there are

17   post-trial motions -- I know the parties need time -- but the

18   sooner the better, I think, in the interest of everyone.

19       So, you know, you should do that sooner than later.

20           MR. GIVEN:  Your Honor, we will endeavor to do that.

21   My appellate specialist tells me I should probably just lay the

22   motion out, for a motion notwithstanding the verdict, and we

23   will file papers in a timely fashion.

24           THE COURT:  Fine.  And then I will need a judgment

25   to be submitted with respect to the verdict.
```

1          Mr. Gutman, do you want to do that?

2              MR. GUTMAN:  I will take care of it, Your Honor.

3              THE COURT:  How soon can you get that done?

4              MR. GUTMAN:  The next two days.

5              THE COURT:  If you can get it done by the close of

6    business, March the 1st, does that work?

7              MR. GUTMAN:  Friday.

8              THE COURT:  Friday, close of business, please.

9          If there is nothing further, I'm going to say good-bye

10   to the jurors.  You can wait out in the hallway and talk to

11   them, and, if not, if there is nothing further, the case is

12   dismissed -- I mean, I am sorry, the case is resolved.

13         I will see the lawyers, at least, again.  It may not be

14   in person, I don't know.

15         But safe travels to all that are traveling, and that

16   will be end of this.

17         Thank you.

18             MR. GIVEN:  Thank you.

19             MR. GUTMAN:  Thank you, Your Honor.

20             THE COURTROOM DEPUTY:  All rise.

21         This Court is adjourned.

22             (The proceedings concluded at 5:54 p.m.)

23                        *  *  *

24

25

**UNITED STATES DISTRICT COURT**

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                                                )
4    STATE OF CALIFORNIA      )

5

6              I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 15th day of May, 2024.

17

18

19                              /s/ TERRI A. HOURIGAN

20   _____
                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                            Federal Court Reporter

22

23

24

25

**UNITED STATES DISTRICT COURT**

**$**

**$150,000** [1] - 54:23, 68:25
**$25,000** [1] - 63:4
**$430,000** [1] - 53:17
**$65,000** [2] - 53:18, 78:25
**$958,000** [1] - 69:4

**'**

**'77** [1] - 18:3
**'81** [1] - 16:13
**'83** [1] - 49:9
**'84** [1] - 18:9
**'91** [1] - 19:16

**/**

**/s** [1] - 86:19

**1**

**1** [13] - 7:11, 7:12, 8:11, 8:13, 8:16, 9:7, 9:15, 9:16, 30:23, 46:13, 66:8, 69:25, 82:2
**1.3** [2] - 53:16, 68:19
**100** [1] - 63:4
**106** [1] - 62:22
**1099s** [1] - 50:7
**12** [1] - 11:20, 46:16
**13** [3] - 46:19, 49:20, 50:7
**15th** [1] - 86:16
**16** [1] - 48:17
**17** [3] - 48:19, 50:25, 67:8
**18** [3] - 6:12, 6:14, 60:19
**187** [1] - 12:19
**19** [1] - 6:11
**1969** [1] - 29:22
**1972** [1] - 29:23
**1973** [3] - 29:25, 30:1, 46:14
**1974** [2] - 30:3, 64:24
**1975** [4] - 30:4, 59:8, 61:16, 64:24
**1977** [40] - 7:5, 17:22, 22:4, 22:7, 22:11, 22:14, 22:25, 23:2, 30:6, 31:4, 31:20, 32:4, 32:20, 32:24, 33:11, 41:16, 44:11, 44:15, 45:23, 46:15, 46:17, 46:21, 47:5, 49:5, 49:14,

51:6, 51:22, 51:24, 52:7, 56:22, 59:24, 65:20, 66:9, 67:2, 69:8, 69:20, 76:18, 78:9, 81:6, 81:11
**1979** [5] - 30:7, 41:10, 41:15, 49:6, 65:20
**1980** [2] - 30:9, 65:20
**1981** [3] - 46:19, 49:7, 63:12
**1982** [2] - 30:10, 49:9
**1983** [2] - 30:1, 31:8
**1984** [5] - 18:8, 22:19, 31:9, 49:11, 50:22
**1988** [2] - 31:13, 49:13
**1991** [8] - 13:14, 14:1, 14:4, 18:21, 19:12, 22:20, 23:4, 66:23
**1997** [1] - 31:15
**1999** [2] - 31:15, 49:15
**1:10** [1] - 1:15
**1:30** [1] - 5:2
**1:54** [1] - 20:14
**1st** [1] - 85:6

**2**

**2** [10] - 7:11, 7:12, 8:11, 8:13, 8:16, 9:7, 9:15, 9:16, 69:25, 82:4
**20** [1] - 13:14
**2002** [3] - 31:15, 31:16, 49:16
**2004** [1] - 71:6
**201** [1] - 2:7
**2010** [2] - 31:17, 49:17
**2011** [4] - 31:17, 49:18, 50:7, 62:6
**2016** [1] - 31:22
**2018** [3] - 32:1, 62:8, 62:14
**2021** [1] - 62:22
**2024** [4] - 1:14, 5:1, 81:17, 86:16
**21-8124-AB** [2] - 5:6, 81:5
**21-cv-8124-AB** [1] - 1:7
**213** [1] - 1:25
**2200.70** [1] - 14:21
**24,000** [1] - 63:4
**27** [5] - 1:14, 5:1, 48:18, 68:4, 81:16

**28** [1] - 86:9
**29** [1] - 14:21

**3**

**3** [8] - 7:3, 7:13, 13:25, 45:4, 46:14, 66:22, 82:6
**30** [8] - 15:23, 15:24, 16:2, 16:6, 31:1, 57:10
**34** [4] - 16:17, 16:18, 16:19, 63:14
**34.5** [1] - 74:4
**35** [2] - 59:17, 73:17
**350** [2] - 1:24, 2:13
**3838** [2] - 1:23, 86:20
**39** [1] - 2:7
**3:34** [1] - 79:19

**4**

**4** [2] - 10:24, 82:8
**40** [1] - 73:18
**41** [13] - 59:14, 61:7, 61:13, 61:25, 62:1, 62:5, 65:22, 65:23, 69:14, 70:16, 71:1, 75:3, 76:2
**4311** [1] - 1:24
**45** [4] - 63:9, 76:13, 78:19, 78:22
**4:45** [1] - 80:15
**4:49** [1] - 83:21

**5**

**5** [3] - 11:19, 46:15, 82:10
**50** [4] - 12:25, 18:19, 19:21, 19:22
**50s** [1] - 17:19
**5:54** [1] - 85:22

**6**

**6** [4] - 1:14, 5:8, 46:20, 82:12
**60** [1] - 57:4

**7**

**7** [1] - 82:14
**7.1** [1] - 51:14
**7.4** [1] - 51:17
**7.5** [1] - 51:19
**70s** [1] - 75:19
**71** [1] - 31:3
**74** [2] - 16:12, 16:19
**753** [1] - 86:9

**77** [2] - 71:7, 71:16

**8**

**8** [2] - 66:13, 82:16
**81** [1] - 16:12
**894-2849** [1] - 1:25

**9**

**90012** [1] - 1:24
**90212** [1] - 2:13
**9350** [1] - 2:13
**94129** [1] - 2:8

**A**

**A&M** [4] - 46:8, 46:10, 46:24, 50:20, 57:2, 63:16, 66:9, 72:9
**abide** [1] - 50:9
**abided** [1] - 77:4
**abilities** [1] - 55:6
**ability** [1] - 26:16
**able** [3] - 16:9, 69:3, 69:5
**above-entitled** [1] - 86:12
**absolutely** [5] - 67:5, 70:16, 72:17, 72:24, 80:5
**accept** [3] - 23:18, 27:19, 28:6
**acceptable** [1] - 9:8
**accompanying** [1] - 11:25
**according** [5] - 35:6, 36:1, 40:24, 48:1, 56:13
**accordingly** [2] - 12:6, 53:8
**account** [1] - 26:15
**accountant** [1] - 53:13
**accountants** [1] - 53:24
**accounting** [2] - 10:14, 54:4
**accounts** [1] - 38:6
**accuracy** [1] - 38:25
**aces** [2] - 74:14, 74:15
**act** [3] - 32:2, 49:19, 62:11
**acted** [2] - 34:11, 48:10
**acting** [1] - 19:6
**action** [4] - 10:6, 10:12, 10:14, 10:18

**actions** [2] - 50:5, 54:3
**ad** [1] - 83:1
**add** [1] - 15:12
**added** [1] - 43:9
**addition** [3] - 24:18, 45:20, 47:11
**additional** [2] - 19:14
**address** [1] - 71:3
**addressing** [2] - 10:11
**adjourned** [1] - 85:21
**adjust** [1] - 12:6
**administer** [7] - 19:11, 22:10, 22:13, 33:10, 33:14, 44:14, 81:13
**administering** [3] - 32:15, 33:15, 33:21
**administration** [1] - 45:7
**admit** [1] - 65:11
**admitted** [6] - 13:17, 14:6, 14:15, 15:7, 23:16, 54:18
**advance** [1] - 17:10
**advice** [1] - 83:5
**advise** [1] - 40:25
**advisors** [1] - 50:3
**afternoon** [7] - 5:10, 5:12, 5:13, 5:15, 20:16, 72:16, 80:17
**AFTERNOON** [1] - 1:14
**ago** [6] - 41:20, 49:20, 50:7, 55:24, 60:18, 65:22
**agree** [5] - 8:1, 14:6, 14:12, 15:10, 21:17
**agreed** [12] - 23:17, 29:17, 44:24, 51:14, 51:17, 51:19, 51:21, 56:22, 58:18, 68:7, 79:14, 79:15
**agreement** [86] - 13:14, 14:1, 14:3, 14:4, 16:14, 16:16, 18:3, 18:8, 18:9, 19:13, 19:15, 19:16, 22:5, 22:8, 22:11, 22:15, 22:20, 22:25, 23:3, 23:5, 23:6, 31:6, 31:10, 31:21, 32:4, 32:20, 32:24, 33:12, 33:20, 36:19, 40:23, 41:17, 43:19, 43:21, 44:12, 44:15, 44:19, 45:19, 45:22, 45:23, 46:14, 46:15, 46:18,

46:19, 46:21, 47:6, 47:12, 48:25, 49:5, 49:10, 50:22, 50:24, 51:3, 51:6, 51:15, 51:22, 52:8, 53:7, 58:14, 58:15, 60:20, 60:21, 60:22, 61:5, 63:11, 63:23, 66:10, 66:11, 66:13, 66:23, 66:25, 67:1, 67:4, 67:24, 68:15, 69:9, 69:20, 70:11, 75:5, 75:23, 77:3, 77:5, 77:17

**Agreement** [5] - 7:5, 17:22, 18:21, 81:6, 81:11

**agreements** [5] - 48:15, 48:20, 49:12, 58:13, 61:18

**ahead** [2] - 10:22, 63:5

**air** [1] - 9:12

**aka** [1] - 81:3

**al** [4] - 1:5, 1:8, 5:7

**ALAN** [1] - 2:12

**Alan** [1] - 5:13

**album** [11] - 16:21, 30:8, 30:23, 31:2, 31:16, 41:12, 63:13, 65:20, 68:3, 72:8

**albums** [14] - 16:13, 16:20, 30:2, 31:1, 31:25, 56:21, 58:9, 59:8, 60:3, 61:13, 65:1, 65:21, 73:7, 75:2

**aligned** [1] - 66:3

**ALL** [1] - 81:20

**allegation** [1] - 60:21

**allocation** [1] - 31:6

**allow** [3] - 15:4, 44:6, 47:15

**allowed** [2] - 15:17, 28:2

**alluded** [1] - 61:21

**almost** [1] - 47:13

**alternative** [1] - 8:19

**amended** [1] - 11:20

**America** [9] - 30:7, 30:9, 30:14, 30:20, 30:23, 31:25, 47:16, 49:6, 63:13

**Ames** [3] - 27:25, 53:25, 66:4

**amount** [16] - 35:5, 35:7, 35:25, 36:2, 36:8, 53:15, 54:16, 54:21, 56:3, 63:4, 64:8, 64:20, 64:21,

68:13, 71:9, 78:23

**amounts** [2] - 35:9, 36:4

**analysis** [2] - 68:18, 69:4

**ANDRE** [1] - 1:3

**ANGELES** [4] - 1:15, 1:24, 5:1, 86:3

**anger** [1] - 72:18

**announced** [1] - 62:8

**answer** [24] - 7:11, 7:12, 9:15, 12:21, 26:4, 40:8, 40:15, 40:20, 42:4, 42:10, 52:8, 52:17, 52:20, 52:21, 53:10, 54:1, 69:16, 69:24, 70:1, 75:25, 78:18, 81:25, 82:1

**answered** [8] - 8:15, 8:16, 9:7, 9:15, 25:24, 26:2, 46:6, 55:5

**answering** [2] - 40:7, 40:16

**answers** [3] - 28:14, 28:21, 69:25

**Anthony** [1] - 81:1

**anticipate** [1] - 84:13

**anyway** [1] - 68:11

**apartment** [1] - 65:16

**appear** [1] - 40:21

**appearances** [1] - 5:9

**APPEARANCES** [1] - 2:1

**appeared** [4] - 42:2, 49:1, 52:23, 74:7

**appellate** [1] - 84:21

**application** [1] - 37:20

**applies** [2] - 21:11, 37:23

**apply** [4] - 14:23, 18:17, 21:15, 43:4

**appreciate** [3] - 20:17, 58:2, 83:10

**approached** [1] - 38:1

**appropriate** [1] - 10:9

**approval** [1] - 67:21

**April** [1] - 30:5

**apt** [1] - 51:3

**arguably** [1] - 41:11

**argue** [1] - 20:3

**arguendo** [1] - 19:3

**arguing** [1] - 61:6

**argument** [5] - 5:24, 13:4, 15:11, 19:10,

21:1

**arguments** [8] - 17:21, 20:25, 21:5, 21:10, 23:25, 24:3, 41:3, 79:4

**arose** [1] - 34:12

**arrangement** [3] - 50:4, 75:6, 77:12

**artist** [1] - 47:25

**artists** [1] - 49:1

**ASCAP** [1] - 51:20

**aspirations** [1] - 58:22

**assert** [2] - 22:3, 22:9

**asserted** [1] - 12:23

**asserts** [2] - 22:7, 22:12

**assignments** [1] - 31:24

**assist** [1] - 39:20

**assume** [2] - 11:13, 34:5

**assuming** [2] - 19:3, 83:25

**attacked** [1] - 53:23

**attempt** [2] - 36:25, 40:1

**attention** [1] - 50:24

**Attorney** [1] - 2:12

**attorneys** [5] - 21:10, 24:10, 28:23, 79:4, 83:10

**Attorneys** [1] - 2:6

**authorities** [1] - 10:17

**authority** [2] - 14:10, 14:13

**authorizes** [1] - 14:19

**avoid** [1] - 29:6

**award** [4] - 36:9, 36:13, 53:21, 78:23

**awarded** [1] - 8:9

**awarding** [2] - 35:8, 36:3

## B

**bailiff** [3] - 39:23, 40:25, 79:5

**BAILIFF** [2] - 79:9, 79:17

**balance** [1] - 43:8

**band** [21] - 29:23, 29:25, 31:8, 41:11, 41:16, 48:25, 49:7, 49:13, 49:19, 51:3, 51:4, 52:9, 57:1, 63:11, 71:12, 71:23,

71:24, 73:3, 75:11, 75:15, 75:17

**band's** [6] - 30:12, 31:5, 47:14, 50:6, 50:20, 64:12

**bands** [2] - 48:2, 75:20

**base** [2] - 23:11, 37:8

**based** [8] - 8:10, 15:5, 15:6, 18:2, 39:8, 61:13, 67:3, 84:9

**bashing** [2] - 72:15, 72:16

**basic** [3] - 8:20, 10:18, 12:20

**basis** [3] - 18:14, 33:25, 54:15

**bear** [3] - 27:2, 57:7, 73:8

**beautiful** [1] - 65:1

**became** [1] - 28:22

**becomes** [2] - 39:22, 46:2

**beef** [1] - 74:18

**began** [1] - 48:11

**begin** [3] - 17:6, 21:1, 36:15

**beginning** [2] - 22:16, 41:22

**behalf** [1] - 82:20

**behaved** [1] - 43:24

**behavior** [1] - 28:20

**behind** [2] - 48:6, 77:14

**belief** [1] - 37:6

**believability** [1] - 27:2

**believable** [2] - 27:22, 61:22

**believes** [1] - 19:16

**belongs** [1] - 45:13

**bench** [3] - 28:24, 58:23, 84:6

**beneficial** [2] - 56:6, 58:5

**best** [2] - 54:22, 55:6

**better** [3] - 8:15, 8:18, 84:18

**between** [4] - 25:8, 30:1, 34:12, 47:13

**Beverly** [1] - 2:13

**Beyonce** [1] - 75:21

**beyond** [3] - 19:13, 19:17, 43:4

**bias** [1] - 26:22

**big** [1] - 74:8

**biggest** [3] - 30:22, 41:11, 41:12, 63:16

**bind** [2] - 18:9, 18:23, 19:5, 19:18

**binding** [1] - 44:18

**BIROTTE** [1] - 1:3

**Bit** [3] - 30:12, 52:13, 58:16

**bit** [4] - 58:17, 63:14, 73:22, 75:9

**blog** [1] - 37:19

**board** [2] - 48:6, 75:23

**boards** [1] - 15:17

**boasted** [1] - 63:24

**book** [1] - 10:14

**bookkeeper** [1] - 62:23

**booklet** [2] - 62:12, 64:15

**bore** [1] - 56:25

**born** [3] - 48:7, 57:4, 60:14

**boss** [1] - 83:7

**Boulevard** [1] - 2:13

**box** [2] - 66:17, 66:18

**breach** [19] - 7:7, 8:10, 8:14, 8:20, 8:21, 10:18, 12:23, 19:19, 22:18, 22:24, 32:3, 33:3, 33:17, 34:18, 35:3, 35:13, 35:23, 36:7, 50:10

**breached** [12] - 7:5, 7:15, 7:16, 18:14, 32:11, 32:17, 32:20, 32:25, 33:6, 33:13, 33:20, 60:22

**breaches** [2] - 34:20, 35:15

**Breakfast** [8] - 30:7, 30:8, 30:14, 30:22, 31:25, 47:16, 49:6, 63:13

**bridges** [1] - 60:10

**brief** [5] - 6:6, 10:11, 12:18, 22:1, 41:10

**bring** [2] - 20:2, 80:12

**Britain** [1] - 57:23

**British** [1] - 76:22

**broke** [3] - 60:7, 65:2, 67:18

**building** [1] - 79:24

**bunch** [1] - 70:12

**burden** [11] - 21:2, 22:5, 23:7, 42:23, 42:24, 43:10, 43:12, 53:2, 54:15, 54:25, 61:22

**burning** [1] - 6:1

**business** [10] - 19:7, 19:17, 51:18, 53:13,

56:3, 68:22, 71:11, 75:12, 85:6, 85:8
**BY** [2] - 2:4, 2:12
**bye** [1] - 85:9

## C

**calculated** [1] - 78:24
**calculation** [1] - 54:7
**calculations** [1] - 53:23
**CALIFORNIA** [5] - 1:2, 1:15, 1:24, 5:1, 86:4
**California** [5] - 2:8, 2:13, 80:25, 81:4, 86:8
**CAMPBELL** [1] - 1:5
**Campbell** [2] - 5:6, 81:1
**Canada** [2] - 30:23, 31:1
**cannot** [4] - 19:20, 36:11, 55:9, 63:1
**capacity** [5] - 18:10, 18:15, 19:1, 19:2, 19:5
**captured** [1] - 75:1
**care** [1] - 85:2
**career** [2] - 51:5, 72:3
**carefully** [1] - 40:17
**CARLIN** [27] - 2:4, 2:5, 5:20, 6:4, 6:8, 6:10, 6:14, 6:18, 6:21, 7:1, 7:14, 7:18, 8:13, 8:17, 9:8, 9:17, 9:19, 9:25, 10:21, 10:23, 11:15, 12:3, 12:15, 12:25, 13:4, 13:6, 13:9
**Carlin** [3] - 5:11, 8:12, 12:24
**carried** [1] - 76:13
**CARROLL** [1] - 2:6
**case** [47] - 10:1, 14:12, 15:1, 17:20, 17:22, 20:3, 21:8, 21:11, 21:15, 21:20, 24:24, 26:8, 26:10, 26:20, 27:25, 28:10, 29:11, 36:22, 37:9, 37:11, 37:12, 37:15, 37:17, 38:2, 38:6, 38:11, 38:12, 38:15, 38:19, 38:22, 39:8, 40:4, 41:18, 41:22, 42:25, 52:15, 55:14, 58:17, 59:7, 68:18,

70:7, 81:5, 82:19, 83:1, 83:3, 85:11, 85:12
**Case** [2] - 1:7, 5:6
**caught** [1] - 55:15
**caused** [4] - 33:4, 33:18, 34:19, 35:15
**causes** [1] - 10:12
**causing** [1] - 73:12
**cautioning** [1] - 15:22
**CCRR** [1] - 1:23
**Central** [2] - 80:25, 86:8
**CENTRAL** [2] - 1:2
**Century** [2] - 30:3, 64:24
**certain** [3] - 23:22, 24:19, 27:24, 29:4, 29:16
**certainly** [2] - 12:15, 54:19
**CERTIFICATE** [1] - 86:1
**certified** [1] - 30:25
**certify** [1] - 86:8
**cetera** [3] - 80:7, 83:2
**CFR** [1] - 14:21
**challenging** [1] - 84:16
**chance** [1] - 5:18
**change** [4] - 9:6, 9:14, 37:3, 37:6
**changed** [1] - 49:23
**changes** [1] - 55:22
**CHARLES** [1] - 1:8
**Charles** [2] - 5:7, 81:2
**chat** [1] - 37:19
**choose** [2] - 27:16, 53:5
**chord** [1] - 56:12
**chorus** [1] - 60:12
**Churchill** [1] - 57:22
**Circuit** [1] - 8:24
**circumstances** [12] - 14:2, 18:2, 23:5, 33:24, 34:14, 43:22, 46:2, 47:2, 47:5, 55:25, 57:5, 66:24
**circumstantial** [4] - 25:1, 25:5, 25:9, 25:17
**cited** [1] - 44:17
**citizenship** [1] - 58:2
**Civil** [1] - 5:6
**claim** [29] - 9:25, 10:14, 11:16, 11:18, 17:22, 18:14, 22:6,

22:12, 23:7, 23:9, 32:25, 33:3, 33:13, 33:17, 34:17, 35:9, 35:12, 36:4, 41:25, 45:18, 54:16, 55:17, 60:21, 63:20, 67:3, 68:19
**claimed** [1] - 10:12
**claims** [9] - 10:12, 12:19, 19:19, 22:16, 22:19, 22:22, 22:24, 23:2, 32:3
**clarify** [2] - 8:8, 55:16
**clear** [6] - 61:8, 68:25, 80:1, 80:2, 80:3, 80:4
**clearly** [1] - 16:4
**clerk** [1] - 10:24
**clever** [1] - 71:15
**client** [5] - 56:10, 58:19, 71:18, 73:14, 77:8
**clients** [10] - 24:10, 41:25, 42:4, 42:14, 43:24, 47:8, 55:17, 56:13, 57:4, 74:14
**clients'** [5] - 42:22, 43:1, 43:10, 50:14, 57:9
**clock** [1] - 16:5
**close** [3] - 17:6, 85:5, 85:8
**closer** [1] - 50:10
**closing** [10] - 15:14, 15:18, 20:22, 20:24, 24:3, 41:3, 57:13, 60:17, 66:22, 72:24
**co** [1] - 72:1
**co-founder** [1] - 72:1
**co-founder's** [1] - 72:1
**Code** [2] - 14:18, 86:9
**Cohen** [6] - 27:25, 54:4, 54:6, 54:8, 66:4, 78:23
**Cohen's** [1] - 53:23
**collaborate** [1] - 48:3
**colleague** [1] - 51:1
**collect** [2] - 30:16, 76:4
**collecting** [1] - 74:9
**collectively** [1] - 59:17
**comfortable** [1] - 83:8
**coming** [2] - 58:18, 70:20
**comma** [1] - 9:16

**comment** [1] - 56:9
**commentary** [1] - 38:6
**comments** [4] - 5:23, 6:4, 6:24, 83:10
**commission** [3] - 68:8, 68:11, 68:13
**common** [3] - 25:18, 45:25, 48:1
**communicate** [6] - 37:13, 37:14, 39:23, 40:1, 40:3, 79:12
**communicating** [1] - 37:23
**communications** [1] - 39:4
**compensate** [3] - 34:19, 35:14, 36:13
**compensation** [5] - 34:21, 35:16, 62:17, 64:10, 64:11
**complaint** [2] - 11:20, 11:21
**complete** [3] - 40:24, 63:3, 67:16
**completed** [2] - 41:13, 82:19
**completely** [3] - 67:16, 67:17, 70:6
**composers** [1] - 66:10
**compositions** [1] - 31:25
**computer** [1] - 37:18
**concern** [1] - 22:18
**concerned** [1] - 70:7
**concerning** [2] - 23:2, 40:4
**concluded** [1] - 85:22
**concludes** [1] - 41:2
**conclusion** [2] - 56:20, 71:21
**conclusions** [1] - 71:17
**conclusively** [2] - 29:20, 50:8
**conference** [4] - 28:24, 29:9, 29:10, 86:13
**conferences** [2] - 29:3, 29:8
**confirm** [1] - 19:13
**conflate** [2] - 58:14, 67:23
**conflated** [1] - 58:8
**conflict** [1] - 71:25
**conformance** [1] - 86:13
**confusing** [1] - 7:2

**confusion** [2] - 29:6, 58:22
**connection** [5] - 14:1, 23:4, 58:11, 59:21, 66:23
**conscientious** [2] - 29:14, 37:2
**consider** [20] - 15:9, 23:1, 23:13, 23:20, 23:22, 24:19, 24:21, 25:7, 25:17, 26:9, 27:11, 28:17, 29:10, 34:10, 40:18, 43:15, 45:21, 53:11, 54:7, 54:11
**consideration** [2] - 21:8, 29:14
**considered** [8] - 5:25, 14:3, 15:3, 23:6, 24:17, 36:23, 66:25, 77:2
**considering** [4] - 17:20, 26:14, 28:7, 50:23
**considers** [3] - 75:15, 75:16
**consist** [1] - 23:14
**consistent** [2] - 27:4, 42:6
**conspiracy** [1] - 76:25
**Constitution** [1] - 58:2
**consult** [2] - 21:13, 40:6
**consulting** [1] - 38:8
**consumed** [1] - 70:4
**contact** [1] - 38:4
**contain** [1] - 48:20
**contains** [1] - 17:25
**contemplate** [1] - 45:12
**contention** [3] - 18:22, 43:1, 43:5
**continue** [18] - 22:13, 33:1, 33:7, 33:14, 33:15, 40:8, 45:16, 46:4, 46:7, 46:12, 51:9, 51:18, 52:24, 57:7, 64:5, 76:5, 77:8, 79:1
**continued** [6] - 31:13, 50:9, 50:17, 75:7, 77:15, 78:11
**continues** [4] - 22:3, 22:10, 43:18, 46:9
**continuing** [4] - 43:2, 45:12, 48:3, 76:3
**contract** [77] - 8:20,

10:18, 11:1, 12:23,
17:25, 18:7, 18:15,
18:25, 19:19, 22:19,
22:24, 32:4, 32:9,
32:11, 32:14, 32:17,
32:23, 33:1, 33:4,
33:6, 33:10, 33:14,
33:18, 33:23, 33:24,
34:1, 34:3, 34:6, 34:9,
34:11, 34:13, 34:18,
35:1, 35:4, 35:10,
35:13, 35:21, 35:24,
36:5, 36:7, 36:8,
41:18, 41:23, 42:2,
43:13, 43:22, 44:5,
44:10, 44:12, 44:19,
45:2, 45:21, 45:23,
47:18, 47:21, 48:11,
51:24, 52:3, 55:13,
56:22, 60:19, 60:24,
61:2, 61:10, 61:11,
61:24, 62:15, 65:24,
66:8, 66:9, 68:14,
77:11, 77:12, 78:6,
78:10

**contracts** [1] - 46:22
**contractual** [6] -
11:3, 50:9, 69:11,
69:21, 81:7, 81:13
**contradict** [1] -
55:11
**contradicted** [1] -
26:23
**contributed** [1] -
45:15
**contributions** [2] -
48:4, 48:5
**control** [1] - 25:19
**controls** [1] - 24:7
**convenient** [1] -
79:11
**conversely** [1] -
46:10
**cool** [1] - 74:1
**Cooper** [1] - 47:14
**copy** [2] - 20:22,
21:12
**copyright** [2] - 32:2,
62:11
**copyrights** [3] -
31:24, 51:18, 62:10
**correct** [5] - 55:11,
57:8, 62:14, 80:19,
86:10
**costs** [2] - 57:1, 73:8
**counsel** [10] - 16:3,
16:9, 19:11, 20:25,
41:3, 57:11, 57:19,
59:6, 79:3, 79:21
**COUNSEL** [1] - 2:1

**count** [1] - 40:13
**countries** [1] - 30:20
**COUNTY** [1] - 86:3
**couple** [4] - 59:8,
63:7, 71:2, 71:8
**course** [12] - 19:6,
19:17, 29:7, 34:10,
35:3, 35:23, 37:1,
44:1, 48:8, 48:10,
50:23, 82:22
**court** [6] - 28:18,
36:18, 38:23, 38:24,
39:9, 40:5
**COURT** [75] - 1:1,
1:23, 5:12, 5:15, 5:21,
5:23, 6:7, 6:9, 6:13,
6:17, 6:19, 6:22, 6:25,
7:10, 7:17, 7:20, 7:23,
8:12, 8:15, 8:22, 9:9,
9:13, 9:18, 9:23, 10:3,
10:19, 10:22, 11:9,
11:17, 12:9, 12:17,
12:24, 13:2, 13:5,
13:7, 13:10, 13:13,
13:16, 13:18, 13:24,
14:5, 15:8, 15:12,
15:19, 16:11, 16:15,
16:23, 16:25, 17:8,
17:12, 17:18, 20:9,
20:16, 41:6, 41:9,
57:11, 73:25, 78:15,
79:3, 79:10, 79:21,
80:4, 80:6, 80:11,
80:17, 81:21, 82:18,
83:23, 84:5, 84:11,
84:15, 84:24, 85:3,
85:5, 85:8
**Court** [35] - 6:16,
10:7, 10:8, 10:13,
10:15, 10:16, 10:17,
12:5, 12:6, 12:22,
14:24, 15:2, 17:19,
18:9, 18:13, 18:22,
19:16, 19:24, 20:11,
24:22, 38:4, 39:17,
40:13, 54:24, 57:19,
77:21, 79:13, 79:15,
79:16, 80:24, 82:21,
85:21, 86:7, 86:20
**Court's** [5] - 18:4,
19:5, 19:9, 19:12,
24:14
**courtroom** [10] -
20:14, 28:25, 39:3,
41:1, 56:18, 72:23,
79:19, 80:15, 80:22,
83:21
**COURTROOM** [23] -
5:5, 20:10, 20:13,
20:15, 79:7, 79:18,

79:20, 80:8, 80:10,
80:14, 80:16, 80:24,
81:23, 82:4, 82:6,
82:8, 82:10, 82:12,
82:14, 82:16, 83:20,
83:22, 85:20
**cover** [2] - 54:7, 72:9
**covering** [2] - 44:20,
54:9
**covers** [4] - 16:21,
45:10, 68:20, 74:10
**COVID** [1] - 50:11
**create** [2] - 46:4,
70:9
**created** [4] - 34:11,
48:11, 60:9, 64:18
**creating** [1] - 6:15
**creative** [1] - 75:15
**credibility** [2] - 55:1,
55:2
**credible** [1] - 65:10
**credit** [3] - 63:19,
70:23, 72:23
**Crime** [1] - 30:3,
64:24
**crisis** [1] - 62:25
**Crisis** [4] - 30:4,
64:24, 64:25
**cross** [1] - 55:16
**cross-examination**
[1] - 55:16
**CRR** [1] - 86:20
**crucially** [1] - 50:19
**CSR** [2] - 1:23, 86:20
**curative** [1] - 15:8
**custom** [2] - 43:23,
47:22
**cut** [5] - 42:7, 52:23,
76:15, 78:20, 78:21
**cutoff** [1] - 12:8
**cutting** [1] - 50:14
**CV** [1] - 81:5

## D

**damages** [33] - 7:5,
7:19, 8:3, 8:9, 8:11,
8:16, 9:7, 9:16, 34:21,
34:22, 34:25, 35:5,
35:7, 35:8, 35:9,
35:16, 35:17, 35:20,
35:25, 36:2, 36:3,
36:4, 36:7, 36:9,
36:11, 36:13, 53:9,
53:12, 54:15, 68:16,
68:19, 78:23
**dare** [3] - 63:25,
71:18, 71:19
**date** [5] - 31:3,
33:25, 40:25, 44:6,

70:2
**Date** [1] - 86:16
**dated** [1] - 81:16
**Dave** [2] - 47:12,
48:24
**DAVID** [1] - 2:4
**David** [3] - 5:10,
31:5, 79:9
**Davies** [13] - 18:23,
19:1, 19:6, 29:22,
30:16, 31:9, 31:22,
51:8, 59:9, 62:8,
64:13, 65:3, 74:15
**Davies'** [2] - 18:23,
19:3
**DAY** [1] - 1:14
**days** [1] - 85:4
**deal** [10] - 8:5, 9:5,
12:22, 50:20, 63:16,
76:12, 76:18, 77:19,
77:23, 82:25
**deals** [1] - 49:8
**debate** [2] - 19:23,
74:20
**debt** [1] - 57:3
**decades** [3] - 42:22,
59:15, 59:16
**December** [2] - 31:9,
41:12
**decide** [24] - 10:13,
11:6, 21:20, 24:24,
25:10, 25:16, 26:11,
27:11, 27:14, 29:4,
34:3, 34:7, 34:16,
34:18, 35:12, 35:14,
36:21, 39:8, 42:22,
43:14, 52:25, 61:2,
61:11, 65:24
**decided** [3] - 38:22,
40:20, 76:15
**decides** [1] - 12:5
**deciding** [5] - 23:13,
23:23, 26:8, 26:10,
34:9
**decision** [7] - 11:11,
23:11, 37:2, 37:5,
48:7, 51:12, 53:6
**decisions** [1] - 10:16
**declaratory** [8] -
9:25, 10:5, 10:14,
11:8, 11:15, 11:17,
11:21, 84:5
**deducted** [2] - 54:8,
71:12
**deductions** [1] -
68:20
**DEFENDANT** [1] -
2:10
**Defendant** [35] -
18:20, 22:3, 22:6,

22:9, 22:12, 22:17,
22:23, 29:21, 30:15,
32:9, 32:15, 32:19,
32:22, 32:25, 33:3,
33:6, 33:9, 33:10,
33:13, 34:16, 34:17,
34:23, 35:10, 35:11,
35:13, 35:18, 36:5,
36:10, 69:10, 69:20,
81:7, 81:12
**defendant** [8] - 7:4,
11:1, 32:11, 32:17,
52:22, 52:25, 81:4
**Defendants** [1] - 1:9
**defendants** [15] -
8:20, 11:3, 22:21,
31:20, 44:25, 48:13,
53:5, 53:22, 54:3,
54:6, 54:10, 54:11,
54:14, 54:24, 57:6
**defendants'** [2] -
50:10, 54:15
**defense** [9] - 5:14,
5:21, 6:22, 13:10,
21:1, 23:8, 23:10,
57:17, 80:4
**defense's** [3] - 7:20,
10:3, 84:11
**delay** [1] - 57:18
**deliberately** [1] -
27:14
**deliberation** [1] -
66:7
**deliberations** [7] -
21:13, 36:15, 36:17,
37:13, 39:22, 40:8,
40:25
**Delicate** [50] - 7:4,
17:23, 18:6, 18:12,
18:17, 18:20, 18:23,
18:24, 19:6, 19:8,
19:18, 19:20, 22:9,
22:12, 22:17, 22:23,
30:15, 31:10, 31:23,
32:13, 32:15, 32:19,
33:9, 33:10, 33:13,
33:17, 33:18, 33:20,
35:11, 35:13, 35:18,
36:5, 36:10, 44:14,
45:7, 48:15, 50:8,
51:17, 51:19, 52:18,
53:2, 53:7, 67:10,
69:18, 69:21, 73:15,
77:4, 78:21, 81:3,
81:12
**Delicate's** [1] - 19:11
**demanding** [1] -
62:24
**democracy** [1] -
57:23

**demonstrative** [1] - 16:8
**denied** [3] - 19:22, 39:9, 77:22
**denies** [4] - 22:6, 22:12, 33:6, 33:20
**deny** [1] - 10:17
**denying** [1] - 29:10
**department** [1] - 72:10
**departure** [1] - 31:12
**deposition** [3] - 28:11, 28:16, 28:17
**deputy** [1] - 80:22
**DEPUTY** [23] - 5:5, 20:10, 20:13, 20:15, 79:7, 79:18, 79:20, 80:8, 80:10, 80:14, 80:16, 80:24, 81:23, 82:4, 82:6, 82:8, 82:10, 82:12, 82:14, 82:16, 83:20, 83:22, 85:20
**derive** [1] - 74:6
**derived** [3] - 11:23, 60:3, 77:13
**descension** [1] - 71:25
**describe** [2] - 56:13, 66:17
**described** [5] - 22:16, 52:12, 67:9, 74:25, 77:20
**describing** [1] - 67:21
**deserves** [2] - 27:23, 28:7
**determination** [3] - 12:7, 17:24, 73:17
**determine** [2] - 18:6, 44:3
**determined** [3] - 7:7, 7:16, 10:6
**developed** [1] - 58:21
**devices** [1] - 38:13
**diamond** [1] - 30:19
**dictionaries** [1] - 38:8
**differ** [1] - 24:5
**difference** [1] - 74:8
**differences** [1] - 27:11
**different** [12] - 9:2, 14:16, 19:2, 19:4, 25:14, 27:5, 55:24, 55:25, 74:17, 76:6
**differently** [3] - 27:10, 51:7, 75:21
**differs** [1] - 27:12

**difficult** [3] - 63:15, 71:23, 72:2
**difficulty** [1] - 16:4
**diligently** [1] - 36:19
**direct** [4] - 25:1, 25:2, 25:9
**directly** [1] - 51:20
**disagreement** [1] - 34:12
**discharged** [1] - 40:12
**disclose** [1] - 40:13
**discuss** [4] - 38:3, 40:19, 83:24, 84:1
**discussed** [3] - 36:23, 38:12, 38:14
**discussing** [2] - 37:12, 37:17
**discussion** [1] - 37:4
**discussions** [1] - 19:23
**dislikes** [1] - 21:19
**dismissed** [3] - 83:13, 83:18, 85:12
**disproportionate** [1] - 64:22
**dispute** [1] - 42:3
**disputed** [1] - 63:4
**disregard** [2] - 24:16, 26:7
**distinction** [1] - 25:8
**distribute** [2] - 18:10, 30:16
**distributing** [1] - 18:17
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [4] - 80:24, 80:25, 86:7, 86:8
**DIVISION** [1] - 1:2
**divorce** [2] - 55:25, 71:5
**Docket** [1] - 12:19
**document** [10] - 14:6, 14:9, 15:5, 51:2, 66:14, 67:3, 67:12, 76:11, 76:12, 77:24
**documents** [2] - 5:18, 70:12
**dollar** [2] - 53:21, 58:11
**dollars** [4] - 20:20, 57:3, 72:19, 78:2
**done** [9] - 20:1, 20:2, 21:24, 29:7, 47:17, 58:4, 68:21, 85:3, 85:5
**doubt** [1] - 43:4
**doubted** [1] - 41:21
**DOUGLAS** [1] - 1:5

**Douglas** [3] - 5:6, 29:23, 81:1
**down** [4] - 13:6, 15:20, 16:3, 64:16
**dozens** [1] - 47:24
**drafted** [2] - 7:3, 76:11
**drag** [1] - 42:20
**Dreamer** [2] - 30:12, 58:21
**dreams** [1] - 58:21
**driving** [1] - 60:1
**due** [4] - 36:8, 58:11, 59:21, 62:25
**duration** [3] - 17:25, 18:1, 77:17
**during** [16] - 15:11, 21:13, 25:13, 28:22, 37:13, 38:14, 39:18, 39:22, 55:25, 56:23, 56:25, 57:23, 66:7, 66:16, 67:5, 82:21
**duty** [4] - 19:11, 21:10, 21:14, 24:10

**E**

**e-mail** [2] - 6:9, 37:18
**earn** [1] - 79:1
**earned** [2] - 65:8, 79:1
**ears** [2] - 14:11, 14:17
**easel** [3] - 15:17, 15:19, 16:10
**edits** [1] - 5:23
**education** [2] - 28:3, 28:9
**effect** [3] - 13:20, 37:6, 51:24
**effective** [2] - 32:1, 44:18
**effort** [3] - 51:5, 75:22, 75:24
**efforts** [4] - 42:22, 75:18, 75:20
**eight** [2] - 27:2, 31:4
**either** [13] - 6:2, 7:4, 7:12, 9:7, 9:15, 11:1, 18:6, 25:9, 28:24, 30:18, 42:19, 52:22, 81:21
**elapsed** [6] - 34:2, 43:18, 45:4, 45:17, 52:1, 61:1
**elect** [1] - 36:15
**electronic** [1] - 6:12
**elements** [1] - 32:5
**Eleven** [1] - 31:12

**embodied** [2] - 11:24, 31:25
**emphasize** [1] - 42:24
**employer** [1] - 37:24
**end** [4] - 22:7, 49:19, 73:23, 85:16
**endeavor** [2] - 78:2, 84:20
**ended** [1] - 65:22
**enforce** [1] - 78:16
**enforceable** [3] - 32:8, 32:14, 44:12
**engineer** [1] - 48:24
**England** [2] - 29:22, 57:22
**enormous** [3] - 63:10, 70:17, 73:12
**enormously** [1] - 72:4
**entered** [7] - 31:5, 31:10, 32:22, 33:9, 44:20, 67:4, 77:2
**enters** [2] - 20:14, 80:15
**entire** [3] - 19:18, 39:15, 78:1
**entirely** [4] - 57:5, 83:4, 83:9, 83:14
**entitled** [11] - 11:22, 29:14, 35:10, 36:5, 39:7, 42:5, 67:13, 68:10, 70:23, 70:24, 86:12
**entitlement** [1] - 43:2
**entity** [4] - 19:2, 19:4, 19:7, 30:15
**equal** [1] - 29:13
**equivalent** [2] - 43:8, 52:5
**ERLEWINE** [1] - 2:4
**error** [2] - 6:15, 29:6
**et** [7] - 1:5, 1:8, 5:7, 80:7, 83:2
**Europe** [1] - 30:20
**eve** [1] - 15:14
**event** [2] - 9:21, 27:9
**events** [2] - 35:3, 35:23
**eventually** [1] - 65:19
**evidence** [84] - 9:4, 13:15, 13:23, 14:1, 14:4, 14:7, 14:9, 14:14, 14:20, 14:25, 15:6, 17:20, 18:1, 19:10, 21:8, 21:10, 21:15, 21:21, 21:25, 22:1, 23:1, 23:4, 23:8, 23:9,

23:11, 23:13, 23:16, 23:21, 23:22, 24:1, 24:4, 24:5, 24:9, 24:12, 24:16, 24:18, 24:20, 24:21, 24:23, 24:24, 25:1, 25:2, 25:5, 25:7, 25:9, 25:10, 25:13, 25:17, 25:18, 25:19, 25:20, 25:21, 25:22, 26:6, 26:7, 26:9, 26:23, 27:1, 27:20, 28:10, 29:5, 32:6, 36:23, 37:7, 37:8, 38:22, 40:19, 42:9, 43:3, 44:24, 47:9, 48:12, 51:23, 54:20, 56:20, 59:20, 62:21, 63:18, 66:6, 66:23, 68:25, 73:16
**evident** [1] - 41:14
**ex** [1] - 56:7
**ex-wife** [1] - 56:7
**exact** [4] - 9:21, 35:7, 36:2, 64:8
**exactly** [1] - 8:17
**examination** [1] - 55:16
**example** [5] - 25:11, 36:10, 47:15, 52:11, 55:13
**exceed** [1] - 31:3
**exceeding** [1] - 48:25
**except** [3] - 37:12, 40:2, 57:24
**exchange** [4] - 54:12, 54:18, 68:8, 68:24
**excluded** [1] - 24:15
**excused** [2] - 38:17, 83:19
**excuses** [1] - 55:12
**execution** [1] - 18:2
**exercise** [1] - 46:11
**exercised** [1] - 69:15
**EXHIBIT** [2] - 4:1, 4:2
**Exhibit** [19] - 16:12, 16:17, 16:19, 46:13, 46:15, 46:19, 48:17, 48:18, 48:19, 50:25, 62:22, 63:14, 66:8, 66:13, 67:8, 68:4, 71:7, 71:16
**exhibit** [5] - 13:14, 16:9, 25:21, 25:25, 26:2
**exhibits** [6] - 4:4, 15:14, 23:16, 23:21, 66:2, 66:5

**exist** [1] - 49:12
**exit** [3] - 31:11, 48:14, 50:24
**exits** [2] - 79:19, 83:21
**expect** [1] - 68:22
**expectation** [1] - 76:3
**expected** [1] - 42:18
**expense** [4] - 56:3, 71:11, 71:13, 71:14
**expenses** [1] - 71:13
**experience** [5] - 25:18, 28:3, 28:8, 45:24, 56:8
**experienced** [1] - 17:13
**experiences** [1] - 60:16
**expert** [2] - 27:24, 47:23
**expiration** [1] - 51:18
**explained** [3] - 34:13, 47:4, 72:7
**explanation** [1] - 25:14
**exposed** [2] - 37:10, 39:16
**express** [2] - 17:25, 33:23
**expressed** [1] - 44:6
**extra** [1] - 21:3
**eyes** [1] - 17:10

## F

**fabricated** [1] - 67:16
**Facebook** [1] - 37:20
**faced** [1] - 55:24
**facilitate** [1] - 48:2
**fact** [7] - 25:2, 25:6, 25:12, 25:16, 27:20, 64:10, 64:11
**factors** [1] - 27:2
**facts** [15] - 21:14, 21:15, 23:14, 23:17, 23:18, 23:23, 24:5, 25:5, 26:10, 29:16, 29:18, 29:19, 44:6, 62:11, 64:15
**failed** [1] - 54:6
**failing** [3] - 33:1, 33:14, 33:15
**fair** [4] - 29:14, 39:7, 39:9, 43:17
**fairly** [1] - 36:13
**fairness** [2] - 39:14, 52:13
**family** [1] - 37:23
**Famous** [2] - 30:10,

32:1
**fans** [1] - 48:4
**fantasizing** [1] - 71:16
**far** [1] - 5:16
**fashion** [1] - 84:23
**fault** [2] - 54:18, 54:19
**favor** [5] - 9:20, 9:23, 42:9, 43:11, 57:9
**feather** [1] - 43:8
**February** [1] - 1:14, 81:16
**FEBRUARY** [1] - 5:1
**Federal** [3] - 14:18, 86:6, 86:20
**FEDERAL** [1] - 1:23
**fee** [1] - 53:24
**fees** [1] - 68:22
**fell** [1] - 18:12
**fellow** [2] - 37:12, 39:21
**fessing** [1] - 65:9
**few** [3] - 41:20, 60:18, 71:4
**fiction** [1] - 67:16
**figure** [2] - 9:5, 65:2
**figures** [1] - 53:23
**file** [1] - 84:23
**final** [2] - 13:25, 57:10
**finally** [1] - 54:11
**financially** [1] - 60:7, 61:16, 62:4
**findings** [1] - 10:8
**fine** [1] - 84:24
**first** [12] - 7:24, 11:20, 50:1, 51:14, 53:10, 55:17, 61:15, 62:3, 67:18, 69:8, 72:8, 75:10
**FIRST** [1] - 1:24
**five** [6] - 26:22, 30:18, 31:4, 56:21, 64:9, 79:24
**flexibility** [1] - 82:21
**flows** [1] - 58:1
**focus** [2] - 63:3, 63:16
**focused** [1] - 67:1
**follow** [6] - 14:3, 21:16, 39:11, 39:12, 40:17, 43:25
**following** [9] - 16:4, 17:19, 21:7, 31:12, 32:5, 35:6, 36:1, 47:12, 63:12
**FOR** [2] - 2:3, 2:10
**force** [1] - 51:24
**forced** [3] - 43:24,

54:3, 71:24
**foregoing** [1] - 86:10
**foreperson** [3] - 40:24, 80:20, 81:16
**foreseen** [2] - 35:2, 35:22
**forever** [9] - 12:3, 12:5, 12:11, 60:4, 61:9, 66:15, 66:21, 67:14, 73:21
**forget** [3] - 9:21, 27:7, 72:16
**Form** [1] - 81:5
**form** [22] - 5:16, 6:18, 6:25, 7:1, 8:19, 8:20, 9:11, 10:9, 13:7, 13:11, 15:5, 40:14, 40:17, 40:21, 40:23, 40:24, 52:14, 52:16, 69:3, 69:6, 70:2, 78:18
**formal** [1] - 44:19
**format** [1] - 86:12
**formed** [2] - 29:21, 71:23
**former** [1] - 56:18
**forms** [1] - 37:22
**forth** [1] - 64:14
**fortune** [3] - 53:19, 59:2, 79:1
**forward** [1] - 45:11
**forward-looking** [1] - 45:11
**founder** [1] - 72:1
**founder's** [1] - 72:1
**four** [10] - 23:18, 24:22, 26:20, 30:24, 30:25, 51:11, 59:15, 59:16, 73:19
**fourth** [1] - 9:20
**fraction** [2] - 42:5, 45:13
**France** [1] - 30:9
**Francisco** [2] - 2:8
**free** [2] - 67:25, 68:23
**freely** [1] - 62:17
**Friday** [3] - 62:9, 85:7, 85:8
**front** [1] - 15:20
**fruit** [1] - 57:7
**fruits** [2] - 56:23, 73:5
**full** [1] - 78:23
**fully** [2] - 36:23, 44:18
**funds** [3] - 18:10, 18:17, 19:12
**future** [4] - 10:2, 11:14, 53:20, 76:4

## G

**gain** [1] - 39:3
**garden** [1] - 25:14
**Gary** [1] - 27:25
**General** [1] - 81:4
**general** [2] - 18:24, 19:7
**generate** [4] - 45:16, 52:24, 75:7, 77:15
**generated** [1] - 42:1
**generating** [1] - 42:8
**generosity** [1] - 63:8
**generous** [2] - 59:24, 70:17
**generously** [1] - 62:16
**genius** [1] - 75:15
**gentlemen** [12] - 20:17, 42:13, 56:16, 57:20, 64:2, 70:3, 73:11, 75:8, 76:8, 80:18, 81:18, 81:23
**gift** [6] - 56:2, 59:24, 70:17, 76:9, 76:10
**Given** [12] - 5:11, 15:12, 61:6, 61:21, 66:8, 67:9, 67:23, 68:5, 71:3, 71:10, 72:8, 73:25
**GIVEN** [25] - 2:4, 2:4, 5:10, 13:17, 13:21, 15:13, 16:7, 16:12, 16:18, 16:21, 16:24, 17:5, 17:9, 20:6, 41:5, 41:7, 41:10, 74:1, 78:16, 80:3, 81:22, 84:3, 84:8, 84:20, 85:18
**given** [8] - 5:15, 9:4, 25:9, 28:9, 72:19, 73:22, 84:16
**Given's** [4] - 58:6, 68:16, 71:3, 72:24
**glass** [2] - 53:25, 66:4
**Glass** [1] - 54:22
**God** [1] - 79:16
**gold** [1] - 30:18
**good-bye** [1] - 85:9
**granted** [3] - 18:19, 19:21, 29:9
**granting** [1] - 29:10
**great** [5] - 57:22, 59:2, 63:10, 64:13, 76:12
**Great** [1] - 57:22
**greatest** [2] - 50:19, 64:16
**Greed** [1] - 76:16

**greed** [1] - 76:19
**greedy** [1] - 59:25
**grossing** [1] - 41:13
**grounds** [1] - 14:20
**Group** [1] - 31:23
**group** [2] - 75:22, 75:24
**guaranteed** [1] - 58:1
**guarantees** [1] - 67:8
**guess** [4] - 15:10, 26:4, 35:8, 36:3
**guidance** [2] - 7:23, 7:24
**guide** [2] - 7:22, 21:8
**GUTMAN** [30] - 2:11, 2:12, 5:13, 5:22, 6:24, 7:21, 8:8, 9:10, 10:5, 12:18, 13:11, 13:14, 13:22, 13:25, 14:18, 15:10, 16:8, 16:16, 16:19, 16:22, 17:17, 20:8, 57:14, 78:13, 80:5, 84:13, 85:2, 85:4, 85:7, 85:19
**Gutman** [6] - 5:14, 9:9, 12:17, 57:12, 76:23, 85:1
**guy** [1] - 8:23
**guys** [7] - 59:14, 60:6, 65:2, 65:17, 72:22, 76:16, 78:1

## H

**hallway** [2] - 83:12, 85:10
**hand** [1] - 27:17
**hands** [2] - 20:23, 70:8
**happy** [1] - 48:4
**hard** [1] - 20:20
**harm** [8] - 33:4, 33:18, 34:19, 34:25, 35:2, 35:15, 35:20, 35:22
**harmed** [3] - 32:12, 32:18, 32:21
**haze** [1] - 48:9
**health** [2] - 62:25, 63:3
**hear** [5] - 5:24, 20:25, 24:22, 26:17, 38:18
**heard** [17] - 9:5, 21:9, 25:4, 27:24, 47:23, 50:17, 54:17, 55:3, 56:23, 65:11, 66:1, 66:3, 66:5, 72:14, 75:9, 79:4,

83:1
  **hearing** [1] - 28:23
  **held** [1] - 86:11
  **Helliwell** [11] - 29:24, 31:14, 31:18, 42:15, 52:11, 59:11, 63:19, 63:21, 65:5, 76:23, 81:1
  **Helliwell's** [1] - 65:11
  **help** [3] - 22:1, 24:4, 79:16
  **helped** [1] - 46:4
  **helps** [2] - 7:22, 8:8
  **hereby** [1] - 86:8
  **high** [1] - 75:19
  **highest** [1] - 41:13
  **highly** [1] - 15:4
  **Hills** [1] - 2:13
  **himself** [5] - 55:11, 75:14, 75:15, 75:16
  **hire** [1] - 54:3
  **history** [3] - 47:7, 48:7, 63:16
  **hit** [4] - 15:24, 30:12, 30:22, 58:16
  **hits** [7] - 50:19, 58:15, 59:2, 64:12, 64:13, 64:15, 64:16
  **Hodgson** [111] - 5:7, 7:4, 17:23, 18:6, 18:10, 18:14, 18:17, 18:20, 22:3, 22:6, 22:17, 22:23, 29:21, 30:11, 30:16, 31:8, 31:9, 31:22, 32:7, 32:9, 32:19, 32:22, 32:25, 33:4, 33:6, 34:16, 34:17, 34:23, 35:10, 36:10, 43:24, 44:13, 45:8, 45:18, 46:6, 46:16, 46:23, 47:11, 48:15, 48:18, 49:4, 49:11, 49:21, 49:24, 50:2, 50:5, 50:11, 50:12, 51:4, 52:12, 52:18, 53:2, 53:6, 53:22, 54:13, 54:17, 55:9, 55:15, 55:22, 55:24, 56:19, 58:7, 58:15, 59:3, 59:9, 60:4, 60:21, 61:4, 61:8, 62:7, 62:15, 62:19, 62:23, 63:6, 63:21, 64:8, 64:10, 64:22, 65:3, 65:15, 66:4, 66:14, 66:21, 67:4, 67:6, 67:9, 67:11, 67:19, 67:25, 69:10, 69:19,

70:11, 70:14, 70:25, 71:22, 72:15, 73:14, 74:9, 74:21, 74:22, 74:23, 75:13, 76:3, 76:14, 77:4, 77:21, 77:22, 78:19, 81:3, 81:7
  **HODGSON** [1] - 1:8
  **Hodgson's** [21] - 31:11, 31:12, 33:3, 45:5, 50:15, 50:24, 51:2, 56:14, 59:17, 60:14, 61:15, 62:22, 64:3, 64:17, 64:23, 67:21, 68:21, 70:8, 71:5, 74:5, 75:9
  **hold** [3] - 11:17, 53:5, 83:16
  **Home** [2] - 30:13, 59:2
  **honest** [1] - 37:6
  **honestly** [1] - 55:6
  **Honor** [32] - 5:10, 5:13, 5:20, 5:22, 7:21, 8:18, 9:10, 9:12, 9:22, 10:21, 12:25, 13:9, 13:21, 13:22, 14:24, 41:5, 41:7, 44:4, 44:11, 45:20, 47:3, 48:9, 52:3, 55:19, 57:14, 60:17, 81:22, 84:4, 84:14, 84:20, 85:2, 85:19
  **Honor's** [2] - 10:24, 11:7
  **HONORABLE** [1] - 1:3
  **hooks** [1] - 60:10
  **hope** [1] - 58:4
  **hopefully** [2] - 13:2, 16:5
  **hose** [1] - 25:14
  **hostility** [1] - 72:18
  **hour** [1] - 21:5
  **HOURIGAN** [4] - 1:23, 86:6, 86:19, 86:20
  **hours** [2] - 70:4, 70:5
  **housekeeping** [2] - 15:16, 16:23
  **huge** [1] - 63:23
  **hugely** [1] - 63:12
  **hundreds** [2] - 68:20, 72:19
  **hurting** [3] - 60:7, 61:16, 62:4

## I

  **i.e** [1] - 34:11

  **idea** [2] - 58:13, 77:6
  **identified** [2] - 54:9, 67:22
  **ignore** [5] - 13:19, 19:3, 26:4, 26:7, 27:19
  **II** [1] - 57:23
  **III** [1] - 2:6
  **imaginary** [1] - 71:15
  **immediately** [1] - 39:17
  **impact** [1] - 14:25
  **impartial** [1] - 39:8
  **implication** [1] - 12:3
  **implied** [2] - 12:15, 18:1
  **implore** [1] - 71:7
  **imply** [1] - 44:7
  **implying** [1] - 33:25
  **important** [12] - 27:15, 27:22, 36:25, 39:12, 42:21, 44:4, 51:11, 52:2, 56:10, 74:3, 75:17, 82:23
  **importantly** [1] - 49:23
  **improper** [2] - 24:11, 39:3
  **inaccurate** [1] - 39:5
  **inaction** [1] - 55:12
  **inappropriate** [2] - 12:20, 12:22
  **inattention** [1] - 55:12
  **include** [2] - 36:9, 53:24
  **included** [1] - 51:11
  **includes** [1] - 37:17
  **including** [11] - 14:2, 18:2, 23:5, 30:12, 30:20, 37:20, 38:16, 40:10, 45:9, 47:17, 66:24
  **income** [30] - 41:17, 42:1, 42:5, 42:8, 43:2, 43:17, 44:13, 44:14, 45:9, 45:12, 45:13, 45:16, 46:3, 46:5, 46:8, 46:12, 48:2, 49:10, 50:13, 51:20, 52:24, 54:7, 54:9, 71:13, 75:7, 77:8, 77:13, 77:15, 78:12
  **incomplete** [1] - 39:5
  **inconvenience** [3] - 57:21, 58:3, 73:12
  **incorporate** [1] - 51:21
  **increased** [1] - 63:25
  **incur** [1] - 56:4

  **incurred** [1] - 57:1
  **indefinite** [1] - 46:22
  **indefinitely** [1] - 46:1
  **INDEX** [2] - 3:1, 4:1
  **indicating** [3] - 48:21, 80:12, 80:18
  **indication** [1] - 29:11
  **individual** [4] - 18:10, 18:15, 19:1, 19:5
  **individually** [1] - 83:17
  **individuals** [1] - 51:10
  **indulgence** [1] - 20:17
  **industry** [3] - 43:23, 47:22, 47:23
  **inescapable** [1] - 56:20
  **influenced** [4] - 21:18, 24:13, 39:4, 39:21
  **inform** [1] - 11:7
  **information** [6] - 29:4, 37:11, 39:3, 39:5, 39:8, 39:17
  **informed** [1] - 60:15
  **informing** [1] - 51:12
  **initial** [1] - 66:8
  **inserted** [1] - 7:21
  **insofar** [1] - 28:17
  **Instagram** [1] - 37:21
  **instead** [1] - 59:24
  **instruct** [4] - 20:3, 21:11, 23:18, 24:19
  **instructed** [10] - 24:16, 40:15, 44:5, 44:11, 45:20, 47:3, 48:9, 52:3, 53:7, 55:19
  **Instruction** [1] - 66:22
  **instruction** [8] - 6:11, 6:16, 10:1, 13:19, 13:22, 15:2, 15:8, 60:17
  **instructions** [21] - 5:17, 6:3, 6:8, 6:10, 6:20, 6:23, 6:24, 13:8, 13:12, 19:25, 20:22, 20:25, 21:7, 21:12, 21:23, 35:6, 36:1, 37:9, 40:17, 41:2, 62:12
  **instrumental** [1] - 63:25
  **intend** [1] - 78:8
  **intended** [12] - 24:4, 34:5, 34:7, 43:14,

44:3, 47:15, 48:21, 51:23, 62:20, 77:12, 77:14, 78:10
  **intense** [1] - 56:24
  **intent** [1] - 78:14
  **intention** [2] - 75:5, 77:10
  **interest** [3] - 26:20, 53:18, 84:18
  **interesting** [1] - 58:6
  **internal** [1] - 71:25
  **international** [1] - 30:24
  **Internet** [3] - 37:19, 38:9, 38:13
  **interpret** [2] - 24:4, 71:16
  **interpretation** [2] - 43:17, 75:5
  **intro** [1] - 60:13
  **introduced** [2] - 62:21, 66:6
  **introducing** [1] - 19:14
  **introductions** [1] - 60:10
  **investigation** [2] - 38:10, 39:2
  **inviting** [1] - 7:8
  **involved** [3] - 37:24, 38:16, 66:12
  **involvement** [2] - 50:18, 63:1
  **involves** [1] - 37:11
  **irrelevant** [1] - 70:6
  **issue** [7] - 6:16, 12:22, 13:12, 13:13, 16:8, 55:13, 70:7
  **issued** [1] - 50:8
  **issues** [4] - 6:1, 19:23, 37:11, 40:19
  **itis** [2] - 75:13, 75:14

## J

  **Jampol** [5] - 27:25, 47:24, 48:1, 48:6, 66:4
  **Jay** [1] - 47:14
  **Jeff** [2] - 27:25, 47:24
  **jeopardizes** [1] - 39:13
  **jigsaw** [2] - 66:17, 66:18
  **John** [2] - 29:24, 81:1
  **joined** [4] - 29:23, 29:24, 47:8, 71:24
  **JR** [1] - 1:3

**UNITED STATES DISTRICT COURT**

judge [2] - 17:15, 56:16
JUDGE [1] - 1:3
judged [1] - 28:5
judgment [2] - 11:21, 84:24
Judicial [1] - 14:19
judicial [2] - 17:24, 86:13
juror [6] - 36:16, 36:17, 39:13, 39:16, 39:24, 70:2
Juror [8] - 82:2, 82:4, 82:6, 82:8, 82:10, 82:12, 82:14, 82:16
JUROR [8] - 82:3, 82:5, 82:7, 82:9, 82:11, 82:13, 82:15, 82:17
jurors [10] - 17:2, 17:13, 36:20, 36:24, 37:5, 37:12, 38:17, 39:21, 82:19, 85:10
JURORS [1] - 81:20
Jury [6] - 5:7, 20:14, 66:22, 79:19, 80:15, 83:21
jury [63] - 5:16, 5:17, 6:3, 6:8, 6:10, 6:11, 7:22, 9:20, 10:7, 11:6, 11:9, 12:5, 12:12, 12:14, 12:21, 13:18, 15:4, 15:11, 15:21, 17:5, 18:5, 18:13, 19:25, 20:2, 20:4, 20:13, 20:19, 20:22, 20:24, 21:9, 21:12, 28:24, 36:16, 36:18, 38:2, 39:8, 39:25, 40:1, 40:3, 40:11, 41:2, 46:13, 48:16, 56:16, 57:20, 57:25, 60:17, 76:8, 79:10, 79:18, 80:7, 80:12, 80:13, 80:14, 80:21, 81:16, 81:18, 81:21, 81:24, 82:18, 83:16, 83:20

K

keep [5] - 29:3, 29:7, 44:2, 53:21, 79:10
keeping [2] - 45:9, 76:19
kind [3] - 15:13, 76:24, 76:25
kinds [1] - 25:7
knowledge [2] - 28:3, 28:8

known [1] - 30:2
KYLE [1] - 2:5
Kyle [1] - 5:11

L

LA [1] - 83:8
label [1] - 74:19
labor [4] - 56:23, 56:24, 73:5, 73:7
labors [1] - 57:6
ladies [11] - 20:16, 42:13, 56:16, 57:20, 70:3, 73:11, 75:8, 76:8, 80:17, 81:18, 81:23
language [7] - 7:21, 9:10, 9:21, 15:6, 18:16, 18:25, 33:23
large [1] - 55:10
Last [2] - 30:10, 32:1
last [16] - 6:6, 6:7, 9:6, 15:24, 21:5, 50:6, 50:11, 51:21, 52:2, 66:22, 75:6, 77:14, 77:18, 78:10
lasted [1] - 76:13
launch [1] - 71:10
launching [1] - 57:1
Law [2] - 2:6, 2:12
law [12] - 6:15, 12:20, 15:3, 21:11, 21:15, 21:16, 25:8, 29:13, 38:15, 40:15, 54:24, 60:24
LAW [1] - 2:11
lawsuit [5] - 43:25, 48:11, 55:25, 56:5, 63:7
lawyer [9] - 25:20, 25:21, 25:23, 47:14, 56:8, 56:14, 62:24, 76:11, 77:1
lawyers [10] - 17:14, 21:4, 23:17, 23:25, 24:2, 24:6, 24:8, 28:13, 38:17, 85:13
lay [1] - 84:21
Layne [1] - 81:2
lead [6] - 64:11, 72:4, 75:9, 75:10, 75:13, 75:14
lead-singer-itis [2] - 75:13, 75:14
leader [2] - 57:22, 75:16
learn [1] - 38:10
learned [2] - 51:4, 83:5
least [6] - 19:9,

51:11, 68:25, 75:6, 78:11, 85:13
leave [3] - 9:18, 79:23, 83:8
lectern [2] - 15:19, 17:7
left [3] - 31:8, 49:13, 71:4
legacy [3] - 48:5, 50:18
legal [6] - 44:2, 61:8, 61:24, 63:1, 69:13, 76:11
legally [1] - 18:13
legendary [2] - 47:24, 56:21
length [3] - 9:1, 17:21, 29:8
less [3] - 51:16, 54:23, 77:20
letter [3] - 62:22, 62:24, 63:7
liable [4] - 53:1, 53:3, 53:6, 54:14
liar [2] - 59:6, 71:18
lie [1] - 55:15
lieu [1] - 28:18
life [3] - 60:15, 63:2, 83:6
light [2] - 25:18, 27:1
likely [5] - 35:2, 35:22, 43:6, 43:7, 84:9
limit [1] - 17:3
limited [3] - 24:19, 24:20, 37:20
limits [1] - 21:4
line [1] - 64:16
lines [1] - 71:9
LinkedIn [1] - 37:21
list [2] - 23:24, 64:17
listed [1] - 61:17
listen [1] - 38:5
listened [2] - 36:24, 70:4
listening [1] - 75:19
litigation [1] - 84:16
live [2] - 28:18, 30:8
lives [1] - 73:13
LLP [1] - 2:4
logical [2] - 14:5, 43:16
Logical [2] - 30:13, 58:23
London [1] - 65:16
longevity [2] - 41:21, 76:14
look [4] - 8:22, 14:22, 15:4, 43:13, 46:14, 46:16, 46:20,

49:3, 51:1, 64:16, 64:17, 71:7, 73:16, 76:16
looking [2] - 11:19, 45:11
LOS [4] - 1:15, 1:24, 5:1, 86:3
loss [1] - 36:14
loud [1] - 15:11
love [1] - 58:17
LPs [1] - 30:2
lyric [1] - 60:11
lyrics [1] - 60:10

M

Madrid [1] - 79:9
magic [2] - 74:24, 75:1
mail [2] - 6:9, 37:18
main [1] - 72:5
maintain [1] - 7:2
majority [4] - 56:25, 64:14, 64:15, 73:8
man [4] - 53:17, 53:18, 72:18, 78:25
management [1] - 68:7
manager [6] - 31:5, 48:24, 68:10, 68:22, 74:18, 77:1
manager's [1] - 65:16
manages [1] - 47:24
manner [1] - 26:19
March [2] - 30:7, 85:6
Margereson [13] - 31:5, 47:13, 48:17, 48:24, 49:9, 65:16, 66:2, 68:5, 68:7, 68:10, 68:13, 74:25, 77:22
Margereson's [1] - 67:23
margins [1] - 43:7
marketing [1] - 72:10
materials [1] - 38:9
math [1] - 53:14
matter [7] - 15:3, 34:14, 38:3, 45:21, 63:19, 71:15, 86:12
matters [7] - 16:23, 63:1, 65:7, 82:23, 82:25, 83:23, 84:1
mean [6] - 8:1, 12:10, 12:11, 63:17, 76:22, 85:12
meaning [4] - 34:6, 34:8, 44:21, 59:1

meaningful [1] - 53:19
means [11] - 12:12, 15:23, 16:6, 21:20, 23:9, 26:8, 37:18, 43:5, 52:4, 76:23, 77:11
meant [1] - 34:9
media [4] - 37:22, 37:24, 38:5, 38:19
meeting [2] - 47:12, 65:16
meetings [1] - 47:13
melody [1] - 60:11
member [6] - 19:18, 21:9, 36:15, 40:1, 40:3, 56:18
members [10] - 31:4, 37:23, 39:24, 47:25, 48:2, 48:25, 59:11, 63:11, 75:15, 82:18
Memorandum [4] - 7:5, 17:22, 81:6, 81:11
memorandum [29] - 22:5, 22:7, 22:11, 22:14, 22:25, 23:2, 31:5, 32:4, 32:20, 32:24, 33:11, 44:12, 44:15, 44:18, 45:23, 46:17, 46:21, 47:6, 47:12, 51:6, 51:15, 51:22, 52:7, 60:19, 60:22, 61:4, 66:13, 67:1, 69:9
memory [4] - 24:6, 26:18, 39:19, 39:20
men [1] - 73:18
mention [2] - 47:7, 63:10
mentioned [3] - 8:14, 58:7, 72:25
mercifully [1] - 52:16
merits [1] - 37:15
Mesa [1] - 2:7
messaging [1] - 37:19
met [4] - 43:12, 53:1, 77:1
mid [2] - 16:3
might [5] - 26:5, 29:9, 46:11, 54:23
million [4] - 31:1, 31:3, 53:16, 68:19
millions [1] - 57:2, 72:19, 78:2
mind [4] - 44:2, 53:21, 80:21, 83:15
mine [1] - 51:1
minimize [1] - 56:6

minimum [1] - 29:8
minor [1] - 71:2
minute [5] - 15:25, 42:13, 57:15, 60:23, 74:1
minutes [12] - 13:3, 15:23, 16:24, 16:25, 17:1, 21:6, 57:10, 60:18, 71:4, 79:24
misleading [1] - 39:5
missed [1] - 54:17
misstates [1] - 6:14
mistake [4] - 58:10, 63:18, 63:21, 64:7
mistakes [1] - 27:7
mistrial [1] - 39:14
moment [2] - 10:19, 41:10
Moments [2] - 30:5, 70:13
money [23] - 34:18, 35:14, 36:8, 46:12, 53:19, 54:2, 54:12, 59:9, 59:21, 60:2, 62:25, 63:17, 64:21, 65:2, 65:7, 65:17, 68:1, 68:25, 71:12, 78:3
monies [2] - 11:25, 54:4
moreover [2] - 18:16, 50:17
morning [4] - 7:2, 20:18, 25:11, 72:16
most [5] - 43:16, 43:17, 63:17, 70:6
motion [4] - 12:25, 19:22, 84:22
motions [2] - 83:25, 84:17
motive [2] - 50:13, 50:15
motives [1] - 55:23
mouth [1] - 65:11
move [1] - 48:7
moved [1] - 13:17
MR [76] - 5:10, 5:13, 5:20, 5:22, 6:4, 6:8, 6:10, 6:14, 6:18, 6:21, 6:24, 7:1, 7:14, 7:18, 7:21, 8:8, 8:13, 8:17, 9:8, 9:10, 9:17, 9:19, 9:25, 10:5, 10:21, 10:23, 11:15, 12:3, 12:15, 12:18, 12:25, 13:4, 13:6, 13:9, 13:11, 13:14, 13:17, 13:21, 13:22, 13:25, 14:18, 15:10, 15:13, 16:7, 16:8, 16:12,

16:16, 16:18, 16:19, 16:21, 16:22, 16:24, 17:5, 17:9, 17:17, 20:6, 20:8, 41:5, 41:7, 41:10, 57:14, 74:1, 78:13, 78:16, 80:3, 80:5, 81:22, 84:3, 84:8, 84:13, 84:20, 85:2, 85:4, 85:7, 85:18, 85:19
multi [1] - 30:19
multi-platinum [1] - 30:19
multimember [1] - 75:20
multiples [1] - 53:22
music [13] - 42:11, 43:23, 45:24, 46:3, 46:4, 47:23, 53:13, 60:9, 60:16, 70:9, 74:15, 75:12, 75:19
Music [41] - 7:4, 18:6, 18:20, 18:23, 18:24, 19:8, 19:20, 22:9, 22:12, 22:17, 22:23, 30:15, 31:10, 31:23, 32:13, 32:15, 32:20, 33:9, 33:10, 33:13, 33:19, 33:20, 35:11, 35:13, 35:19, 36:6, 36:10, 44:14, 48:15, 50:8, 52:18, 53:2, 53:8, 69:18, 69:21, 73:15, 77:4, 78:21, 81:3, 81:12
Music's [2] - 33:17, 45:7
musical [1] - 31:24
musicians [1] - 56:21
must [38] - 21:16, 21:18, 21:20, 23:9, 24:16, 24:20, 25:17, 26:4, 26:8, 29:19, 32:4, 34:18, 34:25, 35:5, 35:8, 35:13, 35:20, 35:25, 36:3, 36:8, 36:9, 36:13, 36:21, 37:8, 37:10, 38:2, 40:14, 40:17, 40:18, 40:20, 42:4, 43:1, 43:5, 43:11, 66:14, 72:21

**N**

name [3] - 47:24, 72:12, 79:7
namely [1] - 19:13
nature [8] - 18:3,

19:12, 33:24, 43:22, 45:19, 45:22, 84:7, 84:16
nauseam [1] - 83:1
nearly [2] - 59:17, 63:4
necessarily [1] - 27:21
necessary [2] - 28:22, 39:22
need [19] - 7:23, 7:24, 9:24, 10:1, 12:7, 12:13, 17:8, 57:14, 63:2, 65:2, 65:17, 74:21, 74:22, 79:24, 83:24, 84:1, 84:8, 84:17, 84:24
needed [4] - 74:20, 74:23, 74:24
needs [1] - 79:5
nervous [1] - 15:13
never [11] - 17:12, 52:7, 60:4, 62:8, 68:15, 69:5, 72:25, 73:2, 73:21, 74:22
new [1] - 51:8
news [1] - 38:5
next [1] - 85:4
nice [1] - 72:9
Nicholas [1] - 5:11
NICHOLAS [1] - 2:5
night [3] - 6:6, 6:7, 25:13
nine [1] - 31:8
Ninth [1] - 8:24
NO [3] - 1:23, 4:2, 86:20
none [8] - 13:9, 26:13, 46:21, 46:23, 55:18, 65:8, 65:10, 77:24
nonsense [1] - 54:7
normal [1] - 19:17
North [1] - 30:20
note [6] - 6:1, 39:23, 40:13, 80:11, 80:18, 80:21
notebook [1] - 15:14
notes [5] - 13:3, 39:18, 39:19, 39:20, 39:21
nothing [10] - 17:17, 20:6, 20:8, 52:8, 66:20, 67:20, 72:14, 84:13, 85:9, 85:11
notice [4] - 31:23, 34:1, 50:3, 60:25
notified [1] - 62:19
notify [1] - 39:17
notion [1] - 8:1

notwithstanding [1] - 84:22
November [1] - 30:4
number [5] - 6:11, 13:24, 27:21, 29:7, 81:24
Number [1] - 60:19
numerically [1] - 40:11
numerous [1] - 19:23

**O**

O'MALLEY [1] - 2:5
O'Malley [1] - 5:9
oath [5] - 21:22, 28:12, 38:24, 39:11, 54:8
object [2] - 24:10, 25:23
objection [6] - 16:22, 24:13, 25:24, 26:1, 26:3, 78:13
objections [1] - 24:8
objectively [1] - 73:16
obligated [1] - 56:4
obligation [10] - 11:3, 22:10, 22:13, 61:9, 69:11, 69:21, 70:25, 71:11, 81:8, 81:13
obligations [4] - 19:14, 50:9, 56:6, 58:1
obviously [2] - 10:8, 76:12
occur [2] - 35:2, 35:22
October [1] - 30:10
OF [6] - 1:2, 1:13, 2:1, 86:1, 86:3, 86:4
offended [1] - 59:5
offensive [1] - 71:19
offer [2] - 55:12, 83:5
offers [1] - 25:21
Officer [1] - 14:19
Official [1] - 86:6
OFFICIAL [2] - 1:23, 86:1
often [3] - 27:7, 55:10, 83:10
old [1] - 15:16
once [4] - 20:1, 55:19, 58:7, 72:25
one [52] - 6:2, 7:2, 13:12, 15:16, 16:8, 19:18, 23:15, 23:25, 25:5, 26:16, 29:21,

32:8, 36:15, 39:24, 41:13, 41:21, 43:9, 44:7, 46:16, 47:23, 48:17, 48:18, 48:20, 51:1, 52:2, 52:12, 52:17, 52:25, 53:3, 53:5, 53:10, 55:20, 57:10, 57:14, 57:25, 58:1, 58:6, 58:10, 58:13, 59:2, 59:3, 62:11, 65:6, 68:3, 71:5, 75:10, 76:14, 77:18, 77:21, 81:6
ones [1] - 77:14
oOo [1] - 5:3
open [2] - 10:13, 40:4
opening [2] - 24:3, 44:17, 47:7, 56:9, 58:6, 66:16, 67:5, 71:3
operated [1] - 75:21
opinion [6] - 21:25, 28:2, 28:5, 28:9, 29:11, 37:3
opinions [4] - 15:5, 21:19, 28:1, 28:2
opponent [1] - 64:1
opportune [1] - 62:14
opportunity [2] - 26:16, 66:6
opposing [1] - 59:6
option [1] - 52:25
order [7] - 11:25, 12:6, 26:6, 40:20, 40:21, 63:2, 79:13
ordered [2] - 38:3, 79:15
orders [1] - 83:2
ordinarily [1] - 45:25
ordinary [5] - 19:6, 34:6, 35:3, 35:23, 44:23
original [1] - 49:5
otherwise [5] - 14:10, 40:11, 44:25, 45:18, 46:11
ourselves [1] - 42:20
outbreak [1] - 50:11
outcome [2] - 26:20, 42:22
outside [3] - 39:2, 39:16, 83:12
outstanding [1] - 83:24
overall [2] - 71:12, 71:13
overly [1] - 39:21
overrule [1] - 25:24

**overruled** [1] - 78:15
**overwhelming** [2] - 42:9, 48:12
**owe** [1] - 22:4
**owed** [6] - 7:6, 7:19, 8:3, 8:16, 9:7, 9:16
**own** [9] - 14:8, 37:2, 38:11, 45:9, 45:24, 54:18, 55:7, 72:12, 74:10
**ownership** [1] - 45:5

# P

**p.m** [7] - 1:15, 5:2, 20:14, 79:19, 80:15, 83:21, 85:22
**pack** [2] - 58:18, 76:16
**package** [3] - 51:11, 64:16, 67:9
**packages** [1] - 50:19
**page** [3] - 7:13, 11:20, 86:12
**Page** [2] - 3:3, 4:2
**paid** [17] - 11:25, 12:11, 31:20, 45:25, 54:1, 59:21, 62:1, 63:22, 64:20, 71:9, 71:12, 73:6, 73:7, 73:9, 73:10, 73:18
**paper** [1] - 50:2
**papers** [1] - 84:23
**par** [1] - 50:6
**paragraph** [2] - 13:25, 45:6
**Paragraph** [4] - 45:4, 46:14, 46:16, 46:20
**pardon** [5] - 14:23, 57:16, 57:18, 66:5
**Paris** [2] - 30:8, 30:9
**part** [7] - 22:22, 26:12, 27:19, 31:17, 36:12, 57:25, 71:13
**participated** [2] - 31:14, 77:8
**participation** [1] - 66:11
**particular** [5] - 7:22, 48:14, 50:24, 60:1, 66:12
**particularly** [1] - 7:3
**parties** [41] - 5:18, 14:6, 16:4, 19:14, 22:2, 29:13, 29:17, 31:21, 34:5, 34:7, 34:10, 34:11, 34:12, 35:1, 35:21, 38:16, 39:7, 39:9, 40:7, 42:11, 43:14, 43:19,

43:24, 44:3, 44:9, 44:24, 45:2, 45:21, 47:5, 47:15, 47:21, 48:10, 48:21, 51:23, 53:7, 57:19, 75:5, 77:10, 78:8, 82:20, 84:17
**parties'** [9] - 34:10, 38:21, 44:5, 44:11, 46:14, 46:15, 46:19, 48:9, 52:3
**partner** [4] - 18:24, 19:8, 69:19, 73:15
**partnership** [6] - 19:18, 19:19, 29:13, 69:18, 72:13, 73:14
**Partnership** [1] - 81:4
**party** [8] - 23:7, 23:12, 28:13, 29:15, 34:2, 52:4, 60:25, 74:13
**party's** [1] - 42:24
**passing** [1] - 80:21
**patience** [2] - 20:17, 82:21
**patient** [1] - 70:3
**PATRICK** [1] - 2:5
**pay** [18] - 11:3, 33:5, 33:19, 36:7, 44:13, 50:24, 51:19, 53:24, 54:2, 54:5, 61:9, 66:14, 67:6, 67:10, 69:11, 69:21, 70:25, 81:8
**paying** [4] - 33:1, 33:7, 46:24, 68:23
**payment** [2] - 62:20, 63:3
**payments** [3] - 56:1, 56:2, 61:13
**pent** [1] - 72:18
**people** [7] - 14:11, 27:7, 27:9, 37:24, 38:16, 59:6, 82:23
**per** [4] - 53:17, 53:18, 78:25
**percent** [5] - 57:4, 59:17, 63:4, 73:17, 74:4
**percentage** [5] - 11:22, 54:1, 68:1, 68:3, 68:8
**percentages** [1] - 51:14
**performance** [10] - 34:10, 44:1, 48:8, 48:10, 50:6, 50:7, 50:23, 52:10, 58:8, 58:12

**performances** [1] - 59:23
**performed** [10] - 34:24, 35:19, 42:2, 45:14, 49:1, 50:11, 52:24, 64:18, 70:22, 74:7
**performer** [1] - 72:4
**performing** [4] - 31:13, 49:19, 59:16, 62:18
**period** [5] - 49:22, 53:16, 56:24, 61:14, 65:22
**permit** [1] - 79:12
**permitted** [1] - 25:22
**perpetuity** [11] - 18:16, 46:23, 48:22, 49:10, 51:16, 67:11, 67:14, 67:19, 68:2, 68:4, 68:14
**person** [9] - 28:15, 28:16, 28:21, 37:17, 55:4, 56:3, 77:19, 79:12, 85:14
**person's** [1] - 56:8
**personal** [2] - 21:18, 73:13
**personally** [1] - 25:3
**perspective** [3] - 8:6, 84:2, 84:11
**persuaded** [1] - 23:9
**persuades** [1] - 37:4
**persuasive** [1] - 83:11
**pertaining** [2] - 31:6, 31:11
**phenomenal** [1] - 63:13
**Phil** [1] - 27:25
**PHILLIPS** [1] - 2:4
**phone** [3] - 37:18, 63:15, 79:25
**photo** [4] - 16:13, 16:16, 41:14, 72:8
**photograph** [1] - 63:14
**phrase** [2] - 56:11, 60:13
**phrased** [1] - 8:2
**picture** [2] - 66:17, 66:18
**piece** [9] - 50:2, 58:19, 59:12, 59:13, 60:8, 65:13, 65:14, 70:8, 76:20
**pieces** [1] - 14:14
**piled** [1] - 63:14
**place** [8] - 28:20, 38:12, 38:14, 62:3,

65:21, 67:18, 72:21, 79:11
**placed** [1] - 28:12
**plain** [1] - 18:25
**Plaintiff** [1] - 29:23
**PLAINTIFF** [1] - 2:3
**plaintiff** [11] - 5:19, 11:21, 13:8, 20:5, 20:6, 21:1, 21:2, 53:21, 55:7, 56:14, 81:2
**plaintiff's** [6] - 13:16, 18:22, 19:22, 45:3, 80:2, 84:2
**Plaintiffs** [1] - 1:6
**plaintiffs** [91] - 5:11, 10:12, 10:15, 11:4, 18:11, 18:18, 22:3, 22:5, 22:9, 29:24, 31:9, 31:12, 31:20, 32:4, 32:8, 32:10, 32:12, 32:14, 32:16, 32:18, 32:21, 32:22, 32:25, 33:3, 33:4, 33:7, 33:9, 33:13, 33:17, 33:18, 33:21, 34:17, 34:19, 34:22, 34:25, 35:5, 35:9, 35:12, 35:14, 35:17, 35:20, 35:25, 36:4, 36:8, 36:14, 42:7, 44:13, 44:25, 45:13, 50:4, 50:14, 50:17, 51:8, 52:4, 52:7, 52:23, 53:1, 54:3, 54:12, 54:19, 55:5, 56:1, 56:25, 58:10, 61:9, 61:21, 63:8, 64:8, 64:20, 66:2, 66:3, 66:15, 67:6, 67:13, 67:20, 68:15, 69:12, 69:22, 70:8, 71:24, 72:12, 74:4, 74:21, 74:22, 74:23, 76:15, 78:20, 78:22, 81:9, 81:14
**plaintiffs'** [1] - 62:24
**plan** [1] - 64:2
**planet** [1] - 41:12
**platinum** [5] - 30:19, 30:25, 31:1
**play** [1] - 54:14
**played** [3] - 58:12, 65:6, 73:19
**playing** [2] - 30:2, 59:3
**pleadings** [1] - 19:10
**plucking** [2] - 14:14, 15:14
**plus** [2] - 59:14,

73:18
**pocket** [3] - 6:6, 10:11, 12:18
**podium** [1] - 57:18
**point** [7] - 7:7, 7:14, 11:2, 14:24, 52:2, 64:7, 84:2
**pointed** [1] - 66:8
**points** [4] - 10:16, 49:25, 56:20, 71:2
**polled** [1] - 81:21
**POMFRET** [1] - 1:8
**Pomfret** [2] - 5:7, 81:3
**pope** [3] - 48:18, 49:11, 68:1
**Pope** [1] - 48:23
**Pope's** [1] - 67:24
**portion** [25] - 11:4, 22:4, 22:10, 22:13, 32:9, 32:15, 32:23, 33:1, 33:7, 33:10, 33:15, 33:21, 42:1, 60:5, 62:1, 66:15, 67:14, 68:7, 69:11, 69:22, 70:10, 70:24, 73:17, 81:8, 81:13
**position** [9] - 6:11, 7:20, 9:2, 10:3, 11:8, 13:16, 34:23, 35:18, 77:16
**positions** [1] - 22:2
**possible** [3] - 28:17, 38:20, 78:5
**post** [2] - 83:25, 84:17
**post-trial** [2] - 83:25, 84:17
**poster** [2] - 15:17, 48:6
**posture** [1] - 17:18
**practice** [2] - 43:23, 47:22
**prayer** [1] - 12:16
**prayers** [1] - 11:19
**precise** [1] - 41:24
**precision** [1] - 74:2
**prejudice** [1] - 26:22
**prejudices** [1] - 21:19
**prejudicial** [1] - 15:4
**prepared** [1] - 9:12
**preponderance** [4] - 23:8, 32:5, 43:2, 43:5
**presence** [1] - 25:15
**present** [2] - 28:19, 28:25
**presentation** [1] - 83:11
**presented** [11] -

14:25, 18:1, 18:5, 19:10, 23:1, 23:12, 28:18, 38:22, 39:9, 81:19, 81:24

**preside** [1] - 36:17
**president** [2] - 19:2, 19:4
**presiding** [4] - 36:16, 36:17, 39:24, 70:1
**Presidio** [1] - 2:7
**press** [1] - 37:24
**pressing** [4] - 84:1, 84:3, 84:5, 84:12
**pretending** [1] - 8:23
**prevail** [1] - 32:3
**previous** [1] - 63:9
**previously** [1] - 55:12
**print** [1] - 19:25
**private** [1] - 79:11
**problem** [1] - 8:13
**procedural** [1] - 17:18
**proceed** [3] - 41:6, 41:8, 57:12
**proceedings** [3] - 39:14, 85:22, 86:11
**PROCEEDINGS** [1] - 1:13
**process** [4] - 39:1, 39:6, 39:15, 70:13
**proclaimed** [1] - 63:24
**professional** [1] - 50:3
**programs** [1] - 38:13
**promise** [4] - 21:5, 67:6, 76:19, 78:16
**promised** [3] - 34:24, 35:19, 66:21
**promote** [1] - 50:18
**proof** [6] - 21:2, 23:19, 25:2, 25:5, 42:23, 42:24
**proposal** [1] - 9:4
**propose** [2] - 5:16, 7:17
**proposed** [1] - 10:24
**proposition** [1] - 77:2
**prosecutor** [1] - 83:6
**protect** [1] - 38:21
**prove** [10] - 32:5, 34:25, 35:5, 35:7, 35:20, 35:25, 36:2, 36:8, 43:1, 54:15
**proved** [4] - 25:16, 29:20, 34:17, 35:12
**proves** [1] - 47:9
**provide** [3] - 25:14,

33:25, 45:8
**provided** [6] - 10:16, 54:10, 62:12, 62:13, 62:16, 72:8
**providing** [3] - 15:2, 45:4, 45:6
**proving** [3] - 22:6, 23:7, 61:22
**provision** [2] - 44:17, 45:11
**provisions** [2] - 48:20, 51:12
**Publishing** [1] - 31:23, 81:7, 81:12
**publishing** [13] - 11:23, 14:1, 22:5, 22:8, 22:20, 23:4, 31:6, 49:8, 58:19, 60:23, 66:23, 69:9, 74:15
**pull** [7] - 10:4, 11:17, 13:3, 14:8, 46:13, 46:15, 46:19
**punish** [1] - 36:9
**punitive** [1] - 36:11
**purpose** [7] - 24:19, 24:20, 24:21, 26:9, 29:3, 34:22, 35:17
**purposes** [1] - 10:13
**pursuant** [2] - 32:1, 86:9
**pursue** [1] - 63:1
**put** [6] - 20:20, 34:22, 35:17, 51:7, 72:10, 76:12
**puts** [1] - 75:14
**puzzle** [1] - 66:18

---

## Q

**qualified** [1] - 71:20
**quantify** [1] - 54:20
**questioned** [1] - 76:14
**questions** [17] - 7:24, 24:8, 28:13, 28:14, 28:21, 40:14, 40:16, 40:20, 52:17, 52:21, 53:11, 55:5, 69:7, 70:1, 76:1, 79:22, 80:7
**Questions** [4] - 8:11, 8:16, 9:7, 69:25
**quick** [1] - 49:25
**quickly** [1] - 14:22
**Quietest** [2] - 30:5, 70:13
**quit** [1] - 49:9
**quite** [1] - 67:10
**quote** [3] - 44:17,

56:14, 60:7

---

## R

**rained** [1] - 25:13
**Raining** [1] - 30:13
**rate** [1] - 63:25
**rather** [2] - 50:15, 56:2
**rational** [2] - 14:11, 77:16
**reach** [1] - 36:19, 36:25, 37:7
**reached** [6] - 30:23, 40:12, 40:22, 40:23, 80:12, 80:19
**reaching** [1] - 23:20
**reaction** [1] - 59:4
**read** [12] - 5:24, 10:24, 15:10, 21:7, 21:23, 29:16, 38:5, 38:18, 60:18, 66:7, 81:19, 81:25
**readily** [1] - 54:18
**reading** [2] - 28:21, 55:13
**ready** [1] - 41:1
**really** [6] - 54:23, 59:7, 65:7, 74:3, 76:9
**Realtime** [1] - 86:6
**reason** [6] - 25:18, 44:2, 60:5, 62:3, 65:15, 67:17
**reasonable** [53] - 9:21, 9:24, 11:2, 11:5, 11:7, 11:10, 11:12, 18:7, 18:13, 34:2, 34:4, 43:4, 43:16, 43:18, 45:1, 45:3, 45:17, 45:18, 46:7, 47:4, 47:20, 48:13, 48:21, 49:22, 49:24, 51:12, 51:25, 52:5, 52:22, 60:25, 61:3, 61:7, 61:10, 61:12, 61:20, 65:25, 69:12, 69:14, 69:23, 70:15, 70:16, 73:23, 75:3, 75:4, 76:1, 77:7, 77:16, 78:19, 78:21, 81:9, 81:14
**reasonableness** [1] - 26:25
**reasonably** [4] - 34:19, 35:2, 35:14, 35:22
**reasons** [3] - 22:18, 28:1, 28:9
**rebuttal** [5] - 16:24, 17:6, 21:3, 72:15,

73:25
**receive** [4] - 46:4, 46:7, 46:22, 64:6
**received** [17] - 4:4, 11:23, 15:7, 23:21, 24:18, 24:24, 25:20, 25:25, 26:2, 37:9, 51:20, 54:12, 58:11, 63:11, 64:8, 80:11, 80:18
**receiving** [2] - 59:16, 62:16
**recess** [4] - 20:11, 20:12, 28:25, 80:9
**Recital** [1] - 51:21
**recognize** [1] - 48:4
**record** [21] - 10:25, 26:7, 30:2, 30:22, 47:16, 48:12, 50:1, 50:21, 55:17, 58:9, 58:12, 60:3, 73:4, 73:6, 74:16, 74:18, 75:1, 76:4, 77:23, 78:4, 79:8
**recorded** [5] - 28:14, 30:1, 30:8, 61:14, 73:2
**recording** [14] - 46:14, 46:15, 46:19, 49:7, 58:13, 58:14, 62:17, 63:11, 63:23, 64:5, 70:13, 70:19, 70:21, 73:6
**recordings** [23] - 11:24, 30:18, 31:3, 42:1, 42:8, 43:18, 45:9, 45:14, 45:16, 46:12, 49:1, 52:10, 52:23, 58:9, 59:19, 59:22, 61:18, 68:21, 74:6, 74:11, 77:14, 77:15, 78:11
**Records** [9] - 46:8, 46:10, 46:24, 50:20, 57:2, 63:16, 66:9, 72:9
**records** [7] - 46:25, 54:9, 63:22, 65:1, 75:7, 76:5, 77:7
**recouped** [2] - 57:2, 78:3
**recover** [4] - 34:25, 35:20, 36:7, 52:11
**recovery** [1] - 63:5
**redoing** [1] - 50:19
**reduce** [1] - 68:12
**refer** [1] - 48:14
**reference** [4] - 34:13, 38:9, 47:4, 51:21
**reflected** [1] - 77:24

**reflects** [1] - 78:6
**regard** [2] - 18:20, 19:21
**regarding** [7] - 6:18, 18:16, 21:25, 43:1, 60:23, 69:17, 69:18
**regardless** [1] - 23:12
**Regulations** [1] - 14:19
**regulations** [1] - 86:13
**reissues** [1] - 50:18
**reject** [1] - 28:6
**rejects** [1] - 18:22
**related** [4] - 13:19, 14:2, 23:5, 66:24
**relates** [3] - 23:2, 34:15, 45:22
**release** [1] - 31:16
**released** [9] - 30:2, 30:3, 30:4, 30:5, 30:7, 30:9, 30:10, 49:6, 59:9
**relevant** [1] - 29:4
**relief** [9] - 9:25, 10:5, 10:14, 11:8, 11:15, 11:18, 11:19, 12:16, 84:6
**rely** [1] - 39:19
**remain** [3] - 8:7, 17:23, 51:24
**remaining** [1] - 23:2
**remains** [1] - 18:4
**remarks** [3] - 58:7, 67:5, 72:25
**remember** [9] - 24:5, 27:8, 27:9, 39:11, 40:10, 55:15, 56:11, 59:11, 65:5
**remind** [2] - 29:18, 37:10
**reminds** [1] - 17:5
**remove** [2] - 14:19, 63:2
**removed** [2] - 13:15, 14:4
**rendered** [1] - 52:9
**renegotiated** [1] - 49:7
**repaid** [2] - 57:3, 63:8
**repeatedly** [1] - 50:5
**report** [2] - 38:3, 38:19
**reported** [1] - 86:11
**REPORTER** [2] - 1:23, 86:1
**Reporter** [2] - 86:7, 86:20

**REPORTER'S** [1] - 1:13
  **representatives** [1] - 50:3
  **request** [5] - 10:8, 10:17, 29:9, 29:10, 74:12
  **requested** [1] - 10:15
  **require** [1] - 39:15
  **required** [2] - 33:7, 33:21
  **requires** [1] - 74:14
  **rerecord** [1] - 74:13
  **rerecords** [2] - 45:10, 74:10
  **research** [3] - 38:8, 38:15, 39:2
  **resentment** [3] - 56:15, 56:19, 72:18
  **reserve** [1] - 10:13
  **reserved** [1] - 17:14
  **resolve** [1] - 84:9
  **resolved** [1] - 85:12
  **respect** [20] - 6:1, 6:19, 15:3, 17:19, 17:21, 18:19, 22:19, 22:24, 34:16, 35:11, 67:22, 69:8, 69:20, 75:11, 77:13, 77:17, 81:6, 81:11, 84:25
  **respectfully** [1] - 84:15
  **respective** [2] - 34:20, 35:15
  **respond** [2] - 10:21, 38:2
  **response** [2] - 62:23, 63:6
  **responsibility** [2] - 18:12, 54:19
  **rest** [1] - 27:19
  **restrictions** [1] - 39:13
  **result** [7] - 32:12, 32:18, 32:21, 35:3, 35:23, 39:14, 75:23
  **retirement** [5] - 53:19, 64:1, 64:4, 70:18, 70:19
  **retiring** [2] - 50:14, 50:15
  **retract** [1] - 55:11
  **return** [2] - 41:1, 79:15
  **reveals** [1] - 56:9
  **reversible** [1] - 6:15
  **reversion** [1] - 62:10
  **review** [4] - 5:18, 17:20, 22:1, 66:7
  **reward** [1] - 78:1

**Rick** [4] - 29:21, 62:7, 64:13, 65:3
  **rights** [6] - 45:1, 48:25, 57:25, 62:9, 62:15, 67:21
  **rise** [9] - 5:5, 20:10, 20:13, 79:18, 80:8, 80:10, 80:14, 83:20, 85:20
  **risk** [1] - 78:1
  **road** [3] - 50:15, 50:16, 63:5
  **Robert** [2] - 29:24, 81:2
  **ROBERT** [1] - 2:6
  **ROGER** [1] - 1:8
  **Roger** [26] - 5:7, 29:21, 32:22, 49:24, 58:7, 60:4, 60:14, 61:4, 61:8, 62:25, 63:21, 64:3, 64:8, 64:10, 64:17, 64:23, 65:3, 66:4, 66:14, 66:20, 68:21, 74:21, 74:22, 74:23, 81:2, 81:3
  **role** [1] - 75:9
  **roll** [1] - 47:16
  **rolled** [1] - 77:24
  **rolling** [1] - 17:10
  **room** [6] - 8:23, 21:13, 37:19, 46:13, 48:16, 83:16
  **ROOM** [1] - 1:24
  **royalties** [54] - 11:4, 11:23, 22:4, 22:11, 22:14, 30:17, 31:7, 31:21, 32:10, 32:16, 32:23, 33:2, 33:8, 33:11, 33:16, 33:22, 45:24, 45:25, 46:22, 47:16, 50:21, 58:20, 59:10, 59:17, 60:6, 61:15, 62:2, 63:22, 64:4, 64:5, 65:4, 66:15, 67:14, 68:2, 68:9, 68:11, 69:12, 69:22, 70:9, 70:19, 70:21, 70:24, 72:20, 73:18, 74:5, 74:6, 74:10, 74:15, 74:16, 76:4, 77:23, 78:4, 81:8, 81:14
  **royalty** [1] - 63:25
  **RPR** [1] - 86:20
  **rude** [1] - 17:1
  **Rule** [5] - 12:25, 17:19, 18:19, 19:21, 19:22
  **rule** [2] - 13:1, 13:2

  **rules** [8] - 16:4, 24:11, 25:19, 25:22, 29:5, 38:21, 39:11, 39:12
  **ruling** [3] - 19:24, 24:14, 44:4
  **rulings** [1] - 14:25
  **Russell** [2] - 48:23, 67:24

## S

  **sabotage** [1] - 71:21
  **sabotaged** [1] - 55:17
  **sadly** [1] - 76:21
  **safe** [1] - 85:15
  **sales** [1] - 31:2
  **San** [1] - 2:8
  **sang** [3] - 64:12, 64:13, 64:18
  **saw** [7] - 25:3, 53:14, 62:21, 66:2, 66:7, 66:9, 67:3
  **sax** [1] - 52:11
  **school** [2] - 15:16, 75:19
  **scope** [3] - 19:6, 19:13, 19:17
  **scour** [1] - 50:1
  **screen** [1] - 63:15
  **search** [1] - 38:13
  **searching** [1] - 38:9
  **seated** [6] - 5:5, 20:15, 79:20, 80:10, 80:16, 83:22
  **second** [4] - 11:18, 50:5, 51:17, 69:17
  **Section** [4] - 51:14, 51:17, 51:19, 86:9
  **security** [1] - 53:20
  **see** [15] - 12:10, 16:9, 16:10, 17:9, 24:22, 25:11, 26:16, 27:9, 57:17, 59:20, 63:15, 67:13, 71:8, 80:6, 85:13
  **seem** [1] - 17:3
  **seething** [2] - 56:14, 56:19
  **Seibenberg** [1] - 81:2
  **sell** [2] - 76:5, 77:5
  **selling** [2] - 31:1, 46:25
  **send** [2] - 39:23, 40:6
  **sense** [7] - 8:4, 25:18, 44:23, 45:25, 48:23, 49:23, 53:3

  **sent** [3] - 10:23, 21:12, 63:3
  **sentence** [1] - 16:3
  **separate** [1] - 49:10
  **separated** [1] - 51:4
  **separately** [1] - 40:18
  **September** [2] - 30:3, 30:9
  **seriously** [1] - 76:17
  **serve** [2] - 36:18, 44:18
  **served** [2] - 31:22, 51:2
  **service** [8] - 38:2, 57:21, 58:3, 58:4, 73:12, 82:19, 83:15, 83:18
  **services** [1] - 52:9
  **SESSION** [1] - 1:14
  **session** [1] - 24:23
  **set** [7] - 16:10, 51:15, 54:11, 54:25, 55:24, 57:15, 64:14
  **seven** [3] - 26:25, 31:2, 53:16
  **seven-year** [1] - 53:16
  **severance** [3] - 51:2, 51:11, 67:9
  **shall** [2] - 36:18, 44:18
  **share** [10] - 31:21, 41:17, 44:13, 46:5, 46:8, 51:7, 51:9, 56:22, 64:23, 74:14
  **shared** [1] - 41:24
  **sharing** [9] - 32:9, 43:19, 45:24, 46:3, 48:2, 50:4, 57:6, 75:6, 77:12
  **short** [1] - 41:19
  **show** [3] - 50:8, 60:23, 66:20
  **showed** [1] - 67:5
  **shows** [3] - 18:25, 49:22, 49:24
  **side** [6] - 25:21, 43:9, 79:23, 80:2, 80:4, 81:21
  **sides** [1] - 16:5
  **sidewalk** [2] - 25:12, 25:15
  **Siebenberg** [14] - 29:24, 31:14, 31:18, 42:15, 50:8, 57:2, 58:25, 63:20, 63:22, 63:24, 68:6, 68:12, 72:14, 78:3
  **Siebenberg's** [1] -

  59:4
  **sign** [2] - 40:25, 70:2
  **signature** [4] - 18:23, 19:1, 19:3, 19:4
  **signed** [10] - 39:24, 40:2, 46:17, 48:15, 49:5, 49:9, 49:11, 70:12, 81:16
  **significance** [1] - 28:20
  **significant** [1] - 8:4
  **signing** [2] - 16:13, 16:16
  **similar** [1] - 68:15
  **simple** [5] - 41:18, 52:15, 75:7, 75:8, 78:7
  **simply** [4] - 8:19, 19:11, 37:5, 37:7
  **singer** [5] - 64:11, 72:5, 75:10, 75:13, 75:14
  **singers** [1] - 75:10
  **single** [13] - 10:10, 50:2, 60:11, 60:12, 60:13, 60:22, 66:14, 67:12, 70:7, 73:1, 73:2
  **singles** [1] - 30:24
  **sit** [2] - 13:6, 16:3
  **sitting** [2] - 48:6, 56:18
  **situation** [1] - 74:17
  **situations** [1] - 8:9
  **six** [7] - 15:5, 26:23, 30:2, 30:22, 31:2, 56:21, 75:1
  **skill** [2] - 28:3, 28:8
  **slang** [1] - 76:22
  **slew** [1] - 55:10
  **slimmest** [1] - 43:7
  **small** [3] - 42:1, 55:10, 68:3
  **smart** [1] - 48:6
  **smartest** [1] - 8:22
  **SnapChat** [1] - 37:21
  **so-called** [1] - 54:12
  **social** [1] - 37:22
  **sole** [1] - 56:16
  **solely** [1] - 21:20
  **solemnly** [1] - 79:10
  **solo** [6] - 51:5, 52:12, 55:17, 72:3, 72:8
  **someone** [4] - 12:7, 46:3, 55:20, 68:23
  **sometimes** [4] - 26:6, 27:3, 27:5, 56:8
  **somewhat** [1] - 42:17

**song** [14] - 22:4, 22:11, 32:9, 32:16, 41:17, 44:13, 48:2, 58:16, 58:21, 73:1, 73:2, 77:8, 77:13, 78:11

**Song** [2] - 30:13, 58:23

**songs** [26] - 11:24, 30:12, 45:5, 45:7, 45:10, 58:8, 58:20, 59:3, 59:18, 60:4, 60:9, 60:14, 60:16, 61:17, 61:18, 61:19, 62:10, 63:20, 64:3, 64:17, 64:23, 67:22, 68:21, 70:22, 78:4

**songwriter** [3] - 30:11, 72:4, 72:5

**songwriters** [2] - 65:8, 66:10

**songwriting** [36] - 11:4, 11:22, 22:14, 30:16, 31:7, 31:21, 32:23, 33:2, 33:8, 33:11, 33:16, 33:22, 58:14, 58:19, 59:10, 60:3, 60:6, 61:15, 62:2, 65:4, 66:15, 67:14, 68:2, 68:8, 68:11, 69:11, 69:22, 70:9, 70:24, 72:5, 72:20, 73:18, 74:5, 74:6, 81:8, 81:14

**soon** [3] - 21:10, 38:19, 85:3

**sooner** [2] - 84:18, 84:19

**sorry** [1] - 33:15, 40:22, 85:12

**sort** [4] - 7:8, 8:4, 71:11, 75:11

**sought** [1] - 61:15

**soul** [2] - 58:20, 60:14

**sound** [4] - 48:23, 54:12, 54:17, 68:24

**source** [2] - 11:25, 50:13

**sources** [1] - 65:18

**special** [9] - 5:16, 6:18, 9:11, 10:8, 34:8, 44:21, 64:10, 64:11, 69:6

**Special** [1] - 81:5

**specialist** [1] - 84:21

**specialized** [2] - 28:3, 28:8

**specific** [1] - 13:22

**specifically** [2] -

18:3, 67:22

**specified** [1] - 11:22

**speculate** [3] - 22:21, 35:8, 36:3

**spent** [1] - 42:21

**split** [1] - 64:9

**spokesperson** [1] - 36:18

**sponte** [1] - 14:14

**stage** [1] - 20:21

**stand** [7] - 53:14, 54:8, 54:22, 55:4, 59:1, 59:5, 62:7

**standard** [2] - 8:19, 43:4

**stands** [1] - 40:11

**stanza** [1] - 66:22

**start** [9] - 6:3, 14:14, 17:9, 29:16, 39:15, 42:7, 44:9, 51:5, 55:16

**started** [2] - 20:18, 47:16

**starting** [1] - 31:20

**STATE** [1] - 86:4

**state** [2] - 5:9, 79:7

**statement** [6] - 44:17, 56:9, 66:16, 71:3, 71:14, 71:20

**statements** [4] - 15:15, 17:20, 23:25, 24:3

**states** [3] - 8:10, 12:20, 66:14

**States** [5] - 30:21, 80:24, 86:7, 86:9, 86:14

**STATES** [1] - 1:1

**stating** [1] - 62:23

**staying** [1] - 48:3

**stenographically** [1] - 86:11

**sticker** [1] - 72:10

**still** [3] - 7:2, 42:8, 46:25

**stipulated** [3] - 50:6, 62:11, 64:14

**stood** [1] - 41:20

**stop** [5] - 12:2, 12:13, 17:3, 42:13, 46:24

**stopped** [1] - 62:6

**stops** [1] - 12:13

**stream** [4] - 45:12, 46:3, 46:12, 62:20

**Street** [1] - 2:7

**STREET** [1] - 1:24

**stress** [1] - 63:2

**stricken** [3] - 24:15, 26:6, 26:9

**strive** [1] - 36:19

**struck** [1] - 56:11

**student** [1] - 75:20

**studio** [1] - 31:15

**stuff** [2] - 6:12, 76:20

**stunning** [1] - 72:24

**sturdy** [1] - 41:19

**subject** [6] - 47:3, 53:11, 56:17, 58:13, 62:10, 65:7

**subjective** [1] - 78:13

**subjects** [3] - 43:15, 44:20, 55:10

**submit** [1] - 12:18

**submitted** [8] - 6:6, 7:1, 8:18, 9:11, 9:22, 10:11, 20:4, 84:25

**subsequent** [1] - 31:15

**substitute** [1] - 74:11

**success** [1] - 78:4

**successful** [2] - 63:12, 63:23

**suddenly** [1] - 77:5

**sue** [1] - 14:14

**sued** [1] - 59:23

**suffer** [1] - 75:13

**suffered** [1] - 56:14

**sufficient** [2] - 17:25, 18:14

**suggest** [4] - 14:10, 47:14, 52:19, 56:17

**suggested** [3] - 9:19, 51:1, 65:8

**suggesting** [2] - 9:13, 48:13

**suggests** [1] - 8:2

**suing** [1] - 55:18

**Suite** [2] - 2:7, 2:13

**summary** [1] - 22:2

**Supertramp** [24] - 11:24, 29:21, 30:1, 30:18, 31:3, 31:4, 31:11, 31:13, 31:17, 41:10, 42:1, 47:8, 47:25, 48:1, 50:18, 56:18, 62:6, 62:8, 72:5, 72:6, 72:11, 72:13, 74:11, 77:13

**Supertramp's** [2] - 11:23, 30:22

**support** [3] - 45:3, 50:17, 71:20

**supporting** [1] - 57:1

**supposed** [3] - 12:1, 12:2, 52:6

**surrounding** [5] - 14:2, 18:2, 23:5, 33:24, 66:24

**survive** [1] - 19:20

**sustain** [3] - 26:1, 43:9, 54:25

**sustained** [1] - 26:3

**swear** [1] - 79:10

**swift** [1] - 75:21

**sworn** [3] - 23:15, 28:11, 79:6

**sympathy** [1] - 21:19

**system** [2] - 44:2, 57:24

---

## T

**table** [2] - 16:10, 57:17

**tablet** [1] - 37:18

**talented** [1] - 72:4

**tax** [1] - 20:19

**Tay** [3] - 74:17, 74:18

**Tay's** [1] - 74:18

**Taylor** [1] - 75:21

**team** [1] - 75:20

**temporary** [2] - 56:2, 77:23

**ten** [12] - 16:24, 16:25, 21:6, 30:19, 30:24, 30:25, 31:9, 56:23, 61:14, 65:21

**ten-year** [3] - 56:23, 61:14, 65:21

**terminal** [1] - 52:4

**terminate** [24] - 11:1, 11:3, 32:1, 43:19, 46:11, 47:20, 48:13, 49:4, 49:21, 51:25, 52:5, 53:7, 57:6, 61:4, 61:24, 61:25, 62:15, 62:20, 69:10, 69:13, 69:21, 70:15, 77:6, 77:7

**terminated** [14] - 11:11, 18:6, 34:1, 34:4, 44:25, 52:7, 60:24, 61:3, 61:10, 61:12, 65:25, 70:25, 81:7, 81:12

**terminating** [2] - 50:4, 73:17

**termination** [5] - 9:21, 33:25, 44:6, 47:15, 52:2

**TERRI** [4] - 1:23, 86:6, 86:19, 86:20

**terrible** [2] - 57:21, 58:3

**test** [1] - 41:20

**tested** [2] - 38:25, 39:6

**testified** [11] - 26:17,

27:15, 27:17, 28:1, 58:23, 62:7, 62:9, 62:23, 68:6, 77:19, 78:3

**testify** [3] - 27:21, 28:15, 28:19

**testifying** [1] - 26:19

**testimony** [24] - 23:15, 23:21, 24:15, 25:3, 26:11, 26:14, 26:24, 26:25, 27:12, 27:13, 27:23, 27:24, 28:2, 28:5, 28:6, 28:11, 28:17, 28:18, 28:25, 53:13, 68:6, 70:4, 72:15

**text** [2] - 37:18, 79:25

**THE** [100] - 2:3, 2:10, 5:5, 5:12, 5:15, 5:21, 5:23, 6:7, 6:9, 6:13, 6:17, 6:19, 6:22, 6:25, 7:10, 7:17, 7:20, 7:23, 8:12, 8:15, 8:22, 9:9, 9:13, 9:18, 9:23, 10:3, 10:19, 10:22, 11:9, 11:17, 12:9, 12:17, 12:24, 13:2, 13:5, 13:7, 13:10, 13:13, 13:16, 13:18, 13:24, 14:5, 15:8, 15:12, 15:19, 16:11, 16:15, 16:23, 16:25, 17:8, 17:12, 17:18, 20:9, 20:10, 20:13, 20:15, 20:16, 41:6, 41:9, 57:11, 73:25, 78:15, 79:3, 79:7, 79:9, 79:10, 79:17, 79:18, 79:20, 79:21, 80:4, 80:6, 80:8, 80:10, 80:11, 80:14, 80:16, 80:17, 80:24, 81:21, 81:23, 82:4, 82:6, 82:8, 82:10, 82:12, 82:14, 82:16, 82:18, 83:20, 83:22, 83:23, 84:5, 84:11, 84:15, 84:24, 85:3, 85:5, 85:8, 85:20

**themselves** [3] - 7:15, 45:14, 84:9

**then-wife** [1] - 56:1

**thereafter** [1] - 21:1

**therefore** [5] - 14:3, 18:4, 25:16, 29:19, 44:25

**thinks** [2] - 46:7, 76:24

**third** [2] - 51:19,

74:13
   **thirteen** [1] - 31:22
   **Thomson** [8] - 5:6,
29:23, 31:19, 42:16,
49:13, 63:20, 63:21,
81:1
   **THOMSON** [1] - 1:5
   **thousands** [1] -
72:19
   **threatening** [1] -
62:24
   **three** [17] - 23:17,
24:15, 26:19, 32:12,
32:18, 48:14, 56:13,
57:4, 59:11, 59:14,
60:6, 64:20, 65:9,
66:2, 69:7, 74:4,
74:14
   **throw** [2] - 77:8,
78:11
   **ticks** [1] - 12:23
   **tied** [1] - 51:5
   **TikTok** [1] - 37:21
   **timeless** [1] - 42:12
   **timeline** [1] - 49:3
   **timely** [1] - 84:23
   **timer** [1] - 16:5
   **timing** [1] - 50:10
   **Title** [1] - 86:9
   **today** [4] - 13:1,
20:21, 41:25, 56:18
   **together** [6] - 42:11,
48:3, 56:21, 59:16,
73:19, 79:11
   **tone** [1] - 28:20
   **took** [6] - 6:12, 9:10,
21:22, 39:19, 55:4,
65:21
   **tools** [2] - 43:20,
44:3
   **top** [1] - 30:24
   **total** [6] - 21:6, 31:2,
53:15, 68:19, 69:1,
69:4
   **touching** [1] - 38:18
   **tour** [9] - 30:9, 49:14,
49:15, 49:16, 49:17,
49:18, 62:8, 63:12,
64:21
   **toured** [1] - 31:17
   **touring** [2] - 50:12,
62:6
   **tours** [2] - 31:15,
41:13
   **town** [1] - 79:23
   **training** [2] - 28:3,
28:8
   **transcript** [2] -
86:10, 86:12
   **TRANSCRIPT** [1] -

1:13
   **transfer** [1] - 57:17
   **transferring** [1] -
57:16
   **traveling** [1] - 85:15
   **travels** [1] - 85:15
   **treat** [1] - 29:19
   **treated** [1] - 29:5
   **trial** [28] - 19:10,
20:18, 22:16, 22:22,
22:24, 24:25, 28:12,
28:15, 28:16, 28:22,
29:16, 37:25, 38:14,
38:25, 39:6, 39:7,
39:10, 39:15, 39:18,
42:17, 47:9, 60:1,
66:13, 82:22, 83:25,
84:2, 84:6, 84:17
   **TRIAL** [2] - 1:13,
1:14
   **Trial** [1] - 5:7
   **tried** [1] - 63:20
   **tripled** [1] - 50:21
   **true** [6] - 23:10,
27:19, 55:18, 57:8,
86:10
   **trust** [2] - 57:8, 73:15
   **truth** [5] - 27:18,
28:13, 38:24, 55:8,
55:22
   **truthfully** [1] - 55:5
   **try** [1] - 38:10
   **trying** [5] - 8:4, 9:5,
10:4, 14:22, 17:1
   **TUESDAY** [1] - 5:1
   **Tuesday** [1] - 1:14
   **tune** [2] - 49:24, 78:2
   **turn** [2] - 38:19,
59:25
   **turned** [2] - 25:14,
55:18
   **twelve** [1] - 31:20
   **Twenty** [1] - 55:24
   **twice** [1] - 54:5
   **Twitter** [1] - 37:21
   **two** [25] - 7:24,
10:12, 13:2, 15:25,
23:16, 24:8, 26:18,
27:9, 29:23, 32:11,
32:17, 47:11, 47:13,
49:25, 52:17, 53:5,
53:10, 64:13, 65:1,
65:7, 75:10, 75:25,
77:18, 81:11, 85:4
   **two-minute** [1] -
15:25

## U

   **U.S** [3] - 1:3, 30:23,

30:25
   **unanimous** [6] -
36:21, 36:25, 40:12,
40:22, 40:23, 80:19
   **unassailable** [1] -
53:14
   **unavailable** [1] -
28:15
   **uncontradicted** [1] -
63:19
   **under** [20] - 6:22,
22:4, 22:11, 22:14,
24:11, 28:12, 29:5,
31:21, 34:14, 35:10,
36:5, 36:8, 46:2, 47:5,
54:8, 57:5, 58:2,
62:10, 63:22, 83:2
   **undercurrent** [1] -
56:15
   **understood** [2] -
16:7, 44:22
   **underwrote** [1] -
78:1
   **unexpressed** [1] -
78:13
   **unfortunately** [1] -
76:21
   **unique** [2] - 55:7,
75:11
   **United** [5] - 30:21,
80:24, 86:7, 86:9,
86:14
   **UNITED** [1] - 1:1
   **Universal** [2] - 31:23,
50:20
   **unless** [3] - 34:6,
44:19, 79:13
   **unlike** [1] - 58:16
   **unreasonable** [6] -
42:7, 46:10, 46:24,
57:5, 61:23, 77:9
   **unrebutted** [1] -
78:24
   **unsolicited** [1] - 83:5
   **untimely** [1] - 53:6
   **untrue** [1] - 27:12
   **untruthful** [1] - 55:20
   **untruthfully** [1] -
27:15, 27:18
   **unwilling** [1] - 37:3
   **up** [29] - 9:12, 10:4,
11:17, 13:3, 15:20,
16:1, 16:10, 17:7,
17:9, 17:11, 17:14,
25:11, 34:3, 57:15,
61:2, 61:11, 63:14,
64:15, 65:8, 65:9,
65:24, 67:17, 68:7,
71:17, 71:22, 72:18,
83:4, 83:9, 83:14

   **upset** [1] - 17:14
   **urge** [1] - 71:7
   **uses** [1] - 74:10
   **usual** [2] - 34:6,
44:22

## V

   **valid** [3] - 32:8,
32:14, 44:12
   **valuable** [1] - 42:19
   **variety** [1] - 14:20
   **various** [2] - 30:20,
66:5
   **verdict** [41] - 5:16,
6:18, 6:25, 7:1, 8:19,
8:20, 9:11, 13:7,
13:11, 21:25, 23:20,
29:12, 36:12, 36:21,
37:1, 37:7, 37:8, 39:4,
40:12, 40:14, 40:21,
40:22, 40:23, 52:14,
52:16, 57:9, 69:3,
69:6, 78:18, 79:14,
79:22, 80:12, 80:19,
80:22, 81:18, 81:19,
81:24, 82:1, 84:10,
84:22, 84:25
   **Verdict** [1] - 81:5
   **versions** [1] - 27:6
   **versus** [3] - 5:7,
78:1, 81:2
   **via** [1] - 37:18
   **video** [1] - 65:5
   **videotape** [3] -
59:12, 65:6, 65:12
   **view** [10] - 9:2,
12:11, 18:5, 19:5,
19:9, 19:12, 38:12,
38:14, 45:3, 78:10
   **views** [1] - 36:24
   **violates** [1] - 39:13
   **virtual** [1] - 69:17
   **virtually** [1] - 64:12
   **visit** [1] - 38:12
   **voice** [1] - 28:21
   **vote** [1] - 40:13
   **vs** [1] - 1:7

## W

   **wait** [4] - 69:14,
79:21, 80:6, 85:10
   **waiting** [4] - 20:19,
29:1, 40:8, 83:12
   **wake** [1] - 25:11
   **walking** [1] - 15:20
   **wants** [5] - 64:4,
67:23, 67:25, 71:10,
77:5

   **War** [1] - 57:23
   **warning** [1] - 16:1
   **watch** [1] - 38:5
   **water** [2] - 25:15,
76:13
   **ways** [3] - 41:18,
52:15, 64:9
   **weak** [1] - 54:20
   **website** [1] - 37:19
   **week** [1] - 42:21
   **weeks** [1] - 63:7
   **weight** [7] - 25:8,
25:10, 27:20, 27:23,
28:7, 37:6, 42:9
   **WEST** [1] - 1:24
   **west** [1] - 79:23
   **wet** [1] - 25:12
   **wife** [3] - 56:1, 56:7,
72:1
   **willing** [1] - 82:24
   **Wilshire** [1] - 2:13
   **Winston** [1] - 57:22
   **wisdom** [1] - 48:7
   **wish** [5] - 15:12,
41:3, 42:24, 57:12,
81:21
   **withdrawal** [4] -
18:8, 22:19, 31:10,
67:4
   **witness** [15] - 23:15,
25:3, 26:12, 26:14,
26:16, 27:3, 27:14,
27:16, 27:17, 28:11,
28:12, 28:19, 59:1,
62:7
   **WITNESS** [2] - 3:1,
3:3
   **witness's** [5] - 26:18,
26:19, 26:20, 26:23,
26:25
   **witnesses** [13] - 3:5,
24:2, 26:22, 27:5,
27:21, 27:22, 27:24,
28:4, 28:7, 38:16,
38:24, 55:3, 66:1
   **wolves** [3] - 58:18,
76:16, 76:17
   **wonderful** [1] - 52:12
   **word** [3] - 8:14, 55:2,
71:21
   **words** [15] - 34:5,
34:7, 34:9, 43:21,
44:9, 44:15, 44:21,
45:2, 45:4, 45:6, 45:8,
45:20, 50:13, 57:21
   **Words** [2] - 30:10,
32:1
   **works** [2] - 9:4,
53:17
   **world** [2] - 41:11,

57:24
  **World** [1] - 57:23
  **worldwide** [2] - 31:1, 31:2
  **worst** [1] - 57:23
  **wrap** [1] - 16:1
  **write** [7] - 60:11, 60:12, 60:13, 62:2, 70:10
  **writing** [5] - 37:17, 40:2, 40:4, 61:19, 68:4
  **wrote** [10] - 30:11, 58:7, 58:15, 58:20, 59:3, 60:4, 63:21, 70:23, 72:25, 73:2

## Y

  **year** [8] - 41:13, 47:13, 53:16, 53:18, 56:23, 61:14, 65:21, 78:25
  **years** [25] - 41:14, 41:20, 47:11, 49:20, 50:7, 55:24, 59:14, 61:7, 61:13, 61:25, 62:1, 62:5, 63:9, 65:22, 65:23, 69:14, 70:16, 71:1, 72:18, 73:19, 75:3, 76:2, 76:13, 78:19, 78:22
  **yesterday** [5] - 9:11, 19:23, 62:7, 62:21, 72:15
  **yielded** [1] - 30:24
  **yourself** [3] - 36:22, 44:8, 79:13
  **YouTube** [1] - 37:20

UNITED STATES DISTRICT COURT